DOLORES Y. LEAL (134176)
OLIVIA FLECHSIG (334880)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048-5217
(323) 653-6530
dleal@amglaw.com
oflechsig@amglaw.com

**Attorneys for <u>Plaintiff MARK SNOOKAL</u>**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual, | ) CASE NO.: 2:23-cv-6302 |
| | ) |
| | ) **COMPLAINT FOR DAMAGES** |
| Plaintiff, | ) |
| | ) 1. DISABILITY (ACTUAL OR |
| | ) PERCEIVED) DISCRIMINATION |
| vs. | ) (Violation of Cal. Gov't Code § |
| | ) 12940 *et seq.*) |
| | ) |
| CHEVRON USA, INC., a California | ) 2. FAILURE TO ACCOMODATE |
| Corporation, and DOES 1 through | ) (Violation of Cal. Gov't Code § |
| 10, inclusive, | ) 12940 *et seq.*) |
| | ) |
| | ) 3. AGE DISCRIMINATION |
| | ) (Violation of Cal. Gov't Code § |
| Defendants. | ) 12940 *et seq.*) |
| | ) |
| | ) 4. WRONGFUL CONSTRUCTIVE |
| | ) DISCHARGE IN VIOLATION OF |
| | ) PUBLIC POLICY |
| | ) |
| | ) |
| | ) **<u>JURY TRIAL DEMANDED</u>** |
| | ) |

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

Plaintiff, MARK SNOOKAL, hereby brings his complaint against the above-named Defendants and alleges the following:

## I. PARTIES

1.      Plaintiff MARK SNOOKAL (hereinafter "Plaintiff" or "Mr. Snookal") is an individual who is domiciled in Vancouver, Washington in the County of Clark. At all relevant times, Plaintiff was a resident of the County of Los Angeles and was employed by Defendant CHEVRON USA, INC. in the city of El Segundo, California in the County of Los Angeles.

2.      Plaintiff Snookal is informed and believes, and based thereon alleges, that Defendant CHEVRON USA, INC. (hereinafter referred to as "Chevron") is, and at all times relevant hereto was, a business incorporated and existing under the laws of the State of California doing substantial business in Los Angeles County, California.  Defendant Chevron employs more than five employees and is engaged in interstate commerce within the meaning of California Gov't Code § 12926.

3.      Plaintiff is ignorant of the true names and capacities, whether individual, corporate, partnership, associate, public entity, or otherwise, of Defendants sued herein as Defendants Does 1 through 10 or of the factors linking them to causes of action stated herein, and therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will seek leave of court to amend this complaint to allege such true names and capacities.  Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants designated as a Doe are responsible in some manner for the events and happenings hereinafter referred to, thereby proximately causing injury and damage to the Plaintiff herein alleged. Whenever in this complaint reference is made to "Defendants," such allegation shall be deemed to mean the acts of Defendants acting individually, jointly, and/or severally.

4.      Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants, and each of them, are and were the co-

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

conspirators, aiders, abettors, agents, servants, employees, joint-employer, alter-ego, and/or joint venturers of the other Defendants, and in acting as described herein within the scope, course, and authority of their authority or employment as agents and/or employees thereof, and with the permission and consent of the other Defendants and/or that each and every Defendant, as aforesaid, has ratified and approved of the acts of the other Defendants, and each of them is jointly and severally liable to Plaintiff.

## II. JURISDICTION

5.     Because Plaintiff is a citizen of a different state than Defendant, and Plaintiff seeks damages in excess of $75,000, this Court has subject-matter jurisdiction to hear this claim pursuant to 28 U.S.C. § 1332 *et seq*.

## III. VENUE

6.     The unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the Central District of California.  Chevron's El Segundo location where Plaintiff was employed is located at 324 West El Segundo Blvd., El Segundo, California 90245.   Accordingly, pursuant to 28 U.S.C. § 1391(b), venue lies in the United States District Court for the Central District of California.

## IV. FACTS

7.     On January 12, 2009, Chevron hired Mr. Snookal in the position of Analyzer Designs Engineer in the Technical Services department at Chevron's El Segundo refinery. In that role, he performed design and engineering functions for the installation of Analyzer systems in all divisions of the refinery.

8.     In the position of Analyzer Designs Engineer, he received consistently positive performance reviews. He was commended for navigating the refinery's technical systems with little to no assistance, cultivating relationships with employees in the field, and demonstrating leadership skills

9.     In 2011, Mr. Snookal was promoted to Maintenance Supervisor –

Analyzer and Digital Group. During his first year in the role, he took the lead in creating and implementing a three-year plan for needed changes in the department. He was tasked with improving the performance of a group of fifteen mechanics and technicians. Again, he was commended for his performance and leadership.

10.    In 2013, Mr. Snookal was promoted again to Analyzer Reliability Improvement Champion in the Technical Services Department. In that role, he developed and implemented the Analyzer Reliability Program for the entire El Segundo refinery. In his 2014 performance review, he was commended for doing an excellent job in recommending changes in the department and demonstrating leadership and flexibility for his team. In 2015, he was commended for his knowledge, sharing his knowledge with others, delivering quality results, and actively seeking out opportunities to develop and improve the business. His supervisor wrote that Mr. Snookal was "always there when you need him." In 2016, he was further praised for "improving analyzer reliability and analyzer performance at the El Segundo Refinery." His supervisor noted that Mr. Snookal's drive "cannot go unnoticed."

11.    In 2016, Plaintiff Snookal was promoted yet again to Instrumentation, Electrical and Analyzer Reliability Team Lead in the Reliability Department. In that role, he led a team of eight engineers and analysts responsible for inspection, testing, and preventative maintenance, as well as strategies for all instrumentation, electrical, and analyzer assets. In 2017, Chevron commended Mr. Snookal for improving the performance of his team, with two individuals showing marked improvements. In 2018, Chevron acknowledged Mr. Snookal for effectively managing his team's performance despite high turnover that year for reasons beyond Mr. Snookal's control. In 2019, Chevron documented Mr. Snookal's "standout contributions," "leadership accountability," "unique technical skills," and "just plain hard work." His supervisor noted his significant accomplishments while "facing strong personal headwinds in his career. His ability to stay focused and

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

committed during these times was very humbling and a good indicator of his work ethic."

12.    In 2019, Mr. Snookal applied for the Reliability Engineering Manager ("REM") position, located in Escravos, Nigeria, with a salary grade 22. In the REM position, Mr. Snookal would be, *inter alia*, managing a team of approximately 20 engineers and technicians and setting high-level strategies and work direction for a gas to liquids plant.  The hiring manager and Human Resources both also told Mr. Snookal that after six months or fewer, he would be eligible for a promotion to salary grade 23.

13.    The position also came with a 55% increase in base pay, despite the fact that it required working only six months per year. In addition, Mr. Snookal would have received additional compensation for taking a rotational reassignment under Chevron's Tax Equity Policy which would treat his income as "tax neutral," and he would have received additional cash compensation for foregoing his vacation for this special remote assignment schedule. Mr. Snookal was eminently qualified for the position, and Chevron offered him the job with a plan to start the new position on August 1, 2019. Mr. Snookal was ecstatic about the opportunity to travel abroad, take on additional responsibilities, receive a substantial raise, achieve a better work-life balance, and afford better educational opportunities for his son.

14.    However, prior to the planned start date, Chevron required Mr. Snookal to undergo a medical screening.  Chevron selected Dr. Irving Sobel to complete the medical evaluation, and Dr. Sobel cleared him as medically "fit for duty" for the REM position, with two restrictions. First, Mr. Snookal could not be required to do heavy lifting over fifty pounds. The lifting "restriction" was irrelevant, as heavy lifting was not a requirement for the management position. Second, Mr. Snookal was to receive a clearance recommendation letter from his treating cardiologist to clear him.

15.    Mr. Snookal had an asymptomatic and stable/unchanged dilated aortic

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

1   root, which was controlled with medication.

2       16.     Based upon his annual examination of Mr. Snookal, his treating

3   cardiologist, Dr. S. Khan, concluded that Mr. Snookal was medically fit for the REM

4   position. He wrote as much in a letter which Mr. Snookal forwarded  to Chevron's

5   medical liaison.

6       17.     To Mr. Snookal's shock, on August 15, 2019, Dr. Eshiole Asekomeh,

7   a doctor in Nigeria, deemed Mr. Snookal "not fit for duty." Chevron immediately

8   rescinded the job offer. Mr. Snookal did not understand why this was happening

9   after he had already been medically cleared by two of his treating physicians. To

10  appeal the decision, Mr. Snookal contacted the Chevron Ombuds, who passed Mr.

11  Snookal to the Chevron Medical Director for North America, Dr. Stephen Frangos,

12  who in turn passed Mr. Snookal along to Dr. Scott Levy, Chevron's Regional

13  Medical Manager for Europe, Eurasia, Middle East & Africa.

14      18.     Mr. Snookal and Dr. Levy spoke several times, and Dr. Levy explained

15  that although Mr. Snookal had been cleared by both Dr. Sobel and Dr. Khan, the

16  final decision on medical fitness for duty was up to the local support staff at the

17  position's location, Dr. Asekomeh. Dr. Levy explained that the jobsite was in a

18  remote area in Nigeria with limited medical facilities, and emergency medical care

19  could only be provided by charter aircraft using the facility airstrip to Lagos,

20  Nigeria.

21      19.     Dr. Levy requested permission to discuss Mr. Snookal's medical

22  fitness with his treating cardiologist, Dr. Khan. Mr. Snookal gave him permission

23  to do so.

24      20.     Plaintiff is informed and believes, Dr. Khan and Dr. Levy

25  communicated regarding Plaintiff Snookal's medical fitness for the position. On

26  August 23, 2019, Dr. Khan sent Dr. Levy an email reiterating his opinion that Mr.

27  Snookal was fit for duty. *Dr. Khan summarized, "Mr. Snookal's risk of serious*

28  *complications related to his aneurysm is low and likely less than 2% per year. The*

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

*risk is primarily related to further enlargement of the aneurysm which can be tracked with an annual CT scan."*

21.     Despite Dr. Khan's assurances of Plaintiff Snookal's medical fitness, Dr. Levy advised Plaintiff Snookal that he would stand by Dr. Asekomeh's determination that Plaintiff Snookal was not fit for duty, and the position offer would remain rescinded.

22.     On September 4, 2019, Mr. Snookal sent an email to Chevron Human Resources Manager, Andrew Powers, explaining what had occurred and complaining of disability discrimination.

23.     Mr. Powers replied, "I've reached out to the Medical Department and while I'm not privy to any medical information, I understand a thorough review was conducted and alternatives were explored. We would respectfully disagree that the determination was based on stereotyping or impermissible discrimination."

24.     Meanwhile, after Chevron had offered Mr. Snookal the position in Nigeria, Chevron filled Mr. Snookal's position at the El Segundo refinery with someone else.

25.     Subsequently, Mr. Snookal met with Mr. Powers, Thalia Tse of Chevron's Human Resources department, and Austin Ruppert, Mr. Snookal's then-supervisor.

26.     During his meeting with Mr. Powers, Ms. Tse, and Mr. Ruppert, Mr. Snookal requested a letter from the Chevron medical department explaining their purported reasoning for rescinding the position, and identifying locations that Chevron would consider him "fit for duty."

27.     To this request, Dr. Levy responded with an email stating, *inter alia*, "I understand that you are willing to take the risk of potentially dying on the job, and that you do not feel it is the company's place to make that decision for you. I agree to a certain extent and recognize your concerns about paternalism. However, the company does have a right to not engage individuals where their assignments could

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

pose 'a direct threat' to their own health and safety."

28.     Despite its legal duty to do so, under the Fair Employment and Housing Act and attendant regulations, Chevron made no meaningful effort to offer Mr. Snookal any accommodation for his actual or perceived physical disability so that he could perform the essential functions of the REM position.

29.     During Mr. Snookal's meeting with Mr. Powers, Ms. Tse, and Mr. Ruppert, Mr. Snookal also sought to discuss a path forward at Chevron now that he was stripped of his new position and his old position had been filled. They identified three positions for which Plaintiff Snookal was qualified and could apply: Operating Assistant, General Team Lead, and Maintenance Change Operating Assistant. Plaintiff Snookal applied for all three, however he was not selected for any of the positions.

30.     At the time Mr. Snookal applied for these three positions, Mr. Snookal was 47 years old. Plaintiff is informed and believes that the three individuals who were selected over him for each of these three positions were significantly younger and less qualified than him.

31.     Chevron decided to create a position for Mr. Snookal called the "Reliability Change Operating Assistant," but it was effectively a demotion. For one thing, it was not a supervisory role despite Mr. Snookal's years of being an effective team lead in multiple departments. Further, the position was a temporary one with no established path to promotion, no clear job functions, and limited ability to benefit the company.

32.     As a direct result of having the REM position in Nigeria rescinded despite his medical fitness and qualifications, and of being rejected for other positions in favor of less qualified, significantly younger employees, Mr. Snookal began suffering from depression. He had to begin seeing a therapist and taking anti-depressants to cope.

33.     For the sake of his mental health, Mr. Snookal and his therapist

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL

discussed a forced resignation. Mr. Snookal was constructively terminated. He resigned for his health and accepted a position with another company which paid less, had fewer benefits, and required relocation to another state.

34.   As a result of Defendants' acts and omissions as set forth above, Mr. Snookal has suffered and continues to suffer emotional and mental distress, medical expenses, in addition to loss of income, benefits, and privileges of his job.

## FIRST CAUSE OF ACTION

**(Disability – (Actual or Perceived) Discrimination in Violation of Cal. Gov't Code § 12940 et seq. against Chevron and DOES 1-10)**

35.   Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same as though fully set forth herein.

36.   Defendant Chevron and DOES 1-10 each is an "Employer" as defined in the California Fair Employment and Housing Act ("FEHA"), California Gov't Code § 12940 et seq.

37.   At all relevant times herein, Plaintiff was an "Employee" of Chevron within the meaning of California Gov't Code § 12926.

38.   Defendant regarded or treated Plaintiff as a person with a "physical disability" as defined under the FEHA, Cal. Gov't Code §12926(m).

39.   Plaintiff's physical condition was a qualifying "physical disability" as defined under Cal. Gov't Code § 12926(m).

40.   Plaintiff was able to perform the essential job duties of the Reliability Engineering Manager position, as well as the essential job duties of the Operating Assistant, General Team Lead, and Maintenance Change Operating Assistant.

41.   Defendant subjected Mr. Snookal to unlawful disability discrimination in violation of the FEHA by rescinding his promotion to the Reliability Engineering Manager position because of his actual or perceived disability, failing to hire him for jobs to which he applied, and subsequently demoting him to a non-supervisory role, as set forth hereinabove.

42.     Mr. Snookal is informed and believes and based thereon alleges that in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices against him which are not yet fully known to him.  At such time as such practices become known to him, Plaintiff will seek leave of Court to amend this Complaint in that regard.

43.     On December 22, 2021, Mr. Snookal timely filed a complaint against Defendant with the California Department of Fair Employment and Housing ("DFEH") (now called the California Civil Rights Department ("CRD")).   The DFEH issued Mr. Snookal a right-to-sue notice authorizing this lawsuit.   Mr. Snookal has therefore exhausted his administrative remedies.

44.     As a direct and proximate result of Defendants' willful, knowing, and intentional unlawful conduct against him, Mr. Snookal has suffered and will continue to suffer pain and suffering; mental anguish and emotional distress; other incidental expenses; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Mr. Snookal is therefore entitled to general and compensatory damages in amounts to be proven at trial.

45.     As a further, direct and proximate result of Defendants' violation of California Gov't Code § 12940 *et seq.*, as heretofore described, Mr. Snookal has been compelled to retain the services of counsel in an effort to enforce his rights arising out of his employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to him.  Mr. Snookal requests that attorney's fees, expert witness fees, and costs be awarded pursuant to California Gov't Code § 12965 *et seq*.

46.     Plaintiff is informed and believes, and based thereon alleges, that the conduct of Defendants described above was done with malice, fraud, and/or oppression, with the conscious disregard of his rights, and/or with the intent, design, and purpose of injuring him.  By reason thereof, Plaintiff is entitled to punitive or

exemplary damages from Defendants in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

### (Failure to Accommodate in Violation of California Gov't Code § 12940 *et seq.* against Chevron and DOES 1-10)

47.     Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same as though fully set forth herein.

48.     Defendant Chevron and DOES 1-10 each is an "Employer" as defined in the California Fair Employment and Housing Act ("FEHA"), California Gov't Code § 12940 *et seq.*

49.     At all relevant times herein, Mr. Snookal was an "Employee" of Defendants within the meaning of California Gov't Code § 12926.

50.     At all times material to this complaint, Plaintiff was a person with a physical disability within the meaning of California Gov't Code §§ 12940 and 12926.

51.     Defendant through its managing agents failed to accommodate Mr. Snookal's disability in violation of California Gov't Code § 19240 *et seq.* as set forth herein above.

52.     Mr. Snookal is also informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants may have engaged in other practices that constitute a failure to accommodate his disability, which are not yet fully known to him. At the time that such discriminatory practices become known to him, Plaintiff will seek leave of Court to amend this complaint in that regard.

53.     On December 22, 2021, Mr. Snookal timely filed a complaint against Defendant with the California Department of Fair Employment and Housing (DFEH) (now called the California Civil Rights Department ("CRD")). The DFEH issued Mr. Snookal a right-to-sue notice authorizing this lawsuit. Mr. Snookal has therefore exhausted his administrative remedies.

54.    As a direct and proximate result of Defendants' willful, knowing, and intentional unlawful conduct against him, Mr. Snookal has suffered and will continue to suffer pain and suffering; mental anguish and emotional distress; other incidental expenses; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Mr. Snookal is therefore entitled to general and compensatory damages in amounts to be proven at trial.

55.    As a further, direct and proximate result of Defendants' violation of California Gov't Code § 12940 *et seq.*, as heretofore described, Mr. Snookal has been compelled to retain the services of counsel in an effort to enforce his rights arising out of his employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to him.  Mr. Snookal requests that attorney's fees, expert witness fees, and costs be awarded pursuant to California Gov't Code § 12965.

56.    Plaintiff is informed and believes, and based thereon alleges, that the conduct of Defendants described above was done with malice, fraud, and/or oppression, with the conscious disregard of his rights, and/or with the intent, design, and purpose of injuring him.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

### (Age Discrimination in Violation of Cal. Gov't Code § 12940 *et seq.* against Chevron and DOES 1-10)

57.    Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same as though fully set forth herein.

58.    Defendant Chevron and DOES 1-10 each is an "Employer" as defined in the California Fair Employment and Housing Act ("FEHA"), California Gov't Code § 12940 et seq.

59.    At all relevant times herein, Mr. Snookal was an "Employee" of

Defendants within the meaning of California Gov't Code § 12926.

60.    At all times material to this complaint, Plaintiff was 47 years old, and therefore was a person protected from age discrimination pursuant to the FEHA.

61.    Plaintiff was denied the positions of Operating Assistant, General Team Lead, and Maintenance Change Operating Assistant, despite being highly qualified for each. At the time he was denied each position, he was satisfactorily performing his job. Plaintiff is informed and believes and based thereon alleges that the individuals who were selected for each position instead of Plaintiff were significantly younger and less qualified than Plaintiff.

62.    Mr. Snookal is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices against him which are not yet fully known to him. At the time such practices become known to him, Plaintiff will seek leave of Court to amend this Complaint in that regard.

63.    On December 22, 2021, Mr. Snookal timely filed a complaint against Defendant with the California Department of Fair Employment and Housing ("DFEH") (now called the California Civil Rights Department ("CRD")).  The DFEH issued Mr. Snookal a right-to-sue notice authorizing this lawsuit.  Mr. Snookal has therefore exhausted his administrative remedies.

64.    As a direct and proximate result of Defendants' willful, knowing, and intentional unlawful conduct against him, Mr. Snookal has suffered and will continue to suffer pain and suffering; mental anguish and emotional distress; other incidental expenses; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Mr. Snookal is therefore entitled to general and compensatory damages in amounts to be proven at trial.

65.    As a further, direct and proximate result of Defendants' violation of California Gov't Code § 12940 *et seq.*, as heretofore described, Mr. Snookal has been compelled to retain the services of counsel in an effort to enforce his rights

arising out of his employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to him. Mr. Snookal requests that attorneys' fees, expert witness fees, and costs be awarded pursuant to California Gov't Code § 12965.

66.    Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendants described above was done with malice, fraud, and/or oppression, with the conscious disregard of his rights, and with the intent, design, and purpose of injuring him.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

### (Constructive Discharge in Violation of Public Policy Against Defendant Chevron and DOES 1-10)

67.    Plaintiff repeats and realleges by reference each and every allegation contained hereinabove and incorporates the same as though fully set forth herein.

68.    Defendants created intolerable working conditions by denying Mr. Snookal a promotion, demoting him, reducing his job responsibilities, and denied him positions in favor of individuals who were younger and less qualified than him as described hereinabove which caused Plaintiff's constructive termination.

69.    Defendants intentionally created or knowingly permitted these working conditions that were so intolerable at the time of Plaintiff's resignation that a reasonable person in Plaintiff's position would be compelled to resign.

70.    Plaintiff is informed and believes as set forth above that Defendants denied him a promotion, demoted him, reduced his job responsibilities, denied him positions in favor of individuals who were younger and less qualified than him as described hereinabove in retaliation for complaining about disability discrimination.

71.    It is public policy of the State of California, as expressed in California

Gov't Code § 12900 et seq. and California Gov't Code § 1102.5 et seq., that employees shall not be subjected to retaliation because of complaints of disability discrimination.

72.    As a direct and proximate result of Defendants' willful, knowing, and intentional unlawful conduct against him, Mr. Snookal has suffered and will continue to suffer pain and suffering; mental anguish and emotional distress; other incidental expenses; and has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Mr. Snookal is therefore entitled to general and compensatory damages in amounts to be proven at trial.

73.    As a further, direct and proximate result of Defendants' constructive discharge of him as heretofore described, Mr. Snookal has been compelled to retain the services of counsel in an effort to enforce his rights arising out of his employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to him.  Mr. Snookal requests that attorney's fees be awarded pursuant to California Gov't Code § 12965.

74.    Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendants described above was done with malice, fraud, and/or oppression, with the conscious disregard of his rights, and/or with the intent, design, and purpose of injuring him.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in an amount according to proof at trial.

**WHEREFORE**, Plaintiff prays judgment be entered in his favor and against Defendants as follows:

## FOR ALL CAUSES OF ACTION

1.    For non-economic and general damages in an amount to be proven at trial;

2.    For economic and special damages in an amount to be proven at trial;

3.     For punitive and exemplary damages against Defendants in an amount to be proven at trial;

4.     For attorneys' fees and costs as allowed by law;

5.     For prejudgment and post-judgment interest as allowed by law;

6.     For injunctive relief; and

7.     For such other and further relief as the Court may deem just and proper.

DATED:  August 3, 2023                    ALLRED, MAROKO & GOLDBERG


By: _____
      DOLORES Y. LEAL
      OLIVIA FLECHSIG
      Attorneys for Plaintiff,
      **MARK SNOOKAL**


## **DEMAND FOR JURY TRIAL**

Plaintiff Mark Snookal hereby demands a jury trial on all causes of action and claims alleged in this Complaint.

DATED:  August 3, 2023                    ALLRED, MAROKO & GOLDBERG


By: _____
      DOLORES Y. LEAL
      OLIVIA FLECHSIG
      Attorneys for Plaintiff,
      **MARK SNOOKAL**

COMPLAINT FOR DAMAGES
DEMAND FOR JURY TRIAL