1  DOLORES Y. LEAL (134176)
2  OLIVIA FLECHSIG (334880)
   ALLRED, MAROKO & GOLDBERG
3  6300 Wilshire Blvd. Suite 1500
4  Los Angeles, CA 90048-5217
   (323) 653-6530
5  dleal@amglaw.com
6  oflechsig@amglaw.com

7  **Attorneys for Plaintiff MARK SNOOKAL**

8
9  (counsel for Defendant on next page)

10              UNITED STATES DISTRICT COURT
11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12  MARK SNOOKAL, an individual, | ) CASE NO.: 2:23-cv-6302-HDV-AJR |
| 13  | ) |
| 14            Plaintiff, | ) **JOINT SCHEDULING REPORT** ) **PURSUANT TO FEDERAL RULE** |
| 15  | ) **OF CIVIL PROCEDURE RULE** ) **26(f)** |
| 16       vs. | ) |
| 17  | ) |
| 18  | ) Judge: Hon. Hernan D. Vera |
| 19  CHEVRON USA, INC., a California Corporation, and DOES 1 through | ) Scheduling Conference Date: December ) 5, 2023 |
| 20  10, inclusive, | ) Time: 10:00 a.m. ) Courtroom: 5B |
| 21  | ) Magistrate Judge: Hon. A. Joel Richlin |
| 22  | ) |
| 23            Defendants. | ) Trial Date: None Set |
| 24  | ) ) |

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
TRACEY A. KENNEDY (150782)
ROBERT E. MUSSIG (240369)
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
T: (213) 620-1780
tkennedy@sheppardmullin.com
rmussig@sheppardmullin.com
LINDA Z. SHEN (294039)
501 W. Broadway, 18th Floor
San Diego, CA 92101-3598
T: (619) 338-6500
lshen@sheppardmullin.com

Attorneys for Defendant CHEVRON U.S.A. INC.

Plaintiff Mark Snookal and Defendant Chevron U.S.A., Inc. (collectively "Parties"), by and through their respective counsel of record, respectfully submit this Joint Scheduling Report pursuant to federal Rule of Civil Procedure Rule 26(f), the Central District of California's Local Rules, and this Court's Order Setting Scheduling Conference (Dkt 16). Respective counsel for Parties met and conferred in real time via Zoom video conference on November 9, 2023 to generate the following report and attachment hereto.

**1.  Statement of the Case**

**Plaintiff's Statement of the Case:**

In 2009, Plaintiff Mark Snookal ("Mr. Snookal") began working for Defendant Chevron U.S.A., Inc. ("Defendant" or "Defendant Chevron") as an Analyzer Designs Engineer in the Technical Services department at Chevron's El Segundo, California refinery.  Mr. Snookal's consistently strong performance earned him commendations from his supervisors, and Chevron promoted him in 2011, 2013, and again in 2016.  In 2019, Mr. Snookal applied and was selected for the Reliability Engineering Manager ("REM") position located in Escravos, Nigeria. This REM position came with a 55% increase in Mr. Snookal's base pay (despite only having to work six months per year), additional compensation for taking a rotation reassignment under Chevron's Tax Equity Policy which would treat his income as "tax neutral," and this new position would make Mr. Snookal eligible for a salary grade promotion within six months or fewer of his start date.

However, prior to the planned start date, Defendant Chevron required Mr. Snookal to undergo a medical screening.  Dr. Irving Sobel, who Defendant Chevron selected to evaluate Mr. Snookal, cleared Mr. Snookal as medically "fit for duty" so long as he obtained a clearance recommendation from Mr. Snookal's treating cardiologist.  In turn, Mr. Snookal's treating cardiologist, Dr. S. Khan concluded that Mr. Snookal was medically fit for the REM position, notwithstanding Mr. Snookal's asymptomatic and stable/unchanged dilated aortic root, which was

1  controlled with medication. Dr. S. Khan wrote the required recommendation to
2  Chevron's medical liaison stating as much.  Still, on August 15, 2019, Chevron
3  declared that Mr. Snookal was "not fit for duty" and rescinded the job offer.
4  Chevron made no meaningful effort to offer Mr. Snookal any accommodation for
5  his actual or perceived physical disability so that he could perform the essential
6  functions of the REM position.
7      In the interim, Chevron filled Mr. Snookal's former position, leaving him
8  without a job or path forward at the company.  Defendant Chevron identified three
9  positions for which he could apply: Operating Assistant, General Team Lead, and
10 Maintenance Change Operating Assistant.  Mr. Snookal, who was then 47 years old,
11 applied to all three but was not selected for any of the positions. Instead, the
12 positions went to significantly younger and less qualified applicants.
13     Finally, Defendant Chevron decided to create a position for Mr. Snookal
14 called the "Reliability Change Operating Assistant," but it was effectively a
15 demotion.
16     As a direct result of Defendant Chevron rescinding the REM position in
17 Nigeria; of being rejected for other positions in favor of less qualified, younger
18 employees; and of being demoted, Mr. Snookal began suffering from depression.
19 He began treatment with a therapist and taking anti-depressants.  In consultation
20 with his therapist, Mr. Snookal was forced to resign from his employment with
21 Defendant Chevron for the sake of his mental health.
22     On December 22, 2021, Mr. Snookal filed a complaint with the California
23 Department of Fair Employment and Housing ("DFEH," now called the California
24 Civil Rights Department).  The DFEH issued a right to sue notice on December 19,
25 2022, and Plaintiff filed his complaint in the Central District of California on August
26 3, 2023 for four causes of action: (1) Disability (Actual or Perceived) Discrimination
27 in Violation of Cal. Gov't Code § 12940, *et seq.*; (2) Failure to Accommodate a
28 Disability in Violation of Cal. Gov't Code § 12940, *et seq.*; (3) Age Discrimination

in Violation of Cal. Gov't Code § 12940, *et seq.*; and (4) Wrongful Constructive Discharge in Violation of Public Policy.

**Defendant's Statement of the Case:**

Mr. Snookal's employment with Chevron began on January 12, 2009 in the El Segundo Refinery. Since beginning employment as an Analyzer Specialist, Mr. Snookal received several promotions to positions with higher pay and increased responsibilities. Mr. Snookal voluntarily left Chevron in August 2021 to begin employment at a new company.

In or around June 2019, Mr. Snookal interviewed for an expatriate position located in Escravos, Nigeria. This Reliability Engineering Manager position was part of the Escravos Gas to Liquid (EGTL) Division of Chevron Nigeria Limited. Following the interview process, Mr. Snookal was the top candidate from the slate and received an offer. As described in his offer letter, the anticipated length of the assignment was three to four years, but the letter noted that "special circumstances or a change in business conditions or policies and programs may result in a modification of the assignment or its duration, including elimination of the assignment at the sole discretion of the Company." The position came with no change to his annual base salary, which was $141,100 at the time. Most importantly, the offer was contingent on Mr. Snookal obtaining appropriate work authorization and successfully passing an MSEA (medical suitability for expat assignment).

During the MSEA, Mr. Snookal disclosed to an independent, third-party doctor—Irving Sobel—that he had a thoracic aortic aneurysm that requires periodic checkups with his cardiologist. Dr. Sobel cleared him to work in Nigeria, Dr. Sobel stated that a recommendation letter from Mr. Snookal's cardiologist would need to be reviewed in order to clear Mr. Snookal to work in Escravos. Following that recommendation, Mr. Snookal's cardiologist, Dr. Steven Khan, provided a letter stating, "It is safe for him to work in Nigeria with his heart condition." Dr. Khan's brief letter did not provide any information about the specific condition. Further, his

letter only contemplated Mr. Snookal working in Nigeria generally, without consideration of the risk present with working in a more remote area of Nigeria like Escravos.

Dr. Steve Levy, a Chevron Regional Medical Manager, followed up with Dr. Khan to obtain more information about Mr. Snookal's condition. Basing his opinion on the most recent published studies at the time, Dr. Khan estimated that the risk of rupture or dissection was approximately 2% per year for aneurysms similar in size to Mr. Snookal's. The health care infrastructure in Escravos is poorly developed. There is limited internal health support, and the external health care resources are extremely unreliable and limited. Care is available only for basic needs. There is no readily available access to the type of care Mr. Snookal would need should an acute event occur. Indeed, due to these conditions, a rupture or dissection occurring in Escravos would assuredly result in Mr. Snookal's death.

When Mr. Snookal was offered the EGTL Reliability Engineering Manager position, the El Segundo Refinery began work to identify a replacement for Mr. Snookal's position—Instrumentation Electrical and Analyzer Reliability (IEAR) Team Lead. The Refinery, which had no involvement in Mr. Snookal's MSEA and operated under the assumption that Mr. Snookal would soon be leaving for Escravos, filled the position with another employee, Brian Mueller. Mr. Mueller had worked in the position for approximately three months when the Refinery was notified that Mr. Snookal's Escravos offer had been rescinded. Rather than return Mr. Snookal to the IEAR Team Lead role, which would in turn move Mr. Mueller back to his old position and create a chain event of employees being kicked out of newly acquired roles, the Refinery placed Mr. Snookal in a new position—Reliability Change Operating Assistant(OA). Contrary to Mr. Snookal's characterization in his Complaint, this was not a demotion. Mr. Snookal received the same compensation and benefits. Although he would no longer have other employees directly reporting to him, the OA roles are considered to be leader positions that provide work direction

to other employees. Similarly, Mr. Snookal continued to oversee the work of contractors in his OA position. Less than one year later, Mr. Snookal obtained the IEAR Team Lead position again during a September/October 2020 selection event connected with a restructuring.

In or around October 2019, Mr. Snookal applied for the Routine Maintenance General Team Lead position in the El Segundo Refinery. Following the application period, Mr. Snookal was ranked third on the shortlist behind two employees—Lauren Bueler (ranked first) and Brian Getchius (ranked second). At the time, Ms. Bueler was 34, Mr. Getchius was 38, and Mr. Snookal was 47. Ms. Bueler accepted another position working in the Gulf of Mexico and Mr. Getchius was placed in the position. Mr. Getchius was more qualified for the specific role.

Most significantly, since Mr. Getchius began working at the Refinery in 2005, his entire career had been spent working through various mechanic roles in the Routine Maintenance group. In contrast, Mr. Snookal never worked in the Routine Maintenance group. Rather, his background and initial internal experience related to the Analyzer department.

The next year, during the same September/October 2020 selection event in which Mr. Snookal obtained the IEAR Team Lead position, he also applied for a Houston-based Facilities Design and Solutions (FDS) Analyzer Engineer position. Mr. Snookal was also ranked third on the shortlist for this position—behind Peter Bowers (ranked first) and Amit Sondhi (ranked second). At the time, Mr. Bowers was 50, Mr. Sondhi was 43, and Mr. Snookal was 48. As Mr. Bowers obtained another position at the Richmond Refinery, Mr. Sondhi was placed in the position.

Mr. Sondhi, who was over 40 and less than five years younger than Mr. Snookal, was more qualified for the FDS Analyzer Engineer position. This position would serve as a subject matter expert for analyzers across various business units, and would be responsible for R&D, supporting base business, and capital projects. A senior version of the role was recently filled by an employee with a strong

background in Downstream operations, so this position ideally would be filled by someone with more Upstream experience. Mr. Sondhi had a broad background with varied experience across multiple Upstream business units, while all of Mr. Snookal's experience was with the El Segundo Refinery(Downstream). Mr. Sondhi also had experience working in R&D, while Mr. Snookal had no R&D experience. Furthermore, prior to final selections being made, the selection team for this position was notified that Mr. Snookal obtained the IEAR Team Lead position—Mr. Snookal would have been removed from further consideration at this time.    Defendant denies Plaintiff's allegations of unlawful conduct. Plaintiff voluntarily resigned from employment to pursue another job opportunity. Plaintiff's resignation letter specifically stated that he appreciated all the opportunities Defendant had given him and the support he had received from team members, and he unilaterally designated the effective date of his termination.   Plaintiff's claims of disability discrimination and failure to accommodate are without merit. Plaintiff applied for and was made a conditional offer or Reliability Manager which was located in Escravos, Nigeria. This position required a medical clearance because the job was in a remote location of Nigeria, where medical care is extremely limited and timely medical evacuation for more sophisticated care is impossible on the (frequent) days of bad weather. While Plaintiff's doctor cleared him to work with certain work restrictions, he was not cleared to work by Chevron doctors who know and understand the working conditions of this position in Nigeria.

   Plaintiff will not be able to assert a viable claim for disability discrimination pursuant to the Fair Employment and Housing Act ("FEHA"). However, even if FEHA applies, Defendant acted lawfully because, among other things, FEHA does not require employers to hire or retain individuals who pose a direct threat or significant risk to the health or safety of themselves and/or others, as would have been the case had Plaintiff been permitted to work in Escravos.

   Contrary to Plaintiff's allegations, the Reliability Engineering Manager

position in Escravos offered roughly the same compensation as Plaintiff had before. For example, the offer letter specified a salary grade of "22" – the same grade that Plaintiff previously occupied – with "No Change" to his base salary. Shortly after being declared medically unfit for duty in Escravos, Plaintiff's next position of Reliability Change Operating Assistant likewise resulted in no change in pay, nor was it less sophisticated in terms of job responsibilities. Thus, his next job was not "effectively a demotion" as Plaintiff now alleges.

Plaintiff's claim of age discrimination is without merit. This claim is predicated on the fact that Plaintiff was not selected for certain positions to which he applied after failing clearance for the Escravos position. Yet, the decisionmakers as to those other positions were not even aware of Plaintiff's age, and the individuals ultimately selected for those positions were both more qualified and not meaningfully younger than Plaintiff. Moreover, only a year or so after Plaintiff's alleged "demotion," Plaintiff applied and was selected for the position of Instrumentation Electrical and Analyzer Reliability Team Lead, the very same position he had held directly prior to failing clearance for Escravos. Plaintiff was offered and accepted this position during a time when Defendant was undergoing a large-scale restructuring in response to business conditions presented by the COVID-19 pandemic. Yet, Defendant neither demoted nor laid off Plaintiff, and instead continued to provide Plaintiff with career opportunities, as it had before.

Plaintiff's claim for wrongful constructive discharge is also wholly unsubstantiated because, as noted above, Plaintiff undisputedly resigned, and no discriminatory or otherwise unlawful conduct precipitated his resignation.

**2. Subject Matter Jurisdiction**

Plaintiff Mark Snookal is an individual domiciled in Vancouver, Washington in the County of Clark. Defendant Chevron U.S.A., Inc. is a business incorporated and existing under the laws of the State of Pennsylvania doing substantial business in Los Angeles County, California. Plaintiff seeks damages in excess of $75,000.

This Court therefore has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

### 3. Legal Issues

**Plaintiff's Statement of Legal Issues:**

Plaintiff's claims currently involve the following key legal issues:

- Whether Defendant discriminated against Plaintiff because of his actual or perceived disability in violation of the California Fair Employment and Housing Act
- Whether Defendant failed to accommodate Plaintiff's disability in violation of the California Fair Employment and Housing Act
- Whether Defendant did not select Plaintiff for the Operating Assistant position because of his age
- Whether Defendant did not select Plaintiff for the General Team Lead position because of his age
- Whether Defendant did not select Plaintiff for the Maintenance Change Operating Assistant position because of his age
- Whether Defendant wrongfully constructively terminated Plaintiff in violation of public policy
- The cause and extent of Plaintiff's damages

**Defendant's Statement of Legal Issues:**

- Whether Plaintiff was a "qualified individual with a disability" as defined in the FEHA as to his claims for disability discrimination and failure to accommodate;
- Whether the decision to rescind the conditional job offer of a position in Escravos, Nigeria was lawful because Plaintiff presented a direct threat or significant risk of harm to the health or safety of himself and/or others;
- Whether Plaintiff was not selected for any positions to which he

applied with Defendant because of his age;

- Whether Plaintiff's decision to resign was a voluntary resignation or a constructive termination;
- Whether, and to what extent, Plaintiff has suffered economic or non-economic damages as a result of Defendant's alleged conduct;
- Whether, and to what extent, Plaintiff made reasonable efforts to mitigate any economic or non-economic damages he attributes to Defendant's alleged conduct; and

Whether Defendant's alleged conduct was carried out, authorized, or ratified with the degree of malice, fraud, and/or oppression sufficient to support a claim for punitive damages under California Civil Code section 3294.

**4. Parties, Evidence, etc.**

    **a. Parties:** Plaintiff Mark Snookal; Defendant Chevron U.S.A., Inc.

    **b. Plaintiff's Evidence**

        **i. Percipient Witnesses for Plaintiff:**

- Mark Snookal
- Constance Snookal
- Dr. Shahid Hameed Khan
- Dr. Irving Sobel
- Dr. Eshiole Asekomeh
- Dr. Scott Levy
- Tim Sutherland
- Amy Hogan
- Austin Ruppert
- Andrew Powers
- Gia Lott
- Theila Tse
- Andrew Powers

- Linda Lou Engel, LCSW
- Sherry Jiang Yi Bott, NP
- Aline Baer, LCSW

### ii. Plaintiff's Key Documents

- Plaintiff's personnel file
- Defendant's medical clearance policies
- Defendant's policy regarding working outside of the United States
- Defendant's anti-discrimination and/or retaliation policies
- Plaintiff's medical clearances for the Escravos, Nigeria Reliability Engineering Manager position
- All documents identifying the qualifications for the Escravos, Nigeria Reliability Engineering Manager position
- Plaintiff's internal job applications for the Operating Assistant, General Team Lead, and Maintenance Change Operating Assistant positions
- All documents evidencing the qualifications of those selected over Plaintiff for the Operating Assistant, General Team Lead, and Maintenance Change Operating Assistant positions

### c. Defendant's Evidence

### i. Percipient Witnesses for Defendant:

Mark Snookal, Constance Snookal, Dr. Shahid Hameed Khan, Dr. Irving Sobel, Dr. Eshiofe Asekomeh, Dr. Paul Arenyeka, Dr. Olorunfemi Pitan, Dr. Scott Levy, Austin Ruppert, Troy Tortorich, Greg Curtin, Andrew Powers, Thalia Tse, Greg Curtin Syed Naveed Hasan. Brian Getchius. Amit Sondhi, Amir Zaheer

### ii. Defendant's Key Documents:

Plaintiff's personnel file; Chevron policies (including medical clearance policies) regarding working in Nigeria; Policies concerning anti-discrimination, retaliation, and reasonable accommodations; Documents relating to Plaintiff's fitness for duty with respect to the Reliability Engineering Manager position in

Escravos, Nigeria; Documents identifying the qualifications for and duties of the Reliability Engineering Manager position in Escravos, Nigeria; Documents relating to the compensation offered for the Reliability Engineering Manager position in Escravos, Nigeria; Plaintiff's internal job applications for the positions to which he applied; Documents evidencing the qualifications of individuals who were selected over Plaintiff for the positions to which he applied; Documents regarding the duties and compensation of the Reliability Change Operating Assistant and Instrumentation Electrical and Analyzer Reliability Team Lead positions that Plaintiff held after failing medical clearance for the Reliability Engineering Manager position in Escravos, Nigeria; Documents regarding any treatment, consultation, or services that Plaintiff has sought or received from healthcare provider(s) for any injuries or conditions that Plaintiff attributes to Defendant; and Documents evidencing Plaintiff's mitigation efforts, including, without limitation, records of job applications/inquiries, interviews received, job offers or rejections received, income/benefits received, and employment history since resigning from employment with Defendant.

**5. Damages**

**Plaintiff's Statement:**

Pursuant to the California Fair Employment and Housing Act, Plaintiff is entitled to economic damages, compensatory damages, attorneys' fees/costs, and punitive damages.

Plaintiff has yet to retain an expert economist. However, Plaintiff will seek the difference between the compensation package for the Reliability Engineering Manager position which Defendant denied Mr. Snookal, and his subsequent employment compensation package(s), which Plaintiff estimates to be in the six to seven figures. With respect to compensatory damages for his emotional distress, Plaintiff's damages were extensive. Hence, Plaintiff will be seeking damages in the seven figures. As to Plaintiff's attorneys' fees/costs, by the time this matter is tried,

the amount is expected to be in the high six to low seven figures.

**Defendant's Statement:**

Defendant denies any unlawful conduct toward Plaintiff and denies that Plaintiff is entitled to any damages or attorneys' fees and costs. To the extent Plaintiff resigned from Chevron for a lower-paying position, Plaintiff is not entitled to the difference between his new position and the position from which he resigned, as Chevron permitted Plaintiff to continue in his prior role. Defendant anticipates retaining expert economist and labor economist regarding Plaintiff's claimed economic damages, and seeking and independent medical examination of Plaintiff related to his medical condition identified by his health care providers and his claimed emotional distress damages.

**6. Insurance**

**Plaintiff's Statement:** Plaintiff has no applicable insurance coverage.

**Defendant's Statement:** Defendant has no applicable insurance policy.

**7. Motions**

### a. Procedural Motions

Based on the information currently available to Plaintiff, Plaintiff has no intention of moving to add other parties or claims, to file amended pleadings, to transfer venue, and/or to challenge the Court's jurisdiction. However, he reserves the right to do so as new information warrants.

Defendant does not anticipate adding other parties or claims, to file amended pleadings, to transfer venue, and/or to challenge the Court's jurisdiction. However, Defendant reserves the right to do so if through the discovery process, information warrants as such.

### b. Dispositive Motions

**Plaintiff's Statement:** Plaintiff anticipates filing a motion for summary judgment and/or summary adjudication as to some or all of his claims.

**Defendant's Statement:** Defendant anticipates filing a motion for summary

judgment and/or partial summary judgment.

### c. Class Certification Motion

Parties agree that this is not applicable.

### 8. Discovery

#### a. Status of Discovery

Formal discovery has not yet begun.

#### b. Discovery Plan

##### i. Subjects of Discovery

**Plaintiff's Statement:**

Plaintiff will conduct discovery on all claims and defenses, including but not limited to:

- Defendant's personnel policies
- Plaintiff's personnel and performance history
- Plaintiff's job applications
- Defendant's selection of job applicants over Plaintiff
- Defendant's medical clearance policies
- Defendant's policies and practices regarding job positions outside of the United States
- Defendant's response and/or investigative efforts into Plaintiff's discrimination complaints
- Whether Defendant discriminated against Plaintiff because of his actual or perceived disability
- Whether Defendant failed to accommodate Plaintiff's disability
- Whether Defendant refused to select Plaintiff for any or all of the three positions, Operating Assistant, General Team Lead, and/or Maintenance Change Operating Assistant, because of his age
- Whether Defendant wrongfully constructively terminated Plaintiff in violation of public policy

- The cause and extent of Plaintiff's damages

**Defendant's Statement:**

Defendant will conduct discovery on all claims and defenses, including but not limited to:

- The factual basis of Plaintiff's contention that he was a "qualified individual with a disability" under FEHA
- The factual basis of Plaintiff's contention that he did not present a health or safety risk to others or himself under FEHA
- The factual basis of Plaintiff's contention that Defendant unlawfully discriminated against him on the basis of a "disability"
- The factual basis of Plaintiff's contention that Defendant unlawfully discriminated against him on the basis of his age
- The factual basis of Plaintiff's contention that Defendant unlawfully and constructively terminated his employment
- Plaintiff's personnel and performance history
- Plaintiff's job applications
- Plaintiff's medical history and ability to perform the essential functions of the job with or without accommodations
- The nature and extent of any economic and non-economic injuries that Plaintiff attributes to Defendant and the basis for Plaintiff attributing those injuries to Defendant
- The steps that Plaintiff has taken to mitigate any economic or non-economic damages alleged in the Complaint
- The legal and factual basis for Plaintiff's request for punitive damages. Defendant reserves the right to conduct discovery into additional areas as may be appropriate based on the facts and information learned by Defendant over the course of litigation.

### ii. Timing of Initial Disclosures:

Parties stipulate to exchange their respective Federal Rule of Civil Procedure Rule 26(a) initial disclosures pursuant on or before November 30, 2023.

### iii. Discovery Phases, the Order of Discovery, and Any Proposed Limitations on Discovery

All discovery will be conducted pursuant to the Federal Rules of Civil Procedure. The Parties anticipate using all discovery allowed under the Federal Rule including, requests for admission, document demands, interrogatories, and depositions, as well as third party subpoenas. The Parties anticipate completing fact discovery followed by expert disclosures and expert discovery. The Parties do not otherwise anticipate the need for discovery to be conducted in phases nor limited to only certain issues.

### iv. Stipulated Protective Order

Parties will meet and confer to agree upon a stipulated protective order.

### v. Form of Discovery

Discovery requests will be served via electronic mail only, and discovery responses will be produced electronically unless otherwise impracticable to do so.

### vi. Claims of Privilege

Parties will produce a privilege log concurrently with the production of documents and tangible things or shortly thereafter, demarcating the documents or things withheld on the basis of a claimed privilege by date, document type, author or the document and recipients.

### vii. Preservation of Evidence and ESI

Counsel for Parties represent that they have already timely advised their respective clients of their legal obligations to preserve all evidence, including but not limited to phone records, voicemails, electronic mail, photographs, screenshots, text messages, and data stored on a computer or cloud computing system.

### c. Discovery Cut-Off

**Proposed fact discovery cutoff:** July 31, 2024

### d. Expert Discovery

**Proposed initial expert witness disclosure:** August 9, 2024

**Proposed rebuttal expert witness disclosure:** August 23, 2024

**Proposed expert discovery cut-off under Rule 26(a):** October 14, 2024

### e. Settlement Conference/Alternative Dispute Resolution (ADR)

Parties have not engaged in settlement discussions to date. Parties stipulate to participate in private mediation before a mutually agreeable mediator by September 30, 2024.

### f. Trial

#### i. Trial Estimate

Parties agree they expect the trial to last eight (8) court days inclusive of jury selection and opening and closing arguments. Although these numbers are subject to change based upon new information, Plaintiff contemplates calling 12-17 witnesses, and Defendant contemplates calling 5-9 witnesses, in addition to those witnesses called by Plaintiff.

#### ii. Jury or Court Trial

This case will be tried to a jury.

#### iii. Consent to Trial Before a Magistrate Judge

Parties do not consent to have the case heard by a magistrate judge.

#### iv. Lead Trial Counsel.

Lead Trial Counsel for Plaintiff: Dolores Y. Leal

Lead Trial Counsel for Defendant: Tracey A. Kennedy

### g. Independent Expert or Master.

Parties do not foresee any need for the Court to appoint any independent expert or special master.

**h. Other Issues.**

Parties do not currently anticipate any special issues affecting the status or management of the case.

DATED: November 17, 2023        ALLRED, MAROKO & GOLDBERG

By: */s/ Olivia Flechsig*
DOLORES Y. LEAL
OLIVIA FLECHSIG
Attorneys for Plaintiff,
**MARK SNOOKAL**

DATED: November 17, 2023        SHEPHERD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Tracey A. Kennedy*
TRACEY A. KENNEDY
ROBERT E. MUSSIG
LINDA Z. SHEN
Attorneys for Defendant,
**CHEVRON U.S.A. INC.**

## FILER'S ATTESTATION

Pursuant to California Central District of California Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed concur in the document's content and have authorized its filing and the placement of their electronic signatures above.

Dated: November 17, 2023          ALLRED, MAROKO & GOLDBERG


　　　　　　　　　　　　　　　　　　 */s/ Olivia Flechsig*
　　　　　　　　　　　　　　　　　　Olivia Flechsig, Esq.