1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   TRACEY A. KENNEDY, Cal Bar No. 150782
3  ROBERT E. MUSSIG, Cal. Bar No. 240369
   H. SARAH FAN, Cal. Bar No. 328282
4  333 South Hope Street, 43rd Floor
   Los Angeles, CA 90071-1422
5  Telephone:    213.620.1780
   Facsimile:    213.620.1398
6  E-mail:    tkennedy@sheppardmullin.com
              rmussig@sheppardmullin.com
7              sfan@sheppardmullin.com

8  Attorneys for Defendant.
   CHEVRON U.S.A. INC.,
9  a Pennsylvania corporation

10

11              UNITED STATES DISTRICT COURT

12      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13  MARK SNOOKAL, an individual,          Case No. 2:23-cv-6302-HDV-AJR

14              Plaintiff,                **DEFENDANT CHEVRON U.S.A. INC.'S**
                                          **STATEMENT OF UNCONTROVERTED**
15         vs.                            **FACTS AND GENUINE DISPUTES IN**
                                          **SUPPORT OF DEFENDANT'S MOTION FOR**
16  CHEVRON USA, INC., a California Corporation,  **SUMMARY JUDGMENT OR, IN THE**
    and DOES 1 through 10, inclusive,     **ALTERNATIVE, PARTIAL SUMMARY**
17                                        **JUDGMENT AND PLAINTIFF MARK**
                Defendants.               **SNOOKAL'S STATEMENT OF**
18                                        **UNCONTROVERTED FACTS AND GENUINE**
                                          **DISPUTES IN OPPOSITION TO**
19                                        **DEFENDANT'S MOTION FOR SUMMARY**
                                          **JUDGMENT**
20
                                          *[Filed concurrently with Notice of Motion; Joint*
21                                        *Brief re Defendant's Motion for Summary*
                                          *Judgment; Joint Appendix of Declarations and*
22                                        *Written Evidence; and [Proposed] Judgment*
                                          *granting Defendant's Motion for Summary*
23                                        *Judgment]*

24                                        Hearing:  December 5, 2024
                                          Time:     10:00 a.m.
25                                        Place:    Courtroom 5B – 5th Floor
                                          Judge:    Hon. Hernán D. Vera
26
                                          Action Filed: August 3, 2023
27                                        Trial Date: February 4, 2025

28
                                          -1-

**DEFENDANT'S STATEMENT OF**

**UNCONTROVERTED FACTS AND GENUINE DISPUTES**

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 1.  Plaintiff Mark Snookal ("Plaintiff") was hired by Defendant Chevron U.S.A. Inc. ("Chevron U.S.A.") on January 12, 2009 as an Analyzer Engineer.<br><br>Ex. E, Transcript of Plaintiff's Deposition ("Pl. Dep. Tr."), 17:12-15, 19:20-24, 20:21-21:2. | Undisputed | However, Defendant's citation to Plaintiff's deposition transcript is inaccurate. Plaintiff identifies his employer as "Chevron" not "Chevron USA." Plaintiff testified: "A They have a very complicated corporate structure, so I don't actually know –" Pl. Dep. Tr. 31:24-32:2 | This fact is undisputed. |
| 2.  Plaintiff was promoted to the position of Instrumentation, Electrical, and Analyzer Reliability ("IEAR") Team Lead in the Reliability subgroup of the Maintenance department, from November 2016, through November 2019, with pay salary grade 22.<br><br>Pl. Dep. Tr., 30:2-31:14. | Undisputed | | |
| 3.  In or around May 2019, Plaintiff applied for the Reliability Engineering Manager ("REM") position, which was an expatriate position with an estimated potential duration of 3-4 years located in Escravos, Nigeria, with pay salary grade 22.<br><br>Pl. Dep. Tr., 35:9-13. | Undisputed that Plaintiff applied for a position in Escravos, Nigeria in May 2019. | Defendant's citation to Plaintiff's deposition transcript is inaccurate in that the deposition testimony cited does not support the remainder of the facts. | The "Assignment Offer" to Plaintiff indicates the REM position had pay salary grade 22, with an estimated potential duration of 3-4 years.<br><br>Pl. Dep. Tr., 36:23-37:8, Ex. E-1; Pl. Dep. Tr., 38:20-23. |
| 4.  The REM position was | Disputed | Defendant's citation to | The "Assignment Offer" |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| employed by Chevron Nigeria, Limited, who extended the conditional offer of employment to Plaintiff.<br><br>Pl. Dep. Tr., 36:23-37:8, Ex. E-1; Pl. Dep. Tr., 38:20-23. | | Plaintiff's deposition transcript is inaccurate in that Exhibit E-1 refers to the offer as "contingent" rather than "conditional."<br><br>Also, Ex. E-1 to Plaintiff's deposition, the "Assignment Offer" nowhere identifies Chevron Nigeria, Limited.<br><br>Defendant Chevron U.S.A. Inc. would have remained Mr. Snookal's legal employer had he commenced the REM position. Levy Dep. Tr. at 12:15-15:6; 14:8-11; 14:18-23; Powers Dep. Tr. at 19:2 - 22:1. | (Ex. E-1) states that the SBU, or Strategic Business Unit, for the position is Nigeria Mid-Africa.<br><br>Pl. Dep. Tr., 36:23-37:8, Ex. E-1.<br><br>Plaintiff's citation to testimony by Dr. Levy and Mr. Powers misrepresents their testimony and does not create a genuine dispute of fact. Neither testified that Plaintiff would have remained employed by Chevron U.S.A. Inc., nor did they testify about which entity would be Plaintiff's employer had Plaintiff taken the REM position.<br><br>Dr. Levy testified that he is "just not completely aware" which corporate entity or business he worked under over his "several assignments with the company." (Pl. Ex. 12, Dr. Mark Levy Deposition Transcript ["Levy Dep. Tr."], 12:15-13:3.) Mr. Powers testified that he is not aware whether Chevron U.S.A. was his employer during his own expatriate assignments. (Pl. Ex. 14, Andrew Powers Deposition |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | | Transcript ["Powers Dep. Tr."], 19:24-20:6, 21:9-15.) |
| 5.  On or about July 9, 2019, Plaintiff was conditionally awarded the REM position, contingent upon Plaintiff obtaining the appropriate work authorization and successfully passing a Medical Suitability for Expat Assignment ("MSEA").<br><br>Pl. Dep. Tr., 36:19-37:24, Ex. E-1; Pl. Dep. Tr., 45:14-24. | Undisputed | Defendant's citation to Plaintiff's deposition transcript is inaccurate in that Exhibit E-1 "Assignment Offer" refers to the offer as "contingent" rather than "conditional." | This fact is undisputed. Plaintiff's objection to the use of the word "contingent" vs. "conditional" is semantic.<br><br>According to Merriam-Webster, contingent means "dependent or conditioned by something else," and conditional means "subject to, implying, or dependent upon a condition." |
| 6.  As part of the procedure, all expatriate candidates must pass medical clearance with the local medical team at the location of the job site, and the local team makes the final determination as to medical fitness for duty.<br><br>Declaration of Dr. Scott Levy ("Levy Decl.") ¶ 2; *see also* Pl. Dep. Tr., 43:15-45:24. | Partially disputed as to "the local team makes the final determination as to medical fitness for duty." | The local medical team in Nigeria, including Dr. Asekomeh, reported to the local medical director, Dr. Arenyeka, who in turn reported to Chevron's Human Resources.<br><br>Levy Dep. Tr. at 37:4-38:1. | Plaintiff's citation misrepresents testimony by Dr. Levy, and does not create a genuine dispute of fact.  Dr. Levy actually testified that Dr. Arenyeka, the *medical director in Nigeria*, reports to the human resourwces department for the *Nigeria Mid Africa business unit*. (Levy Dep. Tr. 37:4-38:11 [emphasis added].) |
| 7.  The MSEA standard for medical clearance is based on the MSEA Location Clusters Table, which evaluates the relative level of safety in terms of medical care in categories from the highest "A" to the least "D," taking into account the promptness | Undisputed | | |

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| and availability of medical care in those countries.<br><br>Levy Decl. ¶ 3, Ex. A. | | | |
| 8.  Under the MSEA categories, Nigeria is split into categories "C" and "D". Lagos, the former capital of Nigeria, falls under "C," whereas all other locations within Nigeria, including Escravos, falls under "D," reflecting the lowest level of available medical care.<br><br>Levy Decl. ¶ 3, Ex. A. | Undisputed | | |
| 9.  The healthcare system infrastructure in Escravos, Nigeria is not set up to handle complex cases, with limited internal health support, and external health care resources for tertiary level care are very limited are very limited:<br><br>• There are only two clinics in Escravos – the Escravos Joint Venture ("JV") Clinic and the Escravos Gas to Liquids ("EGTL") clinic, with at most three doctors (one in Escravos, two at EGTL).<br>• At these clinics, there are no surgeons, and only minor procedures can be performed, including minor sutures for lacerations, and handling minor illnesses.<br>• The clinics cannot perform blood transfusions and cannot provide other acute | Undisputed | | |

-5-

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| surgical care.<br>• Individuals with any serious medical condition must be evacuated to Lagos or Warri.<br>• For serious cardiac events requiring surgery, the closest cardiothoracic surgeon works for the government hospital in Benin, approximately 100 kilometers away from Escravos, who must travel from Benin or to whom the patient must be transferred for treatment.<br><br>Declaration of Dr. Eshiofe Asekomeh ("Asekomeh Decl.") ¶¶ 4-5. | | | |
| 10. The facility in Escravos, Nigeria is in an isolated swamp located on a river coast only accessible by helicopter or by boat, making regular and emergency access in and out of the facility difficult:<br><br>• Helicopters are not always available for transport.<br>• There are no roads in or out of Escravos.<br>• In the event of bad weather in Escravos or Lagos, medical evacuation could take more than four hours.<br>• Escravos has bad weather up to 50% of the time, as does Lagos during its rainy season of April through October.<br><br>Asekomeh Decl. ¶¶ 6-7. | Partially disputed | The facility in Escravos, Nigeria is not "only accessible by helicopter or boat." Fixed wing planes are also used to transport employees in and out of the location, including to transport them when rotating in or out of their assignment.<br>Snookal Decl. at 21. | Objection: Lacks foundation/personal knowledge (Federal Rules of Evidence ["FRE"] 602).<br><br>Plaintiff has never been to Escravos and lacks personal knowledge about transportation available in and out of Escravos.<br><br>Even if taken as true and admissible, Plaintiff's opposition is immaterial and does not create a genuine dispute of fact. Plaintiff has proffered no evidence indicating that the fixed wing planes are more available or provide better access to Escravos than by helicopter or by boat. |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 11. As part of the MSEA procedure, Plaintiff disclosed on the "Standard Medical Suitability for Expatriate Assignment History & Physical Examination" form (the "MSEA form") that he had a dilated aortic root, otherwise known as a thoracic aortic dilatation or aneurysm, which was diagnosed in or about 2014 to 2015.<br><br>Pl. Dep. Tr., 45:25-46:24, Ex. E-3; Pl. Dep. Tr., 19:5-14, 46:25-48:14; Asekomeh Decl. ¶ 8. | Undisputed | | |
| 12. Plaintiff saw his cardiologist, Dr. Steven Khan, annually for his condition, because a dilated aortic root cannot be treated without open heart surgery, which Plaintiff has not had to date.<br><br>Pl. Dep. Tr., 45:25-46:24, Ex. E-3; Pl. Dep. Tr., 47:21-48:5, 52:15-23. | Disputed | Defendant's citation to Plaintiff's deposition transcript is inaccurate. The MSEA form (Ex-3) and Plaintiff's testimony states "I have a dilated aortic root. I am under the care of a cardiologist and see him once per year for a checkup. I have consulted with him on this assignment, and he sees no issues with it." Pl. Depo Tr., 47:21-48:5, Exh. E-3.<br><br>Plaintiff's dilated aortic root is being treated/managed without surgery, and the treatment recommendations for | Plaintiff does not actually dispute he had a dilated aortic root or that surgery would resolve the condition, which Plaintiff admits he has not had. (Pl. Dep. Tr. 52:15-23.)<br><br>Plaintiff's opposition merely adds additional, immaterial details supporting that he saw Dr. Khan annually for his condition. (DUF 12.) |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | Mr. Snookal are to have annual scans and to continue to take his medications as directed. Surgery is not recommended for Mr. Snookal's because of the size and stability of his thoracic aneurysm over time. Marmureanu Decl. at Exh. 11 at p. 7 ("Aneurysms typically become clinically significant and warrant surgical intervention when they become around 5.5 cm, OR if there is a rapid increase in size) . . . These conditions are not relevant in Mr. Snookal's case."; Asekomeh Dep. Tr. at 104:11-20; see also Snookal Dep. Tr. at 48:6 – 49:23. | |
| 13. Plaintiff's heart condition did not impact his day-to-day ability to work, nor did Plaintiff need any sort of accommodation for his heart condition during his employment.<br><br>Pl. Dep. Tr., 53:24-54:1, 95:10-13. | Partially disputed as to Mr. Snookal's need for an accommodation after Defendant rescinded the REM position. | Mr. Snookal required a reasonable accommodation for his heart condition after Chevron rescinded the REM position from him, and he therefore required reassignment to another position.<br><br>Snookal Decl. at 23; DUF at 28, 34. | Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>Plaintiff admitted that he |

-8-

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | | did not need any sort of accommodation during his employment.  (Pl. Dep. Tr. 95:10-13.)<br><br>Additionally, Plaintiff's declaration does not support the cited fact in his opposition—it only states he had to "find a new position" after the REM offer was rescinded, not that he required an accommodation. |
| 14. Plaintiff's cardiologist could not predict whether Plaintiff's aortic root would remain stable or continue to expand to an operable size, and Plaintiff's aortic root was at times stable and at times expanding since his diagnosis.<br><br>Pl. Dep. Tr., 48:25-50:3, 53:10-12. | Disputed | Defendant's citation to Plaintiff's deposition transcript is inaccurate "There were some years when it grew at a low rate and other years where it had remained stable.  I believe at the time I applied it had been stable for two or three years." Pl. Dep. Tr., 49:2-50:3<br><br>Changes to Mr. Snookal's aortic aneurysm could be monitored with annual echocardiogram and CT scans. ("Annual imaging with CT scans or echocardiograms is sufficient to continue monitoring Mr. Snookal's aorta for any changes. This approach is consistent with standard practice for | Plaintiff's opposition cites to the same testimony cited in DUF 14.  As noted in Plaintiff's opposition, in some years "it grew at a low rate" and in other years "it had remained stable."  (Pl. Dep. Tr., 49:2-50:3.)<br><br>Additionally, Plaintiff does not dispute his own testimony, that Dr. Khan told him "there's no way to accurately predict" whether Plaintiff's condition would stop expanding or whether it would expand to an operable point. (Pl. Dep. Tr. 48:25-49:11.) Plaintiff is only relaying information he was told by Dr. Khan, and is not expressing any expert or specialized opinion. |

-9-

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | stable aortic aneurysms and aortic root dilations of this size." Marmureanu Decl. at Exh. 11 Pg. 8; see also Asekomeh Dep. Tr. at 104:11-20.<br><br>Objection: Mr. Snookal is a lay witness and cannot express opinions based upon scientific, technical, or other specialized knowledge within the scope of FRE 702. | Plaintiff's opposition merely adds additional, immaterial details about how any expansion of the aortic root could be monitored for changes.<br><br><u>Objection to Dr. Marmureanu's Report</u>: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 15. Rupture or dissection of Plaintiff's aortic root was not predictable and that it was not possible to isolate triggers to reduce the risk of an occurrence.<br><br>Asekomeh Decl. ¶¶ 8, 10; see also Pl. Dep. Tr., 89:3-11, 89:20-90:14, Ex. E-7; Pl. Dep. Tr., 110:20-23. | Disputed | Defendant's citation to Plaintiff's deposition transcript is inaccurate in that the deposition testimony does not support the facts cited.<br><br>Objection: Asekomeh's Decl. at 8 lacks foundation, (FRE 602) and is based on inadmissible hearsay (FRE 802): "Drs Adeyeye and Akintunde independently reviewed Mr. Snookal's medical records and opined that if Mr. Snookal were to experience an aortic event in Escravos, it would likely lead to his death, given the limited medical resources in Escravos." | Dr. Asekomeh, who during the relevant time period was an Occupational Health Physician at Chevron Hospital in Warri, Nigeria, is an expert witness who may rely on the opinions of other expert witnesses, i.e., cardiologists Drs. Adeyeye and Akintunde, in forming his opinion. (FRE 703.)<br><br>Plaintiff's opposition does not raise a genuine issue of fact based on his own admission. See DUF 14.<br><br>Plaintiff's citation to Dr. Marmureanu's declaration does not create a genuine issue of fact, because it merely |

SMRH:4857-6079-4098.2

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | Dr. S. Khan opined in his email that, *inter alia*, "It is safe for [Snookal] to work in Nigeria with his heart condition. His condition is under good control and no special treatments are needed." Snookal Decl. at 9 , Exh. 3 (July 29, 2019 letter from Dr. S. Khan Re: Mr. Snookal).<br><br>Changes to Mr. Snookal's aortic aneurysm could be monitored with annual echocardiogram and CT scans. ("Annual imaging with CT scans or echocardiograms is sufficient to continue monitoring Mr. Snookal's aorta for any changes. This approach is consistent with standard practice for stable aortic aneurysms and aortic root dilations of this size." Marmureanu Decl. at Exh. 11 Pg. 8.<br><br>Objection: Mr. Snookal is a lay witness and cannot express opinions based upon scientific, technical, or other specialized knowledge within the scope of FRE 702. | adds additional, immaterial details about how any expansion of the aortic root could be monitored for changes, but does not dispute that a rupture or dissection is unpredictable; or that triggers for a rupture or dissection can be isolated.<br><br>Objection: Plaintiff's citation to statements made by Dr. Khan is inadmissible hearsay when cited for the truth of the matters asserted. (FRE 801.)<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |

-11-

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 16. Any medical evacuation in Escravos would depend on the availability of a helicopter and whether the weather permitted an evacuation, so a rupture or dissection in Escravos would likely result in Plaintiff's death.<br><br>Asekomeh Decl. ¶¶ 6-7, 9. | Disputed | Access to and from Escravos is also available by fixed wing plane such as those used to transport employees in and out of their rotational assignments. Snookal Decl. at 8.<br><br>Asekomeh's declaration does not evidence that rupture or dissection is automatically fatal, even without immediate medical care. Objection: Lacks foundation (FRE 602), assumes facts not in evidence (FRE 103), and Dr. Asekomeh is not a cardiologist and not qualified to offer expert testimony regarding outcomes relating to cardiac events. (FRE 701). | Objection: Lacks foundation/personal knowledge (Federal Rules of Evidence ["FRE"] 602); Hearsay (FRE 802);<br><br>Plaintiff has never been to Escravos and lacks personal knowledge about transportation available in and out of Escravos.<br><br>Even if taken as true and admissible, Plaintiff's opposition is immaterial and does not create a genuine dispute of fact. Plaintiff has proffered no evidence indicating that the fixed wing planes are more available or provide better access to Escravos than by helicopter or by boat.<br><br>Plaintiff's opposition deliberately misinterprets Dr. Asekomeh's statements. Dr. Asekomeh assessed Plaintiff's medical condition and the risk of a rupture or dissection occurring and, taking into account the lack of medical resources and access to reliable medical evacuations in Escravos, opined that a rupture or dissection occurring in Escravos |

-12-

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | | would likely lead to Plaintiff's death. (Asekomeh Decl. ¶¶ 6-7, 9.)<br><br>Dr. Asekomeh, who during the relevant time period was an Occupational Health Physician at Chevron Hospital in Warri, Nigeria, is an expert witness who may rely on the opinions of other expert witnesses, i.e., cardiologists Drs. Adeyeye and Akintunde, in forming his opinion. (FRE 703; *see also* Asekomeh Dep. Tr. 18:21-19:6.) |
| 17. If Plaintiff had experienced a rupture or dissection while he was inspecting and operating equipment, or supervising the operation and inspection of heavy machinery, he could have injured other employees who likewise have limited access to evacuation for medical treatment, leading to serious impairment or even death.<br><br>Asekomeh Decl. ¶ 12. | Disputed that Plaintiff was responsible for operating equipment and further disputes that he could have injured other employees. | Objection: Lacks foundation (FRE 602), assumes facts not in evidence (FRE 103).<br><br>The REM position does not require the operation of equipment, heavy or otherwise. The position is not considered a safety-sensitive position as defined in the Chevron "Medical Examination Program." Snookal Decl. at 19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions Go-308" for the REM | Dr. Asekomeh is an expert witness who may base his opinion on facts he has been made aware of or personally observed. (FRE 703.) Plaintiff cannot dispute that Dr. Asekomeh considered these facts and risks in making the MSEA determination.<br><br>Objection to Plaintiff's Exhibit 7: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |

-13-

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | Position).<br><br>The REM position is an "Office Based Job" which does not require the operation or direct supervision of equipment. Id.<br><br>Job Description: "Job Title: NMA EGTL Reliability Engineering Manager." Asekomeh Dep. Tr. at 81:3, Exh. 15-2. | Plaintiff never assumed the REM position and lacks personal knowledge regarding its requirements. Dr. Asekomeh testified that the REM position "almost always . . .has to step into the field." (Asekomeh Dep. Tr., 74:18-76:19.) Plaintiff also did not and cannot authenticate the document attached to his declaration as Exhibit 7.<br><br>Objection to Plaintiff's Exhibit 15-2: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602). Dr. Asekomeh testified he has never seen the document before and di not rely on it in connection with Plaintiff's MSEA determination. (Pl. Ex. 15 ["Asekomeh Dep. Tr."], 81:3-18.) |
| 18. As part of the MSEA procedure, independent internal medicine provider Dr. Irving Sobel examined Plaintiff in July 2019 and completed the "Standard Medical Suitability for Expatriate Assignment History & Physical Examination" form on Plaintiff's behalf, | Partially disputed that Dr. Sobel completed the MSEA "on Plaintiff's behalf" | Dr. Sobel was not Plaintiff's doctor. Snookal Dep. Tr. at 59:15-20.<br><br>Chevron requested that Plaintiff be examined by Dr. Sobel. Snookal Decl. at 8. | Plaintiff's opposition is immaterial and does not create a genuine dispute of fact. Plaintiff does not dispute that Dr. Sobel completed Plaintiff's MSEA form, or otherwise dispute any other portion of DUF 18. |

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| recommending that Plaintiff's cardiologist provide a letter to clear Plaintiff for duty in Escravos, Nigeria.<br><br>Pl. Dep. Tr., 45:25-46:24, Ex. E-3; Pl. Dep. Tr., 56:21-58:4, 59:15-20. | | | |
| 19. On July 29, 2019, Plaintiff's cardiologist, Dr. Steven Khan, prepared a letter regarding Plaintiff's heart condition stating that it was generally "safe for [Plaintiff] to work in Nigeria with his heart condition," without any reference to Escravos in particular.<br><br>Pl. Dep. Tr., 59:21-60:8, Ex. E-4. | Undisputed | | |
| 20. Based on an assessment of Plaintiff's medical records from his visit with Dr. Sobel, as well as his first-hand experience working in Escravos, Dr. Eshiofe Asekomeh, who was then the Occupational Health Physician at the Chevron Hospital in Warri, Nigeria, concluded on August 15, 2019 that Plaintiff was not fit for duty in Escravos due to the remote location, but stated that Plaintiff could be cleared for assignment in Lagos.<br><br>Asekomeh Decl. ¶¶ 9, 11; *see also* Pl. Dep. Tr., 64:13-65:7, | Disputed | Objection to Asekomeh's Declaration at 9: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802).<br><br>Chevron's form GO-308 "Physical Requirements and Working Conditions" makes no differentiation between Lagos, Abuja, Warri, Escravos or Onne locations.<br>Snookal Decl. at 19, Exh. 7 (Chevron's | Plaintiff's opposition and objections are meritless, and fail to create a genuine dispute of fact.  Dr. Asekomeh is an expert witness who may base his opinion on facts he has been made aware of or personally observed.  (FRE 703.)<br><br>Dr. Asekomeh stated in his declaration that he determined Plaintiff was fit for duty in Lagos, but not in Escravos, as well as the bases for his determination. (Asekomeh Decl. ¶¶ 9, 11.)  Plaintiff cannot |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| Ex. E-5. | | "Physical Requirements and Working Conditions GO-308" for the REM Position). | dispute the fact of Dr. Asekomeh's determination and the reasons Dr. Asekomeh gave for his determination.<br><br>Objection to Plaintiff's Exhibit 7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the document attached to his declaration as Exhibit 7. |
| 21. Dr. Asekomeh has never been an employee of Chevron U.S.A.<br><br>Asekomeh Decl. ¶ 3. | Undisputed. | Dr. Asekomeh is an agent for Chevron. Dr. Asekomeh is contracted by Chevron and only performs work for them. Asekomeh Dep. Tr. at 15:19 - 16:4 and 20:23 - 21:3. | This fact is undisputed. Plaintiff's opposition misrepresents Dr. Asekomeh's testimony, wherein he testified that his employer during the relevant time was Delog Nigeria Limited. (Asekomeh Dep. Tr., 14:16-21.) Dr. Asekomeh never testified at any time that he was contracted by Chevron. |
| 22. In making his assessment of Plaintiff's medical clearance, Dr. Asekomeh consulted with two cardiologists in Nigeria who were familiar with Plaintiff's type of aortic condition – Dr. Victor Adeyeye in Warri and Dr. Ujomoti Akintunde in | Disputed | Objection: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802).<br><br>The two cardiologists with whom Dr. | Dr. Asekomeh, who during the relevant time period was an Occupational Health Physician at Chevron Hospital in Warri, Nigeria, is an expert witness who may rely on the opinions of other |

-16-

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| Lagos – who independently reviewed Plaintiff's medical records and opined that if Plaintiff were to experience an aortic event in Escravos, it would likely lead to his death, given the limited medical resources in Escravos.<br><br>Asekomeh Decl. ¶ 9. | | Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms identified Mr. Snookal as being "low risk" and noting that the size of Mr. Snookal's thoracic aneurysm is smaller than the 4.5 cm "partition value for low-risk situations," noted that they were unable to find "clear field guidelines," and did not make any recommendations for people who, like Mr. Snookal had only an asymptomatic thoracic aneurysm (as opposed to someone with symptoms).<br><br>Asekomeh Dep. Tr. at 115:11-21 and Exh. 15-7 (Dr. Asekomeh Email thread with Nigerian cardiologists). | expert witnesses, i.e., cardiologists Drs. Adeyeye and Akintunde, in forming his opinion. (FRE 703; *see also* Asekomeh Dep. Tr. 18:21-19:6, 83:22-84:8.)<br><br>Plaintiff's opposition merely adds additional details about matters considered by the cardiologists Dr. Asekomeh consulted, and does not create a genuine dispute of fact.<br><br><u>Objection to Plaintiff's Exhibit 15-7</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |
| 23. Dr. Asekomeh also took into account the remote location of the assignment, Escravos, which was a particularly dangerous work location for a person with Plaintiff's condition because Escravos does not have a healthcare system infrastructure to handle complex cases, and that an aortic event in Escravos could lead to Plaintiff's death or the death or injury of others | Disputed | Objection: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802); Not Qualified to Express an Expert Opinion as to Plaintiff's Condition (FRE 701, 702).<br><br>Mr. Snookal's risk of a serious cardiac event was "negligible | Dr. Asekomeh, who during the relevant time period was an Occupational Health Physician at Chevron Hospital in Warri, Nigeria, is an expert witness who may base his opinion on facts he has been made aware of or personally observed. (FRE 703; *see also* Asekomeh Dep. Tr. 18:21-19:6.) Plaintiff |

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| because of the lack of access to adequate medical care and timely medical evacuations in Escravos.<br><br>Asekomeh Decl. ¶¶ 9-12; *see also* Pl. Dep. Tr., 81:1-6. | | compared to the general population," and the REM position was a desk job that would not place himself or others in danger. Marmureanu Decl. at Exh. 11 p. 7; Levy Dep. Tr. at 75: 14-76:2; 93:21-94:9; 94:11-95:3; 95:10-25; Marmureanu Decl. at Exh. 11 at p. 8; Asekomeh Dep. Tr. at 74:24-76:19; Snookal Decl. at 19, Exh. 7. | cannot dispute that Dr. Asekomeh considered his personal knowledge regarding the conditions in Escravos (Asekomeh Decl. ¶¶ 4-7), his review of Plaintiff's medical records (*id.* at ¶ 8), and the facts relating to risks associated with Plaintiff's heart condition (*id.* at ¶¶ 9-12), making the MSEA determination, because this is a matter of Dr. Asekomeh's personal knowledge.<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702).<br><br>Dr. Marmureanu's assessment of the risk is irrelevant to the fact of Dr. Asekomeh's determination on Plaintiff's MSEA and the bases for the determination. Dr. Marmureanu is also relying on in admissible and inaccurate information from Plaintiff regarding the REM position being a "desk job." *See* Reply to |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | | DUF 17.<br><br>Objection to Plaintiff's Exhibit 7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the document attached to his declaration as Exhibit 7. |
| 24. When Plaintiff appealed Dr. Asekomeh's determination, Dr. Scott Levy, Chevron U.S.A.'s Regional Medical Manager then serving the Europe, Eurasia, Middle East & Africa region, communicated several times with Dr. Khan to facilitate discussion with the local medical team regarding Plaintiff's medical clearance to further consider whether Plaintiff could safely assume the expatriate assignment in Escravos.<br><br>Pl. 85:12-86:7, 87:7-88:4; Levy Decl. ¶ 4, Ex. B; Asekomeh Decl. ¶ 12. | Undisputed. | | |
| 25. Dr. Khan indicated by email that, based on a published study in 2002, Plaintiff's aneurysm (i.e., aortic condition) had "the risk of rupture or dissection [that] is 2% per year," but did not address the lack of resources | Disputed | Misstates the cited evidence. Objection: Assumes Facts Not in Evidence FRE 103. Dr. Khan *did* address the lack of resources in Escravos to provide treatment in the event | Plaintiff's opposition fails to contradict DUF 25 and is furthermore irrelevant. Plaintiff does not—indeed, cannot—contradict that Dr. Khan did not consider the lack of resources in Escravos. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| in Escravos to provide treatment in the event of such an occurrence.<br><br>Pl. Dep. Tr., 84:18-85:14, Ex. E-6; Levy Decl., ¶ 4, Ex. B. | | of such an occurrence. Dr. Khan stated in his email, "I understand he is applying for a job in a rural or remote area of Nigeria."<br><br>Also, in the cited evidence, Dr. Khan notes that Mr. Snookal's "risk may be lower than the published number above which would be based on 'average' growth rates" and that Mr. Snookal's "risk of serious complications related to his thoracic aortic aneurysm is low and *likely less than 2% per year*." (italicization added). | <u>Objection to Dr. Khan's statement cited by Plaintiff</u>: Lack of foundation/ speculation (FRE 602); Unreliable expert opinion (FRE 702). |
| 26. Dr. Levy discussed Dr. Khan's email with Dr. Asekomeh, who reviewed the information provided and maintained his determination that Plaintiff could not be cleared for duty in Escravos, even with the low but unpredictable risk of an incident, because a rupture or dissection occurring would most certainly result in death due to Escravos's lack of necessary medical resources and immediate emergency responses.<br><br>Levy Decl. ¶ 5; *see also id.* at ¶ 4, Ex. B; Asekomeh Decl. ¶ | Disputed | Objection: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE103); and Hearsay (FRE802).<br><br>The REM position does not require the operation of equipment, heavy or otherwise.  The position is not considered a safety-sensitive position as defined in the Chevron "Medical Examination Program." Snookal Decl. at 19, Exh. 7 (Chevron's "Physical Requirements and | Drs. Levy and Asekomeh are expert witnesses who may base his opinion on facts he has been made aware of or personally observed. (FRE 703.)  Plaintiff cannot dispute that Dr. Asekomeh considered the information provided by Dr. Khan before maintaining his determination on Plaintiff's MSEA.<br><br><u>Objection to Plaintiff's Exhibit 7</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks |

-20-

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 12. | | Working Conditions Go-308" for the REM Position).<br><br>The REM position is an "Office Based Job" which does not require the operation or direct supervision of equipment. Id.<br><br>Fixed wing planes are also used to transport employees in and out of the location, including to transport them when rotating in or out of their assignment. Snookal Decl. at 21. | foundation/personal knowledge (FRE 602). *See* DUF 17. |
| 27. Although a relocation of the position was considered, the REM position could not have been performed in Lagos, because the essential duties of the position require on-site supervision and interaction with personnel and equipment in Escravos.<br><br>Pl. Dep. Tr., 83:22-84:17; Levy Decl. ¶ 6. | Undisputed. | The local medical team "regularly" medevacks people from Chevron's Escravos, Nigeria refinery due to emergent medical issues, and there are approximately 300 annual medical evacuations annually in the region.<br><br>Asekomeh Dep. Tr. at 39:9-21; see also Levy Dep. Tr. at 24:20-25:9. | Plaintiff's opposition merely adds additional, immaterial details but does not create a genuine dispute of fact, because the number of medical evacuations is irrelevant to the determination that the essential duties of the REM position could not be performed in Lagos. |
| 28. Plaintiff's offer for the REM position was rescinded on or about September 4, 2019, based on the local medical team's decision which deemed him unfit for duty in Escravos, and the fact | Undisputed | | |

-21-

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| that the REM position could not be moved to Lagos where Plaintiff had medical clearance.<br><br>Pl. Dep. Tr., 89:3-11, 89:20-90:14, Ex. E-7; Pl. Dep. Tr., 96:5-11, 110:20-23; Asekomeh Decl. ¶¶ 11-12; Levy Decl. ¶ 6. | | | |
| 29. No Chevron U.S.A. employee had any final determination in whether Plaintiff was ultimately awarded the REM position in Escravos, including Dr. Levy.<br><br>Levy Decl. ¶ 7; *see also* Complaint, ¶ 18. | Disputed | Objection: Misstates the Facts. Assumes Facts not in Evidence (FRE 103); Lacks Foundation (FRE 602)<br><br>Dr. Asekomeh Decl. at 11, "I concluded that Mr. Snookal could not be cleared for assignment in Escravos, which lacked the necessary medical resources and was too remote for reliable medical evacuation."<br><br>Dr. Asekomeh performs work exclusively for Chevron and is Chevron's agent. Asekomeh Dep. Tr. at 15:19 - 16:4 and 20:23 - 21:3.<br><br>The local medical team in Nigeria, including Dr. Asekomeh, reported to the local medical director, Dr. Arenyeka, who in turn | Plaintiff does not dispute this fact except to dispute whether Dr. Asekomeh was an employee of Chevron, which Plaintiff already agreed was an undisputed fact. See DUF 21. |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | reported to Chevron's Human Resources.<br><br>Levy Dep. Tr. at 37:4-38:1. | |
| 30. Aside from the rescinded REM position, Plaintiff does not believe any other decision was based on discrimination because of his heart condition.<br><br>Pl. Dep. Tr., 197:7-25. | Undisputed | Objection: testimony calls for a legal conclusion (FRE 701). | DUF 30 pertains to the acts which Plaintiff believed were discriminatory, and does not require a legal conclusion. |
| 31. The only basis for Plaintiff's belief that the denial of the REM position was discriminatory is Plaintiff's belief that the local medical team in Nigeria did not do their due diligence by considering the study from 2002 provided by Dr. Khan referencing the approximate 2% risk of incident with Plaintiff's aortic condition and not considering other studies.<br><br>Pl. Dep. Tr., 97:3-98:15, 109:8-13. | Disputed | Misstates Plaintiff's testimony. Objection: Assumes Facts Not in Evidence (FRE 103); testimony calls for a legal conclusion (FRE 701).<br>Plaintiff testified: "In my opinion, I don't believe that the people that evaluated me did their due diligence in understanding the condition that I had and the effects that a remote location would have. That's what I meant by that." Pl. Dep. Tr. 97:3-9. | Plaintiff's opposition selectively cites only a portion of Plaintiff's testimony, without taking the entire cite in context. *See* DUF 31. Plaintiff's belief as to whether an action was discriminatory does not require a legal conclusion. |
| 32. Dr. Khan did not reference any study other than the study in 2002.<br><br>Pl. Dep. Tr., 84:18-85:14, Ex. E-6. | Disputed | Misstates the cited facts. Objection, Assumes Facts Not in Evidence (FRE 103).<br><br>The email in question from Dr. Khan to Dr. Levy stated: "Finally, the studies of risk of rupture are fairly old | Plaintiff's opposition does not actually contradict DUF 32. |

-23-

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | (2002) and treatment has improved as has our understanding of aortic aneurysms." Snookal Decl. at Exh. 5. | |
| 33. Although Plaintiff's offer to work in Escravos was rescinded and his former position as the IEAR Team Lead in El Segundo had been backfilled due to the offer, Chevron U.S.A. stated it would ensure that Plaintiff would have a position in El Segundo. Pl. Dep. Tr., 92:21-94:7, Ex. E-8. | Undisputed | | |
| 34. Chevron U.S.A. worked with Plaintiff to find alternative job positions he was qualified for: • On or about September 5, 2019, Plaintiff met with his supervisor at the El Segundo facility, Austin Ruppert, HR Manager Andrew Powers, and HR Business Partner Thalia Tse, when they informed him they would look to identify open positions he may be qualified for and encouraged Plaintiff to do the same. • That day, Plaintiff emailed Mr. Ruppert regarding "three possible positions" for himself that he found after examining Chevron U.S.A.'s posted job openings. | Disputed as to the second bullet point. | Misstates the facts. Assumes Facts Not in Evidence (FRE 103). Exh. E-10 does not say "three possible positions for him." To the contrary, Plaintiff points out that he saw three postings for possible positions, but he would be considered "unfit" for the first and not qualified for the third position. | Plaintiff's opposition is semantic in nature and does not create a genuine dispute of fact as DUF cites text directly from Plaintiff's email. |

-24-

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| • Dr. Levy outlined approximately 40 other geographic regions at which Plaintiff could obtain medical clearance for an expatriate assignment and approximately 26 other geographic regions at which, following a specific assessment, Plaintiff may be able to obtain medical clearance.<br><br>Pl. Dep. Tr., 89:3-11, 89:20-90:14, Ex. E-7; Pl. Dep. Tr., 109:24-110:17, Ex. E-10; Pl. Dep. Tr., 113:18-114:19. | | | |
| 35. Plaintiff applied to the El Segundo Routine Maintenance General Team Lead, El Segundo Operating Assistant, and Maintenance Change Operating Assistant positions based in El Segundo, and did not receive an offer for any of these positions.<br><br>Pl. Dep. Tr., 123:14-19; 126:18-127:11, 131:21-24-132:13, Ex. E-12; Complaint ¶ 29. | Undisputed | | |
| 36. Chevron U.S.A.'s hiring process involves a robust metrics-based screening model with peer and HR oversight:<br><br>• Open job postings have a job owner who makes the hiring decision and is at times also the reporting supervisor for the position. | Disputed | Defendant's supporting evidence does not support the all the facts herein. Objection: Assumes Facts not in Evidence (FRE 103); Lacks Foundation (FRE 602).<br><br>Plaintiff's deposition testimony referenced is | Plaintiff's objections are meritless. Mr. Powers has personal knowledge of the facts attested in his capacity as the Senior Advisor to the Chief Human Resources Officer and formerly as an HR Business Partner for Chevron U.S.A. (Levy Decl. ¶ 1.) |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| • Although the job owner is the ultimate decisionmaker in filling the open role, the candidate selection usually occurred during group meetings which included HR personnel who ensured Chevron U.S.A.'s policies were being followed in the selection process.<br>• Candidates interviewed during the selection process were rated numerically based on selection criteria such as Functional Experience, People Development, Leadership Behaviors, Stakeholder Management (Internal/External), Development Fit, and Operational Excellence.<br><br>Declaration of Andrew Powers ("Powers Decl.") ¶¶ 3-4; *see also* Pl. Dep. Tr., 112:1-113:17, 134:25-135:23. | | not supportive of Defendant's proposition, e.g. at Snookal Dep. Tr.112:4-16, he testified he did not know if the job owner was the hiring supervisor for the opening. At Snookal Dep. Tr 112:20-113:5, he testified that the owner of the position is not always the supervisor. | Plaintiff's citations to his deposition testimony do not contradict DUF 36. |
| 37. At all times relevant to Plaintiff's claims, Chevron U.S.A. maintained compliant policies regarding Equal Employment Opportunity and prohibiting discrimination or retaliation in the workplace.<br><br>Powers Decl. ¶ 5, Ex. D. | Undisputed | | |
| 38. All job owners and personnel involved in the selection process are required to undergo regular training on Chevron U.S.A.'s Equal Employment Opportunity and anti-discrimination and | Disputed. | Thalia Tse of Defendant's Human Resources testified that she did not know of any state law that prohibits workplace discrimination based | Plaintiff's opposition to is irrelevant and does not contradict DUF 38. Ms. Tse's deposition testimony cited by Plaintiff only regards training of HR business |

SMRH:4857-6079-4098.2

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| retaliation policies.<br><br>Powers Decl. ¶ 6; *see* Declaration of Cotey Cswaykus ("Cswaykus Decl.") ¶ 5. | | on actual or perceived disability (Deposition Transcript of Thalia Tse ("Tse Dep. Tr.") at 27:1-10); that she was did not receive training with respect to Chevron's human resources practices (Tse Dep. Tr. at 28:8-23); that she was not familiar with Chevron's policy relating to US employees with disabilities (Tse Dep. Tr. at 75:8-19); and that she did not refer to the disability discrimination policy when she learned of Mr. Snookal's disability discrimination complaint (Tse Dep. Tr. at 76:21-77:3). | partners upon hire. Whether Ms. Tse consulted HR Policy 410 is irrelevant to DUF 38.<br><br>Plaintiff's opposition also miscites the Ms. Tse's testimony.  Ms. Tse testified that was instructed to learn Chevron U.S.A.'s policies and know how to access the policy when needed. (Pl. Ex. 16 ["Tse Dep. Tr."], 28:8-23, 75:8-19.) |
| 39. Chevron U.S.A. created the Reliability Change Operating Assistant role for Plaintiff which, like the El Segundo Operating Assistant role which Plaintiff sought, did not have direct reports and paid the same as Plaintiff's prior IEAR Team Lead position.<br><br>Pl. Dep. Tr., 168:11-16, 170:13-16, 173:6-16. | Partially disputed as to the word "sought." | Mr. Snookal applied for the El Segundo Operating Assistant role after Chevron rescinded the REM position and gave his previous role away to someone else.<br><br>Snookal Decl. at 24; Snookal Dep. Tr., 110:25 – 111:10; 113:18 – 116:18. | This fact is undisputed. Plaintiff's objection to the use of the word "sought."<br><br>According to Merriam-Webster, sought means "to ask for" or "to try to acquire or gain," and "apply" means "to make an appeal or request especially in the form of a written application." |
| 40. On or about August 4, 2021, Plaintiff resigned from his employment with | Disputed | Objection: Assumes Facts Not in Evidence (FRE 103). | Plaintiff's objections are meritless, as Plaintiff admitted these facts |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| Chevron U.S.A. effective August 20, 2021, for the stated reason that he was leaving for an opportunity with significantly increased responsibility.<br><br>Pl. Dep. Tr., 223:2-10, 224:7-19, Ex. E-17; Pl. Dep. Tr., 230:12-231:1, Ex. E-18; Pl. Dep. Tr., 231:2-16. | | Plaintiff sent Chevron a letter dated August 4, 2021 notifying Chevron that he was resigning his position effective August 20, 2021. Snookal Decl. at 28-30, Exh. 9-10. Nowhere in that letter does he state he was leaving for an opportunity with significantly increased responsibility. | during his deposition. Plaintiff's opposition does not actually dispute DUF 40, and ignores Ex. E-18 and Plaintiff's admission during his deposition that "It is a correct statement." (Pl. Dep. Tr. 231: 13-16.) |
| 41. The reason for Plaintiff's resignation was that he felt that his career was not progressing as he would like at Chevron U.S.A.<br><br>Pl. Dep. Tr., 232:9-233:14, Ex. E-19; Pl. Dep. Tr., 235:5-236:10. | Disputed | Plaintiff resigned his employment because of Chevron's arbitrary, systemic discrimination against him, resulting in debilitating depression and financial stress. Snookal Decl. at 28-30, Exh. 9-10. | Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>Plaintiff testified that the contents of Ex. E-19 were accurate. (Pl. Dep. Tr. 232:9-233:14; *see generally* DUF 41.) |
| 42. Plaintiff's supervisors, Austin Ruppert and Greg Curtin, were very supportive of him during his employment at Chevron | Undisputed | | |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS
AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND
PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| U.S.A.<br><br>Pl. Dep. Tr., 236:11-14. | | | |
| 43. No one at Chevron U.S.A. asked Plaintiff to leave, and Mr. Curtin told Plaintiff that he preferred Plaintiff to stay.<br><br>Pl. Dep. Tr., 242:17-25. | Undisputed | | |

## PLAINTIFF'S STATEMENT OF

## UNCONTROVERTED FACTS AND GENUINE DISPUTES

| Statement of Fact | Status | Opposition |
|---|---|---|
| 44. Defendant Chevron U.S.A. ("Chevron") promoted Plaintiff Mark Snookal ("Mr. Snookal") several times, including in 2011, 2013, 2016.<br><br>Declaration of Plaintiff Mark Snookal ("Snookal Decl.") at 4. | Undisputed<br><br>Immaterial | |
| 45. Mr. Snookal would have received an additional 55% of his base salary as a location premium for the Reliability Engineering Manager ("REM") position in Escravos, Nigeria.<br><br>Snookal Decl. at 5; see also the Transcript of the Deposition of Andrew Powers ("Powers Dep. Tr.") 31:5-11; 32:23 – 33:20 | Disputed as not in evidence<br><br>Immaterial | Objection: Lacks foundation/personal knowledge (Federal Rules of Evidence ["FRE"] 602); Hearsay (FRE 802); Best Evidence Rule (FRE 1002).<br><br>The document referenced by Mr. Powers in giving his testimony was not made a part of this record and is hearsay. No foundation was established that the document reviewed by Mr. Powers applied to Plaintiff and the REM position.<br><br>Plaintiff would only be eligible for a location premium if he worked in Escravos. (Powers Dep. Tr. 33:8-20.) Plaintiff would only be able to take the conditional or contingent REM position in Escravos if he successfully cleared |

| Statement of Fact | Status | Opposition |
|---|---|---|
| | | a MSEA. *See* DUF 5. |
| 46. The REM position was a rotational assignment with a schedule of 28 days working in Escravos, Nigeria, and 28 days off to return home.<br><br>Snookal Decl. at 5. | Disputed as not in evidence<br><br>Immaterial | Objection: Lacks foundation/personal knowledge (Federal Rules of Evidence ["FRE"] 602); Hearsay (FRE 802). |
| 47. Chevron advised Mr. Snookal that he was to have a medical examination by Dr. Irving Sobel, a doctor they had selected to complete the medical evaluation form, titled, "Medical Suitability for Expatriate Assignment History & Physical Examination" (hereinafter "MSEA").<br><br>Snookal Decl. at 8. | Undisputed.<br><br>*See* DUF 18. | |
| 48. In completing the MSEA paperwork, Dr. Sobel documented that Mr. Snookal was "fit for duty with restrictions."<br><br>Snookal Decl. at 8; Transcript of Deposition of Dr. Scott Levy ("Levy Dep. Tr.") at 83:4-13. | Undisputed.<br><br>*See* DUF 18. | |
| 49. The only two duty restrictions which Dr. Sobel indicated were (1) no heavy lifting over 50 pounds and (2) to get a clearance letter from Dr. S. Khan, Mr. Snookal's treating cardiologist.<br><br>Snookal Decl. at 8; Levy Dep. Tr. at 83:11-19, Exh. 12-E. | Undisputed.<br><br>*See* DUF 18. | |
| 50. Given the rotational schedule of the REM position, | Disputed as not in evidence | Objection: Lacks foundation/personal knowledge; speculation (FRE 602). |

-30-

| Statement of Fact | Status | Opposition |
|---|---|---|
| Mr. Snookal could and would have received the recommended treatment for his dilated aortic root at home in California without interruption.<br><br>Snookal Decl. at 12. | Immaterial | Whether Plaintiff could have continued his annual visits with his cardiologist in California if he had taken on the REM position is speculative and irrelevant. Rupture or dissection due to Plaintiff's condition was not predictable. *See* DUF 14-15. |
| 51. The REM position did not have any requirement to lift more than 50 pounds.<br><br>Snookal Decl. at 8; See also Levy Depo Tr. at 75:20-76:2. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not supported by evidence. Plaintiff did not make any attestation regarding a lifting requirement for the REM position. Dr. Levy did not testify about any 50-pound lifting requirement.<br><br>A 50-pound lifting restriction was not a factor in Plaintiff's MSEA determination of unfit for duty in Escravos. *See* DUF 20, 22-23, 26. |
| 52. Mr. Snookal provided a clearance letter to Chevron from his treating cardiologist, Dr. S. Khan, which indicated that Mr. Snookal was "under [his] care for his heart condition. It is safe for [Mr. Snookal] to work in Nigeria with his heart condition. His condition is under good control and no special treatments are needed."<br><br>Snookal Decl. at 9 and Exh. 3; Levy Dep. Tr. at 84:7-19. | Undisputed as to the fact of Dr. Khan providing a letter on Plaintiff's behalf; Disputed to the extent Dr. Khan's hearsay statement is offered to prove the truth of the matter asserted.<br><br>Immaterial | <u>Objection</u>: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702).<br><br>The local medical team in Nigeria makes the MSEA determination, not Dr. Khan. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Dr. Khan lacks knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 25, 32. |
| 53. On August 23, 2019, Dr. Khan wrote an email to Dr. Scott Levy, Chevron's then Regional Medical Manager for the Europe, Eurasia, Mid-East, and Africa region, explaining that Mr. Snookal's thoracic aneurysm is "relatively small and considered low risk" and that given a number of factors applicable to Mr. Snookal, including that his "aneurysm has not shown any growth for | Undisputed as to the fact of Dr. Khan's email; Disputed to the extent Dr. Khan's hearsay statement is offered to prove the truth of the matter asserted. | <u>Objection</u>: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702).<br><br>The local medical team in Nigeria makes the MSEA determination, not Dr. Khan. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Dr. Khan lacks knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 25. |

SMRH:4857-6079-4098.2

| | Statement of Fact | Status | Opposition |
|---|---|---|---|
| | 3 years, his risk may be lower than the published 2% number above" especially given that "the studies of risk of rupture are fairly old (2002) and treatment has improved as has our understanding of aortic aneurysms." Snookal Decl. at 16 and Exh. 5; Levy Dep. Tr. at 62:5-63:21 and Exh. 12-C. | | |
| | 54. In his July 29, 2019 letter deeming Mr. Snookal fit to work in Nigeria with his heart condition, Dr. Khan concluded by writing 'If you have any questions, please feel free to contact me at the number below." and providing his contact information. Snookal Decl. at 9, Exh. 3 (July 29, 2019 letter from Dr. Khan); Levy Dep. Tr. at 84:2-19. | Undisputed Immaterial | |
| | 55. In his August 23, 2019, email to Dr. Levy, Dr. Khan concluded by offering "[i]f you have any further questions, please feel free to email or call me" and providing his contact information. Snookal Decl. at 16 and Exh. 5; Levy Dep. Tr. at 62:5-63:21 and Exh. 12-C. | Undisputed Immaterial | |
| | 56. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm was actually less than 1% per year. | Disputed Immaterial | Objection: Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402). Dr. Asekomeh reviewed Dr. Khan's conjecture |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Marmureanu Decl. at Exh. 11 p. 6; 7. | | that Plaintiff's risk of a serious incident was less than 1% and maintained his determination that Plaintiff was not fit for duty in Escravos in light of all circumstances. *See* DUF 22-23, 25-26. Dr. Marmureanu's report does not consider Plaintiff's risk in light of the conditions and medical resources in Escravos. |
| 57. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm while in Escravos was less than 0.5% per year.<br><br>Id. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence. <u>Objection</u>: Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402).<br><br>Dr. Marmureanu's report conjectures Plaintiff's risk of a serious cardiac event was 1%, not 0.5%. *See* PUF 56. |
| 58. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm is "negligible compared to the general population, especially given the absence of rapid growth in Mr. Snookal's case."<br><br>Marmureanu Decl. at Exh. 11 p. 7. | Disputed<br><br>Immaterial | <u>Objection</u>: Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402).<br><br>Dr. Asekomeh reviewed Dr. Khan's conjecture that Plaintiff's risk of a serious incident was less than 1% and maintained his determination that Plaintiff was not fit for duty in Escravos in light of all circumstances. *See* DUF 22-23, 25-26. Dr. Marmureanu's report does not consider Plaintiff's risk in light of the conditions and medical resources in Escravos. |
| 59. Mr. Snookal's thoracic aneurysm would not have impacted his day-to-day ability to work or complete any of his required job duties.<br><br>Levy Dep. Tr. at 75:14-76:2; Asekomeh Dep. Tr. at 74:24-76:19. | Disputed | Misstates the evidence. Dr. Asekomeh testified that the REM would be required to visit the field. *See* DUF 17. |
| 60. The REM position is a not physically strenuous job, and Chevron categorized it as an "office based job."<br><br>Levy Dep. Tr. at 75: 14-76:2; 93:21-94:9; 94:11-95:3; 95:10-25; Marmureanu Decl. at Exh. 11 at p. 8; Asekomeh | Disputed<br><br>Immaterial | Misstates the evidence. <u>Objection</u>: Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602).<br><br>Dr. Asekomeh testified that the REM would be required to visit the field. *See* DUF 17.<br><br><u>Objection to Plaintiff's Exhibit 7</u>: Failure to authenticate evidence (FRE 901); Hearsay |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Dep. Tr. at 74:24-76:19; . Snookal Decl. at 19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions GO-308" for the REM Position). | | (FRE 802); Lacks foundation/personal knowledge (FRE 602). Plaintiff did not and cannot authenticate the document attached to his declaration as Exhibit 7. |
| 61. The REM position did not require the operation of equipment, heavy or otherwise.  The position is not considered a safety-sensitive position, as defined in the Chevron "Medical Examination Program." Snookal Decl. at 19, Exh. 7 (Physical Requirements and Working Conditions GO-308). Job Description: "Job Title: NMA EGTL Reliability Engineering Manager." Declaration of Dr. Eshiofe Asekomeh ("Asekomeh Dep. Tr.") at 81:3, Exh. 15-2. | Disputed as not in evidence Immaterial | Objection to Plaintiff's Exhibit 7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602). Plaintiff did not and cannot authenticate the document attached to his declaration as Exhibit 7. Objection to Plaintiff's Exhibit 15-2: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602). Dr. Asekomeh testified he has never seen the document before and di not rely on it in connection with Plaintiff's MSEA determination.  (Pl. Ex. 15 ["Asekomeh Dep. Tr."], 81:3-18.) |
| 62. Dr. Asekomeh could not "cite a specific example" of how Mr. Snookal's thoracic aneurysm posed a threat to others. Asekomeh Dep. Tr. At 122:19 – 124:12. | Disputed Immaterial | Misstates the evidence.   Objection: Irrelevant (FRE 402). The matters alleged in this case occurred in 2019, more than 5 years ago.  Dr. Asekomeh could not recall a specific example at the time of his deposition on October 10, 2024, but at the time he was completing the MSEA determination, considered whether an aortic event could cause injury to other employees. See DUF 17. |
| 63. Dr. Asekomeh did not review the job duties of the REM position before making his decision. Asekomeh Dep. Tr. at 69:9-12; 81:3-18 and Exh. 15-2 (Job Description for NMA EGTL Reliability Engineering | Disputed as to Ex 15-2, which is not in evidence Immaterial | Objection: Irrelevant (FRE 402). Dr. Asekomeh was aware that Plaintiff would be required to go into the field in the REM position.  See DUF 17.  Dr. Asekomeh made the MSEA determination based on the facts available to him. See DUF 22-23, 25-26. Objection to Plaintiff's Exhibit 15-2: Failure to authenticate evidence (FRE 901); Lacks |

-34-

| Statement of Fact | Status | Opposition |
|---|---|---|
| Manager); Asekomeh Dep. Tr. at 71:9-25. | | foundation/personal knowledge (FRE 602). Dr. Asekomeh testified he has never seen the document before and di not rely on it in connection with Plaintiff's MSEA determination. (Pl. Ex. 15 ["Asekomeh Dep. Tr."], 81:3-18.) |
| 64. Dr. Levy did not consider whether Mr. Snookal's thoracic aneurysm would pose a "direct threat to others" at the time of the decision to rescind the REM position.<br><br>Levy Dep. Tr. at 77:15-78:9. | Undisputed<br><br>Immaterial | Dr. Levy did not make any final determination regarding Plaintiff's MSEA. *See* DUF 6, 29. |
| 65. The "bulk" of Chevron's decision to rescind the REM position from Mr. Snookal was "taken on the fact that if he had a medical event, [they] would not be able to support him in Escravos, irrespective of his job role."<br><br>Asekomeh Dep. Tr. at 71:9-25. | Undisputed | |
| 66. Chevron did not conduct a functional capacity evaluation for Mr. Snookal because "almost-always office jobs" that are not "physically-demanding" do not require one.<br><br>Asekomeh Dep. Tr. at 74:18-76:19. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence. Dr. Asekomeh testified that office-based jobs don't require a functional capacity evaluation, but "almost-always" office jobs [sic] and management will visit the field. (Asekomeh Dep. Tr. 76:11-19.) |
| 67. Nothing about the job duties for the REM position itself, or its location, would exacerbate Mr. Snookal's thoracic aneurysm or increase the risk of a serious cardiac event occurring.<br><br>Levy Dep. Tr. at 75: 14-76:2; | Undisputed<br><br>*See* DUF 14-15. | |

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Statement of Fact | Status | Opposition |
|---|---|---|
| 93:21-94:9; 94:11-95:3; 95:10-25; Marmureanu Decl. at Exh. 11 at p. 8; Asekomeh Dep. Tr. at 95:6-24. | | |
| 68. The local medical team "regularly" performs emergency medical evacuations (i.e. medevacks) people from Chevron's Escravos, Nigeria refinery due to emergent medical issues, and there are approximately 300 annual medical evacuations annually in the region.<br><br>Asekomeh Dep. Tr. at 39:9-21; see also Levy Dep. Tr. at 24:20-25:9. | Undisputed<br><br>Immaterial | DUF 68 merely adds additional, immaterial details but does not create a genuine dispute of fact, because the number of medical evacuations is irrelevant to the determination that the essential duties of the REM position could not be performed in Lagos.  *See* DUF 27. |
| 69. As of October 10, 2024, Dr. Asekomeh was aware of two emergency medical evacuations during the previous week alone.<br><br>Asekomeh Dep. Tr. at 39:9-40:5. | Undisputed<br><br>Immaterial | *See* PUF 68; DUF 27. |
| 70. Chevron did not consider Mr. Snookal's past work history before making their decision to rescind the REM position from Mr. Snookal.<br><br>Asekomeh Dep. Tr. at 67:25-69:21; 66:18-68:12. | Disputed as to the reference to Chevron U.S.A.<br><br>Immaterial | <u>Objection</u>: Irrelevant (FRE 402).<br><br>Plaintiff's past work history is not relevant because a serious cardiac event is not predictable. *See* DUF 14-15.<br><br>Chevron U.S.A. did not make Plaintiff's MSEA determination. *See* DUF 6, 29. |
| 71. Had they considered Mr. Snookal's past work history with Chevron, they would have found that Mr. Snookal never suffered any serious cardiac event while at work or otherwise. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence.  Whether Plaintiff had ever suffered any serious cardiac events is not in evidence.  Dr. Asekomeh did not attest to this.<br><br>Plaintiff's past work history is not relevant because a serious cardiac event is not predictable. *See* DUF 14-15. |

-36-

| Statement of Fact | Status | Opposition |
|---|---|---|
| Id. | | |
| 72. Dr. Asekomeh did not speak with or otherwise contact Mr. Snookal's treating cardiologist, Dr. Khan, before making his decision to rescind the REM position.<br><br>Asekomeh Dep. Tr. at 66:10-17. | Undisputed<br><br>Immaterial | <u>Objection</u>: Irrelevant (FRE 402).<br><br>The local medical team in Nigeria, i.e., Dr. Asekomeh, makes the MSEA determination, not Dr. Khan.  *See* DUF 6.<br><br>Whether Dr. Asekomeh spoke with Dr. Khan before making the MSEA determination is irrelevant.  Dr. Asekomeh made a reasonable judgment based on the facts available to him, including Dr. Khan's August 23, 2019 email. *See* DUF 22-23, 25-26.  Plaintiff proffered no evidence as to what, if anything, Dr. Khan could have added to the MSEA determination. Dr. Khan has no personal knowledge of the conditions or resources in Escravos. |
| 73. Dr. Asekomeh did not speak with Mr. Snookal in conjunction with his MSEA evaluation.<br><br>Asekomeh Dep. Tr. at 66:18-25. | Undisputed<br><br>Immaterial | <u>Objection</u>: Irrelevant (FRE 402).<br><br>The local medical team in Nigeria, i.e., Dr. Asekomeh, makes the MSEA determination, not Plaintiff.  *See* DUF 6.<br><br>Whether Dr. Asekomeh spoke with Plaintiff before making the MSEA determination is irrelevant.  Dr. Asekomeh made a reasonable judgment based on the facts available to him. *See* DUF 22-23, 25-26.  Plaintiff proffered no evidence as to what, if anything, he could have added to the MSEA determination.  Plaintiff has no personal knowledge of the conditions or resources in Escravos. |
| 74. Dr. Asekomeh did not speak with Dr. Irving Sobel, the physician to deemed Mr. Snookal "fit for duty with restrictions" before making his decision to rescind the REM position.<br><br>Asekomeh Dep. Tr. 65:14-66:9. | Undisputed<br><br>Immaterial | <u>Objection</u>: Irrelevant (FRE 402).<br><br>The local medical team in Nigeria, i.e., Dr. Asekomeh, makes the MSEA determination, not Dr. Sobel.  *See* DUF 6.<br><br>Whether Dr. Asekomeh spoke with Dr. Sobel before making the MSEA determination is irrelevant.  Dr. Asekomeh made a reasonable judgment based on the facts available to him. *See* DUF 22-23, 25-26.  Plaintiff proffered no evidence as to what, if anything, Dr. Sobel could have added to the MSEA determination. Dr. Sobel has no personal knowledge of the conditions or resources in Escravos. |
| 75. After reporting Chevron's decision to rescind the REM position to the Chevron | Disputed as to the reference to Chevron U.S.A. | Misstates the evidence.  <u>Objection</u>: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801). |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Statement of Fact | Status | Opposition |
|---|---|---|
| Ombuds, Chevron passed Mr. Snookal along to discuss with Dr. Levy, Chevron's Regional Medical Manager for Europe, Eurasia, Middle East & Africa.<br><br>Snookal Decl. at 13. | Immaterial | Chevron U.S.A. did not make Plaintiff's MSEA determination. *See* DUF 6, 29. |
| 76. Dr. Levy spoke with Mr. Snookal and advised that the REM position jobsite was in a remote area in Nigeria with limited medical facilities and emergency care only available via charter aircraft to Lagos, Nigeria.<br><br>Snookal Decl. at 14; Levy Dep. Tr. at 38:24 – 39:14. | Disputed as not in evidence | <u>Objection</u>: Irrelevant (FRE 402); Hearsay (FRE 801). |
| 77. Dr. Levy requested permission to speak with Dr. Khan about Mr. Snookal's case, and Mr. Snookal granted same.<br><br>Snookal Decl. at 15; Levy Dep. Tr. at 38:24 – 39:18. | Undisputed | |
| 78. Dr. Levy left one voicemail for Dr. Khan but never spoke to him in real time about Mr. Snookal.<br><br>Levy Dep. Tr. at 39:16 – 40:5. | Undisputed<br><br>Immaterial | *See* PUF 72. |
| 79. On August 23, 2019, Dr. Khan sent Dr. Levy an email, with a cc to Mr. Snookal, reiterating his opinion that Mr. Snookal was medically fit for duty despite the remote location of the job.<br><br>Snookal Decl. at 16, Exh. 5; Levy Dep. Tr. at 62:5-18, Exh. | Undisputed as to the fact of the email; Disputed to the extent Dr. Khan's statement is offered to prove the truth of the matter asserted.<br><br>Immaterial | <u>Objection</u>: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702).<br><br>The local medical team in Nigeria makes the MSEA determination, not Dr. Khan. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Dr. Khan lacks knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 25, 32. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| 12-C. | | |
| 80. On September 4, 2019, Mr. Snookal emailed Chevron USA Human Resources Manager, Andrew Powers, to report the disability discrimination, writing, *inter alia*: "I believe this decision was made based on a lack of understanding and stereotypical assumptions about my medical condition and is therefore, discriminatory in nature" and "aside from my complaint of medical discrimination where does their decision leave me?"<br><br>Snookal Decl. at 18 and Exh. 6; Powers Dep. Tr. at 46:15-48:2 and Exh. 14-3. | Undisputed as to the fact of the email; Disputed to the extent Plaintiff's hearsay statement is offered to prove the truth of the matter asserted.<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |
| 81. Minutes after receiving Mr. Snookal's disability complaint on September 4, 2019, before further investigation, Mr. Powers wrote to his colleagues Troy Tortorich, Austin Ruppert, and Thalia Tse, inter alia: "I am sure there is a very good reason why this [job] was rescinded"<br><br>Powers Dep. Tr. at 49:13-52:11 and Exh. 14-3 at CUSA000539. | Disputed as it misstates the evidence<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |
| 82. Mr. Powers also forwarded Mr. Snookal's disability discrimination complaint to the medical team in Nigeria, asking Dr. Ayanna Jones for "context" "and suggested response" to Mr. Snookal's | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |

-39-

| Statement of Fact | Status | Opposition |
|---|---|---|
| disability discrimination complaint.<br><br>Powers Dep. Tr. at 136:5-25, Exh. 14-12 (Email from Andrew Powers to medical team in Nigeria at CUSA000650). | | |
| 83. Dr. Ayanna Jones wrote back to Mr. Powers' email referring him to speak to Dr. Levy who "would be able to provide [] context on this case and appropriate response."<br><br>Powers Dep. Tr. at 136:5 – 137:16, Exh. 14-12 (Email from Andrew Powers to medical team in Nigeria at CUSA000650). | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is<br><br>irrelevant to the claims at issue. |
| 84. On September 6, 2019, Mr. Powers sent an email reply to Mr. Snookal which read: "I've reached out to the Medical Department and while I'm not privy to any medical information, I understand a thorough review was conducted and alternatives were explored. We would respectfully disagree that the determination was based on stereotyping or impermissible discrimination."<br><br>Powers depo at 95:21-98:3 and Exh. 14-5 (Andrew Powers Email to Mark Snookal Re: Medical Team Findings at CUSA000542); Snookal Decl. at 18, Exh. 6 (CUSA000542-543). | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |
| 85. Mr. Snookal requested of | Undisputed | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence |

-40-

SMRH:4857-6079-4098.2
DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS
AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND
PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Statement of Fact | Status | Opposition |
|---|---|---|
| Mr. Powers an explanation for why the REM position had been rescinded.<br><br>Levy Dep. Tr. at 78:10-79:6, Exh. 12-D; (September 16, 2019 Email from Dr. Levy to Mr. Snookal); Snookal Decl. at 20. | Immaterial | (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |
| 86. On September 16, 2019, Dr. Levy emailed Mr. Snookal explaining that he "became involved on [Mr. Snookal's] case when [he] had requested a second opinion on the initial denial" and, *inter alia*, wrote that Chevron had a right to rescind the offer based on a "direct threat" to Mr. Snookal's "health and safety" because "if the condition were to occur, the outcome would be catastrophic and would require an immediate emergency response which is not available and would most certainly result in death in Escravos."<br><br>Levy Dep. Tr. at 78:10-79:6, Exh. 12-D; (September 16, 2019 Email from Dr. Levy to Mr. Snookal). | Undisputed<br><br>Immaterial | <u>Objection</u>: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. Dr. Levy's role was to act as an intermediary between Dr. Khan and the Nigerian local medical team to help evaluate the risks. (Levy Dep. Tr. 34:18-35:9, 58:5-11.) |
| 87. On or about September 5, 2019, Mr. Snookal searched for and identified four different vacant positions for which he was qualified and submitted applications for same: (1) El Segundo Routine Maintenance General Team Lead, (2) El Segundo Operating Assistant (which | Disputed as to the Maintenance Change Operating Assistant Position<br><br>Immaterial | Chevron U.S.A. ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 33. Plaintiff did not identify the Maintenance Change Operating Assistant position. *See* Ex. E-10. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| had two separate openings) and (3) Maintenance Change Operating Assistant.<br><br>Snookal Decl. at 24; Snookal Dep. Tr., 110:25 – 111:10; 113:18 – 116:18. | | |
| 88. Chevron made Mr. Snookal apply with the rest of the general applicant pool without preference for these four vacant positions.<br><br>Snookal Decl. at 24; Snookal Depo Tr. at 123:14-19. | Disputed<br><br>Immaterial | Chevron U.S.A. ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 33. |
| 89. Mr. Snookal was qualified for the four vacant positions to which he applied.<br><br>Snookal Depo Tr. at 110:25 – 111:10; 118:5 – 119:10; Pg. 130:18-25; 136:6-23; 167:7-168:8. | Disputed<br><br>Immaterial | The positions Plaintiff applied for required a college degree, which Plaintiff does not have. Pl. Dep. Tr., 15:3-7, 118:14-119:15,  131:24-134:11, Ex. E-12; 136:19-137:6, 138:23-139:4.<br><br>Chevron U.S.A. ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 33. |
| 90. The four vacant positions to which Mr. Snookal applied were comparable to, or worse than, the REM position.<br><br>Snookal Dep. Tr. at 122:7-15. | Disputed as to whether the positions were "worse" than the REM position<br><br>Immaterial | Misstates the evidence / not in evidence. <u>Objection</u>: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Chevron U.S.A. ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 33. |
| 91. Chevron did not select Mr. Snookal for any of the four vacant positions.<br><br>Snookal Decl. at 24; Snookal Depo Tr. at 123:24 – 125:1; Pg. 131:17-20; 134:17-19; 136:6-23. | Undisputed<br><br>Immaterial | *See* DUF 35. |
| 92. Ultimately, Chevron created a role called Reliability Change Operating Assistant ("OA") for Mr. Snookal. | Undisputed<br><br>*See* DUF 39. | |

-42-

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Statement of Fact | Status | Opposition |
|---|---|---|
| Snookal Dep. Tr at 168:11-16; Snookal Decl. at 24. | | |
| 93. The Reliability Change OA role was a demotion from Mr. Snookal's previous IEAR role and the REM job because it was not a supervisory nor managerial role with no direct reports, and it was a temporary position with no pathways to promotion.<br><br>Snookal Decl. at 24; Snookal Decl. Tr. at 168:11 – 169:10; 174:5-175:11; 28:8-22. | Disputed<br><br>Immaterial | Misstates the evidence / not in evidence. <u>Objection</u>: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Chevron U.S.A. ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 33.<br><br>The Reliability Change OA role, like th e El Segundo Operating Assistant Role that Plaintiff sought, did not have direct reports and paid the same as Plaintiff's prior IEAR Team Lead position. (Pl. Dep. Tr., 168:11-16, 170:13-16, 173:6-16.) |
| 94. After Chevron rescinded the REM position, Mr. Snookal continued to search for other rotational expatriate assignments, and other positions generally, for which he was eligible, and subscribed to receive regular email updates regarding new job postings, and asked colleagues about available opportunities.<br><br>Snookal Decl. at 26. | Undisputed<br><br>Immaterial | |
| 95. Despite his searches, Mr. Snookal was not able to find any other rotational expatriate assignments for which he was eligible and could apply.<br><br>Snookal Decl. at 26; Snookal Dep. Tr. at 90:15-18. | Undisputed<br><br>Immaterial | |
| 96. The treatment recommendations for Mr. Snookal's thoracic aneurysm were to get an annual CT and echocardiogram and to take | Disputed as to the characterization of the monitoring as "treatment"<br><br>Immaterial | Misstates the evidence / not in evidence. <u>Objections</u>: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Dr. Khan stated that Plaintiff's condition can |

| Statement of Fact | Status | Opposition |
|---|---|---|
| his recommended blood pressure medications.<br><br>Snookal Decl. at 9 and Exh. 3; Marmureanu Decl. at Exh. 11 p. 8; Asekomeh Dep. Tr. at 104:11-20. | | be "tracked," not treated. *See* Ex. E-6; *see also* DUF 12. Plaintiff does not dispute his own testimony, that Dr. Khan told him "there's no way to accurately predict" whether Plaintiff's condition would stop expanding or whether it would expand to an operable point. (Pl. Dep. Tr. 48:25-49:11.) *See* DUF 14-15.<br><br>Objection: Plaintiff's citation to statements made by Dr. Khan is inadmissible hearsay when cited for the truth of the matters asserted. (FRE 801.)<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 97. Mr. Snookal is the breadwinner for his family, including his son with disabilities.<br><br>Snookal Decl. at 28. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |
| 98. After Chevron rescinded the REM position, Mr. Snookal had to pull his son out of private school because he could no longer afford it.<br><br>Snookal Dep. Tr. at 246:25 – 247:17; Snookal Decl. at 28. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |
| 99. In or about November of 2019, Mr. Snookal started treating with a therapist due to the symptoms of depression he was experiencing.<br><br>Snookal Decl. at 27 | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |
| 100. In or about October of 2020, Mr. Snookal started taking antidepressants to treat the symptoms of depression he was experiencing. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Statement of Fact | Status | Opposition |
|---|---|---|
| Snookal Decl. at 27; Snookal Dep. Tr. at 243:1 – 245:25 | | |
| 101. Mr. Snookal and his therapist discussed looking for other work because of the detrimental effects Chevron's discrimination was having on Mr. Snookal's mental health.<br><br>Snookal Dep. Tr. at 243:1 – 245:25; Snookal Decl. at 27-29. | Undisputed<br><br>Immaterial | <u>Objection</u>: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |
| 102. After resigning from Chevron in August of 2021, Mr. Snookal relocated himself and his family out of the state to try to better support his family's needs.<br><br>Snookal Decl. at 30; Snookal Dep. Tr. at 51:6-8. | Undisputed<br><br>Immaterial | <u>Objection</u>: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |
| 103. Dr. Levy has consistently been employed by Chevron U.S.A., even while he has changed job assignments and been based outside of the United States in London and Singapore.<br><br>Levy Dep. Tr. at 12:15-15:6; 14:8-11; 14:18-23. | Disputed<br><br>Immaterial | Misstates the evidence / not in evidence. *See* DUF 4.<br><br>Dr. Levy did not testify regarding which entity would have employed Plaintiff had Plaintiff assumed the REM position. Plaintiff did not create a genuine dispute of fact as to which entity would have employed him in the REM position. *See* DUF 4. |
| 104. Chevron U.S.A. paid Andrew Powers while he was on assignment in different states and on expatriate assignments in other countries, including Kazakhstan and the Philippines.<br><br>Powers Dep. Tr. at 19:2 - 22:1. | Disputed<br><br>Immaterial | Misstates the evidence / not in evidence. *See* DUF 4.<br><br>Mr. Powers did not testify regarding which entity would have employed Plaintiff had Plaintiff assumed the REM position. Plaintiff did not create a genuine dispute of fact as to which entity would have employed him in the REM position. *See* DUF 4. |
| 105. The Assignment Offer letter which Mr. Snookal received for the REM position | Disputed | *See* DUF 4. The "Assignment Offer" (Ex. E-1) states that the SBU, or Strategic Business Unit, for the position is Nigeria Mid-Africa. |

-45-

| Statement of Fact | Status | Opposition |
|---|---|---|
| identified "Chevron" as the employer and does not refer to "Chevron Nigeria, Limited."<br><br>Snookal Dep. Tr. at 36:23-37:8, Ex. E-1 (See also DUF 4 above). | | Pl. Dep. Tr., 36:23-37:8, Ex. E-1.<br><br>Plaintiff's citation to testimony by Dr. Levy and Mr. Powers misrepresents their testimony and does not create a genuine dispute of fact. Neither testified that Plaintiff would have remained employed by Chevron U.S.A. Inc., nor did they testify about which entity would be Plaintiff's employer had Plaintiff taken the REM position.<br><br>Dr. Levy testified that he is "just not completely aware" which corporate entity or business he worked under over his "several assignments with the company." (Pl. Ex. 12, Dr. Mark Levy Deposition Transcript ["Levy Dep. Tr."], 12:15-13:3.) Mr. Powers testified that he is not aware whether Chevron U.S.A. was his employer during his own expatriate assignments. (Pl. Ex. 14, Andrew Powers Deposition Transcript ["Powers Dep. Tr."], 19:24-20:6, 21:9-15.) |
| 106. Dr. Asekomeh worked as an Occupational Health Physician at the Chevron Hospital in Warri, Nigeria and conducted Medical Suitability for Expat Assignment MSEA evaluations for Chevron's expatriates traveling to Nigeria.<br><br>Asekomeh Decl. at 1, 3. | Undisputed<br><br>*See* Asekomeh Decl. ¶¶ 1-2. | |
| 107. Chevron contracted with Dr. Asekomeh's employer to provide medical services to Chevron in Nigeria.<br><br>Asekomeh Dep. Tr. at 14:16 -15:9. | Disputed as to the reference to Chevron U.S.A. | Misstates the evidence. Chevron U.S.A. did not employ the REM position and was not involved in Plaintiff's MSEA determination. *See* DUF 4, 6, 21, 29.<br><br>Plaintiff does not that Dr. Asekomeh was not an employee of Chevron. *See* DUF 21. |
| 108. Dr. Asekomeh's practice exclusively provides medical services to Chevron, not to any other entities. | Disputed as to the reference to Chevron U.S.A. | Misstates the evidence. Chevron U.S.A. did not employ the REM position and was not involved in Plaintiff's MSEA determination. *See* DUF 4, 6, 21, 29. |

SMRH:4857-6079-4098.2

| Statement of Fact | Status | Opposition |
|---|---|---|
| Asekomeh Dep. Tr. at 15:19 - 16:4 and 20:23 - 21:3. | | Plaintiff does not that Dr. Asekomeh was not an employee of Chevron. *See* DUF 21. |
| 109. Chevron provided specific guidelines and protocols for Dr. Asekomeh to follow in conducting MSEA evaluations for Chevron expatriate assignments.<br><br>Asekomeh Dep. Tr. at 29:20 - 31:19. | Disputed | Misstates the evidence.  Dr. Asekomeh testified that the Medical Examination Protocol that he followed in conducting MSEA evaluations was a global guide used by Chevron entities.  Dr. Asekomeh never testified that Chevron U.S.A. provided him with the guidelines and protocols. |
| 110. The two cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms identified Mr. Snookal as being "low risk" and noting that the size of Mr. Snookal's thoracic aneurysm is smaller than the 4.5 cm "partition value for low-risk situations."<br><br>Asekomeh Dep. Tr. at 115:11-21, Exh. 15-7 (Dr. Asekomeh email thread with Nigerian cardiologists). | Disputed as not in evidence | Misstates the evidence / not in evidence.<br><br>Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |
| 111. The two cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms admitted they were unable to find "clear cut field guidelines for patient with aortic aneurysm."<br><br>Id. at CUSA000773. | Disputed as not in evidence | Misstates the evidence / not in evidence.<br><br>Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |
| 112. The two cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms offered clinical instructions for Mr. Snookal, including to | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence.<br><br>Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |

| Statement of Fact | Status | Opposition |
|---|---|---|
| "avoid lifting heavy objects"; "quit smoking (if he is a smoker); (manage hypertension strictly)"; "watch out for alarm symptoms" and "avoid moderate to high intensity exercises as much as possible." Asekomeh Dep. Tr. at 115:11-21, Exh. 15-7 (Dr. Asekomeh email thread with Nigerian cardiologists). | | |
| 113. Mr. Snookal was already following the guidelines to "avoid lifting heavy objects"; "quit smoking (if he is a smoker); (manage hypertension strictly)"; "watch out for alarm symptoms" and "avoid moderate to high intensity exercises as much as possible." Id. at CUSA000775; Snookal Decl. at 11. | Disputed as not in evidence Immaterial | Misstates the evidence / not in evidence. Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |
| 114. The two cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms did not provide a specific recommendation to bar Mr. Snookal from working in Escravos, Nigeria. However, they did write/endorse that "[w]hat is established is that a patient with symptomatic aneurysm should not be allowed to work in an offshore location." Asekomeh Dep. Tr. at 115:11-21, Exh. 15-7 (Dr. Asekomeh | Disputed as to the statement that the cardiologists did not provide a specific recommendation to bar Plaintiff from working in Escravos | Misstates the evidence / not in evidence.  PUF 114 is internally contradictory.  Additionally, one of the cardiologists stated: "In Escravos . . . we are only limited to initial stabilitization and transfer of such high risk CV complications if any occurs . . . we may not be able to support such an individual due to our peculiarities."  *See* Ex. 15-7-2. Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |

| Statement of Fact | Status | Opposition |
|---|---|---|
| email thread with Nigerian cardiologists) at CUSA000773. | | |
| 115. Mr. Snookal had only an *asymptomatic* thoracic aneurysm, not a *symptomatic* thoracic aneurysm.<br><br>Asekomeh Dep. Tr. at 115:11-21 and Exh. 15-7 Dr. Asekomeh email thread with Nigerian cardiologists) at CUSA000775; Marmureanu Decl. at Exh. 11, p. 2-5. | Disputed<br><br>Immaterial | Misstates the evidence / not in evidence.<br>Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802).<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 116. Prior to his resignation, Mr. Snookal expressed to multiple Chevron employees, including Greg Curtin and Austin Ruppert, tat he felt he had been treated unfairly by Chevron and he felt he had no choice but to quit.<br><br>Snookal Dep. Tr. at 225:20-226:7. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence.<br>Objection: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |
| 117. Prior to his resignation, Mr. Snookal also discussed being subjected to disability discrimination with Mr. Ruppert.<br><br>Snookal Dep. Tr. at 228:18-229:4. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence.<br>Objection: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |
| 118. Mr. Snookal did not state in his Chevron resignation paperwork all his reasons for leaving Chevron because he did not see the practical purpose and because he thought it would be atypical to state negative things about Chevron in the separation | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence.<br>Objection: Irrelevant (FRE 402).<br><br>*See* DUF 43-44.<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40. |

-49-

| Statement of Fact | Status | Opposition |
|---|---|---|
| paperwork.<br><br>Snookal Dep. Tr. At 229:23-230:4; 231:17-232:8; Snookal Decl. at 29-30. | | Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>*See* DUF 40-41. |
| 119. Mr. Snookal did not resign his employment with Chevron "was not progressing as he wanted."<br><br>Snookal Decl. at 25-29; Snookal Dep. Tr. at 243:4-6; 246:6-248:19. | Disputed | Misstates the evidence / not in evidence.<br><u>Objection</u>: Irrelevant (FRE 402).<br><br>*See* DUF 43-44.<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40.<br><br>Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>*See* DUF 40-41. |
| 120. Mr. Snookal did not resign his employment with Chevron merely to pursue another job opportunity.<br><br>Snookal Decl. at 25-29; Snookal Dep. Tr. at 243:4-6; 246:6-248:19. | Disputed | Misstates the evidence / not in evidence.<br><u>Objection</u>: Irrelevant (FRE 402).<br><br>*See* DUF 43-44.<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 40.<br><br>Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>*See* DUF 40-41. |
| 130. Dr. Levy, as the Regional Manager for the Europe, Eurasia, Middle East & Africa | Disputed | Misstates the evidence / not in evidence.<br><u>Objection</u>: Hearsay (FRE 802).<br><br>Dr. Levy only provided recommendations |

-50-

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Statement of Fact | Status | Opposition |
|---|---|---|
| region, had a role in evaluating purported risks to Chevron's expatriate employees, to give recommendations for setting policies for Chevron's fitness for duty program, and "create[d] policies and protocols for [Chevron's] medical evacuations."<br><br>Levy Dep. Tr. at 20:11-25:10; Snookal Dep. Tr. at 314:11-315:12. | | based on his knowledge of the countries in the Europe, Eurasia, Middle East, and Africa regions. Dr. Levy testified that the Center of Excellence managed the creation of policies, not him. |

## DEFENDANT'S CONCLUSIONS OF LAW

| Conclusions of Law | Relevant Facts |
|---|---|
| 1. Chevron U.S.A. was not the employer with respect to the REM position which Plaintiff claims he was wrongfully denied. | 1-5, 29 |
| 2. Plaintiff cannot demonstrate a prima facie case of disability discrimination because he could not perform the essential duties of the REM position without endangering the health and safety of himself and the people around him. | 1-3, 5-28, 30-32 |
| 3. Even if Plaintiff could demonstrate a prima facie case of disability discrimination, which he cannot, Chevron U.S.A. had legitimate, nondiscriminatory business reasons for the purportedly adverse employment actions; in particular, it relied on a reasoned determination by medical professionals that Plaintiff would have | 20, 22-23, 26-28<br><br>*See also* 3, 5-19, 21, 24-25, 30-32 |

-51-

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Conclusions of Law | Relevant Facts |
|---|---|
| been a danger to himself and the people around him. | |
| 4.  Even if Plaintiff could demonstrate a prima facie case of disability discrimination, which he cannot, Plaintiff cannot produce evidence to show that Chevron U.S.A.'s legitimate, nondiscriminatory business reasons were pretextual. | 30-32<br><br>*See also* 3, 5-28 |
| 5.  Plaintiff cannot demonstrate a prima facie case for failure to accommodate, because Plaintiff admits he did not need accommodations during his employment. | 13, 33-39 |
| 6.  Plaintiff cannot demonstrate a prima facie case for failure to accommodate, because even if Chevron had a duty to provide Plaintiff with accommodations, which it did not, Chevron reasonably accommodated Plaintiff by creating a new role for him with the same pay and benefits as his prior position. | 33-39<br><br>*See* 13 |
| 7.  Plaintiff cannot demonstrate a prima facie case of constructive wrongful discharge because the working conditions which Plaintiff alleges caused him to resign from his employment with Chevron fail to meet the standard of objective intolerability. | 40-43 |
| 8.  Because there is no merit to Plaintiff's claims | 1-43 |

-52-

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT

| Conclusions of Law | Relevant Facts |
|---|---|
| for discrimination or failure to accommodate, Plaintiff cannot prove his derivative claim for wrongful constructive discharge. | |
| 9. Plaintiff cannot recover punitive damages because he cannot establish an act of oppression, fraud, or malice by an officer, director or managing agent of Chevron U.S.A. | 1-43 |

### PLAINTIFF'S CONCLUSIONS OF LAW

| Conclusions of Law | Relevant Facts |
|---|---|
| 10. Defendant Chevron U.S.A., Inc. ("Defendant") was the employer for the purposes of the rescinded REM position, or at minimum, is liable for rescinding same from Mr. Snookal. | 44, 47, 52-103, 115 |
| 11. Mr. Snookal was an employee with a disability for the purposes of the California Fair Employment and Housing Act. | 44 – 69, 76-115 |
| 12. Mr. Snookal was a "qualified employee" because he could perform all of the essential duties of the REM position in Escravos, Nigeria. | 44-86, 96, 103-115 |
| 13. Defendant cannot meet its burden to show that Mr. Snookal posed an "imminent and substantial" direct threat to himself or to others. | 44-86, 96, 101-115 |
| 14. Defendant cannot meet its burden to show it "rel[ied] upon the most current medical | 44-86, 96, 101-115 |

SMRH:4857-6079-4098.2
DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| Conclusions of Law | Relevant Facts |
|---|---|
| knowledge" nor that it relied upon "the best available objective evidence" to support its claim that Mr. Snookal posed a threat to himself or others. | |
| 15. Defendant was required to accommodate Mr. Snookal's disability after it rescinded the REM position from him and filled his previous position. | 44-95 |
| 16. Defendant failed to provide a reasonable accommodation for Mr. Snookal after it rescinded the REM position from him and filled his previous position. | 75-95 |
| 17. Defendant has not met its burden to show no material disputes of fact exist as to Mr. Snookal's cause of action for wrongful constructive discharge. | 44-130 |
| 18. Defendant has not met its burden to show that no material dispute of fact exists as to Mr. Snookal's claim for punitive damages. | 44-130 |

-54-

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dated:  October 24, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
                    /s/ Sarah Fan
                TRACEY A. KENNEDY
                ROBERT E. MUSSIG
                H. SARAH FAN

                Attorneys for Defendant
                CHEVRON U.S.A. INC.

SMRH:4857-6079-4098.2

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS
AND GENUINE DISPUTES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND
PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES IN
OPPOSITION TO DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT