DOLORES Y. LEAL (134176)
OLIVIA FLECHSIG (334880)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048-5217
(323) 653-6530
dleal@amglaw.com
oflechsig@amglaw.com

**Attorneys for Plaintiff MARK SNOOKAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual, | CASE NO.: 2:23-cv-6302-HDV-AJR |
| Plaintiff, | **[PROPOSED] ORDER REGARDING PLAINTIFF'S EVIDENTIARY OBJECTIONS TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS** |
| vs. | |
| CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive, | Hearing: December 5, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 5B – 5th Floor<br>Judge: Hon. Hernán D. Vera |
| Defendants. | Action Filed: August 3, 2023<br>Trial Date: February 4, 2025 |

1  The Motion for Summary Judgment, or in the Alternative, Partial Summary
2  Judgment of Defendant Chevron U.S.A. Inc., a Pennsylvania corporation
3  ("Chevron U.S.A."), came on regularly for hearing December 5, 2024, at 10:00
4  a.m. in Courtroom 5B of the United States District Court for the Central District of
5  California, located at 350 West 1st Street, Los Angeles, California 90012, the
6  Honorable Hernán D. Vera presiding.  All parties were represented by their
7  respective counsel.
8  After considering the moving and opposing papers, arguments of counsel,
9  and all other matters presented to the Court, for good cause shown, the Court
10 makes the following rulings regarding Plaintiff Mark Snookal's Evidentiary
11 Objections:

| Defendant's Evidence | Plaintiff's Objections | Ruling |
|---|---|---|
| 14. Plaintiff's cardiologist could not predict whether Plaintiff's aortic root would remain stable or continue to expand to an operable size, and Plaintiff's aortic root was at times stable and at times expanding since his diagnosis.<br><br>Pl. Dep. Tr., 48:25-50:3, 53:10-12. | Assumes facts not in evidence (FRE 103); Mr. Snookal is a lay witness and cannot express opinions based upon scientific, technical, or other specialized knowledge within the scope of FRE 702.<br><br>Defendant's citation to Plaintiff's deposition transcript is inaccurate "There were some years when it grew at a low rate and other years where it had remained stable.  I believe at the time I applied it had been stable for two or three years." Pl. Dep. Tr., 49:2-50:3.<br><br>Changes to Mr. Snookal's aortic aneurysm could be monitored with annual echocardiogram and CT scans. ("Annual imaging with CT | ___ Sustained<br><br>___ Denied |

| | | | |
|---|---|---|---|
| 1-7 | | scans or echocardiograms is sufficient to continue monitoring Mr. Snookal's aorta for any changes. This approach is consistent with standard practice for stable aortic aneurysms and aortic root dilations of this size." Marmureanu Decl. at Exh. 11 Pg. 8; see also Asekomeh Dep. Tr. at 104:11-20. | |
| 8-28 | 15.     Rupture or dissection of Plaintiff's aortic root was not predictable and that it was not possible to isolate triggers to reduce the risk of an occurrence.<br><br>Asekomeh Decl. ¶¶ 8, 10; *see also* Pl. Dep. Tr., 89:3-11, 89:20-90:14, Ex. E-7; Pl. Dep. Tr., 110:20-23. | Asekomeh's Decl. at 8 lacks foundation (FRE 602) and is based upon inadmissible hearsay (FRE 802): "Drs Adeyeye and Akintunde independently reviewed Mr. Snookal's medical records and opined that if Mr. Snookal were to experience an aortic event in Escravos, it would likely lead to his death, given the limited medical resources in Escravos."<br><br>Assumes facts not in evidence (FRE 103); Defendant's citation to Plaintiff's deposition transcript is inaccurate in that the deposition testimony does not support the facts cited.<br><br>Dr. S. Khan opined *inter alia*, "It is safe for him to work in Nigeria with his heart condition. His condition is under good control and no special treatments are needed." Snookal Decl. at 9 , Exh. 3.<br><br>Changes to Mr. Snookal's aortic aneurysm could be monitored with annual echocardiogram and CT scans. ("Annual imaging with CT scans or echocardiograms is sufficient to continue monitoring Mr. Snookal's aorta for any changes. This approach is consistent | ___ Sustained<br><br>___ Denied _ |

| | | | |
|---|---|---|---|
| | | with standard practice for stable aortic aneurysms and aortic root dilations of this size." Marmureanu Decl. at Exh. 11, p. 8.<br><br>Mr. Snookal is a lay witness and cannot express opinions based upon scientific, technical, or other specialized knowledge within the scope of FRE 702. Dr. Asekomeh, though he is a physician, is not qualified pursuant to FRE 702 to offer expert testimony as to Mr. Snookal's heart conditions. He is not a cardiologist, has no specialized training in cardiology, and has never met or treated Mr. Snookal. | |
| | 16.   Any medical evacuation in Escravos would depend on the availability of a helicopter and whether the weather permitted an evacuation, so a rupture or dissection in Escravos would likely result in Plaintiff's death.<br><br>Asekomeh Decl. ¶¶ 6-7, 9. | Assumes facts not in evidence (FRE 103). Access is also available to Escravos by fixed wing plane such as those used to transport employees in and out of their rotational assignments. Snookal Decl. at 8.<br><br>Asekomeh's declaration does not evidence that rupture or dissection is automatically fatal, even without immediate medical care.<br><br>Lacks foundation (FRE 602); assumes facts not in evidence (FRE 103); and Dr. Asekomeh is not a cardiologist and not qualified to offer expert testimony regarding outcomes relating to cardiac events. (FRE 702). | ___ Sustained<br><br>___ Denied _ |
| | 17.   If Plaintiff had experienced a rupture or dissection while he was inspecting and operating equipment, or supervising the | Lacks foundation (FRE 602); assumes facts not in evidence (FRE 103).<br><br>The REM position does not require the operation of equipment, heavy | ___ Sustained<br><br>___ Denied _ |

4

PROPOSED ORDER REGARDING EVIDENTIARY OBJECTIONS TO
DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| | | |
|---|---|---|
| operation and inspection of heavy machinery, he could have injured other employees who likewise have limited access to evacuation for medical treatment, leading to serious impairment or even death.<br><br>Asekomeh Decl. ¶ 12. | or otherwise. The position is not considered a safety-sensitive position as defined in the Chevron "Medical Examination Program." Snookal Decl. at 19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions GO-308" for the REM Position). The REM position is an "Office Based Job" which does not require the operation or direct supervision of equipment. Id.<br><br>See also Job Description: "Job Title: NMA EGTL Reliability Engineering Manager." Asekomeh Dep. Tr. at 81:3, Exh. 15-2. | |
| 20.   Based on an assessment of Plaintiff's medical records from his visit with Dr. Sobel, as well as his first-hand experience working in Escravos, Dr. Eshiofe Asekomeh, who was then the Occupational Health Physician at the Chevron Hospital in Warri, Nigeria, concluded on August 15, 2019 that Plaintiff was not fit for duty in Escravos due to the remote location, but stated that Plaintiff could be cleared for assignment in Lagos.<br><br>Asekomeh Decl. ¶¶ 9, 11; *see also* Pl. Dep. Tr., 64:13-65:7, Ex. E-5. | Objection to Asekomeh's Declaration at 9: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103; and Hearsay (FRE 802).<br><br>Chevron's form GO-308 "Physical Requirements and Working Conditions" makes no differentiation between Lagos, Abuja, Warri, Escravos or Onne locations.<br>Snookal Decl. at 19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions GO-308" for the REM Position). | ___ Sustained<br><br>___ Denied _ |

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17 | 22. In making his assessment of Plaintiff's medical clearance, Dr. Asekomeh consulted with two cardiologists in Nigeria who were familiar with Plaintiff's type of aortic condition – Dr. Victor Adeyeye in Warri and Dr. Ujomoti Akintunde in Lagos – who independently reviewed Plaintiff's medical records and opined that if Plaintiff were to experience an aortic event in Escravos, it would likely lead to his death, given the limited medical resources in Escravos.<br><br>Asekomeh Decl. ¶ 9. | Lacks foundation (FRE 602); Assumes facts not in evidence (FRE 103); and hearsay (FRE 802). | ___ Sustained<br><br>___ Denied |
| 18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 23. Dr. Asekomeh also took into account the remote location of the assignment, Escravos, which was a particularly dangerous work location for a person with Plaintiff's condition because Escravos does not have a healthcare system infrastructure to handle complex cases, and that an aortic event in Escravos could lead to Plaintiff's death or the death or injury of others because of the lack of access to | Lacks foundation (FRE 602); Assumes facts not in evidence (FRE 103); hearsay (FRE 802); not qualified to express an expert opinion as to Plaintiff's cardiovascular condition (FRE 701, 702). | ___ Sustained<br><br>___ Denied |

PROPOSED ORDER REGARDING EVIDENTIARY OBJECTIONS TO
DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| | | | |
|---|---|---|---|
| 1 2 3 4 5 6 | adequate medical care and timely medical evacuations in Escravos.<br><br>Asekomeh Decl. ¶¶ 9-12; *see also* Pl. Dep. Tr., 81:1-6. | | |
| 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 | 26.   Dr. Levy discussed Dr. Khan's email with Dr. Asekomeh, who reviewed the information provided and maintained his determination that Plaintiff could not be cleared for duty in Escravos, even with the low but unpredictable risk of an incident, because a rupture or dissection occurring would most certainly result in death due to Escravos's lack of necessary medical resources and immediate emergency responses.<br><br>Levy Decl. ¶ 5; *see also id.* at ¶ 4, Ex. B; Asekomeh Decl. ¶ 12. | Lacks foundation (FRE 602); Assumes facts not in evidence (FRE103); and hearsay (FRE802). | ___ Sustained<br><br>___ Denied |
| 24 25 26 27 28 | 29.   No Chevron U.S.A. employee had any final determination in whether Plaintiff was ultimately awarded the REM position in Escravos, including Dr. Levy. | Misstates the facts; assumes facts not in evidence (FRE 103); lacks foundation (FRE 602)<br><br>Dr. Asekomeh Decl. at 11, "I concluded that Mr. Snookal could not be cleared for assignment in Escravos, which lacked the necessary medical resources and | ___ Sustained<br><br>___ Denied _ |

7
PROPOSED ORDER REGARDING EVIDENTIARY OBJECTIONS TO
DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5 | Levy Decl. ¶ 7; *see also* Complaint, ¶ 18. | was too remote for reliable medical evacuation."<br><br>Dr. Asekomeh works only for Chevron and is Chevron's agent. Asekomeh Dep. Tr. at 15:19 - 16:4 and 20:23 - 21:3. | |
| 6<br>7<br>8<br>9<br>10<br>11 | 30.  Aside from the rescinded REM position, Plaintiff does not believe any other decision was based on discrimination because of his heart condition.<br><br>Pl. Dep. Tr., 197:7-25. | Testimony calls for a legal conclusion (FRE 701). | ___ Sustained<br><br>___ Denied |
| 12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25 | 31.  The only basis for Plaintiff's belief that the denial of the REM position was discriminatory is Plaintiff's belief that the local medical team in Nigeria did not do their due diligence by considering the study from 2002 provided by Dr. Khan referencing the approximate 2% risk of incident with Plaintiff's aortic condition and not considering other studies.<br><br>Pl. Dep. Tr., 97:3-98:15, 109:8-13. | Misstates Plaintiff's testimony. Assumes facts not in evidence (FRE 103); testimony calls for a legal conclusion (FRE 701).<br><br>Plaintiff testified: "In my opinion, I don't believe that the people that evaluated me did their due diligence in understanding the condition that I had and the effects that a remote location would have. That's what I meant by that." Pl. Dep. Tr. 97:3-9. | |
| 26<br>27<br>28 | 32.  Dr. Khan did not reference any study other than the study in 2002. | Misstates the cited facts. Assumes facts not in evidence (FRE 103).<br><br>The email in question from Dr. Khan to Dr. Levy stated: "Finally, | ___ Sustained<br><br>___ Denied |

8
PROPOSED ORDER REGARDING EVIDENTIARY OBJECTIONS TO
DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| | | |
|---|---|---|
| Pl. Dep. Tr., 84:18-85:14, Ex. E-6. | the studies of risk of rupture are fairly old (2002) and treatment has improved as has our understanding of aortic aneurysms." | |
| 40. On or about August 4, 2021, Plaintiff resigned from his employment with Chevron U.S.A. effective August 20, 2021, for the stated reason that he was leaving for an opportunity with significantly increased responsibility.<br><br>Pl. Dep. Tr., 223:2-10, 224:7-19, Ex. E-17; Pl. Dep. Tr., 230:12-231:1, Ex. E-18; Pl. Dep. Tr., 231:2-16. | Assumes facts not in evidence (FRE 103).<br><br>Plaintiff sent Chevron a letter dated August 4, 2021 notifying Chevron that he was resigning his position effective August 20, 2021. Snookal Decl. at 28-30, Exh. 9-10. Nowhere in that letter does he state he was leaving for an opportunity with significantly increased responsibility. | ___ Sustained<br><br>___ Denied |

**IT IS SO ORDERED.**

Dated: _____

By: _____
THE HONORABLE HERNÁN D. VERA
UNITED STATES DISTRICT COURT
JUDGE

9
PROPOSED ORDER REGARDING EVIDENTIARY OBJECTIONS TO
DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 6300 Wilshire Boulevard, Suite 1500, Los Angeles, California 90048.

    On **October 25, 2024,** I served the foregoing document described as **PROPOSED ORDER REGARDING EVIDENTIARY OBJECTIONS TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS** on interested parties in this action:

**Attorneys for Defendant, Chevron USA, Inc.**

Tracey A. Kennedy, Esq.
Robert E. Mussig, Esq.
Sarah Fan, Esq.
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
(213) 620-1780
e-mails: tkennedy@sheppardmullin.com; rmussig@sheppardmullin.com
sfan@sheppardmullin.com

[X]   **BY ELECTRONIC SERVICE:** Pursuant to the Parties' agreement to accept service electronically, I caused such document to be electronically served via email to the email addresses of the addressee(s).

Executed on **October 25, 2024** at Los Angeles, California.

[X]   **Federal**   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
ANGIE O. PAZ