SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT E. MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Telephone:   213.620.1780
Facsimile:   213.620.1398
E-mail:         tkennedy@sheppardmullin.com
                   rmussig@sheppardmullin.com
                   sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>                  Plaintiff,<br><br>          vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>                  Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON U.S.A., INC.'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR:**<br><br>**(1) LEAVE TO SUPPLEMENT OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**<br><br>**(2) LEAVE FOR PLAINTIFF TO TAKE FURTHER DISCOVERY; AND**<br><br>**(3) LEAVE TO FILE MOTION SEEKING DISCOVERY SANCTIONS**<br><br>**(Dkt. No. 35)**<br><br>District Judge: Hon. Hernán De. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br><br>Action Filed: August 3, 2023<br>Trial Date: February 4, 2025 |

# OPPOSITION TO EX PARTE APPLICATION

Plaintiff Mark Snookal's ex parte application is much ado about nothing. Dr. Stephen Frangos, who is the subject of Plaintiff's ex parte application, is not a surprise witness or individual, because Plaintiff testified at his deposition that "Dr. Frangos, who is the equivalent of Dr. Levy in the U.S., covers the North America business units, and Dr. Frangos got me in touch with Dr. Levy. So other than that, I haven't had any conversations." (Mussig Dec. ¶ 3, Ex. A ["Snookal Dep. Tr."], 69:17-25; see also 79:20-80:9.) There is absolutely no evidence Chevron U.S.A. actively concealed the email at issue, and it has no bearing on the pending Motion for Summary Judgment. Plaintiff likewise cannot demonstrate that there is any exigency that he did not create himself, or otherwise show that any sanctions are warranted when he rushed into court with the instant ex parte application rather than meet and confer in good faith. On these grounds, and those discussed in further detail below, Plaintiff's ex parte application must be denied.

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

After Plaintiff voluntarily resigned from his former position with Defendant Chevron U.S.A., Inc., a Pennsylvania corporation ("Chevron U.S.A.") for another job opportunity which he admits had "significantly increased responsibility," Plaintiff filed the instant lawsuit against Chevron U.S.A. claiming that he had been discriminated against and constructively terminated. At deposition, Plaintiff admitted that the reason he resigned was because his career at Chevron U.S.A. was not advancing as he had hoped, not because anyone at Chevron U.S.A. forced him to leave. Plaintiff initially filed this lawsuit claiming he had been discriminated against on the basis of his age, as well as discriminated against and not accommodated for his alleged disability, but he has since dismissed his age discrimination claim.

Plaintiff's claims for alleged disability discrimination and failure to accommodate are premised solely on the rescission of his offer for a Reliability Engineering Manager ("REM") position in Escravos, Nigeria in or about July and August 2019, which was

contingent upon Plaintiff undergoing and passing a fitness for duty examination. Notably, Escravos is not an actual town or city; it is an oil production facility at the mouth of the Escravos River. It is an incredibly remote area, with no roads in or out. The only access is by helicopter or boat. Due to Plaintiff's heart condition, which gives him a low but unpredictable risk of experiencing a serious cardiovascular event, Dr. Eshiofe Asekomeh, a physician in Nigeria (who was deposed in this case), determined that if Plaintiff experienced a serious cardiovascular event in Escravos, it would likely lead to his death, or the death or injury of others, due to the remote location, which has limited access to basic medical care and unreliable medical evacuations. Dr. Asekomeh deemed Plaintiff not fit for duty in Escravos.

Although Plaintiff's former position had been backfilled in anticipation of Plaintiff taking the REM position, Chevron U.S.A. ensured that Plaintiff's employment would continue and worked with him to find a position that he was interested in and qualified for. Chevron U.S.A. created a position for Plaintiff which paid the same, and which he accepted, and Plaintiff was ultimately restored to his former position. Plaintiff did not experience any loss of compensation or benefits during this period of time. Plaintiff continued to work for Chevron U.S.A. for approximately two years after the rescission of the REM position until he voluntarily resigned in August 2021.

Plaintiff filed this action on August 3, 2023. Trial is set on February 4, 2025. Chevron U.S.A.'s Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, is fully briefed and set for hearing before the Court on December 12, 2024, as to Plaintiff's three remaining claims: (1) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) failure to accommodate in violation of FEHA; and (3) wrongful constructive termination in violation of public policy.

On or about November 30, 2023, Chevron U.S.A. served its Initial Disclosures pursuant to Federal Rules of Civil Procedure, Rule 26(a)(1), identifying individuals it believed may have discoverable information that Chevron U.S.A. may use to support its

defenses or to rebut Plaintiff's claims. (Mussig Dec. ¶ 2.) Chevron U.S.A. was not aware that Dr. Stephen Frangos was involved in Plaintiff's MSEA fitness for duty determination in any capacity at that time.[1] (*Id.*) On May 10, 2024, Chevron U.S.A. took Plaintiff's deposition in this case, in which Plaintiff testified that after he was deemed unfit for duty in Escravos, he was referred to Dr. Stephen Frangos, who passed him off to Dr. Mark Levy to discuss the MSEA determination. (Mussig Dec. ¶ 3, Ex. A ["Snookal Dep. Tr."], 69:17-25; see also 79:20-80:9.) Plaintiff testified that all of his substantive discussions about his MSEA determination were with Dr. Levy, ***not*** Dr. Frangos. (*Id.* at 79:20-80:9.)

Plaintiff has taken six depositions in this case thus far, including four of the doctors involved in the MSEA determination—Dr. Mark Levy, Dr. Eshiofe Asekomeh, Dr. Ujomoti Akintunde, and Dr. Victor Adeyeye.[2] (Mussig Dec. ¶ 4; Fan Dec. ¶ 2.) Aside from Dr. Levy, these doctors have never been employed by Chevron U.S.A., and their depositions had to be coordinated through Chevron Nigeria, Limited ("Chevron Nigeria"), a wholly separate and distinct corporate entity from Chevron U.S.A. (Fan Dec. ¶ 2.) None of the witnesses deposed testified that Dr. Frangos was involved in Plaintiff's MSEA determination in any way, and certainly did not indicate that he was a decisionmaker with respect to the determination. (Mussig Dec. ¶ 4; Fan Dec. ¶ 2.)

On August 30, 2024, approximately 5 years after the events at issue in this lawsuit, Plaintiff took the deposition of Dr. Mark Levy who, at the time of the events relevant to this case, was the Regional Medical Manager of the Europe, Eurasia, Mid East, and Africa region. (Mussig Dec. ¶ 5; *see also* Mussig Dec. ¶ 5, Ex. B ["Levy Dep. Tr."] at 14:18-15:7.) Dr. Levy testified that the embedded medical team at the host location made the MSEA determinations for individuals seeking expatriate assignments and has the final say in those determinations. (Mussig Dec. ¶ 5, Ex. B at 28:8-29:3, 30:16-31:8.) Dr.

---

[1] Dr. Frangos retired from his employment with Chevron U.S.A. in 2022. (Mussig Dec. ¶ 2.)

[2] Dr. Adeyeye's deposition was terminated early because the court reporter was unable to continue. (Fan Dec. ¶ 3.) The parties are working together to set another mutually available date. (*Id.*)

1  Levy testified that he did not recall how he became involved with Plaintiff's MSEA
2  determination (*Id.* at 34:13-17), and did not testify regarding any involvement by Dr.
3  Frangos.
4        After Plaintiff noticed the depositions of the doctors located in Nigeria, Chevron
5  U.S.A. worked diligently to coordinate with Chevron Nigeria regarding their availability
6  for deposition, taking into account their schedules, availability, and clinical duties, as
7  well as the 8-9 hour time difference between California and Nigeria. (Fan Decl. ¶ 4.) On
8  October 8, 2024, in connection with Dr. Asekomeh's deposition, Chevron U.S.A. learned
9  that Dr. Asekomeh had corresponded by email with Drs. Akintunde and Adeyeye
10 regarding Plaintiff. (Mussig Dec. ¶ 6.) **Importantly, electronic records are not**
11 **centrally stored, meaning Chevron U.S.A. does not have the ability to search the**
12 **records of all Chevron-related entities.** (*Id.*) Chevron U.S.A. worked with Chevron
13 Nigeria to obtain copies of Dr. Asekomeh's emails with Drs. Akintunde and Adeyeye,
14 which Dr. Asekomeh had to regain access to. (*Id.*) Chevron U.S.A. produced copies of
15 the emails it had obtained on October 10, 2024, in advance of Dr. Asekomeh's
16 deposition. (*Id.*)
17       Dr. Asekomeh testified during deposition that he did not specifically recall, but
18 may have corresponded by email with Dr. Olorunfemi Pitan, former Head of
19 Occupational Health in Lagos, Nigeria. (Mussig Dec. ¶ 8.) Dr. Asekomeh confirmed
20 that he was the sole decisionmaker in Plaintiff's MSEA determination. (Mussig Dec. ¶ 7,
21 Ex. C ["Asekomeh Dep. Tr."] at 33:14-18, 35:18-23.) Dr. Asekomeh did not testify
22 regarding any involvement by Dr. Frangos in Plaintiff's MSEA determination. (Mussig
23 Dec. ¶ 7.) Following Dr. Asekomeh's deposition, Chevron U.S.A. again worked with
24 Chevron Nigeria to conduct a search for any email correspondence between Dr.
25 Asekomeh and Dr. Pitan. (*Id.* at ¶ 8.) In the course of this search, Chevron U.S.A.
26 received a copy of an email chain which Dr. Pitan forwarded to Dr. Asekomeh on August
27 15, 2019, which included an email from Dr. Frangos dated August 8, 2019. (*Id.*) **Until**
28 **this point, Chevron U.S.A. had not known of any involvement by Dr. Frangos except**

**for the referral that Plaintiff testified to in his deposition.** (*Id.*) Chevron U.S.A. nevertheless duly produced the email chain on November 8, 2024. (*Id.*) Notably, the email chain does not indicate in any way that Dr. Frangos was a decision-maker, despite Plaintiff's suggestion to the contrary. (*See* Dkt. No. 35-11, Ex. 10 at Bates nos. CUSA000824-827.) Rather, all it shows is that Dr. Frangos expressed an opinion about Plaintiff's fitness for duty in Escravos -- which was essentially the same opinion all the other doctors had: the risk that Plaintiff would suffer a serious cardiovascular incident was low, but given the limited medical resources in Escravos, allowing Plaintiff to work there would entail "health risk." (*Id.*) The email certainly is not the game-changer Plaintiff makes it out to be.

On November 20, 2024, Plaintiff's counsel gave notice of this ex parte application by voicemail and by email, stating generically that Plaintiff was seeking leave to take additional discovery *regarding Dr. Frangos*, to file a motion for discovery sanctions, and to file a supplemental opposition to Chevron U.S.A.'s pending and fully-briefed Motion for Summary Judgment. (Fan Dec. ¶ 5.) Prior to this, Plaintiff's counsel had not made any effort to meet and confer regarding any discovery regarding Dr. Frangos they now allege they need. (*Id.*) After waiting almost two weeks to raise this issue at all, Plaintiff's counsel rejected any attempts by Chevron U.S.A.'s counsel to determine whether the parties could reach an agreement to avoid unnecessary and costly motion work. (*Id.*) Instead, a few hours after Chevron U.S.A.'s counsel reached out to meet and confer by phone, Plaintiff's counsel filed their 13-page ex parte application with 11 exhibits. (*Id.*)

Any attorneys' fees and costs Plaintiff seeks only arise from Plaintiff's failure to meet and confer in good faith regarding the subject of his ex parte application before rushing into court. After waiting nearly two weeks to raise the issue, about an individual (not really a witness) they have always know of, it is clear no exigency exists which would warrant granting Plaintiff's ex parte application. Furthermore, the discovery Plaintiff seeks—namely, Dr. Frangos's deposition—is not relevant to any material matter

at issue in Chevron U.S.A.'s MSJ. Accordingly, Plaintiff's ex parte application should be denied.

## II. ARGUMENT

### A. No Exigency Exists Which Would Warrant Ex Parte Relief.

"Ex parte applications are rarely justified." *See Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (examining in detail the inherent unfairness and gamesmanship of the ex parte motion process). "Ex parte applications are solely for extraordinary relief and are rarely granted." *See* Civil Standing Order, J. Vera, § XIII, 15:19. In order to obtain relief, an ex parte movant must first show that they will be "irreparably prejudiced" based on a sliding scale measuring the severity of the threatened prejudice and the likelihood of success on the merits. *See Mission Power Engineering*, 883 F. Supp. 492. Second, an ex parte movant must establish that they are "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *See id.* at 493. A party must show that "it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *See id.*

As Plaintiff's counsel attested, Plaintiff did not propound his first set of written discovery in this matter until May 7, 2024, almost one year after this action was filed in August 2023. (Dkt. 35-1, Flechsig Dec. ¶ 4.) Plaintiff did not seek to depose any of the doctors in Nigeria until July 11, 2024. (*Id.* at ¶ 7.) However, Plaintiff knew as early as September 19, 2023, that his MSEA determination had been made by a doctor affiliated with non-party Chevron Nigeria, Limited. (Dkt. 12, Answer ¶ 18.)

On August 10, 2023, when Plaintiff deposed Dr. Asekomeh, Dr. Asekomeh confirmed he has never been employed by Chevron U.S.A. at any time. (Mussig Dec. ¶ 7, Ex. C at 14:16-21, 15:11-13.) On August 22, 2023, when Chevron U.S.A. served its moving papers in support of its MSJ, it stated unequivocally that "[t]he REM position [sought by Plaintiff] was employed by Chevron Nigeria, Limited." (*See* Dkt. 30-1, Joint Statement of Uncontroverted Facts and Genuine Disputes, DUF 4.) Chevron U.S.A.'s

MSJ also stated that "the local medical team at the location of the job site . . . makes the final determination as to medical fitness for duty" and that "[n]o Chevron U.S.A. employee had any final determination in whether Plaintiff was ultimately awarded the REM position in Escravos." (*See* Dkt. 30-1, Joint Statement of Uncontroverted Facts and Genuine Disputes, DUF 6, 29.) To date, Plaintiff has not served any discovery on Chevron Nigeria, nor made any efforts to do so before or after the discovery cutoff date. (Mussig Dec. ¶ 9.)

After spending almost one year without taking any discovery in this case, Plaintiff now seeks to place the burden for his lack of timely prosecution on Chevron U.S.A. The coordination of depositions of the Nigerian doctors, who have never been employed by Chevron U.S.A., who live and work in a time zone 8-9 hours removed, and who have their own personal, work, and clinical obligations, required significant time and efforts to coordinate with non-party Chevron Nigeria. Any purported emergency asserted by Plaintiff can only be attributed to Plaintiff's own lack of diligence.

### B. No Discovery Sanctions Are Warranted, as Chevron USA Conducted a Diligent Search and Upon the Discovery of Additional Documents, Supplemented Its Production Pursuant to Its Discovery Obligations.

Plaintiff's request for leave to a file a motion for discovery sanctions is not warranted, and Plaintiff cannot demonstrate that such a proposed motion has any merit. Chevron U.S.A. conducted a diligent search for information and documents regarding nonprivileged matters that are relevant to the parties' claims or defenses in this case. (Mussig Dec. ¶ 2.) Until Chevron U.S.A. was provided a copy of the August 15, 2019 email chain from Chevron Nigeria, Chevron U.S.A. was not aware that Dr. Frangos was involved in this matter at all, aside from Plaintiff's testimony that Dr. Frangos referred Plaintiff to Dr. Levy to discuss Plaintiff's MSEA determination. (*Id.* at ¶ 8; *see also id.* at ¶ 3, Ex. A at 69:20-25.) As part of its continuing discovery obligations, Chevron U.S.A. duly produced the email chain it received. (*Id.* at ¶ 8.)

As part of its initial search, Chevron U.S.A. identified the decisionmaker with respect to Plaintiff's MSEA determination, Dr. Asekomeh, and based on information he

provided, identified the individuals Dr. Asekomeh communicated with during his review of Plaintiff's MSEA determination.  (*Id.* at ¶ 2.)  **Neither Dr. Asekomeh nor anyone else identified Dr. Frangos as an individual who was involved in the process.**  (*Id.*)  At deposition, Dr. Asekomeh confirmed he was the sole decisionmaker on Plaintiff's MSEA.  (Mussig Dec. ¶ 7, Ex. C at 33:14-18, 35:18-23.)

      Additionally, Chevron U.S.A. identified the Human Resources representatives whom Plaintiff contacted after Plaintiff's conditional offer was rescinded and identified Dr. Levy as the individual who spoke with Plaintiff and with one of the HR representatives regarding Plaintiff's MSEA determination.  (*Id.* at ¶ 2.)  Dr. Levy did not identify Dr. Frangos as an individual who was involved in the MSEA determination process.  (*Id.*)  Dr. Levy also attested that the local medical team in Nigeria – in this case, Dr. Asekomeh — would have been the final decisionmaker on Plaintiff's MSEA.  (Mussig Dec. ¶ 5, Ex. B at 28:8-29:3, 30:16-31:8.)

      Chevron U.S.A.'s discovery obligations are limited to those relevant, nonprivileged matters which are proportional to the needs of the case, and it has complied with its discovery obligations throughout this case.  Fed. R. Civ. P. 26(b)(1).  Plaintiff's request for leave to file a motion for discovery sanctions shortly before trial is nothing more than an attempt to delay and harass.  Plaintiff has already deposed nearly all of the doctors Dr. Asekomeh consulted with in making his determination and will shortly complete the deposition of the last doctor noticed for deposition.  (Fan Dec. ¶¶ 2-3.)  There is absolutely no need for Plaintiff to depose yet another doctor – particularly one with no involvement.  Plaintiff waited nearly two weeks to even raise the issues set forth in his ex parte application, declined to explore any possibility of reaching an informal resolution between the parties to obviate the need for costly motion work, and filed his 13-page ex parte application with numerous exhibits only hours after providing notice (clearly this motion was in the works for days before giving notice).  (Fan Dec. ¶ 5-6.)  To the extent Plaintiff claims he is owed sanctions to reimburse any attorneys' fees and costs in this endeavor, those fees and costs were frivolously and unnecessarily incurred.

1  Plaintiff's ex parte application should be denied.

2        **C.**    **No Further Discovery or Supplemental Opposition to the Motion for Summary Judgment is Warranted, as No Facts Have Arisen Which Would Raise Any Material Issue of Fact.**

      Plaintiff makes repeated and meritless accusations about purported misrepresentations and misconduct by Chevron U.S.A. and its counsel, emotional bluster that is designed to distract from the fact the email correspondence at issue has no material impact whatsoever on Chevron U.S.A.'s pending MSJ. Plaintiff now seeks to take the deposition of Dr. Frangos (a former employee who worked in Texas), claiming erroneously that his testimony is relevant to the pending MSJ. Plaintiff contends, without any support whatsoever, that Dr. Frangos is a managing agent of Chevron U.S.A., but presents no evidence whatsoever that Dr. Frangos was a decisionmaker with respect to Plaintiff's MSEA determination. Dr. Asekomeh, who was the decisionmaker, did not testify that he ever communicated with Dr. Frangos or considered Dr. Frangos's input in making his MSEA determination. (Mussig Dec. ¶ 7.) Indeed, it is apparent from the email correspondence that Dr. Asekomeh was not a party to the discussion with Dr. Frangos and was only subsequently forwarded the email chain. (*See* Dkt. No. 35-11, Ex. 10 at Bates nos. CUSA000824-825.) Furthermore, Plaintiff personally spoke to Dr. Frangos prior to filing this litigation and was aware of his involvement in this matter, yet elected not to contact him, conduct discovery about him, or even bring him up until now, on the eve of the Motion for Summary Judgment hearing. (Mussig Dec. ¶ 3, Ex. A at 69:20-25.)

      Additionally, as set forth more fully above, and despite Plaintiff's claims to the contrary, Chevron U.S.A. made no misrepresentations in its MSJ. Chevron U.S.A. set forth material facts, which Plaintiff cannot dispute, that "the local medical team at the location of the job site [here, Dr. Asekomeh] . . . makes the final determination as to medical fitness for duty" for expatriate assignments and that "[n]o Chevron U.S.A. employee had any final determination in whether Plaintiff was ultimately awarded the REM position in Escravos." (*See* Dkt. 30-1, Joint Statement of Uncontroverted Facts and

Genuine Disputes, DUF 6, 29.)  Failing to adduce any evidence in his Opposition to show that any managing agent, officer, or director of Chevron U.S.A. made the decision to rescind Plaintiff's conditional offer, or otherwise took any action against Plaintiff such that Chevron U.S.A. could be held liable for punitive damages in this matter, Plaintiff's ex parte application is a belated hail Mary attempt to salvage his claim for punitive damages.

Plaintiff's ex parte application separately expounds a litany of what Plaintiff characterizes as unwarranted delays or discovery abuses in this matter, but fails to acknowledge that the discovery sought by Plaintiff was in the possession, custody, and control of a non-party, a fact Plaintiff has known since at least *September 19, 2023*.  To date, Plaintiff has not served any discovery on Chevron Nigeria, nor made any attempts to do so either before or after the discovery cutoff. (Mussig Dec. ¶ 9.)   Plaintiff did not make any of his own efforts to conduct diligent discovery on the correct party, but instead sat on his laurels and now complains about the time and efforts expended by Chevron U.S.A. to coordinate the requested discovery from a non-party entity.  Chevron U.S.A. duly produced the documents it requested and then received from Chevron Nigeria and the doctors in Nigeria to Plaintiff.  (*Id.* at ¶¶ 6, 8.)   As such, the discovery sought by Plaintiff is unwarranted and irrelevant to the matters in the pending MSJ.  Plaintiff's ex parte application should be denied in full for this reason as well.

### III.   CONCLUSION

Based on the foregoing, Chevron U.S.A. respectfully requests that the Court deny Plaintiff's ex parte application in full.

[*signature appears on following page*]

Dated: November 21, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Robert E. Mussig*
TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN

Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation