**DECLARATION OF ANDREW POWERS**

I, Andrew Powers, declare as follows:

1. I am currently employed by Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron U.S.A."), as the Senior HR Manager of the MidContinent Business Unit. I was formerly employed as an Senior HR Manager in El Segundo from approximately May 2019 through May 2022, and I have prior experience working as an HR Business Partner for Chevron U.S.A. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct. If called as a witness, I could and would competently testify concerning these facts under oath.

2. In my prior role as a Senior HR Manager in El Segundo, my job duties included managing a team of HR Business Partners who supported business leaders on matters relating to employee relations, such as employee hiring and retention and employee complaints. As part of their duties, the HR Business Partners under me regularly partnered in the candidate selection process for El Segundo Refinery and attended group meetings in which job owners discussed their selection of candidates to fill open job postings. I partnered in the candidate selection process for senior manager positions and, as necessary, I provided support and guidance to HR Business Partners during the candidate selection process for other positions.

3. In my prior role as a Senior HR Manager at El Segundo, I was personally familiar with the candidate selection process during that time, which involved a robust metrics-based screening model with peer and HR oversight. In or about 2019, candidates interviewed during the selection process were rated numerically based on selection criteria such as Functional Experience, People Development, Leadership Behaviors, Stakeholder Management (Internal/External), Development Fit, and Operational Excellence.

4. All open job postings had a job owner who made the hiring decision. At times, this person was also the reporting supervisor for the position. Although the job owner was the ultimate decisionmaker in filling the open role, the candidate selection usually occurred during group meetings which included HR personnel who ensured Chevron U.S.A.'s policies were being followed in the selection process.

5.     Because of my former position as a Senior HR Manager, I was familiar with Chevron U.S.A.'s Equal Employment Opportunity policies, which governed all hiring decisions made at Chevron U.S.A. during that time.  A true and correct copy of Chevron U.S.A.'s Equal Employment Opportunity Policy (HR Policy 400) is attached here as **Exhibit D**.  In my prior role, I directed a team of HR Business Partners who partnered with job owners throughout the candidate selection process to ensure that candidate selection is compliant with Chevron U.S.A.'s policies.

6.     In my former role as a Senior HR Manager, I was regularly required to undergo training on Chevron U.S.A.'s Equal Employment Opportunity and anti-discrimination and retaliation policies.  I am aware that all managers and supervisors, including job owners and personnel involved in candidate selection processes, were required to undergo the same training.

7.     In my former role as a Senior HR Manager, I was not an officer or director of Chevron U.S.A.  I did not conduct core business activities for Chevron U.S.A. and did not have any responsibilities outside of the human resources department.  I did not perform any work relating to the creation, drafting, or establishment of corporate policies.  I did not exercise any independent authority or discretion to determine, direct or affect company policy, procedures, rules, guidelines or principles for Chevron U.S.A.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  This declaration was executed on March 5, 2025, at Houston, Texas.



ANDREW POWERS