**DECLARATION OF DR. SCOTT LEVY**

I, Dr. Scott Levy, declare as follows:

1. I am currently employed by Chevron U.S.A. Inc., a Pennsylvania corporation, as a Regional Medical Manager. From June 2017 until May 2024, my position served the Europe, Eurasia, Middle East & Africa region. I have personal knowledge of the facts set forth in this declaration, which are known by me to be true and correct. If called as a witness, I could and would competently testify concerning these facts under oath.

2. All candidates who are seeking an expatriate assignment must successfully pass a Medical Suitability for Expat Assignment ("MSEA") with the local medical team at the location of the job site. The local team, who has superior knowledge regarding the circumstances and resources available at their location, makes the final determination as to medical fitness for duty.

3. The MSEA standard for medical clearance is based on the MSEA Location Clusters Table, which evaluates the relative level of safety in terms of medical care in categories from the highest "A" to the least "D," taking into account the promptness and availability of medical care in those countries. A true and correct copy of the MSEA Location Clusters Table is attached here as **Exhibit A**.

4. Plaintiff Mark Snookal sought medical clearance to work at an industrial complex located in the region of Escravos, Nigeria, which is a facility primarily focused on the Escravos Gas to Liquids ("EGTL") project, converting natural gas into liquid petroleum products.

5. After Dr. Eshiofe Asekomeh determined that Mr. Snookal was not cleared to work in Escravos, I became involved in the matter when Mr. Snookal requested a second opinion on the MSEA. Mr. Snookal communicated to me that he was interested in challenging the finding that he was medically unfit for duty. While the local medical team would make the ultimate determination as to Mr. Snookal's medical clearance, I agreed to speak with Mr. Snookal's cardiologist and facilitate discussion with the local team regarding Mr. Snookal's medical clearance to further consider whether Mr. Snookal could safely assume the expatriate assignment in Escravos. With Mr. Snookal's permission, I communicated with Mr. Snookal's cardiologist, Dr. Steven Khan, regarding Mr. Snookal's heart condition. A true and correct copy of Dr. Khan's email

-1-

correspondence to me regarding Mr. Snookal's heart condition, dated August 23, 2019, is attached here as **Exhibit B**.

6. I discussed the contents of Dr. Khan's email with Dr. Asekomeh to determine whether, in light of the information provided, Mr. Snookal could safely assume the expatriate assignment in Escravos. Dr. Asekomeh reviewed the information provided by Dr. Khan, which only addressed Dr. Khan's assessment of the risk of an occurrence, but not the lack of resources in Escravos to provide treatment in the event of such an occurrence. Since the necessary medical resources and immediate emergency responses were not available in Escravos, a rupture or dissection occurring would most certainly result in death in Escravos. Given the catastrophic outcome in such a scenario, Dr. Asekomeh maintained his determination that Mr. Snookal could not be cleared for duty in Escravos.

7. I also conducted inquiries to determine whether the Reliability Engineering Manager ("REM") position that he sought could be performed in Lagos, where Dr. Asekomeh did grant medical clearance. However, I understand the essential duties of the REM position require on-site supervision and interaction with personnel and equipment in Escravos, and the assignment could not be moved to Lagos.

8. I did not have any final determination in whether Mr. Snookal ultimately received medical clearance for the expatriate assignment in Escravos, nor in whether Mr. Snookal's offer for the assignment was rescinded.

9. In 2019, I was not an officer, director, or managing agent of Chevron U.S.A. I did not have authority or discretion to create or set corporate policies for Chevron U.S.A., which were set by the Center of Excellence.

10. In 2019, Dr. Stephen Frangos was a Regional Medical Manager for Chevron U.S.A. serving the Americas region. Dr. Frangos was not an officer, director, or managing agent of Chevron U.S.A. Dr. Frangos held a position similar to mine and did not have authority or discretion to create or set corporate policies for Chevron U.S.A., which were set by the Center of Excellence.

1  I declare under penalty of perjury under the laws of the State of California that the foregoing
2  is true and correct and that this declaration was executed on 3/5/2025 at
3  Houston, Texas.

Signed by:
*Dr. Scott Levy*
DR. SCOTT LEVY

-3-

SMRH:4928-1599-9524.3                                                    DECLARATION OF DR. SCOTT LEVY