SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT E. MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398
E-mail: tkennedy@sheppardmullin.com
rmussig@sheppardmullin.com
sfan@sheppardmullin.com

Attorneys for Defendant.

CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

MARK SNOOKAL, an individual,

Plaintiff,

vs.

CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:23-cv-6302-HDV-AJR

**JOINT STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

[*Filed concurrently with Notice of Motion; Joint Brief re Defendant's Motion for Summary Judgment; Joint Appendix of Declarations and Written Evidence; and [Proposed] Judgment granting Defendant's Motion for Summary Judgment]*

Hearing: May 8, 2025
Time: 10:00 a.m.
Place: Courtroom 5B – 5th Floor
Judge: Hon. Hernán D. Vera

Action Filed: August 3, 2023
Trial Date: August 19, 2025

**DEFENDANT'S STATEMENT OF**

**UNCONTROVERTED FACTS AND GENUINE DISPUTES**

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 1.  Plaintiff Mark Snookal ("Plaintiff") was hired by Defendant Chevron U.S.A. Inc. ("Chevron U.S.A.") on January 12, 2009 as an Analyzer Engineer.<br><br>Complaint, ¶ 7; Ex. E, Transcript of Plaintiff's Deposition ("Pl. Dep. Tr."), 17:12-15, 19:20-24, 20:21-21:2. | Undisputed. | Defendant's citation to Plaintiff's deposition transcript is inaccurate.<br><br>Plaintiff identifies his employer as "Chevron" not "Chevron USA." Plaintiff testified: "They have a very complicated corporate structure, so I don't actually know –" Pl. Dep. Tr. 31:24-32:2 | This fact is undisputed. |
| 2.  Beginning in or about November 2016, Plaintiff was promoted to the position of Instrumentation, Electrical, and Analyzer Reliability ("IEAR") Team Lead in the Reliability subgroup of the Maintenance department, with pay grade 22.<br><br>Complaint, ¶ 10; Pl. Dep. Tr., 30:2-31:14. | Undisputed. | | |
| 3.  In or around May 2019, Plaintiff applied for the Reliability Engineering Manager ("REM") position, which was an expatriate position with an estimated potential duration of 3-4 years located in the Escravos region of Nigeria, with pay grade 22.<br><br>Complaint, ¶ 12; Pl. Dep. Tr., 35:9-13, 36:23-37:8, Ex. E-1; 38:20-23. | Undisputed. | | |
| 4.  The REM position was employed by Chevron Nigeria, Limited, who extended the conditional | Disputed. | Assumes Facts Not in Evidence (FRE 103).<br><br>Defendant's citation to | The "Assignment Offer" (Ex. E-1) states that the SBU, or Strategic Business Unit, |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| offer of employment to Plaintiff.<br><br>Pl. Dep. Tr., 36:23-37:8, Ex. E-1; Pl. Dep. Tr., 38:20-23. | | Plaintiff's deposition transcript is inaccurate in that Exhibit E-1 refers to the offer as "contingent" rather than "conditional."<br><br>Moreover, Ex. E-1 to Plaintiff's deposition, the "Assignment Offer" is an assignment to Nigeria. Nowhere does the document state that the REM position was "employed by Chevron Nigeria, Limited" nor does it state that Chevron Nigeria, Limited extended the offer.<br><br>Defendant Chevron U.S.A. Inc. would have remained Mr. Snookal's legal employer had he commenced the REM position since rotational expatriate employees remain on Chevron USA's payroll during their assignments abroad. Levy Dep. Tr. at 12:15-15:6; 14:8-11; 14:18-23;<br>Powers Dep. Tr. at 19:2 - 22:1.<br><br>Defendant Chevron U.S.A. Inc. provided the compensation and payroll services for the REM Position. Leal Decl. at ¶ 26 Exhibit 26 (Defendant's Response to Plaintiff's Interrogatory No. 33). | for the position is Nigeria Mid-Africa.<br><br>Pl. Dep. Tr., 36:23-37:8, Ex. E-1.<br><br>Plaintiff's citation to testimony by Dr. Levy and Mr. Powers misrepresents their testimony and does not create a genuine dispute of fact. Neither testified that Plaintiff would have remained employed by Chevron U.S.A. Inc., nor did they testify about which entity would be Plaintiff's employer had Plaintiff taken the REM position.<br><br>Dr. Levy testified that he is "just not completely aware" which corporate entity or business he worked under over his "several assignments with the company." (Pl. Ex. 12, Dr. Mark Levy Deposition Transcript ["Levy Dep. Tr."], 12:15-13:3.) Mr. Powers testified that he is not aware whether Chevron U.S.A. was his employer during his own expatriate assignments. (Pl. Ex. 14, Andrew Powers Deposition Transcript ["Powers Dep. Tr."], 19:24-20:6, 21:9-15.) |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 5. On or about July 9, 2019, Plaintiff was conditionally awarded the REM position, contingent upon Plaintiff obtaining the appropriate work authorization and successfully passing a Medical Suitability for Expat Assignment ("MSEA").<br><br>Pl. Dep. Tr., 36:19-37:24, Ex. E-1; Pl. Dep. Tr., 45:14-24. | Undisputed. | Defendant's citation to Plaintiff's deposition transcript is inaccurate in that Exhibit E-1 "Assignment Offer" refers to the offer as "contingent" rather than "conditional." | This fact is undisputed. Plaintiff's objection to the use of the word "contingent" vs. "conditional" is semantic.<br><br>According to Merriam-Webster, contingent means "dependent or conditioned by something else," and conditional means "subject to, implying, or dependent upon a condition." |
| 6. As part of the MSEA procedure, all expatriate candidates must pass medical clearance with the embedded medical team at the host location (i.e., location of the expatriate assignment), and the embedded medical team at the host location makes the final determination as to medical fitness for duty.<br><br>Transcript of Dr. Scott Levy's Deposition ("Levy Dep. Tr."), 28:8-29:3, 30:16-31:8; Declaration of Dr. Scott Levy ("Levy Decl.") ¶ 2; *see also* Pl. Dep. Tr., 45:17-24. | Disputed | Assumes Facts Not in Evidence (FRE 103).<br><br>Dispute that "the embedded medical team at the host location (i.e. location of the expatriate assignment) makes the final determination as to medical fitness for duty." The local medical team in Nigeria, including Dr. Asekomeh, reported to the local medical director, Dr. Arenyeka, who in turn reported to Chevron's Human Resources.<br>Levy Dep. Tr. at 37:4-38:1.<br><br>Dr. Stephen Frangos, a Chevron U.S.A., Inc. employee, made the recommendation to the Nigerian medical team that they deny Mr. | Plaintiff's citation misrepresents testimony by Dr. Levy, and does not create a genuine dispute of fact. Dr. Levy actually testified that Dr. Arenyeka, the *medical director in Nigeria*, reports to the human resources department for the *Nigeria Mid Africa business unit*. (Levy Dep. Tr. 37:4-38:11 [emphasis added].)<br><br><u>Objection to Exhibits 27, 31, and 32</u>: Irrelevant (Federal Rules of Evidence ["FRE"] 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801). |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | Snookal medical clearance for the REM position along with Dr. Paul Arenyeka. Leal Decl. at ¶ 13, Exh. 27 (CUSA000824-827) and Exh. 32 (CUSA000995-997).<br><br>After this initial determination was made, Dr. Scott Levy oversaw a "rereview" of the decision and ultimately decided to defer to the Nigerian team on the decision. Leal Decl. at ¶ 13 Exh. 31 (CUSA000995-997).<br><br>On multiple occasions, the Nigerian medical team invited Dr. Levy and Dr. Frangos to weigh-in on the decision, and solicited their feedback regarding Mr. Snookal's medical fitness for duty, yet they decided to defer to the Nigerian medical team. Id. at at ¶ 13 Exh. 31 (CUSA000995-997) and Exh. 27 (CUSA000824-000827). | |
| 7. The MSEA standard for medical clearance is based on the MSEA Location Clusters Table, which evaluates the relative level of safety in terms of medical care in categories from the highest "A" to the least "D," taking into account the promptness and availability of medical | Undisputed. | | |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| care in those countries.<br><br>Levy Decl. ¶ 3, Ex. A. | | | |
| 8. Under the MSEA categories, Nigeria is split into categories "C" and "D". Lagos, the former capital of Nigeria, falls under "C," whereas all other locations within Nigeria, including Escravos, falls under "D," reflecting the lowest level of available medical care.<br><br>Levy Decl. ¶ 3, Ex. A. | Undisputed. | | |
| 9. The facility in Escravos, Nigeria is in an isolated swamp located on a river coast only accessible by helicopter or by boat, making regular and emergency access in and out of the facility difficult:<br><br>• The facility is an industrial complex located in the region of Escravos, Nigeria, which is a facility primarily focused on the Escravos Gas to Liquids ("EGTL") project, converting natural gas into liquid petroleum products.<br>• Helicopters are not on standby in Escravos and are not always available for transport.<br>• There are no roads in or out of Escravos.<br>• If there are no helicopters available, or in the event of bad weather in Escravos or Lagos, medical evacuation could take more than four hours and up to 10-12 hours.<br>• Escravos is located in the Niger Delta, in which Boko Haram and other | Disputed. | Assumes Facts Not in Evidence (FRE 103).<br><br>Dispute that "The facility in Escravos, Nigeria is "only accessible by helicopter or boat." Fixed wing planes are also used to transport employees in and out of the location, including to transport them when rotating in or out of their assignment and come and go from Escravos "at least three times a week."<br>Snookal Decl. at ¶21; Akintunde Dep. Tr. at 33:19-34:14.<br><br>On average, an emergency medical evacuation via "chopper"/helicopter from Escravos takes approximately an hour and a half. Akintunde Dep. Tr. at 36:6-14. | Plaintiff's opposition is immaterial and does not create a genuine dispute of fact. Plaintiff has proffered no evidence indicating that the fixed wing planes, if any, are more available or provide better emergency access to Escravos than by helicopter or by boat. |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| militants operate. For medical evacuations by boat, the Nigerian military needs to be contacted for escort through the region.<br>• Escravos has bad weather up to 50% of the time, as does Warri or Lagos during its rainy season of April through October.<br><br>Asekomeh Decl. ¶¶ 6-7; Transcript of Dr. Eshiofe Asekomeh's Deposition ("Asekomeh Dep. Tr."), 37:5-25; Levy Dep. Tr., 72:24-73:24; Levy Decl. ¶ 4. | | | |
| 10. The healthcare system infrastructure in Escravos, Nigeria is not set up to handle complex cases, with limited internal health support, and external health care resources for tertiary level care are very limited:<br><br>• There are only two clinics in Escravos – the Escravos Joint Venture ("JV") Clinic and the Escravos Gas to Liquids ("EGTL") clinic, with at most three doctors (one in Escravos, two at EGTL).<br>• At these clinics, there are no surgeons, and only minor procedures can be performed, including minor sutures for lacerations, and handling minor illnesses.<br>• The clinics cannot perform blood transfusions and cannot provide other acute surgical care.<br>• Individuals with any serious medical condition must be evacuated to Lagos or Warri.<br>• For serious cardiac events | Undisputed. | | |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| requiring surgery, the closest cardiothoracic surgeon works for the government hospital in Benin, approximately 100 kilometers (62 miles) away from Escravos, who must travel from Benin or to whom the patient must be transferred for treatment.<br><br>Declaration of Dr. Eshiofe Asekomeh ("Asekomeh Decl.") ¶¶ 4-5. | | | |
| 11. As part of the MSEA procedure, Plaintiff disclosed on the "Standard Medical Suitability for Expatriate Assignment History & Physical Examination" form (the "MSEA form") that he had a dilated aortic root, otherwise known as a thoracic aortic dilatation or aneurysm, which was diagnosed in or about 2014 to 2015, the stability or expansion of which was not predictable according to the diagnosis of Plaintiff's cardiologist.<br><br>Pl. Dep. Tr., 45:25-46:24, Ex. E-3; Pl. Dep. Tr., 19:5-14, 46:25-48:14, 48:25-49:11; Asekomeh Decl. ¶ 8. | Disputed. | Dispute that "the stability or expansion of which was not predictable according to the diagnosis of Plaintiff's cardiologist."<br><br>Dr. Khan wrote to Defendant that "[h]is [Snookal's] condition is under good control and no special treatments are needed" and that "[t]he risk [of rupture or dissection] is primarily related to further enlargement of the aneurysm which can be tracked with an annual CT scan." Snookal Dec. at ¶ 16, Exh 5.<br><br>"The existence of a rupture dissection is ten times less than one percent." Dr. Marmureanu Depo Tr 36:6-8.<br><br>Marmureanu Decl. at Exhibit 11-7 | Hearsay (FRE 801).<br><br>Plaintiff does not dispute his own testimony, that Dr. Khan told him "there's no way to accurately predict" whether Plaintiff's condition would stop expanding or whether it would expand to an operable point. (Pl. Dep. Tr. 48:25-49:11.)<br><br>Plaintiff's opposition merely adds additional, immaterial details about how any expansion of the aortic root could be monitored for changes.<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | (“Aneurysms typically become significant and warrant surgical intervention when they become around 5.5 cm, OR if there is a rapid increase in size (more than 0.5 cm within six months). These conditions are not relevant in Mr. Snookal’s case, as his aneurysm has demonstrated long-term stability, making the likelihood of rapid expansion exceedingly low.”)<br><br>Mr. Snookal’s dilated aortic root was being managed/treated with medications Losartan and Amlodipine which are used to prevent any enlargement of the dilation. Khan Dep. Tr. 27:23 – 28:1; 29:2-5; 31:10 – 32:4. | |
| 12. Plaintiff saw his cardiologist, Dr. Steven Khan, annually for his heart condition, because a dilated aortic root cannot be treated except with open heart surgery, which Plaintiff has never had.<br><br>Pl. Dep. Tr., 45:25-46:24, Ex. E-3; Pl. Dep. Tr., 47:21-48:5, 49:12-50:3; 52:15-23; Transcript of Dr. Shahid Hameed Khan’s Deposition (“Khan Dep. Tr.”), 42:7-17. | Disputed. | Disputed that Mr. Snookal saw Dr. Khan annually “because a dilated aortic root cannot be treated except with open heart surgery.”<br><br>A dilated aortic root of Mr. Snookal’s size (4.1-4.2 cm) does not require treatment by surgery because the risk of rupture or dissection is too low to warrant | Plaintiff does not actually dispute he had a dilated aortic root or that surgery would resolve the condition, which Plaintiff admits he has not had. (Pl. Dep. Tr. 52:15-23.)<br><br>Plaintiff’s opposition merely adds additional, immaterial details supporting that he saw Dr. Khan annually for his condition. (DUF |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | surgical intervention. Akintunde Dep. Tr. 40:19-24 and 45:21-46:3; Marmureanu Decl. at Exhibit 11-7 ("Aneurysms typically become significant and warrant surgical intervention when they become around 5.5 cm, OR if there is a rapid increase in size (more than 0.5 cm within six months). These conditions are not relevant in Mr. Snookal's case, as his aneurysm has demonstrated long-term stability, making the likelihood of rapid expansion exceedingly low.")<br><br>Mr. Snookal's dilated aortic root was being managed/treated with medications Losartan and Amlodipine which are used to prevent any enlargement of the dilation. Khan Dep. Tr. 27:23 – 28:1; 29:2-5; 31:10 – 32:4.<br><br>Mr. Snookal saw Dr. Khan annually for the recommended preventative screening to tracking any changes in the size of his dilated aortic root. Snookal Decl. at ¶¶ 11-12. | 12.) |
| 13. Plaintiff's heart condition | Partially | Mr. Snookal required a | Plaintiff's citation to a |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| did not impact his day-to-day ability to work, nor did Plaintiff need any sort of accommodation for his heart condition during his employment.<br><br>Pl. Dep. Tr., 53:24-54:1, 95:10-13. | disputed as to Plaintiff's need for an accommodation after Defendant rescinded the REM position. | reasonable accommodation for his heart condition after Chevron rescinded the REM position from him, and he therefore required reassignment to another position.<br><br>Snookal Decl. at ¶ 23; DUF at 28, 34. | self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>Plaintiff admitted that he did not need any sort of accommodation during his employment. (Pl. Dep. Tr. 95:10-13.)<br><br>Additionally, Plaintiff's declaration does not support the cited fact in his opposition—it only states he had to "find a new position" after the REM offer was rescinded, not that he required an accommodation. |
| 14. Rupture or dissection of Plaintiff's aortic root was not predictable and it was not possible to isolate triggers to reduce the risk of an occurrence.<br><br>Asekomeh Decl. ¶¶ 8, 10; *see also* Pl. Dep. Tr., 89:3-11, 89:20-90:14, Ex. E-7; Pl. Dep. Tr., 110:20-23. | Dispute | Dr. Khan wrote to Defendant that "[h]is [Snookal's] condition is under good control and no special treatments are needed" and that "[t]he risk [of rupture or dissection] is primarily related to further enlargement of the aneurysm which can be tracked with an annual CT scan." Snookal Dec. at ¶ 16, Exh 5. | Plaintiff's opposition does not raise a genuine issue of fact based on his own admission. *See* DUF 14.<br><br>Plaintiff's citation to additional evidence does not create a genuine issue of fact, because it merely adds additional, immaterial details about how any expansion of the aortic |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | "The existence of a rupture dissection is ten times less than one percent." Dr. Marmureanu Depo Tr 36:6-8.<br><br>Mr. Snookal's dilated aortic root was being managed/treated with medications Losartan and Amlodipine which are used to prevent any enlargement of the dilation. Khan Dep. Tr. 27:23 – 28:1; 29:2-5; 31:10 – 32:4.<br><br>"The existence of a rupture dissection is ten times less than one percent." Dr. Marmureanu Depo Tr 36:6-8.<br><br>Dr. Khan informed Chevron that the risk of Mr. Snookal having a serious cardiac event would be "primarily related to further enlargement of the aneurysm which can be tracked with an annual CT scan."<br><br>Mr. Snookal's risk of dissection or rupture can also be prevented by controlling his blood pressure via medications which Mr. Snookal was already taking. Khan Dep. Tr. at 27:23 – 29:5 | root could be monitored for changes, but does not dispute that a rupture or dissection is unpredictable; or that triggers for a rupture or dissection can be isolated. |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | | |
| 15. Any medical evacuation in Escravos would depend on the availability of a helicopter and whether the weather permitted an evacuation, so a rupture or dissection in Escravos would likely result in Plaintiff's death.<br><br>Asekomeh Decl. ¶¶ 6-7, 9. | Disputed | Fixed wing planes are also used to regularly transport employees in and out of the location. Snookal Decl. at ¶21; Akintunde Dep. Tr. at 33:19-34:14. | Plaintiff's opposition is immaterial and does not create a genuine dispute of fact. Plaintiff has proffered no evidence indicating that the fixed wing planes, if any, are more available or provide better emergency access to Escravos than by helicopter or by boat. |
| 16. If Plaintiff had experienced a rupture or dissection while he was inspecting and operating equipment, or supervising the operation and inspection of heavy machinery, he could have injured other employees who likewise have limited access to evacuation for medical treatment, leading to serious impairment or even death.<br><br>Asekomeh Decl. ¶ 12. | Disputed | Assumes Facts Not in Evidence (FRE 103).<br><br>The REM position does not require the operation of equipment. The position is not considered a safety-sensitive position as defined in the Chevron "Medical Examination Program." Snookal Decl. ¶19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions Go-308" for the REM Position).<br><br>The REM position is an "Office Based Job" which does not require the operation or direct supervision of equipment. *Id*.<br><br>Mr. Snookal's dilated aortic root posed no threat to others. Akintunde Dep. Tr. at 40:19-24; Marmureanu Decl. at Exh. 11 ("Mr. | Objection to Plaintiff's Exhibit 7: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff never assumed the REM position and lacks personal knowledge regarding its requirements. Dr. Asekomeh testified that the REM position "almost always . . .has to step into the field." (Asekomeh Dep. Tr., 74:18-76:19.) Plaintiff also did not and cannot authenticate the document attached to his declaration as Exhibit 7.<br><br>Dr. Akintunde's deposition testimony at 40:19-24 does not support the fact stated. |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | Snookal could have safely proceeded with his work in Nigeria, provided that the standard annual surveillance remains in place. There are no medical grounds to consider him unfit for duty or to classify his condition as a 'direct threat'. . . ") | Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 17. As part of the MSEA procedure, independent internal medicine provider Dr. Irving Sobel examined Plaintiff in July 2019 and completed the "Standard Medical Suitability for Expatriate Assignment History & Physical Examination" form, recommending that Plaintiff's cardiologist provide a letter to clear Plaintiff for duty in Escravos, Nigeria.<br><br>Pl. Dep. Tr., 45:25-46:24, Ex. E-3; Pl. Dep. Tr., 56:21-58:4, 59:15-20. | Undisputed | Defendant's citation to Plaintiff's Dep. Tr at 45:25-46:24 do not support the facts stated. | This fact is undisputed. |
| 18. On July 29, 2019, Plaintiff's cardiologist, Dr. Steven Khan, prepared a letter regarding Plaintiff's heart condition stating that it was generally "safe for [Plaintiff] to work in Nigeria with his heart condition," without any reference to Escravos in particular.<br><br>Pl. Dep. Tr., 59:21-60:8, Ex. E-4. | Undisputed | | |
| 19. Dr. Khan did not have personal knowledge of the | Disputed. | Dr. Khan specifically documented his | Plaintiff's opposition does not raise a genuine |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| conditions in the Escravos region of Nigeria. Dr. Khan worked in Los Angeles, California, and was not told how remote Escravos is, nor the availability of or access to medical services there.<br><br>Khan Dep. Tr. 8:20-9:6; 30:15-31:1. | | awareness of the remoteness of the location, writing to Chevron that "I understand [Mr. Snookal] is applying for a job in a rural or remote area of Nigeria" when he supported Mr. Snookal's fitness for duty for the REM position. Snookal Decl. at ¶ 16, Exhibit 5. | issue of fact based on Dr. Khan's own admission. *See* DUF 19.<br><br>Objection to Plaintiff's Exhibit 5: Hearsay (FRE 802). |
| 20. Based on an assessment of Plaintiff's medical records from his visit with Dr. Sobel, as well as his first-hand experience working in Escravos, Dr. Eshiofe Asekomeh, who was then the Occupational Health Physician at the Chevron Hospital in Warri, Nigeria, concluded on August 15, 2019 that Plaintiff was not fit for duty in Escravos due to the remote location, but stated that Plaintiff could be cleared for assignment in Lagos.<br><br>Asekomeh Decl. ¶¶ 9, 11; *see also* Pl. Dep. Tr., 64:13-65:7, Ex. E-5. | Disputed. | Objection to Asekomeh's Declaration at 9: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802).<br><br>Chevron's form GO-308 "Physical Requirements and Working Conditions" makes no differentiation between Lagos, Abuja, Warri, Escravos or Onne locations. Snookal Decl. at 19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions GO-308" for the REM Position).<br><br>Dr. Stephen Frangos, then Chevron U.S.A.'s Regional Health and Medical Manager serving the Americas region, weighed in on the decision, noting that "the patient is low risk for a major cardiac event." In response to this email thread, Dr. Olurunfemi Pitan, then Chevron's Occupational | Plaintiff's opposition and objections are meritless, and fail to create a genuine dispute of fact. Dr. Asekomeh is an expert witness who may base his opinion on facts he has been made aware of or personally observed. (FRE 703.)<br><br>Dr. Asekomeh stated in his declaration that he determined Plaintiff was fit for duty in Lagos, but not in Escravos, as well as the bases for his determination. (Asekomeh Decl. ¶¶ 9, 11.) Plaintiff cannot dispute the fact of Dr. Asekomeh's determination and the reasons Dr. Asekomeh gave for his determination.<br><br>Objection to Plaintiff's Exhibits 7 and 27: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | Health Physician Head for the "Nigeria Mid Africa Strategic Business Unit" instructed Dr. Asekomeh to "kindly decline a job transfer to Escravos" for Mr. Snookal. Leal Decl. at ¶ 13, Exhibit 27. | Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the document attached to his declaration as Exhibit 7, and the document attached to Ms. Leal's declaration at Exhibit 27. |
| 21. Dr. Asekomeh, a medical doctor with a Bachelor of Surgery and residency training in internal medicine, has never been an employee of Chevron U.S.A.<br><br>Asekomeh Decl. ¶ 3; Asekomeh Dep. Tr., 18:21-19:6. | Undisputed. | | |
| 22. In making his assessment of Plaintiff's medical clearance, Dr. Asekomeh consulted with two cardiologists in Nigeria who were familiar with Plaintiff's type of aortic condition – Dr. Victor Adeyeye in Warri and Dr. Ujomoti Akintunde in Lagos – who independently reviewed Plaintiff's medical records based on their education, experience, and knowledge of existing medical literature, and opined that if Plaintiff were to experience an aortic event in Escravos, it would likely lead to his death, given the limited medical resources in Escravos.<br><br>Asekomeh Decl. ¶ 9; Transcript of Dr. Ujomoti Akintunde ("Akintunde Dep. | Disputed. | Objection to Asekomeh's Declaration at ¶9: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802). Objection as to Dr. Akintude: Not Qualified to Express an Expert Opinion as to Plaintiff's Condition (FRE 701, 702).<br><br>Neither Dr. Adeyeye nor Dr. Akintunde have ever actually treated a patient who had a ruptured or dissected dilated aortic root. Adeyeye Dep. Tr. 19:10-15; 22:7-14. | Drs. Asekomeh, who during the relevant time period was an Occupational Health Physician at Chevron Hospital in Warri, Nigeria, is an expert witness who may rely on the opinions of other expert witnesses, i.e., cardiologists Drs. Adeyeye and Akintunde, in forming his opinion. (FRE 703; *see also* DUF 21.) Likewise, Dr. Akintunde was a medical doctor consulted by Dr. Asekomeh for her education, experience, and knowledge of |

| **Undisputed Fact** | **Status** | **Opposition** | **Reply** |
|---|---|---|---|
| Tr."), 66:6-67:12, 67:20-68:18, 70:6-22, 81:25-82:24. | | Akintunde Dep. Tr. 19:1-6.<br><br>Dr. Adeyeye had only ever seen one patient with Mr. Snookal's heart condition, and that was between 2010-2012. Adeyeye Dep. Tr. 19:10-15; 22:7-14.<br><br>Nigeria-based cardiologists, Drs. Adeyeye, Aiwuyo, and Akintunde all opined that Mr. Snookal was "low risk" of ever having a cardiac event. Leal Decl. at ¶ 13, Exh. 37. | existing medical literature in cardiology.<br><br>Plaintiff's opposition merely adds additional details about matters considered by the cardiologists Dr. Asekomeh consulted, and does not create a genuine dispute of fact.<br><br><u>Objection to Plaintiff's Exhibit 37</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |
| 23. Dr. Asekomeh also took into account the remote location of the assignment, Escravos, which was a particularly dangerous work location for a person with Plaintiff's condition because Escravos does not have a healthcare system infrastructure to handle complex cases, and that an aortic event in Escravos could lead to Plaintiff's death or the death or injury of others because of the lack of access to adequate medical care and timely medical evacuations in Escravos.<br><br>Asekomeh Decl. ¶¶ 9-12; *see also* Pl. Dep. Tr., 81:1-6. | Disputed | Objection: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802); Not Qualified to Express an Expert Opinion as to Plaintiff's Condition (FRE 701, 702).<br><br>Mr. Snookal's risk of a serious cardiac event was "negligible compared to the general population," and the REM position was a desk job that would not place himself or others in danger. Dr. Marmureanu Decl. at Exh. 11 ¶7; Dr.Levy Dep. Tr. at 75: 14-76:2; 93:21-94:9; 94:11-95:3; | Dr. Asekomeh, who during the relevant time period was an Occupational Health Physician at Chevron Hospital in Warri, Nigeria, is an expert witness who may base his opinion on facts he has been made aware of or personally observed. (FRE 703; *see also* DUF 21.) Plaintiff cannot dispute that Dr. Asekomeh considered his personal knowledge regarding the conditions in Escravos (Asekomeh Decl. ¶¶ 4-7), his review of Plaintiff's medical records (*id.* at ¶ 8), and the facts relating to risks associated with Plaintiff's heart |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | 95:10-25; Dr. Marmureanu Decl. at Exh. 11 at ¶ 8; Asekomeh Dep. Tr. at 74:24-76:19; Snookal Decl. ¶ 19, Exh. 7. | condition (*id.* at ¶¶ 9-12), making the MSEA determination, because this is a matter of Dr. Asekomeh's personal knowledge.<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702).<br><br>Dr. Marmureanu's assessment of the risk is irrelevant to the fact of Dr. Asekomeh's determination on Plaintiff's MSEA and the bases for the determination. Dr. Marmureanu is also relying on in admissible and inaccurate information from Plaintiff regarding the REM position being a "desk job." *See* Reply to DUF 16.<br><br>Objection to Plaintiff's Exhibit 7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the document attached to |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | | his declaration as Exhibit 7. |
| 24. When Plaintiff appealed Dr. Asekomeh's determination, Dr. Scott Levy, who was then Chevron U.S.A.'s Regional Medical Manager serving the Europe, Eurasia, Middle East & Africa region, communicated with Dr. Khan to facilitate discussion with the embedded medical team in Nigeria regarding Plaintiff's medical clearance to further consider whether Plaintiff could safely assume the expatriate assignment in Escravos.<br><br>Pl. 85:12-86:7, 87:7-88:4; Levy Decl. ¶ 5, Ex. B; Asekomeh Decl. ¶ 12. | Disputed | Disputed that Dr. Asekomeh was the person who made the determination regarding Mr. Snookal's fitness fo duty.<br><br>To the contrary, Drs. Levy and Frangos, both Chevron U.S.A. employees, both weighed in on the decision to deem Mr. Snookal "not fit for duty" and chose to uphold same, and Dr. Olorunfemi Pitan instructed Dr. Asekomeh to decline Mr. Snookal's transfer. Leal Decl. at ¶ 13, Exh. 27<br><br>Dr. Levy did not merely "facilitate the discussion with the embedded medical team in Nigeria" but conducted a "rereview" and had the power to overturn the decision. Leal Decl. at ¶ 13, Exh. 31, 33. | Plaintiff did not dispute that Dr. Asekomeh made the determination on Plaintiff's MSEA. *See* DUF 20, 22.<br><br><u>Objection to Plaintiff's Exhibits 27, 31, and 33</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibits 27, 31, and 33, and impermissibly proffers hearsay contained within these documents for the truth of the matter asserted. |
| 25. In response to an inquiry by Dr. Levy following Plaintiff's MSEA determination, Dr. Khan indicated by email that, based on a published study in 2002, Plaintiff's aneurysm (i.e., aortic condition) had "the risk of rupture or dissection [that] is 2% per year," but did not address the lack of | Disputed | Dr. Levy did not ask Dr. Khan to address the purported lack of resources in Escravos. Levy Decl., Ex. B.<br><br>Regardless, Dr. Khan specifically noted that the REM position in | Plaintiff's opposition does not raise a genuine issue of fact based on Dr. Khan's own admission. *See* DUF 19.<br><br>Plaintiff's opposition merely adds additional, immaterial details about |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| resources in Escravos to provide treatment in the event of such an occurrence.<br><br>Pl. Dep. Tr., 84:18-85:14, Ex. E-6; Levy Decl., ¶ 5, Ex. B. | | question was "located in a remote or rural area of Nigeria" and still affirmed that it would be safe for Mr. Snookal to work there. He also concluded in the email that the risk of rupture or dissection was "likely less than 2% per year" Snookal Decl. at ¶ 16, Exh. 5. | Dr. Khan's lack of knowledge about Escravos.<br><br>Objection to Plaintiff's Exhibit 5: Hearsay (FRE 802). |
| 26. Dr. Levy discussed Dr. Khan's email with Dr. Asekomeh, who reviewed the information provided and maintained his determination that Plaintiff could not be cleared for duty in Escravos, even with the low but unpredictable risk of an incident, because a rupture or dissection occurring would most certainly result in death due to Escravos's lack of necessary medical resources and immediate emergency responses.<br><br>Levy Decl. ¶ 6; *see also id.* at ¶ 5, Ex. B; Asekomeh Decl. ¶ 12. | Disputed | Objection: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE103); and Hearsay (FRE802).<br><br>The REM position does not require the operation of equipment, heavy or otherwise. The position is not considered a safety-sensitive position as defined in the Chevron "Medical Examination Program." Snookal Decl. ¶19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions Go-308" for the REM Position).<br><br>The REM position is an "Office Based Job" which does not require the operation or direct supervision of equipment. *Id.*<br><br>Fixed wing planes are also regularly used to transport employees in | Objection to Plaintiff's Exhibits 7, 27, 31, 33: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the documents attached to Plaintiff's declaration as exhibit 7 and Ms. Leal's declaration as exhibits 27, 31, and 33, and impermissibly proffers hearsay contained within these documents for the truth of the matter asserted.<br><br>Plaintiff never assumed the REM position and lacks personal knowledge regarding its requirements. FRE 602. Dr. Asekomeh testified that the REM position "almost always . . .has to step into the |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | and out of the location, including to transport them when rotating in or out of their assignment. Snookal Decl. ¶21; Akintunde Dep. Tr. 33:19-34:14.<br><br>Drs. Levy and Frangos, both Chevron U.S.A. employees, both weighed in on the decision to deem Mr. Snookal "not fit for duty" and chose to uphold same, and Dr. Olorunfemi Pitan instructed Dr. Asekomeh to decline Mr. Snookal's transfer. Leal Decl. at ¶ 13, Exh. 27 | field." (Asekomeh Dep. Tr., 74:18-76:19.) Plaintiff also did not and cannot authenticate the document attached to his declaration as Exhibit 7.<br><br>Plaintiff's opposition is immaterial and does not create a genuine dispute of fact. Plaintiff has proffered no evidence indicating that the fixed wing planes, if any, are more available or provide better emergency access to Escravos than by helicopter or by boat. |
| 27. Although a relocation of the position was considered, the REM position could not have been performed in Lagos, because the essential duties of the position require on-site supervision and interaction with personnel and equipment in Escravos.<br><br>Pl. Dep. Tr., 83:22-84:17; Levy Decl. ¶ 7. | Undisputed. | The local medical team "regularly" medevacs people from Chevron's Escravos, Nigeria refinery due to emergent medical issues, and there are approximately 300 annual medical evacuations annually in the region. Asekomeh Dep. Tr. at 39:9-21; see also Dr. Levy Dep. Tr. 24:20-25:9; Akintunde Dep. Tr. 32:14-33:7. | This fact is undisputed. Plaintiff's opposition merely adds additional context regarding the number of medical evacuations within the year out of Escravos. |
| 28. Plaintiff's offer for the REM position was rescinded on or about September 4, 2019, based on the local medical team's decision which deemed him unfit for duty in Escravos, and the fact | Disputed. | Disputed that the decision was "based on the local medical team's decision."<br><br>Dr. Frangos, a Chevron | Plaintiff did not dispute that Dr. Asekomeh made the determination on Plaintiff's MSEA. *See* DUF 20, 22. |

| Undisputed Fact | Status | Opposition | Reply |
| --- | --- | --- | --- |
| that the REM position could not be moved to Lagos where Plaintiff had medical clearance.<br><br>Pl. Dep. Tr., 89:3-11, 89:20-90:14, Ex. E-7; Pl. Dep. Tr., 96:5-11, 101:16-19; Asekomeh Decl. ¶¶ 11-12; Levy Decl. ¶ 7. | | USA employee weighed in on the initial decisión to deem Mr. Snookal "not fit for duty," and Dr. Olorunfemi Pitan thereafter instructed Dr. Asekomeh to decline Mr. Snookal's transfer. Leal Decl. at ¶ 13, Exh. 27.<br><br>Dr. Levy also conducted a "rereview" of the decisoin and had the power to overturn the decisión, but declined to do so. Leal Decl. at ¶ 13, Exh. 31, 33. | Objection to Plaintiff's Exhibits 27, 31, and 33: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibits 27, 31, and 33, and impermissibly proffers hearsay contained within these documents for the truth of the matter asserted. |
| 29. No Chevron U.S.A. employee had any final say in whether Plaintiff was ultimately awarded the REM position in Escravos or could override the decision of the host medical team, including Dr. Levy and Dr. Stephen Frangos, who was then Chevron U.S.A.'s Regional Health and Medical Manager serving the Americas region.<br><br>Levy Decl. ¶ 8; Levy Dep. Tr., 28:8-29:3, 30:16-31:8, 34:18-35:9; *see also* Complaint, ¶ 18. | Disputed. | The host location (Nigeria) would "review the person for suitability" Levy Dep. Tr. 29:1-3<br><br>Dr. Levy is involved when the employee challenges the host's decision. Levy Dep. Tr. 30:11-15<br><br>Defendant's reference to Complaint, ¶ 18 does not support the facts.<br><br>See also DUF 18 above. | Plaintiff's opposition is immaterial and does not create a genuine dispute of fact. Plaintiff has proffered no evidence actually contradicting that no Chevron U.S.A. employee had a final say in whether Plaintiff was ultimately awarded the REM position. |
| 30. Aside from the rescinded REM position, Plaintiff does not contend any other decision was based on discrimination because of his heart condition.<br><br>Pl. Dep. Tr., 197:7-25; | Disputed. | Pursuant to FRE 701, Mr. Snookal's deposition testimony regarding what constitutes "discrimination" is inadmissible because it involves impermissible | DUF 30 pertains to the acts which Plaintiff believed were discriminatory, and does not require a legal conclusion.<br><br>Plaintiff's citation to a |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| 203:15-17. | | conclusions of law.<br><br>Chevron also subjected Mr. Snookal to disability discrimination by "failing to select him for jobs to which he applied, and subsequently demoting him to a non-supervisory role." (Complaint at ¶ 41); see also Snookal Decl. at ¶¶ 23-27. | self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"). |
| 31. The only basis for Plaintiff's belief that the denial of the REM position was discriminatory is Plaintiff's belief that the local medical team in Nigeria did not do their due diligence by considering the study from 2002 provided by Dr. Khan referencing the approximate 2% risk of incident with Plaintiff's aortic condition and not considering other studies.<br><br>Pl. Dep. Tr., 97:3-98:15, 109:8-23. | Disputed. | Misstates Plaintiff's testimony. Assumes Facts Not in Evidence (FRE 103); testimony calls for a legal conclusion (FRE 701). Plaintiff testified: "In my opinion, I don't believe that the people that evaluated me did their due diligence in understanding the condition that I had and the effects that a remote location would have. That's what I meant by that." Snookal Dep. Tr. 97:3-9.<br><br>Plaintiff does not believe that the denial of the REM position was due only to "the local medical team in Nigeria." See e.g., DUF 28. | Plaintiff's opposition selectively cites only a portion of Plaintiff's testimony, without taking the entire cite in context. *See* DUF 31. Plaintiff's belief as to whether an action was discriminatory does not require a legal conclusion. |
| 32. Dr. Khan did not reference any study other than the study in 2002.<br><br>Pl. Dep. Tr., 84:18-85:14, Ex. | Disputed. | Misstates the cited facts. Objection, Assumes Facts Not in Evidence (FRE 103). | Plaintiff's opposition does not actually contradict DUF 32.<br><br><u>Objection to Plaintiff's</u> |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| E-6. | | The email in question from Dr. Khan to Dr. Levy stated: "Finally, the studies of risk of rupture are fairly old (2002) and treatment has improved as has our understanding of aortic aneurysms." Snookal Decl. at ¶ 16, Exh. 5. | Exhibit 5: Hearsay (FRE 802). |
| 33. Aside from Dr. Levy and Dr. Asekomeh, Plaintiff does not contend that anyone else discriminated against him on the basis of his disability.<br><br>Pl. Dep. Tr., 203:7-14. | Disputed. | There were multiple additional decisionmakers involved in the discriminatory decision to deem Mr. Snookal not fit for duty including without limitation: Dr. Stephen Frangos, Dr. Paul Arenyeka, and Dr. Olorunfemi Pitan. See DUF 28.<br><br>Andrew Powers of Chevron U.S.A.'s Human Resources also failed to take measures to provide Mr. Snookal with a reasonable accommodation for his disability after the REM position was rescinded, and failed to investigate his discrimination complaint. Mr. Powers' only attempts to "investigate" Mr. Snookal's discrimination complaint were to ask Dr. Levy for a justification for why the decision to rescind the REM position was | DUF 28 does not support the fact claimed by Plaintiff in his opposition.<br><br>Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>Plaintiff's Opposition fails to raise a genuine dispute of material fact regarding Plaintiff's own admission during his deposition.<br><br>Objection to Plaintiff's Exhibits 6, 29, 30: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | made, not to evaluate whether the decision was made for an improper/discriminatory reason.<br><br>Snookal Decl. ¶18 and Exh. 6; Powers Dep. Tr. 46:15-48:2 and Exh. 17-3; Powers Dep. Tr. 49:13-52:11 and Exh. 17-3 CUSA000539; Powers Dep. Tr. 136:5-25, Exh. 17-12 (Email from Andrew Powers to medical team in Nigeria at CUSA000650). Powers Dep. Tr. 136:5 – 137:16, Exh. 17-12 (Email from Andrew Powers to medical team in Nigeria at CUSA000650).<br><br>Leal Decl. at ¶ 13, Exh. 29 and 30. Powers depo 95:21-98:3 and Exh. 17-5 (Andrew Powers Email to Mark Snookal Re: Medical Team Findings at CUSA000542); Snookal Decl. ¶18, Exh. 6 (CUSA000542-543). | knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibits 29 and 30, and impermissibly proffers hearsay contained within Exhibits 6, 29, and 30 for the truth of the matter asserted. |
| 34. Although Plaintiff's offer to work in Escravos was rescinded and his former position as the IEAR Team Lead in El Segundo had been backfilled due to the offer, Chevron U.S.A. stated it would ensure that Plaintiff would continue to have a position in El Segundo.<br><br>Pl. Dep. Tr., 92:21-94:7, Ex. E-8. | Undisputed. | | |
| 35. Chevron U.S.A. worked with Plaintiff to find alternative job positions he | Disputed as to the second bullet point. | Misstates the facts. Assumes Facts Not in Evidence (FRE 103). | Plaintiff's opposition is semantic in nature and does not create a |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| was qualified for:<br><br>• On or about September 5, 2019, Plaintiff met with his supervisor at the El Segundo facility, Austin Ruppert, HR Manager Andrew Powers, and HR Business Partner Thalia Tse, when they informed him they would look to identify open positions he may be qualified for and encouraged Plaintiff to do the same.<br>• That day, Plaintiff emailed Mr. Ruppert regarding "three possible positions" for himself that he found after examining Chevron U.S.A.'s posted job openings.<br>• Dr. Levy outlined approximately 40 other geographic regions at which Plaintiff could obtain medical clearance for an expatriate assignment and approximately 26 other geographic regions at which, following a specific assessment, Plaintiff may be able to obtain medical clearance.<br><br>Pl. Dep. Tr., 89:3-11, 89:20-90:14, Ex. E-7; Pl. Dep. Tr., 109:24-110:17, Ex. E-10; Pl. Dep. Tr., 113:18-114:19. | | Exh. E-10 does not say "three possible positions for him." To the contrary, Plaintiff points out that he saw three postings for possible positions, but he would be considered "unfit" for the first and not qualified for the third position.<br><br>Mr. Snookal had to search for and identify alternative positions for himself. This was not something with which Chevron U.S.A.'s Human Resources provided him assistance. Also, though Mr. Snookal continued to search for other rotational expatriate assignments in locations which Dr. Levy deemed acceptable, Mr. Snookal was never able to find any. Snookal Decl. at ¶¶ 23-26. | genuine dispute of fact as DUF cites text directly from Plaintiff's email. |
| 36. Plaintiff applied to the El Segundo Routine Maintenance General Team Lead, El Segundo Operating Assistant, and Maintenance Change Operating Assistant positions based in El Segundo, and did not receive an offer for any of these positions. | Undisputed. | | |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| Pl. Dep. Tr., 123:14-19; 126:18-127:11, 131:21-132:13, Ex. E-12; Complaint ¶ 29. | | | |
| 37. Chevron U.S.A.'s hiring process involves a robust metrics-based screening model with peer and HR oversight:<br><br>• Open job postings have a job owner who makes the hiring decision and is at times also the reporting supervisor for the position.<br>• Although the job owner is the ultimate decisionmaker in filling the open role, the candidate selection usually occurred during group meetings which included HR personnel who ensured Chevron U.S.A.'s policies were being followed in the selection process.<br>• Candidates interviewed during the selection process were rated numerically based on selection criteria such as Functional Experience, People Development, Leadership Behaviors, Stakeholder Management (Internal/External), Development Fit, and Operational Excellence.<br><br>Declaration of Andrew Powers ("Powers Decl.") ¶¶ 3-4; *see also* Pl. Dep. Tr., 112:1-113:17, 134:25-135:23. | Disputed. | Defendant's supporting evidence does not support the all the facts herein. Objection: Assumes Facts not in Evidence (FRE 103); Lacks Foundation (FRE 602).<br><br>Plaintiff's deposition testimony referenced is not supportive of Defendant's proposition, e.g. at Snookal Dep. Tr.112:4-16, he testified he did not know if the job owner was the hiring supervisor for the opening. At Snookal Dep. Tr. at 112:20-113:5, he testified that the owner of the position is not always the supervisor.<br><br>Also, though Chevron U.S.A. does have a candidate ranking system, the hiring managers can ultimately override the purely numerical outcomes in favor of candidates they prefer despite having a slightly lower ranking. In fact, before Chevron U.S.A. became aware of Mr. Snookal's disability, they applied | Plaintiff's objections are meritless. Mr. Powers has personal knowledge of the facts attested in his capacity as the Senior Advisor to the Chief Human Resources Officer and formerly as an HR Business Partner for Chevron U.S.A. (Levy Decl. ¶ 1.)<br><br>Plaintiff's citations to his deposition testimony do not contradict DUF 37, which is supported both through deposition testimony by Mr. Powers and Plaintiff, as well as Mr. Powers's declaration.<br><br><u>Objection to Plaintiff's Exhibit 36</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibit 36, and impermissibly proffers hearsay for the truth of the matter asserted. |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | this principle to his benefit to select him for the REM position despite having a slightly lower numerical rating than the other applicant, Amir Zaheer. Leal Decl. at ¶ 13, Exh. 36. | |
| 38. At all times relevant to Plaintiff's claims, Chevron U.S.A. maintained compliant policies regarding Equal Employment Opportunity and prohibiting discrimination or retaliation in the workplace.<br><br>Powers Decl. ¶ 5, Ex. D. | Undisputed. | | |
| 39. All job owners and personnel involved in the selection process are required to undergo regular training on Chevron U.S.A.'s Equal Employment Opportunity and anti-discrimination and retaliation policies.<br><br>Powers Decl. ¶ 6. | Disputed. | Thalia Tse of Defendant's Human Resources testified that she did not know of any state law that prohibits workplace discrimination based on actual or perceived disability (Deposition Transcript of Thalia Tse ("Tse Dep. Tr.") at 27:1-10); that she was did not receive training with respect to Chevron's human resources practices (Tse Dep. Tr. at 28:8-23); that she was not familiar with Chevron's policy relating to US employees with disabilities (Tse Dep. Tr. at 75:8-19); and that she did not refer to the disability discrimination policy when she learned of Mr. Snookal's | Plaintiff's opposition to is irrelevant and does not contradict DUF 38. Ms. Tse's deposition testimony cited by Plaintiff only regards training of HR business partners upon hire. Whether Ms. Tse consulted HR Policy 410 is irrelevant to DUF 39.<br><br>Plaintiff's opposition also miscites the Ms. Tse's testimony. Ms. Tse testified that was instructed to learn Chevron U.S.A.'s policies and know how to access the policy when needed. (Pl. Ex. 16 ["Tse Dep. Tr."], 28:8-23, 75:8-19.) |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| | | disability discrimination complaint (Tse Dep. Tr. at 76:21-77:3). | |
| 40. Chevron U.S.A. created the Reliability Change Operating Assistant role for Plaintiff which, like the El Segundo Operating Assistant role which Plaintiff applied for, did not have direct reports and paid the same as Plaintiff's prior IEAR Team Lead position.<br><br>Pl. Dep. Tr., 168:11-16, 170:13-16, 173:6-16. | Undisputed. | Though this is factually undisputed, Defendant's point is misleading. The Reliability Change Operating Assistant Role for which Plaintiff applied is not the correct comparator for whether the Operating Assistant Role they created him constituted a demotion. Rather, it would be the REM Position which was rescinded from him, at the very least, Plaintiff's prior position as the IEAR lead. | This fact is undisputed.<br><br>One of Plaintiff's claimed issues in dispute is whether the Reliability Change Operating Assistant Role was considered a comparable position. It is undisputed that Plaintiff was interested in and applied for the El Segundo Operating Assistant role, which did not have direct reports. Such evidence is relevant to show that the comparability and desirability of the roles Plaintiff applied for or received was not based on whether the roles had direct reports. |
| 41. In or around 2020, after Chevron U.S.A. went through layoffs and restructured, and the Reliability Change Operating Assistant position was eliminated, Plaintiff was offered and accepted the IEAR Team Lead position he previously held, even though he had not applied.<br><br>Pl. Dep. Tr., 175:12-176:20, 192:21-193:6. | Undisputed. | | |
| 42. On or about August 4, 2021, Plaintiff resigned from his employment with Chevron U.S.A. effective August 20, 2021, for the stated reason that he was leaving for an opportunity | Disputed. | Objection: Assumes Facts Not in Evidence (FRE 103).<br><br>Plaintiff sent Chevron a letter dated August 4, | Plaintiff's objections are meritless, as Plaintiff admitted these facts during his deposition. Plaintiff's opposition does not |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| with significantly increased responsibility.<br><br>Pl. Dep. Tr., 223:2-10, 224:7-19, Ex. E-17; Pl. Dep. Tr., 230:12-231:1, Ex. E-18; Pl. Dep. Tr., 231:2-16. | | 2021 notifying Chevron that he was resigning his position effective August 20, 2021. Snookal Decl. at ¶¶28-30, Exh. 9-10. He does not state that he is leaving for an opportunity with significantly increased responsibility. | actually dispute DUF 42, and ignores Ex. E-18 and Plaintiff's admission during his deposition that "It is a correct statement." (Pl. Dep. Tr. 231: 13-16.) |
| 43. The reason for Plaintiff's resignation was that he felt that his career was not progressing as he would like at Chevron U.S.A.<br><br>Pl. Dep. Tr., 232:9-233:14, Ex. E-19; Pl. Dep. Tr., 235:5-236:10. | Disputed. | Plaintiff resigned his employment because of Chevron's arbitrary, systemic discrimination against him, resulting in debilitating depression and financial stress. Snookal Decl. ¶¶ 28-30, Exh. 9-10. | Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>Plaintiff testified that the contents of Ex. E-19 were accurate. (Pl. Dep. Tr. 232:9-233:14; *see generally* DUF 41.) |
| 44. Plaintiff's supervisors, Austin Ruppert and Greg Curtin, were very supportive of him during his employment at Chevron U.S.A.<br><br>Pl. Dep. Tr., 236:11-14. | Undisputed. | | |
| 45. No one at Chevron U.S.A. asked Plaintiff to leave, and Mr. Curtin told Plaintiff that he preferred Plaintiff to stay. | Undisputed. | | |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| Pl. Dep. Tr., 242:17-25. | | | |
| 46. Dr. Levy was not an officer, director, or managing agent of Chevron U.S.A. Dr. Levy supervised a team of four as the embedded medical team in London, which included a nurse and three administrative positions who assisted with logistics, such as in scheduling fitness-for-duty exams for people on an expatriate assignment passing through London. Dr. Levy did not have authority or discretion to create or set policies for Chevron U.S.A., which were set by the Center of Excellence.<br><br>Levy Dep. Tr., 26:13-28:5; Levy Decl. ¶ 9. | Disputed. | The fact that Dr. Levy has four direct reports is irrelevant.<br>Dr. Levy testified that he has the power to "influence" the "policies and protocols for how the [medical] evaluations are carried out and "evaluating the real-time risks based on location" of the expatriate assignment. He also "give[s] recommendations for policy setting for the fitness-for-duty program. . ." and "get[s] to create policies and protocols for medical evacuations" for expatriates, well as oversees the medical evacuations in real time. Levy Dep. Tr. at 22:21-24:19. | Plaintiff's Opposition fails to raise a genuine dispute of material fact as to whether Dr. Levy was an officer, director, or managing agent of Chevron U.S.A., and merely provides additional details regarding Dr. Levy's job duties. Plaintiff cannot dispute that Dr. Levy did not have authority or discretion to create or set policies for Chevron U.S.A. *See* DUF 46. |
| 47. Dr. Frangos was not an officer, director, or managing agent of Chevron U.S.A. Like Dr. Levy, Dr. Frangos did not have authority or discretion to create or set corporate policies for Chevron U.S.A., which were set by the Center of Excellence.<br><br>Levy Decl. ¶ 10. | Disputed | The fact that Dr. Levy has four direct reports is irrelevant.<br>Dr. Levy testified that he has the power to "influence" the "policies and protocols for how the [medical] evaluations are carried out and "evaluating the real-time risks based on location" of the expatriate assignment. He also "give[s] recommendations for policy setting for the fitness-for-duty | Objection: Irrelevant (FRE 402).<br><br>References to Dr. Levy's job responsibilities are irrelevant to the fact at issue, which regards Dr. Frangos.<br><br>Plaintiff's Opposition fails to raise a genuine dispute of material fact as to whether Dr. Frangos was an officer, director, or managing agent of Chevron |

| Undisputed Fact | Status | Opposition | Reply |
| --- | --- | --- | --- |
| | | program. . .” and “get[s] to create policies and protocols for medical evacuations” for expatriates, well as oversees the medical evacuations in real time. Levy Dep. Tr. at 22:21-24:19.<br><br>Per Dr. Frangos’ own LinkedIn page, while he was the Regional Medical Manager for North and South Americas from August 1999 – June 2022, he was the “[r]esponsible for the development and implementation of Occupational Health services for business operations with more than 25,000 employees, including oversight of ten occupational health clinics and 6,000 employees enrolled in medical surveillance programs.” Leal Decl. at ¶ 14, Exh. 38.This level of responsibility and policy-setting authority indicates that Dr. Frangos was a managing agent. | U.S.A., and merely seeks to use inadmissible hearsay to prove the truth of the matter asserted. Plaintiff cannot dispute that Dr. Frangos did not have authority or discretion to create or set policies for Chevron U.S.A. *See* DUF 47.<br><br>Objection to Plaintiff’s Exhibit 48: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal’s declaration as exhibit 48, and impermissibly proffers hearsay contained within for the truth of the matter asserted. |
| 48. Andrew Powers was not an officer, director, or managing agent of Chevron U.S.A. In 2019, Mr. Powers led the human resources operations at the El Segundo Refinery and supervised five HR personnel. Mr. Powers only administered Chevron did not conduct core business activities for Chevron U.S.A. | Disputed. | As the Senior Human Resources Manager at Chevron U.S.A.’s El Segundo Refinery, Mr. Powers was a managing agent in charge of “supervising a team of HR business partners, a labor relation advisor, | Plaintiff’s Opposition fails to raise a genuine dispute of material fact as to whether Mr. Powers was an officer, director, or managing agent of Chevron U.S.A., and merely provides additional |

| Undisputed Fact | Status | Opposition | Reply |
|---|---|---|---|
| and did not have any responsibilities outside of the human resources department. Mr. Powers did not perform any work relating to the creation, drafting, or establishment of corporate policies. Mr. Powers did not exercise any independent authority or discretion to determine, direct, or affect company policy, procedures, rules, guidelines, or principles for Chevron U.S.A.<br><br>Powers Dep. Tr., 22:13-23:6; Powers Decl., ¶ 7. | | an HR assistant, and . . . [his] primary responsibilities were to manage HR operations at a local level for the refinery" including "day-to-day counsel and policy administration for the HR VP's and overseeing the investigation of discrimination complaints. Powers Dep. Tr. at 28:19-30:7. | details regarding Mr. Powers's job duties. Plaintiff cannot dispute create a genuine dispute of fact that Mr. Powers was an officer, director, or managing agent of Chevron U.S.A. *See* DUF 48. |

**PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND GENUINE DISPUTES**

| Statement of Fact | Status | Opposition |
|---|---|---|
| 49. Defendant Chevron U.S.A. ("Chevron") promoted Plaintiff Mark Snookal ("Mr. Snookal") several times, including in 2011, 2013, 2016.<br><br>Declaration of Plaintiff Mark Snookal ("Snookal Decl.") ¶ 4. | Undisputed<br><br>Immaterial | |
| 50. Mr. Snookal would have received an additional 55% of his base salary as a location premium for the Reliability Engineering Manager ("REM") position in Escravos, Nigeria.<br><br>Snookal Decl. ¶5; see also the Transcript of the | Disputed as not in evidence<br><br>Immaterial | Objection: Lacks foundation/personal knowledge (Federal Rules of Evidence ["FRE"] 602); Hearsay (FRE 802); Best Evidence Rule (FRE 1002).<br><br>The document referenced by Mr. Powers in giving his testimony was not made a part of this record and is hearsay. No foundation was established that the document reviewed by Mr. Powers applied to Plaintiff and the REM position. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Deposition of Andrew Powers ("Powers Dep. Tr.") 31:5-11; 32:23 – 33:20 | | Plaintiff would only be eligible for a location premium if he worked in Escravos. (Powers Dep. Tr. 33:8-20.) Plaintiff would only be able to take the conditional or contingent REM position in Escravos if he successfully cleared a MSEA. *See* DUF 5. |
| 51. The REM position was a rotational assignment with a schedule of 28 days working in Escravos, Nigeria, and 28 days off to return home.<br><br>Snookal Decl. ¶5. | Disputed as not in evidence<br><br>Immaterial | Objection: Lacks foundation/personal knowledge (Federal Rules of Evidence ["FRE"] 602); Hearsay (FRE 802). |
| 52. Chevron advised Mr. Snookal that he was to have a medical examination by Dr. Irving Sobel, a doctor who Chevron selected to complete the medical evaluation form, titled, "Medical Suitability for Expatriate Assignment History & Physical Examination" (hereinafter "MSEA").<br><br>Snookal Decl. ¶8. | Undisputed.<br><br>*See* DUF 17. | |
| 53. In completing the MSEA paperwork, Dr. Sobel documented that Mr. Snookal was "fit for duty with restrictions."<br><br>Snookal Decl. ¶8; Transcript of Deposition of Dr. Scott Levy ("Levy Dep. Tr.") at 83:4-13. | Undisputed.<br><br>*See* DUF 17. | |
| 54. The only two duty restrictions which Dr. Sobel indicated were (1) no heavy lifting over 50 pounds and (2) to get a clearance letter from Dr. S. Khan, Mr. Snookal's treating cardiologist. | Undisputed.<br><br>*See* DUF 17. | |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Snookal Decl. ¶8;<br>Levy Dep. Tr. at 83:11-19, Exh. 12-E.<br><br>Dr. Sobel advised Plaintiff "You'll just need a letter from your cardiologist. This is what it should say, and then it should be fine."<br><br>Snookal Dep. Tr. at 59:4-11.<br><br>Dr. Sobel left Plaintiff a voice message telling him what Plaintiff's cardiologist, Dr. Khan needed to write in the letter clearing him for work in Nigeria.<br><br>Snookal Dep. Tr. at 60:2-19 | | |
| 55. Given the rotational schedule of the REM position, Mr. Snookal could and would have received the recommended treatment for his dilated aortic root at home in California without interruption.<br><br>Snookal Decl. ¶12; Khan Dep. Tr. at 31:10-32:4; 40:20-41:23. | Disputed as not in evidence<br><br>Immaterial | Objection: Lacks foundation/personal knowledge; speculation (FRE 602).<br><br>Whether Plaintiff could have continued his annual visits with his cardiologist in California if he had taken on the REM position is speculative and irrelevant. Rupture or dissection due to Plaintiff's condition was not predictable. *See* DUF 14-15. |
| 56. The REM position did not have any requirement to lift more than 50 pounds.<br><br>Snookal Decl. ¶8; See also Levy Dep. Tr. 75:20-76:2. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not supported by evidence. Plaintiff did not make any attestation regarding a lifting requirement for the REM position. Dr. Levy did not testify about any 50-pound lifting requirement.<br><br>A 50-pound lifting restriction was not a factor in Plaintiff's MSEA determination of unfit for duty in Escravos. *See* DUF 20, 22-23, 26. |
| 57. Mr. Snookal provided a clearance letter to Chevron from his treating cardiologist, Dr. S. Khan, | Undisputed as to the fact of Dr. Khan providing a letter on Plaintiff's | Objection: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702). |

| Statement of Fact | Status | Opposition |
|---|---|---|
| which indicated that Mr. Snookal was "under [his] care for his heart condition. It is safe for [Mr. Snookal] to work in Nigeria with his heart condition. His condition is under good control and no special treatments are needed."<br><br>Snookal Decl. ¶9 and Exh. 3; Levy Dep. Tr. 84:7-19. | behalf; Disputed to the extent Dr. Khan's hearsay statement is offered to prove the truth of the matter asserted.<br><br>Immaterial | The local medical team in Nigeria makes the MSEA determination, not Dr. Khan. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Dr. Khan lacks knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 19, 25, 32. |
| 58. On August 23, 2019, Dr. Khan wrote an email to Dr. Scott Levy, Chevron's then Regional Medical Manager for the Europe, Eurasia, Mid-East, and Africa region, explaining that Mr. Snookal's thoracic aneurysm is "relatively small and considered low risk" and that given a number of factors applicable to Mr. Snookal, including that his "aneurysm has not shown any growth for 3 years, his risk may be lower than the published 2% number above" especially given that "the studies of risk of rupture are fairly old (2002) and treatment has improved as has our understanding of aortic aneurysms."<br><br>Snookal Decl. ¶16 and Exh. 5; Levy Dep. Tr. 62:5-63:21 and Exh. 12-C. | Undisputed as to the fact of Dr. Khan's email; Disputed to the extent Dr. Khan's hearsay statement is offered to prove the truth of the matter asserted. | Objection: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702).<br><br>The local medical team in Nigeria makes the MSEA determination, not Dr. Khan. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Dr. Khan lacks knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 19, 25, 32. |
| 59. In his July 29, 2019 letter deeming Mr. Snookal fit to work in Nigeria with his heart condition, Dr. Khan concluded by writing 'If you have any questions, please feel free to contact me at the | Undisputed<br><br>Immaterial | |

| Statement of Fact | Status | Opposition |
|---|---|---|
| number below." and providing his contact information.<br><br>Snookal Decl. ¶9, Exh. 3 (July 29, 2019 letter from Dr. Khan); Levy Dep. Tr. 84:2-19. | | |
| 60. In his August 23, 2019, email to Dr. Levy, Dr. Khan concluded by offering "[i]f you have any further questions, please feel free to email or call me" and providing his contact information.<br><br>Snookal Decl. ¶16 and Exh. 5; Levy Dep. Tr. 62:5-63:21 and Exh. 12-C. | Undisputed<br><br>Immaterial | |
| 61. Dr. Khan was willing to provide additional information to Chevron concerning Mr. Snookal's dilated aortic root and fitness for duty had they ever asked him to do so after he submitted his supporting emails.<br><br>Khan Dep. Tr. 33:19-34:6. | Undisputed<br><br>Immaterial | |
| 62. Changes in the size of Mr. Snookal's dilated aortic root would mainly be caused by a significant increase in his blood pressure.<br><br>Khan Dep. Tr. 24:8-18. | Undisputed as to the fact of Dr. Khan's assessment; Disputed to the extent Dr. Khan's hearsay statement is offered to prove the truth of the matter asserted. | <u>Objection</u>: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702).<br><br>The local medical team in Nigeria makes the MSEA determination, not Dr. Khan. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Dr. Khan lacks knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 19, 25, 32. |
| 63. In assessing Mr. Snookal's risk of a serious cardiac event due to his dilated aortic root, Dr. Khan referred to three of Mr. | Undisputed as to the fact of Dr. Khan's assessment; Disputed to the | <u>Objection</u>: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702).<br><br>The local medical team in Nigeria makes the |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Snookal's past CT scans which suggested it was stable in size over a three-year period and indicated an even lower risk.<br><br>Khan Dep. Tr. 23:10-20. | extent Dr. Khan's hearsay statement is offered to prove the truth of the matter asserted. | MSEA determination, not Dr. Khan. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Dr. Khan lacks knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 19, 25, 32. |
| 64. Mr. Snookal's blood pressure was well-controlled through medications (amlodipine and losartan).<br><br>Khan Dep. Tr. 27:23-28:1; 29:2-5. Marmureanu Decl. at Exh. 11-7. | Undisputed<br><br>Immaterial | Even assuming the truth of this statement for purposes of this motion, rupture or dissection of Plaintiff's aortic root was not predictable. *See* DUF 14. |
| 65. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm was actually less than 1% per year.<br><br>Dr. Marmureanu Decl. at Exh. 11 p. 6; 7. | Disputed<br><br>Immaterial | <u>Objection</u>: Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402).<br><br>Dr. Asekomeh reviewed Dr. Khan's conjecture that Plaintiff's risk of a serious incident was less than 1% and maintained his determination that Plaintiff was not fit for duty in Escravos in light of all circumstances. *See* DUF 22-23, 25-26. Dr. Marmureanu's report does not consider Plaintiff's risk in light of the conditions and medical resources in Escravos. |
| 66. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm while in Escravos, Nigeria was less than 0.5% per year.<br><br>Id. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence. <u>Objection</u>: Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402).<br><br>Dr. Marmureanu's report conjectures Plaintiff's risk of a serious cardiac event was 1%, not 0.5%. *See* PUF 65. |
| 67. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm is "negligible compared to the general population, especially given the absence of rapid growth in Mr. Snookal's case."<br><br>Dr Marmureanu Decl. at Exh. 11 p. 7. | Disputed<br><br>Immaterial | <u>Objection</u>: Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402).<br><br>Dr. Asekomeh reviewed Dr. Khan's conjecture that Plaintiff's risk of a serious incident was less than 1% and maintained his determination that Plaintiff was not fit for duty in Escravos in light of all circumstances. *See* DUF 22-23, 25-26. Dr. Marmureanu's report does not consider Plaintiff's risk in light of the conditions and medical resources in Escravos. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| 68. The occupational hazards associated with Chevron's gas to liquids oil refinery in Escravos, Nigeria are high, and employees sustain injuries, or even die, on a regular basis.<br><br>Leal Decl. at ¶ 10, Exh. 24 and Id. at ¶ 13. Exh. 28. | Undisputed | Objection to Plaintiff's Exhibits 24, 28: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibits 24 and 28, and impermissibly proffers hearsay contained within these documents for the truth of the matter asserted. |
| 69. Dr. Aiwuyo opined that "[f]rom, the Canadian guidelines these values [for Mr. Snookal] appear low risk for a major adverse CV event. Some have used values of <4.5cm as a partition value for low risk situations."<br><br>Leal Decl. at ¶ 13. Exh. 37. | Undisputed as to the fact of Dr. Aiwuyo's assessment; Disputed to the extent Plaintiff's proffered evidence is inadmissible | Objection to Plaintiff's Exhibit 37: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibit 37, and impermissibly proffers hearsay contained within these documents for the truth of the matter asserted. |
| 70. Dr. Adeyeye agreed with Dr. Aiwuyo. Id. | Undisputed as to the fact of Dr. Aiwuyo's assessment; Disputed to the extent Plaintiff's proffered evidence is inadmissible | Objection to Plaintiff's Exhibit 37: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibit 37, and impermissibly proffers hearsay contained within these documents for the truth of the matter asserted. |
| 71. Dr. Akintunde agreed that Mr. Snookal was "'low risk' but not 'no risk'." Id. See also Akintunde depo 53:10-13<br>72. | Undisputed | |
| 73. Mr. Snookal's thoracic aneurysm would not have impacted his day-to-day ability to work or complete any of his required job duties. | Disputed | Misstates the evidence. Dr. Asekomeh testified that the REM would be required to visit the field. *See* DUF 16.<br><br>Objection: Lacks foundation/personal knowledge (FRE 602); Unreliable expert opinion (FRE 702). |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Levy Dep. Tr. 75:14-76:2; Asekomeh Dep. Tr. 74:24-76:19; Khan Dep. Tr. at 31:10-32:4. | | |
| 74. The REM position is a not physically strenuous job, and Chevron categorized it as an "office based job."<br><br>Levy Dep. Tr. 75: 14-76:2; 93:21-94:9; 94:11-95:3; 95:10-25; Marmureanu Decl. at Exh. 11 p. 8; Asekomeh Dep. Tr. 74:24-76:19; . Snookal Decl. ¶19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions GO-308" for the REM Position). | Disputed<br><br>Immaterial | Misstates the evidence. Objection: Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602).<br><br>Dr. Asekomeh testified that the REM would be required to visit the field. *See* DUF 16.<br><br>Objection to Plaintiff's Exhibit 7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the document attached to his declaration as Exhibit 7. |
| 75. The REM position did not require the operation of equipment, heavy or otherwise. The position is not considered a safety-sensitive position, as defined in the Chevron "Medical Examination Program."<br><br>Snookal Decl. ¶19, Exh. 7 (Physical Requirements and Working Conditions GO-308).<br><br>Job Description: "Job Title: NMA EGTL Reliability Engineering Manager." Declaration of Dr. Eshiofe Asekomeh ("Asekomeh Dep. Tr.") 81:3, Exh. 18-2. | Disputed as not in evidence<br><br>Immaterial | Objection to Plaintiff's Exhibit 7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602).<br><br>Plaintiff did not and cannot authenticate the document attached to his declaration as Exhibit 7.<br><br>Objection to Plaintiff's Exhibit 18-2: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602). Dr. Asekomeh testified he has never seen the document before and di not rely on it in connection with Plaintiff's MSEA determination. (Pl. Ex. 18 ["Asekomeh Dep. Tr."], 81:3-18.) |
| 76. Dr. Asekomeh could not "cite a specific example" of how Mr. Snookal's thoracic aneurysm posed a direct threat to others. | Disputed<br><br>Immaterial | Misstates the evidence. Objection: Irrelevant (FRE 402).<br><br>The matters alleged in this case occurred in 2019, more than 5 years ago. Dr. Asekomeh could not recall a specific example at the time |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Asekomeh Dep. Tr. 122:19 – 124:12. | | of his deposition on October 10, 2024, but at the time he was completing the MSEA determination, considered whether an aortic event could cause injury to other employees. *See* DUF 23. |
| 77. In fact, Dr. Akintunde, one of the Nigeria-based cardiologists with whom Chevron U.S.A. consulted, testified that Mr. Snookal's dilated aortic root was not a threat to others.<br><br>Akintunde Dep. Tr. 40:19-24. | Undisputed as to the fact of Dr. Akintunde's statement; Disputed as to Plaintiff's mischaracterization of Dr. Akintunde's testimony<br><br>Immaterial | Misstates the evidence. Objection: Irrelevant (FRE 402).<br><br>Dr. Akintunde was asked whether a dilated aortic root "pose[d] a physical danger to anyone other than the person who has the dilated aortic root." Akintunde Dep. Tr. 40:19-21. Plaintiff's physical condition itself would not pose a physical danger to others, but the effect of a cardiac event arising from Plaintiff's physical condition would. *See* DUF 23. |
| 78. Dr. Asekomeh did not review the job duties of the REM position before making his decision.<br><br>Asekomeh Dep. Tr. 69:9-12; 81:3-18 and Exh. 18-2 (Job Description for NMA EGTL Reliability Engineering Manager); Asekomeh Dep. Tr. 71:9-25. | Disputed as to Ex 18-2, which is not in evidence<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br><br>Dr. Asekomeh was aware that Plaintiff would be required to go into the field in the REM position. *See* DUF 16. Dr. Asekomeh made the MSEA determination based on the facts available to him. *See* DUF 22-23, 25-26.<br><br>Objection to Plaintiff's Exhibit 18-2: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602). Dr. Asekomeh testified he has never seen the document before and di not rely on it in connection with Plaintiff's MSEA determination. (Pl. Ex. 18 ["Asekomeh Dep. Tr."], 81:3-18.) |
| 79. Dr. Akintunde did not speak with Mr. Snookal, review a job description for the position Mr. Snookal was seeking in Escravos, or review Mr. Snookal's work history before expressing an opinion regarding Mr. Snookal's fitness for duty based upon his dilated aortic root. Dr. Akintunde also did not have the entirety of Mr. Snookal's medical history, and had access only to one year of his scans. | Undisputed.<br><br>Immaterial. | In making her assessment of risk, Dr. Akintunde only needed to review Mr. Snookal's medical and imaging records, and did not require a conversation with Plaintiff. (Akintunde Dep. Tr. 77:1-18.) |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Akintunde Dep. Tr. 20:15-21:1; 24:21-25:8 and 48:14-23. | | |
| 80. Drs. Khan and Marmureanu, in contrast, had access to at least three years of Mr. Snookal's scans, which indicated a decreased risk to Mr. Snookal because his dilated aortic root was stable in size over time.<br><br>Khan Dep. Tr. 23:10-20; Marmureanu Decl. at Exh. 11 p. 4-6. | Undisputed as to the fact of the materials reviewed by Drs. Khan and Marmureanu; Disputed to the extent Plaintiff's proffered evidence is inadmissible<br><br>Immaterial. | Objection: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702).<br><br>The local medical team in Nigeria makes the MSEA determination, not Drs. Khan or Marmureanu. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Drs. Khan and Marmureanu lack knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 19, 25, 32.<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 81. Dr. Adeyeye did not speak with Mr. Snookal, review a job description for the position Mr. Snookal was seeking in Escravos, or review Mr. Snookal's work history before expressing an opinion regarding Mr. Snookal's fitness for duty based upon his dilated aortic root.<br><br>Adeyeye Dep. Tr. 25:11-26:4. | Undisputed.<br><br>Immaterial. | As with Dr. Akintunde, in making his assessment of risk, Dr. Adeyeye only needed to review Mr. Snookal's medical and imaging records, and did not require a conversation with Plaintiff. (Akintunde Dep. Tr. 77:1-18.) |
| 82. Dr. Levy did not consider whether Mr. Snookal's thoracic aneurysm would pose a "direct threat to others" at the time of the decision to rescind the REM position.<br><br>Levy Dep. Tr. 77:15-78:9. | Undisputed<br><br>Immaterial | Dr. Levy did not make any final determination regarding Plaintiff's MSEA. *See* DUF 6, 29. |
| 83. The "bulk" of Chevron's decision to rescind the REM position from Mr. Snookal was "taken on the fact that if | Undisputed | |

| Statement of Fact | Status | Opposition |
|---|---|---|
| he had a medical event, [they] would not be able to support him in Escravos, irrespective of his job role."<br><br>Asekomeh Dep. Tr. 71:9-25. | | |
| 84. Chevron did not conduct a functional capacity evaluation for Mr. Snookal because "almost-always office jobs" that are not "physically-demanding" do not require one.<br><br>Asekomeh Dep. Tr. 74:18-76:19. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence. Dr. Asekomeh testified that office-based jobs don't require a functional capacity evaluation, but "almost-always" office jobs [sic] and management will visit the field. (Asekomeh Dep. Tr. 76:11-19.) |
| 85. Nothing about the job duties for the REM position itself, or its location, would exacerbate Mr. Snookal's thoracic aneurysm or increase the risk of a serious cardiac event occurring.<br><br>Levy Dep. Tr. 75: 14-76:2; 93:21-94:9; 94:11-95:3; 95:10-25; Marmureanu Decl. Exh. 11 at p. 8; Asekomeh Dep. Tr. 95:6-24; Khan Dep. Tr. at 40:20-41:23. | Undisputed<br><br>Immaterial<br><br>*See* DUF 14-15. | Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 86. The local medical team "regularly" performs emergency medical evacuations (i.e. medevacs) people from Chevron's Escravos, Nigeria refinery due to emergent medical issues, and there are approximately 300 annual medical evacuations annually in the region.<br><br>Asekomeh Dep. Tr. 39:9-21; see also Levy Dep. Tr. 24:20-25:9; Akintunde Dep. Tr. 33:19-34:14. | Undisputed<br><br>Immaterial | DUF 86 merely adds additional, immaterial details but does not create a genuine dispute of fact, because the number of medical evacuations is irrelevant to the determination that the essential duties of the REM position could not be performed in Lagos. *See* DUF 27. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| 87. As of October 10, 2024, Dr. Asekomeh was aware of two emergency medical evacuations during the previous week alone.<br><br>Asekomeh Dep. Tr. 39:9-40:5. | Undisputed<br><br>Immaterial | *See* PUF 86; DUF 27. |
| 88. Based upon her experience working in Escravos, Dr. Akintunde estimated that the average time for a medical evacuation by helicopter was approximately one and a half hours.<br><br>Akintunde Dep. Tr. 36:6-14. | Undisputed<br><br>Immaterial | Even if the medical evacuation took one and a half hours, or up to four or more hours (*see* DUF 9), a cardiac event could nevertheless lead to death, even with appropriate medical attention. (Akintunde Dep. Tr. 66:8-17, 67:-68:7.) |
| 89. Chevron did not consider Mr. Snookal's past work history before making their decision to rescind the REM position from Mr. Snookal.<br><br>Asekomeh Dep. Tr. 67:25-69:21; 66:18-68:12. | Disputed as to the reference to Chevron U.S.A.<br><br>Immaterial | Objection: Irrelevant (FRE 402). Plaintiff's past work history is not relevant because a serious cardiac event is not predictable. *See* DUF 14-15.<br><br>Chevron U.S.A. did not make Plaintiff's MSEA determination. *See* DUF 6, 29. |
| 90. Had they considered Mr. Snookal's past work history with Chevron, they would have found that Mr. Snookal never suffered any serious cardiac event while at work or otherwise.<br><br>Id. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence. Whether Plaintiff had ever suffered any serious cardiac events is not in evidence. Dr. Asekomeh did not attest to this.<br><br>Plaintiff's past work history is not relevant because a serious cardiac event is not predictable. *See* DUF 14-15. |
| 91. Dr. Asekomeh did not speak with or otherwise contact Mr. Snookal's treating cardiologist, Dr. Khan, in conjunction with his evaluation of Mr. Snookal for the REM position.<br><br>Asekomeh Dep. Tr. 66:10-17. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402). The local medical team in Nigeria, i.e., Dr. Asekomeh, makes the MSEA determination, not Dr. Khan. *See* DUF 6.<br><br>Whether Dr. Asekomeh spoke with Dr. Khan before making the MSEA determination is irrelevant. Dr. Asekomeh made a reasonable judgment based on the facts available to him, including Dr. Khan's August 23, 2019 email. *See* DUF 22-23, 25-26. Plaintiff proffered no evidence as to what, if anything, Dr. Khan |

| Statement of Fact | Status | Opposition |
|---|---|---|
| | | could have added to the MSEA determination. Dr. Khan has no personal knowledge of the conditions or resources in Escravos. |
| 92. Dr. Asekomeh did not speak with Mr. Snookal in conjunction with his evaluation of Mr. Snookal for the REM position.<br><br>Asekomeh Dep. Tr. 66:18-25. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402). The local medical team in Nigeria, i.e., Dr. Asekomeh, makes the MSEA determination, not Plaintiff. *See* DUF 6.<br><br>Whether Dr. Asekomeh spoke with Plaintiff before making the MSEA determination is irrelevant. Dr. Asekomeh made a reasonable judgment based on the facts available to him. *See* DUF 22-23, 25-26. Plaintiff proffered no evidence as to what, if anything, he could have added to the MSEA determination. Plaintiff has no personal knowledge of the conditions or resources in Escravos. |
| 93. Dr. Asekomeh did not speak with Dr. Irving Sobel, the physician to deemed Mr. Snookal "fit for duty with restrictions" in conjunction with his evaluation of Mr. Snookal for the REM position.<br><br>Asekomeh Dep. Tr. 65:14-66:9. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402). The local medical team in Nigeria, i.e., Dr. Asekomeh, makes the MSEA determination, not Dr. Sobel. *See* DUF 6.<br><br>Whether Dr. Asekomeh spoke with Dr. Sobel before making the MSEA determination is irrelevant. Dr. Asekomeh made a reasonable judgment based on the facts available to him. *See* DUF 22-23, 25-26. Plaintiff proffered no evidence as to what, if anything, Dr. Sobel could have added to the MSEA determination. Dr. Sobel has no personal knowledge of the conditions or resources in Escravos. |
| 94. The local medical team in Nigeria repeatedly deferred to Chevron U.S.A. employees for their input regarding Mr. Snookal's fitness for duty in Escravos. 93, on August 8, 2019, Dr. Paul Arenyeka wrote to Drs. Frangos and Levy: "I would greatly value your kind opinions and thoughts on [Mr. Snookal's case]." Leal Decl. at ¶ 13. Exh. 27<br><br>On August 26, 2019, Dr. Paul Arenyeka, the "Medical Director for the Nigeria Mid Africa SBU" wrote to Dr. Levy that "I will appreciate | Disputed as not in evidence | Objection to Plaintiff's Exhibits 27, 31: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibits 27 and 31, and impermissibly proffers hearsay contained within these documents for the truth of the matter asserted. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| your guidance" regarding Mr. Snookal's fitness for duty. Leal Decl. at ¶ 13. Exh. 31.<br><br>Dr. Levy responded "I support your decision and appreciate your rereview." Id. | | |
| 95. Dr. Stephen Frangos, then Chevron's Regional Manager, Health and Medical – Americas, made the decision to deem Mr. Snookal unfit for duty, emailing that "the patient is low risk or a major adverse CV [cardiovascular] event. Yet in Escravos, there are only limited resources for initial stabilization and transfer of a major adverse CV event. There is health risk in an Escravos assignment."<br><br>Leal Decl. at ¶ 13. Exh. 27. | Disputed as not in evidence | Objection to Plaintiff's Exhibit 27: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 27, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 96. In response to Dr. Frangos' email thread, Dr. Olorunfemi Pitan, Occupational Physician Head for Chevron's Nigeria Mid Africa Strategic Business Unit wrote instructing Dr. Asekomeh to 'kindly decline a job transfer to Escravos."<br><br>Id. | Disputed as not in evidence | Objection to Plaintiff's Exhibit 27: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 27, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 97. Dr. Frangos was a managing agent of Chevron | Disputed as not in evidence | Objection to Plaintiff's Exhibit 39: Failure to authenticate evidence (FRE 901); Lacks |

| Statement of Fact | Status | Opposition |
|---|---|---|
| U.S.A. "[r]esponsible for the development and implementation of Occupational Health services for business operations with more than 25,000 employees, including oversight of ten occupational health clinics and 6,000 employees enrolled in medical surveillance programs." Leal Decl. at ¶ 14, Exh. 39. | | foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 39, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 98. On August 20, 2019, Dr. Frangos emailed Dr. Levy that "the employee [Snookal] reached me Friday evening, through guidance from another employee. I shared with him what Paul [Arenyeka] and I had determined in our review of the case: that he was deemed not fit for assignment in Escravos because of the location . . .He said he planned to appeal the medical clearance decision."<br><br>Leal Decl. at ¶ 13. Exh. 32. | Disputed as not in evidence | Objection to Plaintiff's Exhibit 32: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 32, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 99. After reporting Chevron's decision to rescind the REM position to the Chevron Ombuds, Chevron passed Mr. Snookal along to discuss with Dr. Levy, Chevron's Regional Medical Manager for Europe, Eurasia, Middle East & Africa.<br><br>Snookal Decl. ¶13; Leal Decl. at ¶ 13. Exh. 32. | Disputed as not in evidence | Objection to Plaintiff's Exhibit 32: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 32, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 100. Dr. Levy spoke with Mr. Snookal and advised that the REM position jobsite was in a remote area in Nigeria | Disputed as not in evidence | Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801). |

| Statement of Fact | Status | Opposition |
|---|---|---|
| with limited medical facilities and emergency care only available via charter aircraft to Lagos, Nigeria.<br><br>Snookal Decl. ¶14; Levy Dep. Tr. 38:24 – 39:14. | | |
| 101. Dr. Levy requested permission to speak with Dr. Khan about Mr. Snookal's case, and Mr. Snookal granted same.<br><br>Snookal Decl. ¶15; Levy Dep. Tr. 38:24 – 39:18. | Undisputed | |
| 102. Dr. Levy left one voicemail for Dr. Khan but never spoke to him in real time about Mr. Snookal.<br><br>Levy Dep. Tr. 39:16 – 40:5. | Undisputed<br><br>Immaterial | |
| 103. On August 23, 2019, Dr. Levy emailed Eldyleida Seca Torres that "I don't know who the msea advisor is for Mark Snookal but can you inform them that we're reviewing his msea eval for escravos. This was previous sent (sic) as not ffd [fit for duty] but I'm performing a second review."<br><br>Leal Decl. at ¶ 13. Exh. 33. | Disputed as not in evidence | Objection to Plaintiff's Exhibit 33: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 33, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 104. On August 23, 2019, Dr. Khan sent Dr. Levy an email, with a cc to Mr. Snookal, reiterating his opinion that Mr. Snookal was medically fit for duty despite the remote location of the job.<br><br>Snookal Decl. ¶16, Exh. 5; Levy Dep. Tr. 62:5-18, Exh. 12-C. | Undisputed as to the fact of Dr. Khan's email and his assessment; Disputed to the extent Dr. Khan's hearsay statement is being offered to prove the truth of the matter asserted<br><br>Immaterial | Objection: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702).<br><br>The local medical team in Nigeria makes the MSEA determination, not Dr. Khan. *See* DUF 6. Plaintiff has not—and indeed, cannot—dispute that Dr. Khan lacks knowledge of the work conditions and medical capacities of the facilities in Escravos and did not consider these facts. *See* DUF 19, 25, 32. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| 105. On September 4, 2019, Mr. Snookal emailed Chevron USA Human Resources Manager, Andrew Powers, to report the disability discrimination, writing, *inter alia*: "I believe this decision was made based on a lack of understanding and stereotypical assumptions about my medical condition and is therefore, discriminatory in nature" and "aside from my complaint of medical discrimination where does their decision leave me?"<br><br>Snookal Decl. ¶18 and Exh. 6; Powers Dep. Tr. 46:15-48:2 and Exh. 17-3. | Undisputed as to the fact of the email; Disputed to the extent Plaintiff's hearsay statement is offered to prove the truth of the matter asserted.<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |
| 106. Minutes after receiving Mr. Snookal's disability complaint on September 4, 2019, before further investigation, Mr. Powers wrote to his colleagues Troy Tortorich, Austin Ruppert, and Thalia Tse, inter alia: "I am sure there is a very good reason why this [job] was rescinded."<br><br>Powers Dep. Tr. 49:13-52:11 and Exh. 17-3 (CUSA000539). | Disputed as it misstates the evidence<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |
| 107. Mr. Powers also forwarded Mr. Snookal's disability discrimination complaint to the medical team in Nigeria, asking Dr. Ayanna Jones for "context" "and suggested response" to Mr. Snookal's disability discrimination complaint. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Powers Dep. Tr. 136:5-25, Exh. 17-12 (Email from Andrew Powers to medical team in Nigeria at CUSA000650). | | |
| 108. Dr. Ayanna Jones wrote back to Mr. Powers' email referring him to speak to Dr. Levy who "would be able to provide [] context on this case and appropriate response."<br><br>Powers Dep. Tr. 136:5 – 137:16, Exh. 17-12 (Email from Andrew Powers to medical team in Nigeria at CUSA000650). | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |
| 109. Dr. Levy was the subject of Mr. Snookal's disability discrimination complaint since he was the one who had already reviewed and upheld the decision to deem Mr. Snookal not fit for duty in Escravos. Yet, Mr. Powers' "investigation" consisted solely of speaking with Dr. Levy and accepting his explanation for his own discriminatory decision.<br><br>Leal Decl. at ¶ 13, Exh. 29 and 31. | Disputed as not in evidence | Objection to Plaintiff's Exhibits 29, 31: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the documents attached to Ms. Leal's declaration as exhibits 29, 31, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 110. On September 6, 2019, Mr. Powers sent an email reply to Mr. Snookal which read: "I've reached out to the Medical Department and while I'm not privy to any medical information, I understand a thorough review was conducted and alternatives | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| were explored. We would respectfully disagree that the determination was based on stereotyping or impermissible discrimination."<br><br>Powers depo 95:21-98:3 and Exh. 17-5 (Andrew Powers Email to Mark Snookal Re: Medical Team Findings at CUSA000542); Snookal Decl. ¶18, Exh. 6 (CUSA000542-543). | | |
| 111. Mr. Snookal requested of Mr. Powers an explanation for why the REM position had been rescinded.<br><br>Levy Dep. Tr. 78:10-79:6, Exh. 12-D; (September 16, 2019 Email from Dr. Levy to Mr. Snookal); Snookal Decl. at 20. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. |
| 112. On September 16, 2019, Dr. Levy emailed Mr. Snookal explaining that he "became involved on [Mr. Snookal's] case when [he] had requested a second opinion on the initial denial" and, *inter alia*, wrote that Chevron had a right to rescind the offer based on a "direct threat" to Mr. Snookal's "health and safety" because "if the condition were to occur, the outcome would be catastrophic and would require an immediate emergency response which is not available and would most certainly result in death in Escravos." | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901).<br><br>This fact of and contents of this email is irrelevant to the claims at issue. Dr. Levy's role was to act as an intermediary between Dr. Khan and the Nigerian local medical team to help evaluate the risks. (Levy Dep. Tr. 34:18-35:9, 58:5-11.) |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Levy Dep. Tr. 78:10-79:6, Exh. 12-D; (September 16, 2019 Email from Dr. Levy to Mr. Snookal). | | |
| 113. On or about September 5, 2019, Mr. Snookal searched for and identified four different vacant positions for which he was qualified and submitted applications for same: (1) El Segundo Routine Maintenance General Team Lead, (2) El Segundo Operating Assistant (which had two separate openings) and (3) Maintenance Change Operating Assistant.<br><br>Snookal Decl. ¶24; Snookal Dep. Tr., 110:25 – 111:10; 113:18 – 116:18. | Disputed as to the Maintenance Change Operating Assistant Position<br><br>Immaterial | Chevron U.S.A. did not have any duty to provide accommodations, but nevertheless ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 34. Plaintiff did not identify the Maintenance Change Operating Assistant position. *See* Ex. E-10. |
| 114. Chevron made Mr. Snookal apply with the rest of the general applicant pool without preference for these four vacant positions.<br><br>Snookal Decl. ¶ 24; Snookal Depo Tr. 123:14-19. | Disputed<br><br>Immaterial | Chevron U.S.A. did not have any duty to provide accommodations, but nevertheless ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 34. |
| 115. Mr. Snookal was qualified for the four vacant positions to which he applied.<br><br>Snookal Depo Tr. 110:25 – 111:10; 118:5 – 119:10; Pg. 130:18-25; 136:6-23; 167:7-168:8. | Disputed<br><br>Immaterial | The positions Plaintiff applied for required a college degree, which Plaintiff does not have. Pl. Dep. Tr., 15:3-7, 118:14-119:15, 131:24-134:11, Ex. E-12; 136:19-137:6, 138:23-139:4.<br><br>Chevron U.S.A. did not have any duty to provide accommodations, but nevertheless ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 34. |
| 116. The four vacant positions to which Mr. Snookal applied were comparable to, or worse than, the REM position. | Disputed as to whether the positions were "worse" than the REM position<br><br>Immaterial | Misstates the evidence / not in evidence. <u>Objection</u>: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Chevron U.S.A. did not have any duty to provide accommodations, but nevertheless |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Snookal Dep. Tr. 122:7-15. | | ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 34. |
| 117. Chevron did not select Mr. Snookal for any of the four vacant positions to which he applied.<br><br>Snookal Decl. ¶ 24; Snookal Depo Tr. 123:24 – 125:1; Pg. 131:17-20; 134:17-19; 136:6-23. | Undisputed<br><br>Immaterial | *See* DUF 36. |
| 118. Ultimately, Chevron created a role called Reliability Change Operating Assistant ("OA") for Mr. Snookal, a temporary role with no managerial responsibility<br><br>Snookal Dep. Tr at 168:11-16; Snookal Decl. ¶ 24. | Undisputed<br><br>*See* DUF 40. | |
| 119. The Reliability Change OA role was a demotion from Mr. Snookal's previous IEAR role and the REM job because it was not a supervisory nor managerial role with no direct reports, and it was a temporary position with no pathways to promotion.<br><br>Snookal Decl. ¶ 24; Snookal Dep. Tr. 168:11 – 169:10; 174:5-175:11; 28:8-22. | Disputed<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Chevron U.S.A. did not have any duty to provide accommodations, but nevertheless ensured Plaintiff remained employed while Plaintiff applied for other positions. *See* DUF 34.<br><br>The Reliability Change OA role, like th e El Segundo Operating Assistant Role that Plaintiff sought, did not have direct reports and paid the same as Plaintiff's prior IEAR Team Lead position. (*See* DUF 40.) |
| 120. After Chevron rescinded the REM position, Mr. Snookal continued to search for other rotational expatriate assignments, and other positions generally, for which he was eligible, and subscribed to receive regular email updates regarding new | Undisputed<br><br>Immaterial | |

| Statement of Fact | Status | Opposition |
|---|---|---|
| job postings, and asked colleagues about available opportunities.<br><br>Snookal Decl. ¶ 26. | | |
| 121. Despite his searches, Mr. Snookal was not able to find any other rotational expatriate assignments for which he was eligible and could apply.<br><br>Snookal Decl. ¶ 26; Snookal Dep. Tr. 90:15-18. | Undisputed<br><br>Immaterial | |
| 122. The treatment recommendations for Mr. Snookal's thoracic aneurysm were to get an annual CT and echocardiogram and to continue to take his recommended blood pressure medications.<br><br>Snookal Decl. ¶ 9 and Exh. 3; Marmureanu Decl. at Exh. 11 p. 8; Asekomeh Dep. Tr. 104:11-20; Khan Dep. Tr. 31:10-32:4. | Disputed as to the characterization of the monitoring as "treatment"<br><br>Immaterial | Misstates the evidence / not in evidence. Objections: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Dr. Khan stated that Plaintiff's condition can be "tracked," not treated. *See* Ex. E-6; *see also* DUF 12. Plaintiff does not dispute his own testimony, that Dr. Khan told him "there's no way to accurately predict" whether Plaintiff's condition would stop expanding or whether it would expand to an operable point. (Pl. Dep. Tr. 48:25-49:11.) *See* DUF 14-15.<br><br>Objection: Plaintiff's citation to statements made by Dr. Khan is inadmissible hearsay when cited for the truth of the matters asserted. (FRE 801.)<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 123. Mr. Snookal is the breadwinner for his family, including his son with disabilities.<br><br>Snookal Decl. ¶ 28. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402). Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42. |
| 124. After Chevron rescinded the REM position, Mr. Snookal had to pull his son out of private school because he could no longer afford it. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402). Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Snookal Dep. Tr. 246:25 – 247:17; Snookal Decl. ¶ 28. | | |
| 125. In or about November of 2019, Mr. Snookal started treating with a therapist due to the symptoms of depression he was experiencing.<br><br>Snookal Decl. ¶ 27 | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42. |
| 126. In or about October of 2020, Mr. Snookal started taking antidepressants to treat the symptoms of depression he was experiencing.<br><br>Snookal Decl. ¶ 27; Snookal Dep. Tr. 243:1 – 245:25 | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42. |
| 127. Mr. Snookal and his therapist discussed looking for other work because of the detrimental effects Chevron's discrimination was having on Mr. Snookal's mental health.<br><br>Snookal Dep. Tr. 243:1 – 245:25; Snookal Decl. ¶¶ 27-29. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42. |
| 128. After his employment with Chevron ended in August of 2021, Mr. Snookal relocated himself and his family out of the state to try to better support his family's needs.<br><br>Snookal Decl. ¶ 30; Snookal Dep. Tr. 51:6-8. | Undisputed<br><br>Immaterial | Objection: Irrelevant (FRE 402).<br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42. |
| 129. Dr. Levy has consistently been employed by Chevron U.S.A., even while he has changed job assignments and been based | Disputed<br><br>Immaterial | Misstates the evidence / not in evidence. *See* DUF 4.<br><br>Dr. Levy did not testify regarding which entity would have employed Plaintiff had Plaintiff |

| Statement of Fact | Status | Opposition |
|---|---|---|
| outside of the United States in London and Singapore.<br><br>Levy Dep. Tr. at 12:15-15:6; 14:8-11; 14:18-23. | | assumed the REM position. Plaintiff did not create a genuine dispute of fact as to which entity would have employed him in the REM position.  *See* DUF 4. |
| 130.    Chevron U.S.A. was his employer and paid Andrew Powers while he was on assignment in different states and on expatriate assignments in other countries, including Kazakhstan and the Philippines. Mr. Powers was never an employee of the expatriate host assignment.<br><br>Powers Dep. Tr. 19:2 - 22:1. | Disputed<br><br>Immaterial | Misstates the evidence / not in evidence.  *See* DUF 4.<br><br>Mr. Powers did not testify regarding which entity would have employed Plaintiff had Plaintiff assumed the REM position. Plaintiff did not create a genuine dispute of fact as to which entity would have employed him in the REM position.  *See* DUF 4. |
| 131.    The Assignment Offer letter which Mr. Snookal received for the REM position identified "Chevron" as the employer and does not refer to "Chevron Nigeria, Limited."<br><br>Snookal Dep. Tr. 36:23-37:8, Ex. E-1 (See also DUF 4 above). | Disputed | *See* DUF 4.  The "Assignment Offer" (Ex. E-1) states that the SBU, or Strategic Business Unit, for the position is Nigeria Mid-Africa.<br><br>Pl. Dep. Tr., 36:23-37:8, Ex. E-1.<br><br>Plaintiff's citation to testimony by Dr. Levy and Mr. Powers misrepresents their testimony and does not create a genuine dispute of fact. Neither testified that Plaintiff would have remained employed by Chevron U.S.A. Inc., nor did they testify about which entity would be Plaintiff's employer had Plaintiff taken the REM position.<br><br>Dr. Levy testified that he is "just not completely aware" which corporate entity or business he worked under over his "several assignments with the company."  (Pl. Ex. 12, Dr. Mark Levy Deposition Transcript ["Levy Dep. Tr."], 12:15-13:3.)  Mr. Powers testified that he is not aware whether Chevron U.S.A. was his employer during his own expatriate assignments.  (Pl. Ex. 14, Andrew Powers Deposition Transcript ["Powers Dep. Tr."], 19:24-20:6, 21:9-15.) |
| 132.    Dr. Asekomeh worked as an Occupational Health Physician at the Chevron Hospital in Warri, Nigeria and conducted | Undisputed<br><br>*See* Asekomeh Decl. ¶¶ 1-2. | |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Medical Suitability for Expat Assignment MSEA evaluations for Chevron's expatriates traveling to Nigeria.<br><br>Asekomeh Decl. ¶¶ 1, 3. | | |
| 133. Chevron contracted with Dr. Asekomeh's employer to provide medical services to Chevron in Nigeria.<br><br>Asekomeh Dep. Tr. 14:16 - 15:9. | Disputed as to the reference to Chevron U.S.A. | Misstates the evidence. Chevron U.S.A. did not employ the REM position and was not involved in Plaintiff's MSEA determination. *See* DUF 4, 6, 22-23, 26, 29.<br><br>Plaintiff does not dispute that Dr. Asekomeh was not an employee of Chevron U.S.A. *See* DUF 21. |
| 134. Dr. Asekomeh's practice exclusively provides medical services to Chevron, not to any other entities.<br><br>Asekomeh Dep. Tr. 15:19 - 16:4 and 20:23 - 21:3. | Disputed as to the reference to Chevron U.S.A. | Misstates the evidence. Chevron U.S.A. did not employ the REM position and was not involved in Plaintiff's MSEA determination. *See* DUF 4, 6, 22-23, 26, 29.<br><br>Plaintiff does not dispute that Dr. Asekomeh was not an employee of Chevron U.S.A. *See* DUF 21. |
| 135. Chevron provided specific guidelines and protocols for Dr. Asekomeh to follow in conducting MSEA evaluations for Chevron expatriate assignments.<br><br>Asekomeh Dep. Tr. 29:20 - 31:19. | Disputed as to the reference to Chevron U.S.A. | Misstates the evidence. Dr. Asekomeh testified that the Medical Examination Protocol that he followed in conducting MSEA evaluations was a global guide used by Chevron entities. Dr. Asekomeh never testified that Chevron U.S.A. provided him with the guidelines and protocols. |
| 136. The cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms identified Mr. Snookal as being "low risk" and noting that the size of Mr. Snookal's thoracic aneurysm is smaller than the 4.5 cm "partition value for low-risk situations."<br><br>Asekomeh Dep. Tr. 115:11-21, Exh. 18-7 (Dr. | Disputed as not in evidence | Misstates the evidence / not in evidence.<br><br><u>Objection to Plaintiff's Exhibit 15-7</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Asekomeh email thread with Nigerian cardiologists). | | |
| 137.    The three cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms admitted they were unable to find "clear cut field guidelines for patient with aortic aneurysm."<br><br>Leal Decl. at ¶ 13, Exh. 38. (""Unfortunately Dr. Aiwuyo is unable to get any other literature on risk stratification aside from the one he already referenced (Canadian)." | Disputed as not in evidence | Objection to Plaintiff's Exhibit 38: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 38, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 138.    The cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms offered clinical instructions for Mr. Snookal, including to "avoid lifting heavy objects"; "quit smoking (if he is a smoker); (manage hypertension strictly)"; "watch out for alarm symptoms" and "avoid moderate to high intensity exercises as much as possible."<br><br>Asekomeh Dep. Tr. 115:11-21, Exh. 18-7 (Dr. Asekomeh email thread with Nigerian cardiologists); Leal Decl. at ¶ 13, Exh. 37. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence.<br><br>Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |
| 139.    Mr. Snookal was already following the guidelines to "avoid lifting heavy objects"; "quit smoking (if he is a smoker); (manage hypertension | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence.<br><br>Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |

| Statement of Fact | Status | Opposition |
|---|---|---|
| strictly)"; "watch out for alarm symptoms" and "avoid moderate to high intensity exercises as much as possible."<br><br>Id.; Snookal Decl. ¶11. | | |
| 140. The cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms did not provide a specific recommendation to bar Mr. Snookal from working in Escravos, Nigeria. However, they did write/endorse that "[w]hat is established is that a patient with symptomatic aneurysm should not be allowed to work in an offshore location."<br><br>Asekomeh Dep. Tr. 115:11-21, Exh. 18-7 (Dr. Asekomeh email thread with Nigerian cardiologists) at CUSA000773; see also Leal Decl. at ¶ 13, Exh. 37. | Disputed as to the statement that the cardiologists did not provide a specific recommendation to bar Plaintiff from working in Escravos | Misstates the evidence / not in evidence. PUF 114 is internally contradictory. Additionally, one of the cardiologists stated: "In Escravos . . . we are only limited to initial stabilitization and transfer of such high risk CV complications if any occurs . . . we may not be able to support such an individual due to our peculiarities." *See* Ex. 18-7-2.<br><br><u>Objection to Plaintiff's Exhibit 18-7</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802).<br><br><u>Objection to Plaintiff's Exhibit 37</u>: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 37, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 141. Dr. Adeyeye, one of the cardiologists based in Nigeria, on whom Chevron relied upon in supporting its decision to deem Mr. Snookal "not fit," had only ever treated one patient with Mr. Snookal's condition (dilated aortic root/thoracic aortic aneurysm), and this was years prior between 2010 and 2012.<br><br>Adeyeye Dep. Tr. 19:10-15; 22:7-14. | Undisputed<br><br>Immaterial | |
| 142. Neither Dr. Adeyeye or Dr. Akintunde had ever | Undisputed | |

| Statement of Fact | Status | Opposition |
|---|---|---|
| treated a patient with a dissected or ruptured dilated aortic root.<br><br>Id.; Akintunde Dep. Tr. 19:1-6. | Immaterial | |
| 143. Mr. Snookal had only an *asymptomatic* thoracic aneurysm, not a *symptomatic* thoracic aneurysm.<br><br>Asekomeh Dep. Tr. 115:11-21 and Exh. 15-7 Dr. Asekomeh email thread with Nigerian cardiologists) at CUSA000775; Marmureanu Decl. at Exh. 11, p. 2-5; Leal Decl. at ¶ 13, Exh. 37. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Objection to Plaintiff's Exhibit 15-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802).<br><br>Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702).<br><br>Objection to Plaintiff's Exhibit 37: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 37, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 144. Prior to his resignation, Mr. Snookal expressed to multiple Chevron employees, including Greg Curtin and Austin Ruppert, that he felt he had been treated unfairly by Chevron and he felt he had no choice but to quit.<br><br>Snookal Dep. Tr. 225:20-226:7. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42. |
| 145. Prior to his resignation, Mr. Snookal also discussed being subjected to disability discrimination with | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402).<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM |

| Statement of Fact | Status | Opposition |
|---|---|---|
| Mr. Ruppert.<br><br>Snookal Dep. Tr. 228:18-229:4. | | position was rescinded until his resignation. *See* DUF 28, 42. |
| 146. Mr. Snookal did not state in his Chevron resignation paperwork all his reasons for leaving Chevron because he did not see the practical purpose and because he thought it would be atypical to state negative things about Chevron in the separation paperwork.<br><br>Snookal Dep. Tr. 229:23-230:4; 231:17-232:8; Snookal Decl. ¶¶ 29-30. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402).<br><br>*See* DUF 42-43.<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42.<br><br>Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>*See* DUF 42-43. |
| 147. Mr. Snookal did not resign his employment with Chevron merely because his career "was not progressing as he wanted."<br><br>Snookal Decl. ¶¶ 25-29; Snookal Dep. Tr. 243:4-6; 246:6-248:19. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402).<br><br>*See* DUF 42-43.<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. *See* DUF 28, 42.<br><br>Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>*See* DUF 42-43. |
| 148. Mr. Snookal did not resign his employment with Chevron merely to pursue another job opportunity.<br><br>Snookal Decl. ¶¶ 25-29; Snookal Dep. Tr. 243:4-6; | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402).<br><br>*See* DUF 42-43.<br><br>Plaintiff continued to work for Chevron U.S.A. for nearly two years between the time the REM position was rescinded until his resignation. |

| Statement of Fact | Status | Opposition |
|---|---|---|
| 246:6-248:19. | | *See* DUF 28, 42.<br><br>Plaintiff's citation to a self-serving declaration cannot supersede his admission in deposition testimony to create a genuine dispute of fact. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (*citing* authority) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").<br><br>*See* DUF 42-43. |
| 149. Dr. Levy, as the Regional Manager for the Europe, Eurasia, Middle East & Africa region, had a role in evaluating purported risks to Chevron's expatriate employees, giving recommendations for setting policies for Chevron's fitness for duty program, and "create[d] policies and protocols for [Chevron's] medical evacuations."<br><br>Levy Dep. Tr. 20:11-25:10; Snookal Dep. Tr. 314:11-315:12. | Disputed | Misstates the evidence / not in evidence. Objection: Hearsay (FRE 802).<br><br>Dr. Levy only provided recommendations based on his knowledge of the countries in the Europe, Eurasia, Middle East, and Africa regions. Dr. Levy testified that the Center of Excellence managed the creation of policies, not him. |
| 150. Dr. Paul Arenyeka, Medical Director for Chevron Nigeria's Mid Africa SBU, in justifying the decision to deem Mr. Snookal unfit for duty, concluded that "the risk of an incident no matter how low is a major factor in Escravos medical care."<br><br>Leal Decl. at ¶ 13, Exh. 31. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Objection to Plaintiff's Exhibit 31: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 31, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 151. Dr. Levy, in reviewing the decision to deem Mr. Snookal unfit for | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801). |

| Statement of Fact | Status | Opposition |
|---|---|---|
| duty in Escravos, emailed Dr. Arenyeka that: "[a]lthough not without some risk, I don't think we're dealing with high risk. We can mandate yearly clearance and report from nephrologist (sic) on a yearly basis. Risk is even lower when we consider that [Mr. Snookal]'ll be a rotator."<br><br>Id. | | Objection to Plaintiff's Exhibit 31: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 31, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |
| 152. In an August 26, 2019 email to Dr. Khan, Dr. Levy referred to the medical team in Nigeria as "my team in Nigeria," and stated that he was "working with" them to discuss Mr. Snookal's fitness for duty<br><br>Leal Decl. at ¶ 13, Exh. 34. | Disputed as not in evidence<br><br>Immaterial | Misstates the evidence / not in evidence. Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Objection to Plaintiff's Exhibit 34: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702).<br><br>Plaintiff did not and cannot authenticate the document attached to Ms. Leal's declaration as exhibit 34, and impermissibly proffers hearsay contained within this document for the truth of the matter asserted. |

## DEFENDANT'S CONCLUSIONS OF LAW

| Conclusions of Law | Relevant Facts |
|---|---|
| 1. Chevron U.S.A. was not the employer with respect to the REM position which Plaintiff claims he was wrongfully denied. | 1-5, 21, 28-29 |
| 2. Plaintiff cannot demonstrate a prima facie case of disability discrimination because he could not perform the essential duties of the REM position without endangering the health and safety of | 1-3, 5-28, 31-32 |

| Conclusions of Law | Relevant Facts |
| --- | --- |
| himself and the people around him. | |
| 3. Even if Plaintiff could demonstrate a prima facie case of disability discrimination, which he cannot, Chevron U.S.A. had legitimate, nondiscriminatory business reasons for the purportedly adverse employment actions; in particular, it relied on a reasoned determination by medical professionals that Plaintiff could not perform the essential duties of the job position without endangering his own health and safety or the health and safety of others. | 19-20, 22-23, 26-28<br>*See also* 3, 5-16, 21, 24-25, 29-32 |
| 4. Even if Plaintiff could demonstrate a prima facie case of disability discrimination, which he cannot, Plaintiff cannot produce evidence to show that Chevron U.S.A.'s legitimate, nondiscriminatory business reasons were pretextual. | 29-33<br>*See also* 3, 5-28 |
| 5. Plaintiff cannot demonstrate a prima facie case for failure to accommodate, because Plaintiff admits he did not need accommodations during his employment. | 13<br>*See* 34-41 |
| 6. Plaintiff cannot demonstrate a prima facie case for failure to accommodate, because even if Chevron had a duty to provide Plaintiff with accommodations, which it did not, Chevron reasonably accommodated Plaintiff by ensuring | 34-36, 40-41<br>*See* 13, 37-39 |

| Conclusions of Law | Relevant Facts |
|---|---|
| Plaintiff's continued employment and creating a new role for him with the same pay and benefits as his prior position. | |
| 7. Plaintiff cannot demonstrate a prima facie case of constructive wrongful discharge because Plaintiff cannot establish working conditions that were so intolerable he had not choice but to resign his position. | 42-45 |
| 8. Because there is no merit to Plaintiff's claims for discrimination or failure to accommodate, Plaintiff cannot prove his derivative claim for wrongful constructive discharge. | 1-45 |
| 9. Plaintiff cannot recover punitive damages because he cannot establish an act of oppression, fraud, or malice by an officer, director or managing agent of Chevron U.S.A. | 1-48 |

## PLAINTIFF'S CONCLUSIONS OF LAW AND FACT

## PLAINTIFF'S CONCLUSIONS OF LAW

| Conclusions of Law | Relevant Facts |
|---|---|
| 1. Defendant Chevron U.S.A., Inc. ("Defendant") was the employer for the purposes of the rescinded REM position, or at minimum, is liable for rescinding same from Mr. Snookal by authorizing its affiliate, Chevron Nigeria Ltd to act as its authorized agent. | DUF 1, 3, 6; PUF 52, 58-60, 82, 94-104, 107-11, 129-134, 149-152. |

| Conclusions of Law | Relevant Facts |
|---|---|
| 2. Mr. Snookal was an employee with a disability for the purposes of the California Fair Employment and Housing Act. | DUF 1, 3, 6; PUF 52-54, 57-58. |
| 3. Mr. Snookal was a "qualified employee" because he could perform all of the essential duties of the REM position in Escravos, Nigeria with or without accommodation. | PUF 51-96, 100-103, 112, 122, 137-143, 150-151. |
| 4. Defendant cannot meet its burden to show that Mr. Snookal posed an "imminent and substantial" direct threat to himself or to others. | PUF 51-96, 100-103, 112, 122, 137-143, 150-151. |
| 5. Defendant cannot meet its burden to show it "rel[ied] upon the most current medical knowledge" nor that it relied upon "the best available objective evidence" to support its claim that Mr. Snookal posed a threat to himself or others. | PUF 51-96, 100-103, 112, 122, 137-143, 150-151. |
| 6. Defendant was sufficiently on notice that Mr. Snookal was in need of a disability accommodation. | PUF 52-54, 57-61, 95-112, 132-135, 144-145, 150-152 |
| 7. Defendant was required to accommodate Mr. Snookal's disability after it rescinded the REM position from him and filled his previous position. | PUF 49-152 |
| 8. Defendant failed to provide a reasonable accommodation for Mr. Snookal after it rescinded the REM position from him and filled his previous position. | PUF 113-121 |

| Conclusions of Law | Relevant Facts |
|---|---|
| 9. Defendant has not met its burden to show no material disputes of fact exist as to Mr. Snookal's cause of action for wrongful constructive discharge. | 49-152 |
| 10. Defendant has not met its burden to show that no material dispute of fact exists as to Mr. Snookal's claim for punitive damages. | 49-152 |

Dated: March 27, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *<u>/s/ Robert E. Mussig</u>*

TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN

Attorneys for Defendant
CHEVRON U.S.A. INC.

Dated: March 27, 2025

ALLRED, MAROKO & GOLDBERG

By *<u>/s/ Olivia Flechsig</u>*

DOLORES Y. LEAL
OLIVIA FLECHSIG

Attorneys for Plaintiff
MARK SNOOKAL