1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   TRACEY A. KENNEDY, Cal Bar No. 150782
3  ROBERT E. MUSSIG, Cal. Bar No. 240369
   H. SARAH FAN, Cal. Bar No. 328282
4  333 South Hope Street, 43rd Floor
   Los Angeles, CA 90071-1422
5  Telephone:    213.620.1780
   Facsimile:    213.620.1398
6  E-mail:       tkennedy@sheppardmullin.com
                 rmussig@sheppardmullin.com
7                sfan@sheppardmullin.com

8  Attorneys for Defendant.
   CHEVRON U.S.A. INC.,
9  a Pennsylvania corporation

10

11                    UNITED STATES DISTRICT COURT

12          CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13  MARK SNOOKAL, an individual,          | Case No. 2:23-cv-6302-HDV-AJR

14              Plaintiff,                 | **DEFENDANT CHEVRON U.S.A., INC.'S**
                                           | **EVIDENTIARY OBJECTIONS TO**
15        vs.                              | **PLAINTIFF MARK SNOOKAL'S EVIDENCE**
                                           | **IN SUPPORT OF MOTION FOR SUMMARY**
16  CHEVRON USA, INC., a California Corporation, | **JUDGMENT OR, IN THE ALTERNATIVE,**
    and DOES 1 through 10, inclusive,      | **PARTIAL SUMMARY JUDGMENT**
17
                Defendants.                | [*Filed concurrently with Joint Brief re Defendant's*
18                                         | *Motion for Summary Judgment; Defendant's*
                                           | *Statement of Uncontroverted Facts and Genuine*
19                                         | *Disputes; Joint Appendix of Declarations and*
                                           | *Written Evidence; [Proposed] Judgment granting*
20                                         | *Defendant's Motion for Summary Judgment*]

21
                                           | Hearing:  May 8, 2025
22                                         | Time:     10:00 a.m.
                                           | Place:    Courtroom 5B – 5th Floor
23                                         | Judge:    Hon. Hernán D. Vera

24                                         | Action Filed: August 3, 2023
                                           | Trial Date: August 19, 2025
25

26

27

28

-1-

Defendant Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron U.S.A.") hereby submits the following objections to Plaintiff Mark Snookal's evidence, in support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment:

| Plaintiff's Evidence | Defendant's Objections |
| --- | --- |
| Paragraph 5 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (Federal Rules of Evidence ["FRE"] 602); Hearsay (FRE 802); Best Evidence Rule (FRE 1002); Failure to authenticate evidence (FRE 901). |
| Paragraph 6 to the Declaration of Mark Snookal | Hearsay (FRE 802) |
| Paragraph 9 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| Paragraph 11 to the Declaration of Mark Snookal | Irrelevant (FRE 402). |
| Paragraph 12 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge; speculation (FRE 602). |
| Paragraph 13 to the Declaration of Mark Snookal | Unreliable expert opinion (FRE 702). |
| Paragraph 14 to the Declaration of Mark Snookal | Hearsay (FRE 802). |
| Paragraph 15 to the Declaration of Mark Snookal | Hearsay (FRE 802). |
| Paragraph 16 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Best Evidence Rule (FRE 1002);  Failure to authenticate evidence (FRE 901). |
| Paragraph 17 to the Declaration of Mark Snookal | Hearsay (FRE 802). |
| Paragraph 18 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Best Evidence Rule (FRE 1002);  Failure to authenticate evidence (FRE 901). |
| Paragraph 19 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Best Evidence Rule (FRE 1002);  Failure to authenticate evidence (FRE 901). |
| Paragraph 20 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Best Evidence Rule (FRE 1002);  Failure to authenticate evidence (FRE 901). |
| Paragraph 21 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| Paragraph 22 to the Declaration of Mark Snookal | Irrelevant (FRE 402). |
| Paragraph 24 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); misstates evidence. |
| Paragraph 25 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); Irrelevant (FRE 402). |
| Paragraph 26 to the | Irrelevant (FRE 402). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| Declaration of Mark Snookal | |
| Paragraph 27 to the Declaration of Mark Snookal | Unreliable expert opinion (FRE 702); Irrelevant (FRE 402). |
| Paragraph 28 to the Declaration of Mark Snookal | Irrelevant (FRE 402). |
| Paragraph 29 to the Declaration of Mark Snookal | Irrelevant (FRE 402); Hearsay (FRE 802). |
| Paragraph 30 to the Declaration of Mark Snookal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Best Evidence Rule (FRE 1002);  Failure to authenticate evidence (FRE 901). |
| Paragraph 30 to the Declaration of Mark Snookal | Irrelevant (FRE 402). |
| Paragraph 5 to the Declaration of Dr. Alexander Marmureanu | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Best Evidence Rule (FRE 1002);  Failure to authenticate evidence (FRE 901). |
| Exhibit 11, Dr. Marmureanu's Report | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Best Evidence Rule (FRE 1002);  Failure to authenticate evidence (FRE 901). |
| Exhibit 27 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 28 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 29 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 30 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 31 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 32 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 33 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 34 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 35 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 36 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 37 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 38 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| Exhibit 39 to the Declaration of Dolores Leal | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802);  Failure to authenticate evidence (FRE 901). |
| 50. Mr. Snookal would have | Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Best Evidence Rule (FRE 1002). |

-3-

DEFENDANT'S EVIDENTIARY OBJECTIONS

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| received an additional 55% of his base salary as a location premium for the Reliability Engineering Manager ("REM") position in Escravos, Nigeria.<br><br>Snookal Decl. at 5; see also the Transcript of the Deposition of Andrew Powers ("Powers Dep. Tr.") 31:5-11; 32:23 – 33:20 | |
| 51.    The REM position was a rotational assignment with a schedule of 28 days working in Escravos, Nigeria, and 28 days off to return home.<br><br>Snookal Decl. ¶5. | Objection: Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802). |
| 55.    Given the rotational schedule of the REM position, Mr. Snookal could and would have received the recommended treatment for his dilated aortic root at home in California without interruption.<br><br>Snookal Decl. ¶12; Khan Dep. Tr. at 31:10-32:4; 40:20-41:23. | Objection: Lacks foundation/personal knowledge; speculation (FRE 602). |
| 56.    The REM position did not have any requirement to lift more than 50 pounds.<br><br>Snookal Decl. ¶8; See also Levy Dep. Tr. 75:20-76:2. | Misstates the evidence / not supported by evidence.  Plaintiff did not make any attestation regarding a lifting requirement for the REM position.  Dr. Levy did not testify about any 50-pound lifting requirement.<br><br>A 50-pound lifting restriction was not a factor in Plaintiff's MSEA determination of unfit for duty in Escravos.  *See* DUF 20, 22-23, 26. |
| 57. Mr. Snookal provided a clearance letter to Chevron from his treating cardiologist, Dr. S. Khan, which indicated that Mr. Snookal was "under [his] care for his heart condition. It is safe for [Mr. Snookal] to work in Nigeria | Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| with his heart condition. His condition is under good control and no special treatments are needed."<br><br>Snookal Decl. at 9 and Exh. 3; Levy Dep. Tr. at 84:7-19. | |
| 58. On August 23, 2019, Dr. Khan wrote an email to Dr. Scott Levy, Chevron's then Regional Medical Manager for the Europe, Eurasia, Mid-East, and Africa region, explaining that Mr. Snookal's thoracic aneurysm is "relatively small and considered low risk" and that given a number of factors applicable to Mr. Snookal, including that his "aneurysm has not shown any growth for 3 years, his risk may be lower than the published 2% number above" especially given that "the studies of risk of rupture are fairly old (2002) and treatment has improved as has our understanding of aortic aneurysms."<br><br>Snookal Decl. at 16 and Exh. 5; Levy Dep. Tr. at 62:5-63:21 and Exh. 12-C. | Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702). |
| 62. Changes in the size of Mr. Snookal's dilated aortic root would mainly be caused by a significant increase in his blood pressure.<br><br>Khan Dep. Tr. 24:8-18. | Objection: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702). |
| 63. In assessing Mr. Snookal's risk of a serious cardiac event due to his dilated aortic root, Dr. Khan referred to three of Mr. Snookal's past CT scans | Objection: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702). |

-5-

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| which suggested it was stable in size over a three-year period and indicated an even lower risk.<br><br>Khan Dep. Tr. 23:10-20. | |
| 64. Mr. Snookal's blood pressure was well-controlled through medications (amlodipine and losartan).<br><br>Khan Dep. Tr. 27:23-28:1; 29:2-5. Marmureanu Decl. at Exh. 11-7. | Irrelevant (FRE 402). |
| 65. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm was actually less than 1% per year.<br><br>Marmureanu Decl. at Exh. 11 p. 6; 7. | Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402). |
| 66. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm while in Escravos, Nigeria was less than 0.5% per year.<br><br>Id. | Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402). |
| 67. Mr. Snookal's risk of a serious cardiac event due to his thoracic aneurysm is "negligible compared to the general population, especially given the absence of rapid growth in Mr. Snookal's case."<br><br>Marmureanu Decl. at Exh. 11 p. 7. | Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602); Irrelevant (FRE 402). |
| 68. The occupational hazards associated with Chevron's gas to liquids oil refinery in Escravos, Nigeria are high, and employees sustain injuries, or even die, on a regular basis. | Objection to Plaintiff's Exhibits 24, 28: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |

-6-

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| Leal Decl. at ¶ 10, Exh. 24 and Id. at ¶ 13. Exh. 28. | |
| 69. Dr. Aiwuyo opined that "[f]rom, the Canadian guidelines these values [for Mr. Snookal] appear low risk for a major adverse CV event. Some have used values of <4.5cm as a partition value for low risk situations." <br><br> Leal Decl. at ¶ 13. Exh. 37. | <u>Objection to Plaintiff's Exhibit 37</u>: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 70. Dr. Adeyeye agreed with Dr. Aiwuyo. Id. | <u>Objection to Plaintiff's Exhibit 37</u>: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 73. Mr. Snookal's thoracic aneurysm would not have impacted his day-to-day ability to work or complete any of his required job duties. | Misstates the evidence.  Dr. Asekomeh testified that the REM would be required to visit the field.  *See* DUF 16. <br><br> <u>Objection</u>: Lacks foundation/personal knowledge (FRE 602); Unreliable expert opinion (FRE 702). |
| 74. The REM position is a not physically strenuous job, and Chevron categorized it as an "office based job." <br><br> Levy Dep. Tr. at 75: 14-76:2; 93:21-94:9; 94:11-95:3; 95:10-25; Marmureanu Decl. at Exh. 11 at p. 8; Asekomeh Dep. Tr. at 74:24-76:19; . Snookal Decl. at 19, Exh. 7 (Chevron's "Physical Requirements and Working Conditions GO-308" for the REM Position). | Hearsay (FRE 802); Unreliable expert opinion (FRE 702); Lacks foundation/personal knowledge; speculation (FRE 602). <br><br> <u>Objection to Plaintiff's Exhibit 7</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602). |
| 75. The REM position did not require the operation of equipment, heavy or otherwise.  The position is not considered a safety-sensitive position, as defined in the Chevron "Medical Examination Program." | <u>Objection to Plaintiff's Exhibit 7</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802); Lacks foundation/personal knowledge (FRE 602). <br><br> <u>Objection to Plaintiff's Exhibit 18-2</u>: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602). |

DEFENDANT'S EVIDENTIARY OBJECTIONS

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| Snookal Decl. at 19, Exh. 7 (Physical Requirements and Working Conditions GO-308).<br><br>Job Description: "Job Title: NMA EGTL Reliability Engineering Manager." Declaration of Dr. Eshiofe Asekomeh ("Asekomeh Dep. Tr.") at 81:3, Exh. 18-2. | |
| 76. Dr. Asekomeh could not "cite a specific example" of how Mr. Snookal's thoracic aneurysm posed a threat to others.<br><br>Asekomeh Dep. Tr. At 122:19 – 124:12. | Irrelevant (FRE 402). |
| 77. In fact, Dr. Akintunde, one of the Nigeria-based cardiologists with whom Chevron U.S.A. consulted, testified that Mr. Snookal's dilated aortic root was not a threat to others.<br><br>Akintunde Dep. Tr. 40:19-24. | Misstates the evidence.   <u>Objection</u>: Irrelevant (FRE 402). |
| 78. Dr. Asekomeh did not review the job duties of the REM position before making his decision.<br><br>Asekomeh Dep. Tr. at 69:9-12; 81:3-18 and Exh. 18-2 (Job Description for NMA EGTL Reliability Engineering Manager); Asekomeh Dep. Tr. at 71:9-25. | Irrelevant (FRE 402).<br><br><u>Objection to Plaintiff's Exhibit 18-2</u>: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602). Dr. Asekomeh testified he has never seen the document before and di not rely on it in connection with Plaintiff's MSEA determination.  (Pl. Ex. 15 ["Asekomeh Dep. Tr."], 81:3-18.) |
| 80. Drs. Khan and Marmureanu, in contrast, had access to at least three years of Mr. Snookal's scans, which indicated a decreased risk to Mr. Snookal because his dilated aortic root was stable | <u>Objection</u>: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| in size over time. Khan Dep. Tr. 23:10-20; Marmureanu Decl. at Exh. 11 p. 4-6. | |
| 84. Chevron did not conduct a functional capacity evaluation for Mr. Snookal because "almost-always office jobs" that are not "physically-demanding" do not require one.<br><br>Asekomeh Dep. Tr. 74:18-76:19. | Misstates the evidence. Dr. Asekomeh testified that office-based jobs don't require a functional capacity evaluation, but "almost-always" office jobs [sic] and management will visit the field. (Asekomeh Dep. Tr. 76:11-19.) |
| 85. Nothing about the job duties for the REM position itself, or its location, would exacerbate Mr. Snookal's thoracic aneurysm or increase the risk of a serious cardiac event occurring.<br><br>Levy Dep. Tr. 75: 14-76:2; 93:21-94:9; 94:11-95:3; 95:10-25; Marmureanu Decl. Exh. 11 at p. 8; Asekomeh Dep. Tr. 95:6-24; Khan Dep. Tr. at 40:20-41:23. | Objection to Dr. Marmureanu's Report: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 86. The local medical team "regularly" performs emergency medical evacuations (i.e. medevacs) people from Chevron's Escravos, Nigeria refinery due to emergent medical issues, and there are approximately 300 annual medical evacuations annually in the region.<br><br>Asekomeh Dep. Tr. 39:9-21; see also Levy Dep. Tr. 24:20-25:9; Akintunde Dep. Tr. 33:19-34:14. | Irrelevant (FRE 402). |

DEFENDANT'S EVIDENTIARY OBJECTIONS

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| 87. As of October 10, 2024, Dr. Asekomeh was aware of two emergency medical evacuations during the previous week alone.<br><br>Asekomeh Dep. Tr. 39:9-40:5. | Irrelevant (FRE 402). |
| 88. Based upon her experience working in Escravos, Dr. Akintunde estimated that the average time for a medical evacuation by helicopter was approximately one and a half hours.<br><br>Akintunde Dep. Tr. 36:6-14. | Irrelevant (FRE 402). |
| 89. Chevron did not consider Mr. Snookal's past work history before making their decision to rescind the REM position from Mr. Snookal.<br><br>Asekomeh Dep. Tr. at 67:25-69:21; 66:18-68:12. | Irrelevant (FRE 402). |
| 90. Had they considered Mr. Snookal's past work history with Chevron, they would have found that Mr. Snookal never suffered any serious cardiac event while at work or otherwise.<br><br>Id. | Irrelevant (FRE 402). |
| 91. Dr. Asekomeh did not speak with or otherwise contact Mr. Snookal's treating cardiologist, Dr. Khan, before making his decision to rescind the REM position.<br><br>Asekomeh Dep. Tr. at 66:10-17. | Irrelevant (FRE 402). |
| 92. Dr. Asekomeh did not speak with Mr. Snookal in | Irrelevant (FRE 402). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| conjunction with his MSEA evaluation.<br><br>Asekomeh Dep. Tr. at 66:18-25. | |
| 93. Dr. Asekomeh did not speak with Dr. Irving Sobel, the physician to deemed Mr. Snookal "fit for duty with restrictions" before making his decision to rescind the REM position.<br><br>Asekomeh Dep. Tr. 65:14-66:9. | Irrelevant (FRE 402). |
| 94. The local medical team in Nigeria repeatedly deferred to Chevron U.S.A. employees for their input regarding Mr. Snookal's fitness for duty in Escravos.<br>93, on August 8, 2019, Dr. Paul Arenyeka wrote to Drs. Frangos and Levy: "I would greatly value your kind opinions and thoughts on [Mr. Snookal's case]." Leal Decl. at ¶ 13. Exh. 27<br><br>On August 26, 2019, Dr. Paul Arenyeka, the "Medical Director for the Nigeria Mid Africa SBU" wrote to Dr. Levy that "I will appreciate your guidance" regarding Mr. Snookal's fitness for duty. Leal Decl. at ¶ 13. Exh. 31.<br><br>Dr. Levy responded "I support your decision and appreciate your rereview." Id. | Objection to Plaintiff's Exhibits 27, 31: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 95. Dr. Stephen Frangos, then Chevron's Regional Manager, Health and Medical – Americas, made the decision | Objection to Plaintiff's Exhibit 27: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| to deem Mr. Snookal unfit for duty, emailing that "the patient is low risk or a major adverse CV [cardiovascular] event. Yet in Escravos, there are only limited resources for initial stabilization and transfer of a major adverse CV event. There is health risk in an Escravos assignment." <br><br> Leal Decl. at ¶ 13. Exh. 27. | |
| 96. In response to Dr. Frangos' email thread, Dr. Olorunfemi Pitan, Occupational Physician Head for Chevron's Nigeria Mid Africa Strategic Business Unit wrote instructing Dr. Asekomeh to 'kindly decline a job transfer to Escravos." <br><br> Id. | Objection to Plaintiff's Exhibit 27: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 97. Dr. Frangos was a managing agent of Chevron U.S.A. "[r]esponsible for the development and implementation of Occupational Health services for business operations with more than 25,000 employees, including oversight of ten occupational health clinics and 6,000 employees enrolled in medical surveillance programs." Leal Decl. at ¶ 14, Exh. 39. | Objection to Plaintiff's Exhibit 39: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 98. On August 20, 2019, Dr. Frangos emailed Dr. Levy that "the employee [Snookal] reached me Friday evening, through guidance from another employee. I shared with him what Paul [Arenyeka] and I had | Objection to Plaintiff's Exhibit 32: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| determined in our review of the case: that he was deemed not fit for assignment in Escravos because of the location . . .He said he planned to appeal the medical clearance decision."<br><br>Leal Decl. at ¶ 13. Exh. 32. | |
| 99. After reporting Chevron's decision to rescind the REM position to the Chevron Ombuds, Chevron passed Mr. Snookal along to discuss with Dr. Levy, Chevron's Regional Medical Manager for Europe, Eurasia, Middle East & Africa.<br><br>Snookal Decl. ¶13; Leal Decl. at ¶ 13. Exh. 32. | Objection to Plaintiff's Exhibit 32: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 100. Dr. Levy spoke with Mr. Snookal and advised that the REM position jobsite was in a remote area in Nigeria with limited medical facilities and emergency care only available via charter aircraft to Lagos, Nigeria.<br><br>Snookal Decl. ¶14; Levy Dep. Tr. 38:24 – 39:14. | Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801). |
| 103. On August 23, 2019, Dr. Levy emailed Eldyleida Seca Torres that "I don't know who the msea advisor is for Mark Snookal but can you inform them that we're reviewing his msea eval for escravos. This was previous sent (sic) as not ffd [fit for duty] but I'm performing a second review."<br><br>Leal Decl. at ¶ 13. Exh. 33. | Objection to Plaintiff's Exhibit 33: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 104. On August 23, 2019, Dr. Khan sent Dr. Levy an email, | Objection: Hearsay (FRE 802); Failure to authenticate evidence (FRE 901); Unreliable expert opinion (FRE 702). |

-13-

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| with a cc to Mr. Snookal, reiterating his opinion that Mr. Snookal was medically fit for duty despite the remote location of the job.<br><br>Snookal Decl. ¶16, Exh. 5; Levy Dep. Tr. 62:5-18, Exh. 12-C. | |
| 105. On September 4, 2019, Mr. Snookal emailed Chevron USA Human Resources Manager, Andrew Powers, to report the disability discrimination, writing, *inter alia*: "I believe this decision was made based on a lack of understanding and stereotypical assumptions about my medical condition and is therefore, discriminatory in nature" and "aside from my complaint of medical discrimination where does their decision leave me?"<br><br>Snookal Decl. at 18 and Exh. 6; Powers Dep. Tr. at 46:15-48:2 and Exh. 17-3. | Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |
| 106. Minutes after receiving Mr. Snookal's disability complaint on September 4, 2019, before further investigation, Mr. Powers wrote to his colleagues Troy Tortorich, Austin Ruppert, and Thalia Tse, inter alia: "I am sure there is a very good reason why this [job] was rescinded"<br><br>Powers Dep. Tr. at 49:13-52:11 and Exh. 17-3 at CUSA000539. | Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |
| 107. Mr. Powers also forwarded Mr. Snookal's | Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| disability discrimination complaint to the medical team in Nigeria, asking Dr. Ayanna Jones for "context" "and suggested response" to Mr. Snookal's disability discrimination complaint.<br><br>Powers Dep. Tr. at 136:5-25, Exh. 17-12 (Email from Andrew Powers to medical team in Nigeria at CUSA000650). | |
| 108. Dr. Ayanna Jones wrote back to Mr. Powers' email referring him to speak to Dr. Levy who "would be able to provide [] context on this case and appropriate response."<br><br>Powers Dep. Tr. at 136:5 – 137:16, Exh. 17-12 (Email from Andrew Powers to medical team in Nigeria at CUSA000650). | Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |
| 109. Dr. Levy was the subject of Mr. Snookal's disability discrimination complaint since he was the one who had already reviewed and upheld the decision to deem Mr. Snookal not fit for duty in Escravos. Yet, Mr. Powers' "investigation" consisted solely of speaking with Dr. Levy and accepting his explanation for his own discriminatory decision.<br><br>Leal Decl. at ¶ 13, Exh. 29 and 31. | Objection to Plaintiff's Exhibits 29, 31: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 110. On September 6, 2019, Mr. Powers sent an email reply to Mr. Snookal which read: "I've reached out to the Medical Department and | Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| while I'm not privy to any medical information, I understand a thorough review was conducted and alternatives were explored. We would respectfully disagree that the determination was based on stereotyping or impermissible discrimination."<br><br>Powers depo at 95:21-98:3 and Exh. 14-5 (Andrew Powers Email to Mark Snookal Re: Medical Team Findings at CUSA000542); Snookal Decl. at 18, Exh. 6 (CUSA000542-543). | |
| 111. Mr. Snookal requested of Mr. Powers an explanation for why the REM position had been rescinded.<br><br>Levy Dep. Tr. at 78:10-79:6, Exh. 12-D; (September 16, 2019 Email from Dr. Levy to Mr. Snookal); Snookal Decl. at 20. | Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |
| 112. On September 16, 2019, Dr. Levy emailed Mr. Snookal explaining that he "became involved on [Mr. Snookal's] case when [he] had requested a second opinion on the initial denial" and, *inter alia*, wrote that Chevron had a right to rescind the offer based on a "direct threat" to Mr. Snookal's "health and safety" because "if the condition were to occur, the outcome would be catastrophic and would require an immediate emergency response which is not available and would most | Irrelevant (FRE 402); Hearsay (FRE 802); Failure to authenticate evidence (FRE 901). |

-16-

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| certainly result in death in Escravos."<br><br>Levy Dep. Tr. at 78:10-79:6, Exh. 12-D; (September 16, 2019 Email from Dr. Levy to Mr. Snookal). | |
| 113. On or about September 5, 2019, Mr. Snookal searched for and identified four different vacant positions for which he was qualified and submitted applications for same: (1) El Segundo Routine Maintenance General Team Lead, (2) El Segundo Operating Assistant (which had two separate openings) and (3) Maintenance Change Operating Assistant.<br><br>Snookal Decl. ¶24; Snookal Dep. Tr., 110:25 – 111:10; 113:18 – 116:18. | Irrelevant (FRE 402). |
| 114. Chevron made Mr. Snookal apply with the rest of the general applicant pool without preference for these four vacant positions.<br><br>Snookal Decl. ¶ 24; Snookal Depo Tr. 123:14-19. | Irrelevant (FRE 402). |
| 115. Mr. Snookal was qualified for the four vacant positions to which he applied.<br><br>Snookal Depo Tr. 110:25 – 111:10; 118:5 – 119:10; Pg. 130:18-25; 136:6-23; 167:7-168:8. | Irrelevant (FRE 402). |
| 116. The four vacant positions to which Mr. Snookal applied were comparable to, or worse than, the REM position.<br><br>Snookal Dep. Tr. at 122:7-15. | Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| 117. Chevron did not select Mr. Snookal for any of the four vacant positions to which he applied.<br><br>Snookal Decl. ¶ 24; Snookal Depo Tr. 123:24 – 125:1; Pg. 131:17-20; 134:17-19; 136:6-23. | Irrelevant (FRE 402). |
| 119. The Reliability Change OA role was a demotion from Mr. Snookal's previous IEAR role and the REM job because it was not a supervisory nor managerial role with no direct reports, and it was a temporary position with no pathways to promotion.<br><br>Snookal Decl. at 24; Snookal Decl. Tr. at 168:11 – 169:10; 174:5-175:11; 28:8-22. | Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801). |
| 122. The treatment recommendations for Mr. Snookal's thoracic aneurysm were to get an annual CT and echocardiogram and to take his recommended blood pressure medications.<br><br>Snookal Decl. at 9 and Exh. 3; Marmureanu Decl. at Exh. 11 p. 8; Asekomeh Dep. Tr. at 104:11-20. | Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801).<br><br><u>Objection to Dr. Marmureanu's Report</u>: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702). |
| 123. Mr. Snookal is the breadwinner for his family, including his son with disabilities.<br><br>Snookal Decl. at 28. | Irrelevant (FRE 402). |
| 124. After Chevron rescinded the REM position, Mr. Snookal had to pull his son out of private school because he could no longer afford it. | Irrelevant (FRE 402). |

-18-

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| Snookal Dep. Tr. at 246:25 – 247:17; Snookal Decl. at 28. | |
| 125. In or about November of 2019, Mr. Snookal started treating with a therapist due to the symptoms of depression he was experiencing.<br><br>Snookal Decl. at 27 | Irrelevant (FRE 402). |
| 126. In or about October of 2020, Mr. Snookal started taking antidepressants to treat the symptoms of depression he was experiencing.<br><br>Snookal Decl. at 27; Snookal Dep. Tr. at 243:1 – 245:25 | Irrelevant (FRE 402). |
| 127. Mr. Snookal and his therapist discussed looking for other work because of the detrimental effects Chevron's discrimination was having on Mr. Snookal's mental health.<br><br>Snookal Dep. Tr. at 243:1 – 245:25; Snookal Decl. at 27-29. | Irrelevant (FRE 402). |
| 128. After his employment with Chevron ended in August of 2021, Mr. Snookal relocated himself and his family out of the state to try to better support his family's needs.<br><br>Snookal Decl. ¶ 30; Snookal Dep. Tr. 51:6-8. | Irrelevant (FRE 402). |
| 129. Dr. Levy has consistently been employed by Chevron U.S.A., even while he has changed job assignments and been based outside of the United States in London and Singapore.<br><br>Levy Dep. Tr. at 12:15-15:6; | Irrelevant (FRE 402). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| 14:8-11; 14:18-23. | |
| 130. Chevron U.S.A. was his employer and paid Andrew Powers while he was on assignment in different states and on expatriate assignments in other countries, including Kazakhstan and the Philippines. Mr. Powers was never an employee of the expatriate host assignment.<br><br>Powers Dep. Tr. 19:2 - 22:1. | Irrelevant (FRE 402). |
| 136. The cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms identified Mr. Snookal as being "low risk" and noting that the size of Mr. Snookal's thoracic aneurysm is smaller than the 4.5 cm "partition value for low-risk situations."<br><br>Asekomeh Dep. Tr. 115:11-21, Exh. 18-7 (Dr. Asekomeh email thread with Nigerian cardiologists). | Objection to Plaintiff's Exhibit 18-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |
| 137. The three cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms admitted they were unable to find "clear cut field guidelines for patient with aortic aneurysm."<br><br>Leal Decl. at ¶ 13, Exh. 38. (""Unfortunately Dr. Aiwuyo is unable to get any other literature on risk stratification aside from the one he already referenced (Canadian)." | Objection to Plaintiff's Exhibit 38: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 138. The cardiologists with whom Dr. Asekomeh consulted regarding Mr. | Objection to Plaintiff's Exhibit 18-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| Snookal's thoracic aneurysms offered clinical instructions for Mr. Snookal, including to "avoid lifting heavy objects"; "quit smoking (if he is a smoker); (manage hypertension strictly)"; "watch out for alarm symptoms" and "avoid moderate to high intensity exercises as much as possible."<br><br>Asekomeh Dep. Tr. 115:11-21, Exh. 18-7 (Dr. Asekomeh email thread with Nigerian cardiologists); Leal Decl. at ¶ 13, Exh. 37. | |
| 139. Mr. Snookal was already following the guidelines to "avoid lifting heavy objects"; "quit smoking (if he is a smoker); (manage hypertension strictly)"; "watch out for alarm symptoms" and "avoid moderate to high intensity exercises as much as possible."<br><br>Id.; Snookal Decl. ¶11. | Objection to Plaintiff's Exhibit 18-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802). |
| 140. The cardiologists with whom Dr. Asekomeh consulted regarding Mr. Snookal's thoracic aneurysms did not provide a specific recommendation to bar Mr. Snookal from working in Escravos, Nigeria. However, they did write/endorse that "[w]hat is established is that a patient with symptomatic aneurysm should not be allowed to work in an offshore location." | Objection to Plaintiff's Exhibit 18-7: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802).<br><br>Objection to Plaintiff's Exhibit 37: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| Asekomeh Dep. Tr. 115:11-21, Exh. 18-7 (Dr. Asekomeh email thread with Nigerian cardiologists at CUSA000773; see also Leal Decl. at ¶ 13, Exh. 37. | |
| 143. Mr. Snookal had only an *asymptomatic* thoracic aneurysm, not a *symptomatic* thoracic aneurysm.<br><br>Asekomeh Dep. Tr. 115:11-21 and Exh. 15-7 Dr. Asekomeh email thread with Nigerian cardiologists at CUSA000775; Marmureanu Decl. at Exh. 11, p. 2-5; Leal Decl. at ¶ 13, Exh. 37. | <u>Objection</u>: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801).<br><br><u>Objection to Plaintiff's Exhibit 15-7</u>: Failure to authenticate evidence (FRE 901); Hearsay (FRE 802).<br><br><u>Objection to Dr. Marmureanu's Report</u>: Irrelevant (FRE 402); Lacks foundation/ personal knowledge (FRE 602); Hearsay (FRE 801); Unreliable expert opinion (FRE 702).<br><br><u>Objection to Plaintiff's Exhibit 37</u>: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 144. Prior to his resignation, Mr. Snookal expressed to multiple Chevron employees, including Greg Curtin and Austin Ruppert, tat he felt he had been treated unfairly by Chevron and he felt he had no choice but to quit.<br><br>Snookal Dep. Tr. at 225:20-226:7. | Irrelevant (FRE 402). |
| 145. Prior to his resignation, Mr. Snookal also discussed being subjected to disability discrimination with Mr. Ruppert.<br><br>Snookal Dep. Tr. at 228:18-229:4. | Irrelevant (FRE 402). |
| 146. Mr. Snookal did not state in his Chevron resignation paperwork all his reasons for leaving Chevron because he did not see the practical purpose and because he thought it would be atypical to state negative things about | Irrelevant (FRE 402). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| Chevron in the separation paperwork.<br><br>Snookal Dep. Tr. At 229:23-230:4; 231:17-232:8; Snookal Decl. at 29-30. | |
| 147. Mr. Snookal did not resign his employment with Chevron merely because his career "was not progressing as he wanted."<br><br>Snookal Decl. at 25-29; Snookal Dep. Tr. at 243:4-6; 246:6-248:19. | Irrelevant (FRE 402). |
| 148. Mr. Snookal did not resign his employment with Chevron merely to pursue another job opportunity.<br><br>Snookal Decl. at 25-29; Snookal Dep. Tr. 243:4-6; 246:6-248:19. | Irrelevant (FRE 402). |
| 149. Dr. Levy, as the Regional Manager for the Europe, Eurasia, Middle East & Africa region, had a role in evaluating purported risks to Chevron's expatriate employees, to give recommendations for setting policies for Chevron's fitness for duty program, and "create[d] policies and protocols for [Chevron's] medical evacuations."<br><br>Levy Dep. Tr. at 20:11-25:10; Snookal Dep. Tr. at 314:11-315:12. | Hearsay (FRE 802). |
| 150. Dr. Paul Arenyeka, Medical Director for Chevron Nigeria's Mid Africa SBU, in justifying the decision to deem Mr. Snookal unfit for duty, concluded that "the risk | Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Objection to Plaintiff's Exhibit 31: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |

| Plaintiff's Evidence | Defendant's Objections |
|---|---|
| of an incident no matter how low is a major factor in Escravos medical care."<br><br>Leal Decl. at ¶ 13, Exh. 31. | |
| 151. Dr. Levy, in reviewing the decision to deem Mr. Snookal unfit for duty in Escravos, emailed Dr. Arenyeka that: "[a]lthough not without some risk, I don't think we're dealing with high risk. We can mandate yearly clearance and report from nephrologist (sic) on a yearly basis. Risk is even lower when we consider that [Mr. Snookal]'ll be a rotator."<br><br>Id. | Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Objection to Plaintiff's Exhibit 31: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |
| 152. In an August 26, 2019 email to Dr. Khan, Dr. Levy referred to the medical team in Nigeria as "my team in Nigeria," and stated that he was "working with" them to discuss Mr. Snookal's fitness for duty<br><br>Leal Decl. at ¶ 13, Exh. 34. | Objection: Irrelevant (FRE 402); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 801).<br><br>Objection to Plaintiff's Exhibit 34: Failure to authenticate evidence (FRE 901); Lacks foundation/personal knowledge (FRE 602); Hearsay (FRE 802); Unreliable expert opinion (FRE 702). |

Dated: March 27, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By                              */s/ Sarah Fan*

DEFENDANT'S EVIDENTIARY OBJECTIONS

TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN


Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation