DOLORES Y. LEAL (134176)
OLIVIA FLECHSIG (334880)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048-5217
(323) 653-6530
dleal@amglaw.com
oflechsig@amglaw.com

**Attorneys for <u>Plaintiff MARK SNOOKAL</u>**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual, | CASE NO.: 2:23-cv-6302-HDV-AJR |
| Plaintiff, | **SEPARATE STATEMENT REGARDING PLAINTIFF'S EVIDENTIARY OBJECTIONS TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS** |
| vs. | |
| CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive, | Hearing: May 8, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 5B – 5th Floor<br>Judge: Hon. Hernán D. Vera |
| Defendants. | Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

| Defendant's Evidence | Plaintiff's Objection(s) |
|---|---|
| 4. The REM position was employed by Chevron Nigeria, Limited, who extended the conditional offer of employment to Plaintiff.<br><br>Pl. Dep. Tr., 36:23-37:8, Ex. E-1; Pl. Dep. Tr., 38:20-23. | Assumes Facts Not in Evidence (FRE 103).<br><br>Defendant's citation to Plaintiff's deposition transcript is inaccurate in that Exhibit E-1 refers to the offer as "contingent" rather than "conditional."<br><br>Moreover, Ex. E-1 to Plaintiff's deposition, the "Assignment Offer" is an assignment to Nigeria. Nowhere does the document state that the REM position was "employed by Chevron Nigeria, Limited" nor does it state that Chevron Nigeria, Limited extended the offer. |
| 6. As part of the MSEA procedure, all expatriate candidates must pass medical clearance with the embedded medical team at the host location (i.e., location of the expatriate assignment), and the embedded medical team at the host location makes the final determination as to medical fitness for duty.<br><br>Transcript of Dr. Scott Levy's Deposition ("Levy Dep. Tr."), 28:8-29:3, 30:16-31:8; Declaration of Dr. Scott Levy ("Levy Decl.") ¶ 2; *see also* Pl. Dep. Tr., 45:17-24. | Assumes Facts Not in Evidence (FRE 103). |
| 9. The facility in Escravos, Nigeria is in an isolated swamp located on a river coast only accessible by helicopter or by boat, making regular and emergency access in and out of the facility difficult:<br><br>• The facility is an industrial complex located in the region of Escravos, Nigeria, which is a facility primarily focused on the Escravos Gas to Liquids ("EGTL") project, converting natural gas into liquid petroleum products.<br><br>• Helicopters are not on standby in Escravos and are not always available for transport. | Assumes Facts Not in Evidence (FRE 103). |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15 | • There are no roads in or out of Escravos.<br><br>• If there are no helicopters available, or in the event of bad weather in Escravos or Lagos, medical evacuation could take more than four hours and up to 10-12 hours.<br><br>• Escravos is located in the Niger Delta, in which Boko Haram and other militants operate. For medical evacuations by boat, the Nigerian military needs to be contacted for escort through the region.<br><br>• Escravos has bad weather up to 50% of the time, as does Warri or Lagos during its rainy season of April through October.<br><br>Asekomeh Decl. ¶¶ 6-7; Transcript of Dr. Eshiofe Asekomeh's Deposition ("Asekomeh Dep. Tr."), 37:5-25; Levy Dep. Tr., 72:24-73:24; Levy Decl. ¶ 4. | |
| 16<br>17<br>18<br>19<br>20<br>21 | 15. Any medical evacuation in Escravos would depend on the availability of a helicopter and whether the weather permitted an evacuation, so a rupture or dissection in Escravos would likely result in Plaintiff's death.<br><br>Asekomeh Decl. ¶¶ 6-7, 9. | Assumes Facts Not in Evidence (FRE 103); Lacks Foundation (FRE 602); Calls for an Expert Opinion (FRE 702) |
| 22<br>23<br>24<br>25<br>26<br>27<br>28 | 16. If Plaintiff had experienced a rupture or dissection while he was inspecting and operating equipment, or supervising the operation and inspection of heavy machinery, he could have injured other employees who likewise have limited access to evacuation for medical treatment, leading to serious impairment or even death.<br><br>Asekomeh Decl. ¶ 12. | Assumes Facts Not in Evidence (FRE 103); Lacks Foundation (FRE 602); Calls for an Expert Opinion (FRE 702) |

| | | |
|---|---|---|
| 1 | 20. Based on an assessment of Plaintiff's medical records from his visit with Dr. Sobel, as well as his first-hand experience working in Escravos, Dr. Eshiofe Asekomeh, who was then the Occupational Health Physician at the Chevron Hospital in Warri, Nigeria, concluded on August 15, 2019 that Plaintiff was not fit for duty in Escravos due to the remote location, but stated that Plaintiff could be cleared for assignment in Lagos.<br><br>Asekomeh Decl. ¶¶ 9 | Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802). |
| | 22. In making his assessment of Plaintiff's medical clearance, Dr. Asekomeh consulted with two cardiologists in Nigeria who were familiar with Plaintiff's type of aortic condition – Dr. Victor Adeyeye in Warri and Dr. Ujomoti Akintunde in Lagos – who independently reviewed Plaintiff's medical records based on their education, experience, and knowledge of existing medical literature, and opined that if Plaintiff were to experience an aortic event in Escravos, it would likely lead to his death, given the limited medical resources in Escravos.<br><br>Asekomeh Decl. ¶ 9; Transcript of Dr. Ujomoti Akintunde ("Akintunde Dep. Tr."), 66:6-67:12, 67:20-68:18, 70:6-22, 81:25-82:24. | Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802). Objection as to Dr. Akintude: Not Qualified to Express an Expert Opinion as to Plaintiff's Condition (FRE 701, 702). |
| | 23. Dr. Asekomeh also took into account the remote location of the assignment, Escravos, which was a particularly dangerous work location for a person with Plaintiff's condition because Escravos does not have a healthcare system infrastructure to handle complex cases, and that an aortic event in Escravos could lead to Plaintiff's death or the death or injury of others because of the lack of access to adequate medical care and timely medical evacuations in Escravos. | Objection: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE 103); and Hearsay (FRE 802); Not Qualified to Express an Expert Opinion as to Plaintiff's Condition (FRE 701, 702). |

| # | | |
|---|---|---|
| 1 | Asekomeh Decl. ¶¶ 9-12; *see also* Pl. Dep. Tr., 81:1-6. | |
| 2 | | |
| 3 | 26.    Dr. Levy discussed Dr. Khan's email with Dr. Asekomeh, who reviewed the information provided and maintained his determination that Plaintiff could not be cleared for duty in Escravos, even with the low but unpredictable risk of an incident, because a rupture or dissection occurring would most certainly result in death due to Escravos's lack of necessary medical resources and immediate emergency responses.<br><br>Levy Decl. ¶ 6; *see also id.* at ¶ 5, Ex. B; Asekomeh Decl. ¶ 12. | Objection: Lacks Foundation (FRE 602); Assumes Facts Not in Evidence (FRE103); and Hearsay (FRE802). |
| 12 | 30.    Aside from the rescinded REM position, Plaintiff does not contend any other decision was based on discrimination because of his heart condition.<br><br>Pl. Dep. Tr., 197:7-25; 203:15-17. | Pursuant to FRE 701, Mr. Snookal's deposition testimony regarding what constitutes "discrimination" is inadmissible because it involves impermissible conclusions of law. |
| 16 | 31.    The only basis for Plaintiff's belief that the denial of the REM position was discriminatory is Plaintiff's belief that the local medical team in Nigeria did not do their due diligence by considering the study from 2002 provided by Dr. Khan referencing the approximate 2% risk of incident with Plaintiff's aortic condition and not considering other studies.<br><br>Pl. Dep. Tr., 97:3-98:15, 109:8-23. | Misstates Plaintiff's testimony. Assumes Facts Not in Evidence (FRE 103); testimony calls for a legal conclusion (FRE 701).<br>Plaintiff testified: "In my opinion, I don't believe that the people that evaluated me did their due diligence in understanding the condition that I had and the effects that a remote location would have. That's what I meant by that." Snookal Dep. Tr. 97:3-9. |
| 23 | 32.    Dr. Khan did not reference any study other than the study in 2002.<br><br>Pl. Dep. Tr., 84:18-85:14, Ex. E-6. | Misstates the cited facts. Objection, Assumes Facts Not in Evidence (FRE 103). |
| 26 | 35.    Chevron U.S.A. worked with Plaintiff to find alternative job positions he was qualified for:<br><br>• On or about September 5, 2019, Plaintiff met with his | Misstates the facts. Assumes Facts Not in Evidence (FRE 103).<br><br>Exh. E-10 does not say "three possible positions for him." |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17 | supervisor at the El Segundo facility, Austin Ruppert, HR Manager Andrew Powers, and HR Business Partner Thalia Tse, when they informed him they would look to identify open positions he may be qualified for and encouraged Plaintiff to do the same.<br>• That day, Plaintiff emailed Mr. Ruppert regarding "three possible positions" for himself that he found after examining Chevron U.S.A.'s posted job openings.<br>• Dr. Levy outlined approximately 40 other geographic regions at which Plaintiff could obtain medical clearance for an expatriate assignment and approximately 26 other geographic regions at which, following a specific assessment, Plaintiff may be able to obtain medical clearance.<br><br>Pl. Dep. Tr., 89:3-11, 89:20-90:14, Ex. E-7; Pl. Dep. Tr., 109:24-110:17, Ex. E-10; Pl. Dep. Tr., 113:18-114:19. | To the contrary, Plaintiff points out that he saw three postings for possible positions, but he would be considered "unfit" for the first and not qualified for the third position. |
| 18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 37.    Chevron U.S.A.'s hiring process involves a robust metrics-based screening model with peer and HR oversight:<br><br>• Open job postings have a job owner who makes the hiring decision and is at times also the reporting supervisor for the position.<br>• Although the job owner is the ultimate decisionmaker in filling the open role, the candidate selection usually occurred during group meetings which included HR personnel who ensured Chevron U.S.A.'s policies were being followed in the selection process.<br>• Candidates interviewed during the selection process were | Defendant's supporting evidence does not support all of the facts herein. Objection: Assumes Facts not in Evidence (FRE 103); Lacks Foundation (FRE 602). |

| | |
|---|---|
| rated numerically based on selection criteria such as Functional Experience, People Development, Leadership Behaviors, Stakeholder Management (Internal/External), Development Fit, and Operational Excellence.<br><br>Declaration of Andrew Powers ("Powers Decl.") ¶¶ 3-4; *see also* Pl. Dep. Tr., 112:1-113:17, 134:25-135:23. | |
| 42.    On or about August 4, 2021, Plaintiff resigned from his employment with Chevron U.S.A. effective August 20, 2021, for the stated reason that he was leaving for an opportunity with significantly increased responsibility.<br><br>Pl. Dep. Tr., 223:2-10, 224:7-19, Ex. E-17; Pl. Dep. Tr., 230:12-231:1, Ex. E-18; Pl. Dep. Tr., 231:2-16. | Objection: Assumes Facts Not in Evidence (FRE 103). |

Dated: March 28, 2025             ALLRED, MAROKO & GOLDBERG


                              By   /s/ Olivia Flechsig
                                 DOLORES Y. LEAL
                                 OLIVIA FLECHSIG
                                 Attorneys for Plaintiff,
                                 MARK SNOOKAL

SEPARATE STATEMENT REGARDING PLAINTIFF'S EVIDENTIARY OBJECTIONS TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS