1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   TRACEY A. KENNEDY, Cal Bar No. 150782
3  ROBERT E. MUSSIG, Cal. Bar No. 240369
   H. SARAH FAN, Cal. Bar No. 328282
4  350 South Grand Avenue, 40th Floor
   Los Angeles, CA 90071-3460
5  Telephone:  213.620.1780
   Facsimile:  213.620.1398
6  E-mail:     tkennedy@sheppardmullin.com
               rmussig@sheppardmullin.com
7              sfan@sheppardmullin.com

8  Attorneys for Defendant.
   CHEVRON U.S.A. INC.,
9  a Pennsylvania corporation

10

11                 UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13  MARK SNOOKAL, an individual,          Case No. 2:23-cv-6302-HDV-AJR

14              Plaintiff,                **DEFENDANT CHEVRON U.S.A.,
                                          INC.'S OPPOSITION TO PLAINTIFF'S
15       vs.                              EX PARTE APPLICATION FOR
                                          LEAVE TO FILE A MOTION TO
16  CHEVRON USA, INC., a California       COMPEL FURTHER DISCOVERY
    Corporation, and DOES 1 through 10,   AND TO FILE A MOTION FOR
17  inclusive,                            SANCTIONS**

18              Defendants.               **(Dkt. No. 47)**

19                                        [Filed concurrently with Declarations of
                                          Sarah Fan and Robert Mussig]
20
                                          District Judge: Hon. Hernán De. Vera
21                                        Magistrate Judge: Hon. A. Joel Richlin

22                                        Action Filed: August 3, 2023
                                          Trial Date: August 19, 2025
23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................ 2

II.     ARGUMENT ........................................................................................................ 6

        A.      No Exigency Exists Which Would Warrant Ex Parte Relief. ........................ 6

        B.      No Discovery Sanctions Are Warranted, as Chevron USA Conducted a Diligent Search and Upon the Discovery of Additional Documents, Supplemented Its Production Pursuant to Its Discovery Obligations. ............. 8

        C.      No Further Discovery or Supplemental Opposition to the Motion for Summary Judgment is Warranted, as No Facts Have Arisen Which Would Raise Any Material Issue of Fact. ..................................................... 10

III.    CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Mission Power Engineering Co. v. Continental Cas. Co.*
    883 F. Supp. 488 ............................................................................................6, 7

**Statutes**

California Fair Employment and Housing Act ...........................................................3

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) .............................................................................................9

# OPPOSITION TO EX PARTE APPLICATION

This court should deny this ex parte application because there are no exigent circumstances and no factual or legal basis for a motion for sanctions. Plaintiff Mark Snookal's second ex parte application seeks another bite at the apple—it is largely a reiteration of his first ex parte application seeking leave to file a motion for sanctions, which this Court already considered and decided.

Defendant Chevron U.S.A., Inc. ("Chevron U.S.A.") has remained in constant communication with Plaintiff throughout the meet and confer process regarding the documents and discovery responses at issue.  Plaintiff has long since been aware that he is seeking discovery responses and the production of documents which are in the possession of a **non-party entity**, and to which he failed to subpoena during discovery. Despite that, and in an effort to be cooperative, Chevron U.S.A. has tried to obtain such documents for Plaintiff.  Chevron U.S.A. has made diligent efforts to produce the documents and information requested, and has offered alternatives to Plaintiff to address any concerns Plaintiff may have regarding the timeline of production from a non-party to this action.  However, despite the cooperation and sincere desire to prevent unnecessary law and motion by Chevron U.S.A., Plaintiff indicated during the parties' meet and confer discussions that he is only interested in seeking sanctions for the same documents which were the subject of Plaintiff's first ex parte application, not in further discovery.

Chevron U.S.A. has not concealed any documents or information at issue, (and there is no evidence to support that contention) and such alleged "documents" have no bearing on the pending Motion for Summary Judgment.  Notably, and most fortuitously, Plaintiff filed this ex parte two court days after the joint motion for summary judgment was filed. Plaintiff has presented no facts or circumstances that demonstrates any exigency which would warrant ex parte relief.  On these grounds, and those discussed in further detail below, Plaintiff's ex parte application must be denied.

# I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

After Plaintiff voluntarily resigned from his former position with Defendant Chevron U.S.A., Inc., a Pennsylvania corporation ("Chevron U.S.A.") for another job opportunity which he admits had "significantly increased responsibility," Plaintiff filed the instant lawsuit against Chevron U.S.A. claiming that he had been discriminated against and constructively terminated.  At deposition, Plaintiff admitted that the reason he resigned was because his career at Chevron U.S.A. was not advancing as he had hoped, not because anyone at Chevron U.S.A. forced him to leave.  Plaintiff initially filed this lawsuit claiming he had been discriminated against on the basis of his age, as well as discriminated against and not accommodated for his alleged disability, but he has since dismissed his age discrimination claim.

Plaintiff's claims for alleged disability discrimination and failure to accommodate are premised solely on the rescission of his offer for a Reliability Engineering Manager ("REM") position in Escravos, Nigeria in August 2019, which was a position employed by Chevron Nigeria, Limited ("Chevron Nigeria"), an entity which is not a party to this action.  Plaintiff's offer was contingent upon Plaintiff undergoing and passing a fitness for duty examination.  Notably, Escravos is not an actual town or city; it is an oil production facility at the mouth of the Escravos River.  It is an incredibly remote area, with no roads in or out.  The only access is by helicopter or boat.  Due to Plaintiff's heart condition, which gives him a low but unpredictable risk of experiencing a serious cardiovascular event, Dr. Eshiofe Asekomeh, a physician in Nigeria (who was deposed in this case), determined that if Plaintiff experienced a serious cardiovascular event in Escravos, it would likely lead to his death, or the death or injury of others, due to the remote location, which has limited access to basic medical care and unreliable medical evacuations.  Dr. Asekomeh, who has never been employed by Chevron U.S.A., deemed Plaintiff not fit for duty in Escravos.

Although Plaintiff's former position had been backfilled in anticipation of Plaintiff taking the REM position, Chevron U.S.A. ensured that Plaintiff's employment would

continue and worked with him to find a position that he was interested in and qualified for.  Chevron U.S.A. created a position for Plaintiff which paid the same, and which he accepted, and Plaintiff was ultimately restored to his former position.  Plaintiff did not experience any loss of compensation or benefits during this period of time.  Plaintiff continued to work for Chevron U.S.A. for approximately two years after the rescission of the REM position until he voluntarily resigned in August 2021.

Plaintiff filed this action on August 3, 2023.  Trial is set on August 19, 2025 (which has already been continued – along with the discovery cut-off).  Chevron U.S.A.'s Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, is fully briefed and set for hearing before the Court on May 8, 2025, as to Plaintiff's three remaining claims: (1) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) failure to accommodate in violation of FEHA; and (3) wrongful constructive termination in violation of public policy.

This ex parte application seeks leave to file a request for sanctions relating to the same documents regarding Dr. Stephen Frangos, which were the subject of Plaintiff's first ex parte application.  As set forth in in detail in Chevron U.S.A.'s prior opposition to Plaintiff's ex parte application, electronic records are not centrally stored, meaning Chevron U.S.A. does not have the ability to search the records of all Chevron-related entities.  (Mussig Dec. ¶ 6.)  Chevron U.S.A. was not aware that Dr. Stephen Frangos was involved in Plaintiff's MSEA fitness for duty determination in any capacity at time it served its Initial Disclosures and throughout most of the course of discovery in this matter.  (Mussig Dec. ¶ 2.)  Indeed, even Plaintiff, who actually had personal interactions with Dr. Frangos and had personal knowledge of Dr. Frangos's involvement in this matter, *testified that he did not have substantive discussions with Dr. Frangos*.  (Mussig Dec. ¶ 3, Ex. A ["Snookal Dep. Tr."], 69:17-25; see also 79:20-80:9.)  To the knowledge of both parties, Dr. Frangos did not have any substantive involvement in this matter.

Plaintiff has taken six depositions in this case thus far, including four of the doctors involved in the MSEA determination—Dr. Mark Levy, Dr. Eshiofe Asekomeh, Dr.

-3-

1  Ujomoti Akintunde, and Dr. Victor Adeyeye.  (Mussig Dec. ¶ 4; Fan Dec. ¶ 2.)  Aside

2  from Dr. Levy, these doctors have never been employed by Chevron U.S.A., and their

3  depositions had to be coordinated through Chevron Nigeria, Limited ("Chevron

4  Nigeria"), a wholly separate and distinct corporate entity from Chevron U.S.A.  (Fan

5  Dec. ¶ 2.)  None of the witnesses deposed testified that Dr. Frangos was involved in

6  Plaintiff's MSEA determination in any way, and certainly did not indicate that he was a

7  decisionmaker with respect to the determination.  (Mussig Dec. ¶ 4; Fan Dec. ¶ 2.)

8       After Plaintiff noticed the depositions of the doctors located in Nigeria, Chevron

9  U.S.A. in the spirit of cooperation, worked diligently to coordinate with Chevron Nigeria

10  regarding their availability for deposition, taking into account their schedules,

11  availability, and clinical duties, as well as the 8-9 hour time difference between

12  California and Nigeria.  (Fan Dec. ¶ 4.)  On October 8, 2024, in connection with Dr.

13  Asekomeh's deposition, Chevron U.S.A. learned that Dr. Asekomeh had corresponded by

14  email with Drs. Akintunde and Adeyeye regarding Plaintiff.  (Mussig Dec. ¶ 6.)  Once

15  Chevron U.S.A. became aware of the existence of relevant email correspondence in the

16  possession of Chevron Nigeria on October 8, 2024, Chevron U.S.A. promptly made

17  efforts to work with Chevron Nigeria to obtain copies of that email correspondence and

18  ***produced that correspondence two days later on October 10, 2024***.  (Mussig Dec. ¶ 6;

19  *see also* Flechsig Decl., Ex. 8, Asekomeh Dep. Tr., 116:21-117:5 [testifying that the

20  email correspondence at issue was not accessible even to Dr. Asekomeh without the

21  assistance of help on the "back end" (i.e., IT) until October 9, 2024, the day before it was

22  produced].)

23       Dr. Asekomeh testified during deposition that he did not specifically recall, but

24  may have corresponded by email with Dr. Olorunfemi Pitan, former Head of

25  Occupational Health in Lagos, Nigeria.  (Mussig Dec. ¶ 8.)  Dr. Asekomeh confirmed

26  that he was the sole decisionmaker in Plaintiff's MSEA determination.  (Mussig Dec. ¶ 7,

27  Ex. C ["Asekomeh Dep. Tr."] at 33:14-18, 35:18-23.)  Dr. Asekomeh did not testify

28  regarding any involvement by Dr. Frangos in Plaintiff's MSEA determination.  (Mussig

Dec. ¶ 7.)  Following Dr. Asekomeh's deposition, Chevron U.S.A. again worked with Chevron Nigeria to conduct a search for any email correspondence between Dr. Asekomeh and Dr. Pitan.  (*Id.* at ¶ 8.)  In the course of this search, Chevron U.S.A. received a copy of an email chain which Dr. Pitan forwarded to Dr. Asekomeh on August 15, 2019, which included an email from Dr. Frangos dated August 8, 2019.  (*Id.*)  **Until this point, Chevron U.S.A. had not known of any involvement by Dr. Frangos except for the referral that Plaintiff testified to in his deposition.**  (*Id.*)  Chevron U.S.A. nevertheless duly produced the email chain on November 8, 2024.  (*Id.*)  The Court found there was not sufficient bad faith to justify sanctions for the production of this email correspondence chain, and reopened discovery in this matter.  (Dkt. No. 37.)

On January 16, 2025, taking advantage of the reopened discovery period, Plaintiff met and conferred for the first time regarding Requests for Production of Documents which were propounded throughout the life of this matter, demanding further production and supplementation of documents and information regarding numerous Requests for Production.  (*See* Flechsig Dec. ¶ 20, Ex. 11)  Since then, during the parties' meet and confer discussions, including on February 24, 2025, and February 26, 2025, Chevron U.S.A. has consistently agreed to attend an informal discovery conference.  (Fan Dec. ¶ 6.)  The parties agreed during these meet and confer discussions that they would jointly seek an informal discovery conference with the Magistrate Judge once the parties had narrowed the remaining discovery issues following receipt of Chevron U.S.A.'s supplemental document production.  (*Id*.)  Chevron U.S.A. produced additional documents pursuant to the parties' meet and confer efforts on March 11, 2025.  (Fan Dec. ¶ 7.)  Chevron U.S.A. also provided available dates for an informal discovery conference with the Magistrate Judge, and informed Plaintiff that it could provide additional dates of availability if necessary.   (*Id*.)  Plaintiff never agreed to the informal discovery conference. Chevron U.S.A. did not receive any response to its communication until two weeks later on March 25, 2025, when Plaintiff advised that he would be filing an ex parte application to seek leave to file a motion to compel and for sanctions.  (Fan Dec. ¶¶ 7-8.)

Plaintiff has not contended that any of the additional documents produced by Chevron U.S.A. suggest that additional discovery must be taken, nor has Plaintiff made a request for such relief.  (Fan Dec. ¶¶ 8-9.)  On March 25, 2025, Plaintiff's counsel stated that they were not requesting leave to conduct additional discovery regarding the documents that were produced, or that they anticipated needing any further discovery.  (Fan Dec. ¶ 9.)  Plaintiff's counsel only indicated that they intended to seek sanctions for Chevron U.S.A.'s production of documents, which they contend should have been initially produced in response to Plaintiff's first set of Requests for Production of Documents.  (Fan Dec. ¶¶ 8-9.)  Plaintiff would not entertain discussion of any alternative methods to resolve the subject of Plaintiff's application.  (Fan Dec. ¶ 9.)

Any attorneys' fees and costs Plaintiff seeks only arise from Plaintiff's failure to meet and confer in good faith regarding the subject of his ex parte application before rushing into court.  After waiting nearly two weeks to raise the issue, and rejecting reasonable alternatives to resolve the subject of Plaintiff's ex parte application, it is clear no exigency exists which would warrant granting Plaintiff's ex parte application.  Accordingly, Plaintiff's ex parte application should be denied.  Chevron U.S.A. remains available and willing to attend an informal discovery conference as the parties previously agreed.

## II.  ARGUMENT

### A.  No Exigency Exists Which Would Warrant Ex Parte Relief.

"Ex parte applications are rarely justified."  *See Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (examining in detail the inherent unfairness and gamesmanship of the ex parte motion process).  "Ex parte applications are solely for extraordinary relief and are rarely granted."  *See* Civil Standing Order, J. Vera, § XIII, 15:19.  In order to obtain relief, an ex parte movant must first show that they will be "irreparably prejudiced" based on a sliding scale measuring the severity of the threatened prejudice and the likelihood of success on the merits.  *See Mission Power Engineering*, 883 F. Supp. 492.  Second, an ex parte movant must establish that they are "without fault

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *See id.* at 493. A party must show that "it used the entire discovery period efficiently and could not have, with due diligence, sought to obtain the discovery earlier in the discovery period." *See id.*

As Plaintiff's counsel attested, Plaintiff did not propound his first set of written discovery in this matter until May 7, 2024, almost one year after this action was filed in August 2023. (Dkt. 47-1, Flechsig Dec. ¶ 4.) Plaintiff knew as early as September 19, 2023, that his MSEA determination had been made by a doctor affiliated with non-party Chevron Nigeria, Limited. (Dkt. 12, Answer ¶ 18.) On August 10, 2023, when Plaintiff deposed Dr. Asekomeh, Dr. Asekomeh confirmed he has never been employed by Chevron U.S.A. at any time. (Mussig Dec. ¶ 7, Ex. C at 14:16-21, 15:11-13.) On August 22, 2023, when Chevron U.S.A. filed its MSJ for the first time, it stated unequivocally that "[t]he REM position [sought by Plaintiff] was employed by Chevron Nigeria, Limited." (*See* Dkt. 30-1, Joint Statement of Uncontroverted Facts and Genuine Disputes, DUF 4.) Chevron U.S.A.'s MSJ also stated that "the local medical team at the location of the job site . . . makes the final determination as to medical fitness for duty" and that "[n]o Chevron U.S.A. employee had any final determination in whether Plaintiff was ultimately awarded the REM position in Escravos." (*See* Dkt. 30-1, Joint Statement of Uncontroverted Facts and Genuine Disputes, DUF 6, 29.) To date, Plaintiff has not served any discovery on Chevron Nigeria, nor made any efforts to do so before or after the Court reopened discovery. (Mussig Dec. ¶ 9.)

On November 27, 2024, in granting Plaintiff's first ex parte application on this issue, the Court reopened discovery in this case. (Dkt. Nos. 37-38.) Plaintiff did not meet and confer regarding any of Chevron U.S.A.'s responses to first and second sets of Requests for Production of Documents (see Fan Dec. ¶¶ 10-11, Exs. D, E) until January 16, 2025, when Plaintiff sent a meet and confer letter regarding Chevron U.S.A.'s discovery responses for the first time (see Dkt. 47-1, Flechsig Dec. ¶ 20). Despite the fact that Plaintiff had already dismissed his age discrimination claim, Plaintiff sought the

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

1    production of extensive documents which encompassed the dismissed claim, which

2    required further meet and confer between the parties.  (Fan Dec. ¶ 5.)  Throughout the

3    parties' meet and confer, Chevron U.S.A. kept Plaintiff apprised of the timeline regarding

4    the collection of documents and information from Chevron Nigeria, as well as issues with

5    the document collection—e.g., encrypted email correspondence from Chevron Nigeria

6    which could not be accessed or reviewed until they had been decrypted by IT personnel.

7    (*Id*.)  In light of the process and time needed to collect documents and information from

8    non-party Chevron Nigeria, Chevron U.S.A. stipulated to attend an informal discovery

9    conference regarding any outstanding issues after the discovery cutoff and has remained

10   willing to attend an informal discovery conference.  (Fan Dec. ¶ 6; *see also* Dkt. 47-15,

11   Flechsig Dec. Ex. 14.)   Rather than schedule an informal discovery conference as agreed

12   between the parties, Plaintiff waited two weeks without responding before electing

13   instead to file the instant ex parte application.  (*See* Fan Dec. ¶ 7.)

14          After spending almost one year without taking any discovery in this case at all,

15   after discovery was already reopened by the Court once nearly six months ago, after

16   Chevron U.S.A. filed its motion for summary judgment a second time, and after

17   prosecuting this case for nearly two years without conducting any discovery on a non-

18   party to this action, Plaintiff now seeks to place the burden for his lack of timely

19   prosecution on Chevron U.S.A.  The coordination of depositions of the Nigerian doctors,

20   who have never been employed by Chevron U.S.A., who live and work in a time zone 8-

21   9 hours removed, and who have their own personal, work, and clinical obligations,

22   required significant time and efforts to coordinate with non-party Chevron Nigeria.  Any

23   purported emergency asserted by Plaintiff can only be attributed to Plaintiff's own lack of

24   diligence.

25         **B.      No Discovery Sanctions Are Warranted, as Chevron USA Conducted a
                    Diligent Search and Upon the Discovery of Additional Documents,**
26                  **Supplemented Its Production Pursuant to Its Discovery Obligations.**

27          Plaintiff's request for leave to a file a motion for discovery sanctions is not

28   warranted, and Plaintiff has not and cannot demonstrate that such a proposed motion has

1   any merit.  Chevron U.S.A. conducted a diligent search for information and documents

2   regarding nonprivileged matters that are relevant to the parties' claims or defenses in this

3   case.  (Mussig Dec. ¶ 2.)  Until Chevron U.S.A. was provided a copy of the August 15,

4   2019 email chain from Chevron Nigeria, Chevron U.S.A. was not aware that Dr. Frangos

5   was involved in this matter at all, aside from Plaintiff's testimony that Dr. Frangos

6   referred Plaintiff to Dr. Levy to discuss Plaintiff's MSEA determination.  (*Id.* at ¶ 8; *see*

7   *also id.* at ¶ 3, Ex. A at 69:20-25.)  As part of its continuing discovery obligations,

8   Chevron U.S.A. duly produced the email chain it received.  (*Id.* at ¶ 8.)

9        As part of its initial search, Chevron U.S.A. identified the decisionmaker with

10   respect to Plaintiff's MSEA determination, Dr. Asekomeh, and based on information he

11   provided, identified the individuals Dr. Asekomeh communicated with during his review

12   of Plaintiff's MSEA determination.  (*Id.* at ¶ 2.)  **<u>Neither Dr. Asekomeh nor anyone</u>**

13   **<u>else identified Dr. Frangos as an individual who was involved in the process.</u>**  (*Id.*)

14   At deposition, Dr. Asekomeh confirmed he was the sole decisionmaker on Plaintiff's

15   MSEA.  (Mussig Dec. ¶ 7, Ex. C at 33:14-18, 35:18-23.)

16        Additionally, Chevron U.S.A. identified the Human Resources representatives

17   whom Plaintiff contacted after Plaintiff's conditional offer was rescinded and identified

18   Dr. Levy as the individual who spoke with Plaintiff and with one of the HR

19   representatives regarding Plaintiff's MSEA determination.  (*Id.* at ¶ 2.)  Dr. Levy did not

20   identify Dr. Frangos as an individual who was involved in the MSEA determination

21   process.  (*Id.*)  Dr. Levy also attested that the local medical team in Nigeria – in this case,

22   Dr. Asekomeh — would have been the final decisionmaker on Plaintiff's MSEA.

23   (Mussig Dec. ¶ 5, Ex. B at 28:8-29:3, 30:16-31:8.)

24        Chevron U.S.A.'s discovery obligations are limited to those relevant,

25   nonprivileged matters which are proportional to the needs of the case, and it has complied

26   with its discovery obligations throughout this case.  Fed. R. Civ. P. 26(b)(1).  Plaintiff's

27   request for leave to file a motion for discovery sanctions shortly before trial is nothing

28   more than an attempt to delay and harass.  Despite Chevron U.S.A.'s agreement to attend

-9-

1   an informal discovery conference on the issues raised by Plaintiff, Plaintiff did not

2   respond for two weeks and elected to file his ex parte application to seek leave to file a

3   motion for sanctions, after declining to explore any possibility of reaching an informal

4   resolution between the parties to obviate the need for costly motion work.  (Fan Dec. ¶ 7-

5   9.)  Plaintiff has never contended that any of the additional documents produced by

6   Chevron U.S.A. suggest that additional discovery must be taken, nor has Plaintiff made a

7   request for such relief.  (Fan Dec. ¶ 9.)  To the extent Plaintiff claims he is owed

8   sanctions to reimburse any attorneys' fees and costs in this endeavor, those fees and costs

9   were frivolously and unnecessarily incurred.  Plaintiff's ex parte application should be

10  denied.

11  **C.    No Further Discovery or Supplemental Opposition to the Motion for**
12  **Summary Judgment is Warranted, as No Facts Have Arisen Which Would Raise Any Material Issue of Fact.**

13          Plaintiff makes repeated and meritless accusations about purported

14  misrepresentations and misconduct by Chevron U.S.A. and its counsel, emotional bluster

15  that is designed to distract from the fact that the documents at issue have no material

16  impact whatsoever on Chevron U.S.A.'s pending MSJ.  Indeed, Plaintiff's ex parte

17  application primarily focuses on his desire to seek sanctions for documents which he

18  contends should have been produced in response to his first set of Requests for

19  Production of Documents, requests which Plaintiff did not bother to meet and confer

20  about for more than seven months, after the Court reopened discovery.  Additionally,

21  Plaintiff has never claimed that he needed to conduct additional discovery with respect to

22  the documents produced, and aside from requesting a few additional days to file his

23  Opposition to Chevron U.S.A.'s MSJ, has not argued that he was unable to file his

24  Opposition without adjusting the schedule of dates in this case.

25          Plaintiff's ex parte application separately expounds a litany of what Plaintiff

26  characterizes as unwarranted delays or discovery abuses in this matter, but fails to

27  acknowledge that the discovery sought by Plaintiff was in the possession, custody, and

28  control of a non-party, a fact Plaintiff has known since at least *September 19, 2023*.  To

date, Plaintiff has not served any discovery on Chevron Nigeria, nor made any attempts to do so either before or after the discovery cutoff. (Mussig Dec. ¶ 9.)   Plaintiff did not make any of his own efforts to conduct diligent discovery on the correct party, but instead sat on his laurels and now complains about the time and efforts expended by Chevron U.S.A. to coordinate the requested discovery from a non-party entity. Chevron U.S.A. duly produced the documents it requested and then received from Chevron Nigeria to Plaintiff. (*Id.* at ¶¶ 6, 8; Fan Dec. ¶ 5-7.) As such, the relief sought by Plaintiff is unwarranted and irrelevant to the matters in the pending MSJ. Plaintiff's ex parte application should be denied in full for this reason as well.

### III.    CONCLUSION

Based on the foregoing, Chevron U.S.A. respectfully requests that the Court deny Plaintiff's ex parte application in full.

Dated:  April 2, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
                    */s/ Tracey A. Kennedy*
TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN
Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation

SMRH:4905-4703-6976.3