SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT E. MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398
E-mail: tkennedy@sheppardmullin.com
rmussig@sheppardmullin.com
sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON U.S.A. INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 2 TO EXCLUDE ANY EXPERT TESTIMONY FROM DR. ALEXANDER MARMUREANU**<br><br>Date: July 29, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 5B – Fifth Floor<br><br>District Judge: Hon. Hernán De. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br><br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Tuesday, July 29, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard in the courtroom of the Honorable Hernán D. Vera, located in the First Street U.S. Courthouse, Courtroom 5B, 350 West 1st Street, Los Angeles, California 90012, Defendant Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron U.S.A.") will move and hereby does move for an order exclude the opinions of Plaintiff Mark Snookal's ("Plaintiff") retained expert cardiologist Dr. Alexander Marmureanu, pursuant to the Federal Rules of Evidence 403 and 702.

This motion is made following the conference of counsel pursuant to C.D. Cal. Local Rule 7-3, which took place on June 17, 2025, and in writing on June 19, 2025.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Robert Mussig, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as this Court may consider in connection with the hearing on this matter.

Dated: July 1, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ Tracey Kennedy
TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN
Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation

## I. INTRODUCTION

Pursuant to Federal Rules of Evidence 403 and 702, the Court should exclude the opinions of Plaintiff Mark Snookal's ("Plaintiff") retained expert cardiologist Dr. Alexander Marmureanu. Dr. Marmureanu's opinions set forth in his Federal Rules of Civil Procedure Rule 26(a)(2) report and deposition are irrelevant and needlessly cumulative, and would also confuse the issues, mislead the jury, and cause unfair prejudice to Defendant Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron"). The reason his testimony should be excluded in this particular case is because Dr. Marmureanu admits his opinion is not based on any research whatsoever as to the location of the Reliability Engineering Manager job in Escravos, Nigeria. He also testified that he believes that Plaintiff can do the job in Escravos, Nigeria because it is a "desk job" but he has "no idea where he got that information" and does not even know what Reliability Engineering Manager job is. (Marmureanu Dep. Tr. 26:16-27:13; 29:16-19.) As such, his 2025 opinion is not based on reliable data, not relevant to the issue to be determined by the jury, and his opinion will not aid the jury in deciding whether the "direct threat" affirmative defense asserted in 2019, the relevant time period. Moreover, this defense as asserted by Chevron, relates to the fact that the essential job duty of the Reliability Engineering Manager job was to work and live in Escravos, Nigeria, and Dr. Marmureanu admits that he has no knowledge and conducted no research as to whether Plaintiff could work with his medical condition under the living and working conditions of Escravos. Just having a high priced cardiologist, opine in 2025 that Plaintiff could work anywhere in the world with his admitted disability, without conducting any analysis research as to the location of the job or even knowing the type of job, demonstrates a lack of a true expert opinion, much less a valid layperson opinion, and instead is simply an "expert" mouthpiece for Plaintiff and his counsel. As such, his "opinion" should be excluded.

## II. RELEVANT FACTUAL BACKGROUND

While Plaintiff was employed by Chevron, he applied for and ultimately received an offer for an expatriate assignment as a Reliability Engineering Manager ("REM") position in Escravos, Nigeria. Escravos is not an actual town or city; it is an oil production facility at the mouth of the Escravos River. Dkt. 43-7 [Levy Decl.], ¶ 4. It is an incredibly remote area, with no roads in or out. Dkt. 43-5 [Asekomeh Decl.], ¶ 6. The only access is by air or boat, and at times with a military escort. *Id.*; *see also* Mussig Decl., ¶ 10, Ex. I (Levy Dep. Tr.) at 72:24-73:24. The health case infrastructure in Escravos is not set up to handle complex cases and only minor procedures can be performed, such as for minor sutures for lacerations and handling minor illnesses. *Id.* at ¶ 4. The clinics cannot perform blood transfusions or provide other medical care. *Id.* Individuals with any serious medical condition must be evacuated to Lagos or Warri, which can take up to 10-12 hours depending on the weather. *Id.* at ¶ 5; *see also* Mussig Decl., ¶ 7, Ex. F (Asekomeh Dep. Tr.) at 37:5-25. Plaintiff's offer of the REM position was contingent upon Plaintiff undergoing and passing a Medical Suitability for Expat Assignment ("MSEA") fitness for duty examination.

As part of the MSEA procedure, Plaintiff disclosed that he had an aortic root dilation, which was diagnosed in or about 2014 or 2015, and that he saw his cardiologist, Dr. Steven Khan, annually for his condition. Mussig Decl., ¶ 2, Ex. A (Pl. Dep. Tr.) at 19:5-14, 46:25-48:14; 48:25-49:11; *see also id.* at ¶ 3, Ex. B (MSEA form). Dr. Khan assessed that Plaintiff had a risk of occurrence of a cardiac event that was 2% or less, based on a cited medical study published in 2002. *Id.* at 84:18-85:14; *see also id.* at ¶ 4, Ex. C.

On August 15, 2019, Dr. Eshiofe Asekomeh, who was then the Occupational Health Physician at the Chevron Hospital in Warri, Nigeria, was assigned to determine Plaintiff's fitness for duty to work in Escravos. Dkt. 43-5 [Asekomeh Decl.], ¶¶ 9, 11. In making his assessment of Plaintiff's medical clearance, Dr. Asekomeh consulted with two cardiologists in Nigeria who were familiar with Plaintiff's type of aortic condition

and with the conditions and availability of medical care in Escravos – Dr. Victor Adeyeye in Warri and Dr. Ujomoti Akintunde in Lagos – who independently reviewed Plaintiff's medical records based on their education, experience, and knowledge of existing medical literature.  Dkt. 43-5 [Asekomeh Decl.], ¶ 9.

      Like Plaintiff's cardiologist, Dr. Khan, Dr. Adeyeye assessed that the risk of an adverse cardiovascular event associated with Plaintiff's aortic dilation was low, at 1% to 2%.  Mussig Decl., ¶ 5, Ex. D (Adeyeye Dep. Tr.) at 114:18-25.  Dr. Akintunde likewise assessed that Plaintiff's risk of an occurrence was low (Mussig Decl., ¶ 6, Ex. E [Akintunde Dep. Tr.] at 53:10-13), and was familiar with literature which assessed the risk of an adverse aortic event at around 2% (*id.* at 72:16-73:11).  Based on their knowledge of the medical facilities in Escravos, Drs. Adeyeye and Akintinde both opined that if Plaintiff suffered an adverse cardiological event in Escravos, it would lead to his death.  Mussig Decl., ¶ 5, Ex. D (Adeyeye Dep. Tr.) at 128:18-129:3; *id.* at ¶ 6, Ex. E (Akintunde Dep. Tr.) at 66:8-14, 81:25-82:24.

      Based on the opinions of Drs. Adeyeye and Akintunde, and taking into account the remote location of the assignment (based on his personal knowledge), Dr. Asekomeh concluded that Plaintiff was not fit for duty in Escravos due to the remote location, but stated that Plaintiff could be cleared for assignment in Lagos, Nigeria.  Dkt. 43-5 [Asekomeh Decl.], ¶¶ 10-11.  Dr. Asekomeh made his determination on Plaintiff's MSEA based on his own medical knowledge and expertise, as well as that of Drs. Adeyeye and Akintunde, and knowledge of the working conditions in Escravos.  *Id.*

      Plaintiff's expert, Dr. Marmureanu, prepared his initial his Federal Rules of Civil Procedure Rule 26(a)(2) report in this matter on October 9, 2024.  Mussig Decl., ¶ 9, Ex. H (Marmureanu Rule 26(a)(2) Report).  Dr. Marmureanu practices medicine in Los Angeles, California.  *Id*. Dr. Marmureanu was not involved in Plaintiff's MSEA determination and did not provide consultation during the MSEA process.  Before preparing his report and opinions, Dr. Marmureanu did not conduct independent research about the safety of workers in Escravos, Nigeria, nor did he review the conditions in

Escravos, Nigeria.  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at 25:23-26:8; *see also id.* at ¶ 9, Ex. H.)  Dr. Marmureanu opined in his report that Plaintiff's risk of an adverse cardiovascular event is "estimated at roughly 1% per year." *Id.*  Dr. Marmureanu's opinion is based entirely on his assessment of the risk of an occurrence, but does not take into account the other factors considered by the doctors in Nigeria—namely, the conditions and medical facilities available in Escravos.  Dr. Marmureanu testified that "I did not do an independent research for the safety of workers in that location[.]"  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at 25:23-26:8; *see also id.* at ¶ 9, Ex. H.   However, Dr. Marmureanu also acknowledged that if an adverse cardiological event had occurred, "medical management and more likely than not surgical management" would be necessary.  *Id.* at 37:15-24. [1]

Seven doctors are set to testify at trial.  Out of those seven, Dr. Marmureanu is the only one who did not participate in Plaintiff's MSEA determination or had any involvement in the medical assessment of Plaintiff's condition during the relevant time period, that is Summer 2019.

## III. ARGUMENT

Under California law (the Fair Employment and Housing Act), an employer may assert the "direct threat" defense when "no reasonable accommodation . . . would allow [the employee] to perform the essential functions of the position in question in a manner that would not endanger" or "impose[] an imminent and substantial degree of risk to" the health and safety of **the employee or others**.  Cal. Code Regs., tit. 2, § 11067(b), (c).  Courts consider five factors in determining whether the "direct threat" defense applies: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that potential harm will occur; (4) the imminence of the potential harm; and (5)

---

[1] Dr. Marmureanu acknowledged that in the absence of medical management, a chronic dissection condition could occur.  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at 37:25-38:3.)

consideration of relevant information about an employee's past work history.  Cal. Code Regs., tit. 2, § 11067(e)(1)–(5).   Analysis of these factors must be "based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence."  *Id*.

Under the Federal Rules of Evidence, an expert's testimony is only permitted if: "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" or if "the testimony is based on sufficient facts or data."  Fed. R. Evid. 702(a), (b).  Rule 403 permits the exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Dr. Marmureanu's testimony endangers the proceedings in all these respects.

The "direct threat" defense at issue here requires an analysis of what current medical knowledge or best objective evidence was available to the decisionmaker **at the time** of the MSEA determination.  Cal. Code Regs., tit. 2, § 11067(e).

Dr. Marmureanu opines that Plaintiff had a low risk of occurrence of an adverse cardiovascular event, "estimated at roughly 1% per year," that based on Dr. Khan's assessment and Plaintiff's medical evaluations, that Plaintiff's aneurysm posed "minimal to no risk," that the REM position is not physically demanding enough to exacerbate Plaintiff's heart condition; and that clinical management would minimize potential risks associated with Plaintiff's heart condition.  Mussig Decl., ¶ 9, Ex. H (Marmureanu Rule 26(a)(2) Report).   Dr. Marmureanu's opinions are made after the fact, on October 9, 2024, more than 5 years after Plaintiff's MSEA determination.  *Id*.  Dr. Marmureanu admittedly does not have personal knowledge regarding the medical facilities or conditions in Escravos, nor did he conduct any independent research or review to obtain that knowledge.  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at 25:23-26:8; *see also id*. at ¶ 9, Ex. H.)  Indeed, Dr. Marmureanu's opinion that Plaintiff could safely assume the expatriate assignment in Escravos, Nigeria, despite his heart condition, is based solely

on his assessment of the low risk of a cardiovascular event (Mussig Decl., ¶ 9, Ex. H [Marmureanu Rule 26(a)(2) Report]), which is not in dispute by any of the doctors who participated in Plaintiff's MSEA determination (*see, infra*).

Dr. Asekomeh made his determination that Plaintiff was not fit for duty in Escravos based also on his knowledge of the facilities and lack of medical support in Escravos. Dkt. 43-5 [Asekomeh Decl.], ¶¶ 10-11. Dr. Marmureanu admitted that if an adverse cardiological event had occurred, "medical management and more likely than not surgical management" would be necessary. Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at 37:15-24. Due to the lack of appropriate medical facilities in Escravos, medical and surgical management were not available on-site and had to be sought following a medical evacuation out of Escravos, which could take up to 10-12 hours. Dkt. 43-5 [Asekomeh Decl.], ¶¶ 4-6; Mussig Decl., ¶ 7, Ex. F (Asekomeh Dep. Tr.) at 37:5-25. Because Dr. Marmureanu has no information nor did he conduct any research, Dr. Marmureanu's opinion is without factual basis, is not a reliable opinion, and intentionally disregards facts regarding the lack of available medical facilities in Escravos and access to advanced cardiovascular care, which were specifically considered by Dr. Asekomeh in Plaintiff's MSEA determination. His opinion would not aid the jury is assessing the ability of Plaintiff to do the job in Escravos. Permitting Dr. Marmureanu to provide his opinion only regarding one aspect of the MSEA determination will not aid the jury. To be relevant and admissible, his opinion must not only consider whether the determination was made based on current medical knowledge but also on the best objective facts available given the then current circumstances. He did not do either.

Additionally, Dr. Marmureanu's opinion and proffered testimony do nothing more than corroborate the opinion of Drs. Asekomeh, Adeyeye, and Akintunde that Plaintiff had a low risk of an adverse cardiovascular event, ranging between 1% to 2% or less. There has never been a dispute that the risk is low. Dr. Marmureanu's opinion is therefore unnecessarily cumulative, as unlike the other six doctors, he did was not involved in Plaintiff's MSEA determination, and his "opinion" is made more than five

years after the determination. Excluding Dr. Marmureanu's testimony will promote judicial economy, avoid wasting the Court and the jury's time, and will avoid any delay in the proceedings.

Accordingly, Chevron respectfully requests an order excluding Dr. Marmureanu as a trial witness on the grounds that his testimony would be irrelevant and needlessly cumulative, and would also confuse the issues, mislead the jury, and cause unfair prejudice to Chevron.

Dated: July 1, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Tracey Kennedy*
TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN
Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation