DOLORES Y. LEAL (134176)
OLIVIA FLECHSIG (334880)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048-5217
(323) 653-6530
dleal@amglaw.com
oflechsig@amglaw.com

**Attorneys for Plaintiff MARK SNOOKAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 2:23-cv-6302-HDV-AJR<br><br>**PLAINTIFF MARK SNOOKAL'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [F.R.Civ.P. 16; Local Rule 16-4]**<br><br>District Judge: Hon. Hernan D. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025<br><br>Final Pretrial Conference: July 29, 2025 at 10:00 a.m.<br>Courtroom: 5B |

Respective counsel for Plaintiff Mark Snookal and Defendant Chevron USA Inc. met at least forty (40) days before the date set for the Final Pretrial Conference of July 29, 2025, and conferred regarding the required subjects set forth in F.R.Civ.P. 16 and Local Rules 16 *et seq.*

Pursuant to Local Rule 16-4, Plaintiff Mark Snookal submits this Memorandum of Contentions of Fact and Law.

## Plaintiff's Claims

(a)    **Claim:** Disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Cod. § 12940 *et seq.*

(b)    **Elements Required to Establish Plaintiff's Claim for Disability Discrimination in Violation of the FEHA:**

1. That Chevron USA Inc. was an employer;
2. That Mark Snookal was an employee of Defendant Chevron USA Inc. who applied for a job;
3. That Mark Snookal's dilated aortic root was a disability;
4. That Chevron USA Inc. knew that Mr. Snookal had a dilated aortic root;
5. That Mark Snookal was able to perform the essential job duties of the position for which he applied, either with or without reasonable accommodation, for his dilated aortic root.
6. That Chevron USA, Inc. rescinded the job offer to Plaintiff;
7. That Mark Snookal's dilated aortic root was a substantial motivating reason for Defendant's decision to rescind the job offer;
8. That Mark Snookal was harmed; and
9. That Chevron USA Inc.'s conduct was a substantial factor in causing Mark Snookal's harm.

*See* CACI 2540 Disability Discrimination – Disparate Treatment – Essential Factual Elements

///

///

(c)    **Key Evidence In Support of Plaintiff's Claim:**

1.  Mark Snookal's testimony regarding his 12 ½ year employment with Chevron, USA, Inc. and events surrounding his application for the Reliability Engineering Manager ("REM") position in Escravos, Nigeria.

2.  Documents in Mark Snookal's personnel file, including wage documents reflecting his employment with Chevron USA Inc.

3.  Documents regarding Mr. Snookal's application for the position of Reliability Engineering Manager ("REM") in Escravos, Nigeria.

4.  Chevron USA Inc.'s "Assignment Offer Letter" dated 7/1/19 to Mark Snookal and Mark Snookal's acceptance of the REM position in Escravos, Nigeria.

5.  Document - "Medical Suitability for Expatriate Assignment History & Physical Examination" ("MSEA") used by Chevron for a fitness for duty examination.

6.  Dr. Irving Sobel's, an independent doctor from Cedars Sinai testimony that Chevron retained him to conduct a "fitness for duty" evaluation of Mark Snookal.

7.  Dr. Sobel's testimony regarding the fitness for duty evaluation and his completion of the MSEA form on 7/24/1,9 wrote that Mr. Snookal was "Fit for Duty with Restrictions", to wit: "No heavy lifting >50 lbs. Needs review of recommendation letter from cardiologist to clear him."

8.  Voicemail message from Dr. Sobel to Mark Snookal re: lab results "came back fine" and that Mr. Snookal needed to contact his cardiologist and get a letter "stating that it's safe for you to work in Nigeria that everything is under control. No special treatments are needed.…"

9.  Emails between Mark Snookal and Dr. Shahid Khan, Mark Snookal's then treating cardiologist, re: rotational work in Nigeria.

10. Dr. Khan's July 29, 2019 letter to Chevron advising "Mr. Snookal is under my care for his heart condition. It is safe for him to work in Nigeria with his heart condition. His condition is under good control and no special treatments are needed.…"

11. Dr. Khan's August 23, 2019 email to Dr. Scott Levy, Chevron's then Regional Medical Manager serving the Europe, Eurasia, Middle East & Africa Region, advising that Mr. Snookal's "risk of serious complications related to his thoracic aortic aneurysm is low and likely less than 2% per year. The risk is primarily related to further enlargement of the aneurysm which can be tracked with an annual CT scan."

12. Mark Snookal's medical records regarding his heart condition up to August of 2019.

13. Documents from Chevron USA, Inc. to Mark Snookal regarding his new assignment in Escravos, Nigeria.

14. Job Description and Job Requirements forms for the REM position in Escravos, Nigeria.

15. Testimony by Chevron's consulting doctors, Dr. Asekomeh, Dr. Akintunde, Dr. Adeyeye, and Dr. Levy regarding the decision to rescind the REM Escravos, Nigeria job offer.

16. Documents from Chevron doctors, Dr. Asekomeh, Dr. Akintunde, Dr. Pitan, Dr. Frangos, and Dr. Adeyeye reflecting their discussions leading up to the decision to "decline a job transfer to Escravos" for Mark Snookal.

17. Emails between Mark Snookal and Dr. Levy re: rescission of the REM offer.

18. Emails between Dr. Levy and Dr. Khan regarding Mark Snookal's medical condition.

19. Emails among Dr. Levy, Dr. Arenyeka, and Dr. Frangos regarding Mark Snookal.

20. Emails regarding Mr. Snookal's disability discrimination complaint to Chevron USA Inc.'s Human Resources Manager, Andrew Powers.

21. Emails between Mr. Snookal  Mr. Powers, and other Chevron USA Inc. Human Resources personnel re: Mr. Snookal's rescinded job offer.

22. Emails between Dr. Levy and other Chevron personnel regarding rescinded job offer.

23. Email from Dr. Levy to Mr. Snookal re: the stated explanation for rescinding the job offer.

PLAINTIFF MARK SNOOKAL'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

24. Emails among Mr. Powers and others re: finding Mr. Snookal a new position given that the REM position was rescinded, and his former position filled.

25. Testimony and Expert Report by Dr. Alexander Marmureanu, Plaintiff's expert cardiothoracic surgeon. Dr. Marmureanu will testify that Plaintiff's ascending aortic aneurysm and aortic root have remained stable at 4.2cm, with no significant progression over several years. At this size, in his opinion, the annual risk of rupture or dissection is less than 1% especially considering the stability of his condition and aortic measurements.  Dr. Marmureanu will testify given that Plaintiff's work would be desk-based and not physically demanding, there is no evidence to suggest that his condition would affect his job performance or pose an immediate risk or direct threat.

26. Ms. Linda Engel, L.C.S.W. employed by Kaiser provided Mr. Snookal with therapy. She will authenticate her records and testify regarding the therapy and her diagnosis of Plaintiff.

27. Constance Snookal, Mark Snookal's wife will testify regarding her husband's damages.

28.  Dr. Anthony Reading, Plaintiff's expert forensic psychologist who evaluated Mr. Snookal, will testify regarding Mr. Snookal's  psychological/emotional distress damages.

29. Dr. Charles Baum, Plaintiff's economics expert,  will testify and offer his expert report regarding Mr. Snookal's economic damages resulting from the rescinded job offer.

**Summary Statement of Affirmative Defenses**

(a)      **Claim for Disability Discrimination in violation of Fair Employment Housing Act.**

(b)      **Defendant's Affirmative Defense:**

Risk to self or others.

Health or Safety Risk (Cal. Gov't Code 12940(a)(1) and Cal. Code Regs., tit. 2, § 1106(b)-(e))

(c)      **Elements Required to Establish Defendant's Affirmative Defense:**

1.  That managing a multidiscipline team of ~20 engineers and technicians in the area of rotating equipment, instrumentation & analyzers, and electrical was an essential job duty;

2.  That there was no reasonable accommodation that would have allowed Mark Snookal to perform this job duty without endangering his health or safety or the health or safety of others; and

3.  That Mr. Snookal's performance of this job duty would present an immediate and substantial degree of risk to himself or others.

However, it is not a defense to assert that Mark Snookal has a disability with a future risk, as long as the disability does not presently interfere with his ability to perform the job in a manner that will not endanger him or others.

In determining whether Chevron USA, Inc. has proved this defense, factors that you may consider include the following:

a.  The duration of the risk;

b.  The nature and severity of the potential harm;

c.  The likelihood that the potential harm would have occurred;

d.  How imminent the potential harm was; and

e.  Relevant information regarding Mark Snookal's past work history.

Your consideration of these factors should be based on a reasonable medical judgment that relies on the most current medical knowledge or on the best available objective evidence.

*See* CACI 2544 "Disability discrimination – Affirmative Defense – Health or Safety Risk."

/ / /

/ / /

(d)    **Key Evidence Relied on in Opposition to the Affirmative Defense**

1. Dr. Sobel was retained by Defendant Chevron USA, Inc. to conduct a fitness for duty examination for the REM position in Escravos, Nigeria. Dr. Sobel deemed Mr. Snookal "Fit for duty with Restrictions" to wit, "no heavy lifting >50lbs. Needs review of recommendation letter from cardiologist to clear him."

2. Mr. Snookal's cardiologist Dr. Khan testified that Mark Snookal's disability did not at the time of his application, interfere with his ability to perform the job in Escravos, Nigeria in a manner that will not endanger him or others. As such, Dr. Khan wrote a letter confirming this: "Mr. Snookal is under my care for his heart condition. It is safe for him to work in Nigeria with his heart condition. His condition is under good control and no special treatments are needed." Moreover, given the rotational nature of the REM position, Mr. Snookal would have no interruption to receiving this regular preventative care in the United States.

3. Dr. Marmureanu who practices Thoracic and Cardiovascular Surgery and is Board Certified in Cardiothoracic Surgery and General Surgery testified that at the time of Mark Snookal's application, his disability did not interfere with his ability to perform the job in Escravos, Nigeria (or in another other location for thar matter) in a manner that would not endanger him or others.

4. Dr. Marmureanu also testified that the clinical data consistently indicates that Mr. Snookal's ascending aortic aneurysm and aortic root have remained stable at 4.2 cm, with no significant progression over several years of monitoring. At this size, in his opinion, the annual risk of rupture or dissection is less than 1%, especially considering the stability of his condition and aortic measurements.

5. Dr. Marmureanu also testified that given that Mark Snookal's work would be desk-based and not physically demanding, there is no evidence to suggest that

Mr. Snookal's condition would affect his job performance or pose an immediate risk or "direct threat."

6. Defendant Chevron USA, Inc.'s Dr. Scott Levy admitted that Mr. Snookal's "proposed job in Nigeria was an office-based job…And again, I didn't have an issue with the job at all.  I don't' think any of us had an issue with the specific type of work he was doing."

7. The job description and physical requirements for the REM position similarly note that the job is an office based which does not demand strenuous activity.

8. Defendant Chevron USA, Inc.'s three consulting doctors, Drs. Adeyeye, Akintunde, and Dr. Aiwuyo all agreed that Mr. Snookal was "low risk for major adverse CV [cardiovascular] event."  This opinion was also expressed, in writing, by another Chevron USA, Inc. doctor, Dr. Stephen Frangos, and Dr. Levy.

9. Defendant Chevron USA, Inc's agent, Dr. Eshiofe Asekomeh (Chevron Nigeria) wrote that Mr. Snookal was "not fit for duty," citing Mr. Snookal's thoracic aneurysm.  Dr. Asekomeh made this decision without communicating with Dr. Sobel, Dr. Khan or Mr. Snookal and without reviewing Mr. Snookal's work history and without knowing what the REM position's job duties entailed.

10. The law (set forth in CACI 2544) states "it is not a defense to assert that plaintiff has a disability with a *future risk*, as long as the disability does not *presently interfere* with his ability to perform the job in a manner that will not endanger him or others." Even so, Dr. Khan advised Defendant that Mr. Snookal's future risk was "low" and "likely less than 2% per year."

11. Defendant Chevron USA Inc.'s Dr. Scott Levy advised Mark Snookal in writing, "I understand you are willing to take the risk of potentially dying on the job and do not feel it is the company's place to make that decision for you.  I agree to a certain extent and recognize your concerns about

paternalism.  However, the company does have a right to not engage individuals where their assignment **could pose** a 'direct threat' to their own healthy and safety…I became involved on your case when you had requested a second opinion on the initial denial and with your consent involved your treating physician to better understand your specific risk…**The concern is that if the condition were to occur,** the outcome would be catastrophic and would require an immediate emergency response which is not available and would most certainly result in death in Escravos…."

(e)    **Identification of any issues of law which are germane to the case, together with the party's position:** Fair Employment and Housing Act, Gov't Code § 12940 *et seq.* which prohibits discrimination on the basis of a disability; the appropriate modification to California Jury Instruction CACI  2544; and Cal. Code Regs., tit. 2, §1106(b)-(e).

**Anticipated Evidentiary Issues:** Plaintiff is concurrently filing four motions in limine as to the following issues:

(1)    Daubert Motion to Exclude Expert Testimony of Dr. Victor Adeyeye

The basis for this motion is that Dr. Adeyeye is not qualified to offer expert opinions as to Mr. Snookal's risk of severe cardiac event (specifically, a rupture or dissection) due to his dilated aortic root.  Though Dr. Adeyeye is a cardiologist, has never treated any person with Mr. Snookal's specific condition, nor has he treated anyone who suffered a severe cardiac event. He also did not use scientific methods to evaluate Mr. Snookal's individual risk because 1) he only considered one set of scans and did not review Mr. Snookal's medical history, or changes in scans over time and 2) reviewed only one relevant medical study in formulating his opinion as to Mr. Snookal's individual risks.

(2)    Daubert Motion to Exclude Expert Testimony of Dr. Ujomoti Akintunde

The basis for this motion is that Dr. Akintunde is not qualified to offer expert opinions as to Mr. Snookal's risk of severe cardiac event (specifically, a rupture or dissection) due to his dilated aortic root.  Though Dr. Akintunde is a cardiologist, she has treated few persons with Mr. Snookal's specific condition, and has never treated anyone who suffered a rupture or dissection

of their dilated aortic root . She also did not use scientific methods to evaluate Mr. Snookal's individual risk because 1) she only considered one set of scans and did not review Mr. Snookal's medical history, or changes in scans over time and 2) reviewed only one relevant medical study in formulating his opinion as to Mr. Snookal's individual risks.

(3)    To Exclude Reference to Third-Party Medical Information

This motion is brought on the basis of third-party privacy rights and that references to third-party medical information are irrelevant, unduly prejudicial, harassing, and a waste of time.

(4)    To Exclude Reference to Mr. Snookal's Heart Health After September 2019 Mr. Snookal's medical history from September 2019 is not relevant to his disability discrimination claim and has high potential for prejudice, confusion, and the waste of time. Fed. R. Evid. 403. By definition, any of Mr. Snookal's subsequent medical history was not considered at the time Chevron decided to rescind the Nigeria position from Mr. Snookal in August of 2019.

**L.R. 16-4.3 Bifurcation of Issues:**  None anticipated.

**L.R. 16-4.4 Jury Trial**:  All issues are triable to a jury as a matter of right. A timely demand for jury trial has been made.

**L.R. 16-4.5 Attorneys' Fees:** The Fair Employment and Housing Act allows the recovery of attorneys' fees and costs. Specifically, Gov't Code 12965(b)(6) provides that: "[i]n civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees, except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so."

**L.R. 16-4.6 Abandonment of Issues:**  None.

DATED:  July 1, 2025

ALLRED, MAROKO & GOLDBERG

By: _____
DOLORES Y. LEAL
OLIVIA FLECHSIG
Attorneys for Plaintiff,
**MARK SNOOKAL**

PLAINTIFF MARK SNOOKAL'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW