1  DOLORES Y. LEAL (134176)
   OLIVIA FLECHSIG (334880)
2  ALLRED, MAROKO & GOLDBERG
3  6300 Wilshire Blvd. Suite 1500
   Los Angeles, CA 90048-5217
4  (323) 653-6530
   dleal@amglaw.com
5  oflechsig@amglaw.com

6

7  **Attorneys for Plaintiff MARK SNOOKAL**

8
                        UNITED STATES DISTRICT COURT
9
                    FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| MARK SNOOKAL, an individual, | CASE NO.: 2:23-cv-6302-HDV-AJR |
| Plaintiff, | **PLAINTIFF MARK SNOOKAL'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 – DAUBERT MOTION TO EXCLUDE THE PURPORTED EXPERT OPINION TESTIMONY OF DR. VICTOR ADEYEYE** |
| vs. | |
| CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive, | [*Filed concurrently with the Declaration of Olivia Flechsig in Support of Plaintiff's Motion in Limine No. 1 and [Proposed] Order Granting Plaintiff's Motion in Limine No. 1 to Exclude the Purported Expert Opinion Testimony of Dr. Victor Adeyeye*] |
| Defendants. | District Judge: Hon. Hernan D. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025<br><br>Hearing Date: July 24, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 5B |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 24, 2025 at 10:00 a.m., or as soon as possible thereafter as the matter may be heard, in Courtroom 5b in the above-referenced Court, located at 350 W. First Street, Los Angeles, CA 90012, before the Honorable Hernan D. Vera, Plaintiff Mark Snookal will, and does hereby, move the Court for an Order excluding the opinion testimony of Defendant's purported cardiology expert, Dr. Victor Adeyeye, at the trial of this matter. This Motion is made pursuant to Local Rule 7, *et seq.*, the Court's Civil Trial Order, Section B1 (Dkt 18), and the Court's inherent power to manage the course of trials (*Luce v. United States*, 469 US 38, 41, 105 S.Ct. 460, 563 fn. 4 (1984)) based upon the following grounds:

1. Dr. Adeyeye lacks the requisite "scientific, technical, or other specialized knowledge" to provide reliable opinions regarding Plaintiff Mark Snookal's cardiac condition and alleged resulting risk of adverse cardiac event because he possesses no experience in treating patients with Mr. Snookal's cardiac condition. Fed. R. Evid. 702. And,

2. Dr. Adeyeye's purported expert opinions regarding Plaintiff Mark Snookal's cardiac condition and alleged resulting risk of adverse cardiac event are neither based upon "sufficient facts and data" nor "reliable principles and methods" as applied to Mr. Snookal. Id.

This Motion is based upon this Notice, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Olivia Flechsig and Exhibits thereto, and all pleadings, papers, and documents filed in the above-entitled action, along with oral and/or documentary evidence as may be presented at any hearing on said Motion.

Respectfully Submitted,

DATED: July 1, 2025

ALLRED, MAROKO & GOLDBERG

By: *[signature]*
DOLORES Y. LEAL
OLIVIA FLECHSIG
Attorneys for Plaintiff,
**MARK SNOOKAL**

**MEMORANDUM OF POINTS AND AUTHORITIES**

This *Daubert* motion seeks from this Honorable Court an Order excluding the opinion testimony of Defendant's purported cardiology expert, Dr. Victor Adeyeye, at the trial of this matter. Dr. Adeyeye has admitted to a complete lack of experience with treating patients with Mr. Snookal's heart condition; to having been unable to find applicable medical studies regarding Mr. Snookal's heart condition; and to not having reviewed all relevant medical information before rendering his opinion. Expressing these opinions at trial would possess no indicia of reliability and should not be presented to the jury. Plaintiff therefore respectfully requests that his opinion testimony be excluded.

**I.     FACTUAL OVERVIEW**

Defendant Chevron USA, Inc. ("Defendant" or "Chevron") is the former employer of Plaintiff Mark Snookal ("Plaintiff" or "Mr. Snookal"). After Chevron offered Mr. Snookal a job position in Escravos, Nigeria, Chevron rescinded the offer after Mr. Snookal disclosed his disability (a dilated aortic root) during a medical screening. Chevron claimed the rescission was proper because Mr. Snookal posed a future risk to himself in the hypothetical event that he suffered a serious cardiac event and required immediate medical rescue from the job site. Chevron made the decision to deem Mr. Snookal "not fit for duty" against the recommendations of Mr. Snookal's treating cardiologist and of the doctor Defendant assigned to evaluate Mr. Snookal's medical clearance. Defendant also doubled down on its decision despite the opinions of several other doctors who noted Mr. Snookal's negligible risk of serious cardiac event. Accordingly, Mr. Snookal has brought a claim for disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA") for the rescission of the job position.

There is a key dispute of fact concerning whether Defendant can assert a "direct threat" affirmative defense for rescinding the position, which in turn depends upon whether Defendant applied "reasonable medical judgment that relies on the most current medical knowledge or on the best available objective evidence" considering the duration of the risk; the nature and severity of the potential risk; the likelihood that the potential harm would have occurred; how imminent the potential harm; and relevant information regarding Mr. Snookal's employment

history. Cal. Code Regs., tit. 2, § 11067 *et seq.*

In its Second Amended Initial Expert Witness Disclosures, Defendant listed Dr. Adeyeye as a non-retained expert and disclosed that Dr. Victor Adeyeye ("Dr. Adeyeye") "may offer testimony at trial regarding his review of medical records or other documents, communications between and among Dr. Adeyeye and other health care professionals concerning Plaintiff Mark Snookal and Plaintiff's medical history, health condition, and fitness to be medically cleared for the role of the REM position in Escravos, Nigeria in 2019." (Declaration of Olivia Flechsig in Support of Plaintiff's Motion in Limine No. 1 ("Flechsig Decl.") at ¶ 3).

Dr. Adeyeye is a fact witness insofar as he consulted with Defendant about Mr. Snookal's heart condition before Defendant made its decision to deem Mr. Snookal "not fit for duty." However, Dr. Adeyeye's conclusory opinions concerning Mr. Snookal's supposed risk of a serious cardiac event require a qualified expert and should be excluded to avoid misleading the jury.

This motion is made following the meet and confer efforts of counsel pursuant to LR 7-3 which took place on or about June 17, 2025 and via email correspondence thereafter. (Flechsig Decl. at ¶ 6.)

## II.     ARGUMENT

The Federal Rules of Evidence instruct that only "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Fed. R. Evid. 702. Similarly, in *Daubert*, the United States Supreme Court charged trial courts with determining whether scientific expert testimony under Rule 702 is not only relevant, but reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (extending *Daubert* to all expert testimony). "[A] district court abuses its discretion when it either abdicates its role as gatekeeper by failing to assess the scientific validity or methodology of an expert's proposed testimony, or delegates that role to the jury by admitting the expert testimony without first finding it to be relevant and reliable." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019) (internal quotations and brackets omitted). And "[t]he party offering the expert bears the burden of establishing that Rule 702 is satisfied." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 943 (C.D. Cal. 2015) (internal citation and quotation marks omitted).

Here, Defendant cannot meet its burden to show that Dr. Adeyeye meets the criteria of a qualified expert with respect to testimony concerning Mr. Snookal's risk of an adverse cardiac event due to his dilated aortic root. Therefore, any of his opinion testimony should be excluded.

**A.   Dr. Adeyeye is Not a Qualified Expert for Purposes of Fed. R. Evid. 702**

    **i.   Dr. Adeyeye's opinion testimony is not sufficiently based upon applicable "scientific, technical, or other specialized knowledge" to "help the trier of fact understand the evidence."**

Dr. Adeyeye is a cardiologist at Warri Medical Clinic in Warri, Nigeria. (Flechsig Decl. at ¶ 3). The fact that he is a cardiologist, however, is itself insufficient to satisfy the requirements of Federal Rule of Evidence 702.

During his deposition, Dr. Adeyeye testified concerning the extent of his actual skills, qualifications, training, and experience. (See generally, Flechsig Decl. at ¶ 4-5). He admitted that he has literally never[1] treated a patient with a dilated aortic root[2] (Mr. Snookal's specific heart condition). (Id. at ¶ 4, Exhibit 1/5-8.) Further, there are two specific types of serious

---

[1] Dr. Adeyeye did testify that in approximately 2010 – 2012 (when he was still in medical training) he performed an autopsy on deceased patient who had suffered either a dissection or rupture of his or her dilated aortic root. (Flechsig Decl. at ¶ 4, Exhibit 1/5-8.) A post-mortem autopsy is not the same as rendering treatment.
[2] Mr. Snookal's dilated aortic root may also be referred to as a "thoracic aortic aneurysm."

cardiac events which could result from a dilated aortic root. Dr. Adeyeye has never once treated anyone who had suffered either of these types of adverse cardiac events. (Id.at ¶ 5, Exhibit 2/3-4).

### ii. Dr. Adeyeye's Methods for Formulating His Opinions Are Neither Based Upon "Sufficient Facts or Data" Nor Application of "Reliable Principles and Methods"

Dr. Adeyeye's deposition testimony further reveals that he failed to base his opinion of Mr. Snookal's risk of adverse cardiac event on sufficient facts or data as Federal Rule of Evidence 702 requires. Specifically, Dr. Adeyeye testified that he reviewed a total of three different research articles in order to formulate his opinion of Mr. Snookal's individual risk of rupture or dissection due to his dilated aortic root. (Id.at ¶ 5, Exhibit 2). Of those three articles, one article was entirely inapplicable because it looked at various heart conditions which were "found at autopsy." (Id.at ¶ 5, Exhibit 2/12-17). In other words, unlike Mr. Snookal, the subjects of the study were not undergoing any preventative treatment for their heart condition. And, the study was not a measure of the risk of death, nor of an adverse cardiac event, because it was a postmortem study conducted only on predeceased subjects. A second article was also entirely inapplicable because, though it involved 2,501 subjects in Nigeria, *not a single one* of those subjects had a dilated aortic root. (Id.).

Dr. Adeyeye also failed to apply "reliable principles and methods" to Mr. Snookal's case specifically. Dr. Adeyeye rendered his opinion of Mr. Snookal's purported risk of rupture or dissection without ever speaking to Mr. Snookal or Mr. Snookal's treating cardiologist. (Id. at ¶ 5, Exhibit 2). He rendered his opinion after having reviewed only three scans of Mr. Snookal's heart[3] all from one time in 2019 (i.e. he had no information regarding whether Mr. Snookal's dilated aortic root was stable in size over time (which it was); whether Mr. Snookal was on preventative medication (which he was), etc.) (Id.). Dr. Adeyeye also stated that given how little

---

[3] The three types of scans were an "ECG, echo[cardiogram]; and CTA" (Flechsig Decl. at ¶ 5, Exhibit 2/20.)

information he had about Mr. Snookal's health, he could not determine whether Mr. Snookal had a symptomatic or asymptomatic dilated aortic root. (Id.at ¶ 5, Exhibit 2/18.) This is especially egregious given that symptoms include symptoms such as "chest pain, difficulty breathing. . . fainting spell. . . nausea, vomiting . . . systemic shock." (Id.) Of course, whether or not Mr. Snookal's is presently having cardiac symptoms such as chest pain would bear directly on his actual risk of severe cardiac event.

Dr. Adeyeye went on to attempt to justify his opinions despite having such limited information about Mr. Snookal's cardiac health. He testified that he did not need the medical report of Mr. Snookal's treating cardiologist, Dr. Khan because "[a] cardiologist opinion is a blinded opinion. Please note, a cardiologist opinion is a blinded opinion, meaning that you're not privy to what A is saying, you're not privy to what B is saying, you're not privy to what C is saying, you are to make your own opinion. And for these two, three opinion, an informed decision could be made. I'm not supposed and I don't look at or they don't give this to make an opinion. So for me, I wasn't privy to this document as of that time. What I only made my opinion based on is ECG, like I said before, echocardiograph, like I said before, and a CTA, computer tomographic angiography." (Flechsig Decl. at ¶ 5, Exhibit 2/22-24.)

Assuming *arguendo* that the "blinded" procedure is correct, Dr. Adeyeye nonetheless did not implement the practice he articulated when he rendered an opinion on Mr. Snookal. To the contrary, he and his cardiologist colleagues all communicated back and forth about Mr. Snookal's alleged cardiac risk on shared email chain  (Flechsig Decl. at ¶ 5, Exhibit 2/27-28.)

Finally, Dr. Adeyeye's firm insistence that he did not need other applicable information about Mr. Snookal's health further belies his unreliability and bias. For example, Dr. Adeyeye testified that he did not need to review Mr. Snookal's cardiologist's report or "need the full story. . . I do not need patient history . . . to offer my cardiologist opinion. Because if you look at the guideline the guideline are so specific, and they are made based on the case at hand. . ." (Id.at ¶ 5, Exhibit 2/20-21). Even if that were true, Dr. Adeyeye's admitted in a contemporaneous email that he concurred with the opinion of his colleague who "made effort to search the MEP if there are clear-cut guidelines or patient with aortic aneurysm. Unfortunately, I

found none." (Id.at ¶ 5, Exhibit 2/27-28).

Synthesized together, the above principles governing the expert reliability analysis lead to the inescapable conclusion that Dr. Adeyeye's opinions and anticipated testimony regarding Mr. Snookal's dilated aortic root and alleged risks arising therefrom do not pass muster under Rule 702.

**III.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to exclude any of Dr. Adeyeye's purported expert opinion testimony.

DATED:  July 1, 2025                         ALLRED, MAROKO & GOLDBERG

By:_____
DOLORES Y. LEAL
OLIVIA FLECHSIG
Attorneys for Plaintiff,
**MARK SNOOKAL**