1  DOLORES Y. LEAL (134176)
   OLIVIA FLECHSIG (334880)
2  ALLRED, MAROKO & GOLDBERG
3  6300 Wilshire Blvd. Suite 1500
   Los Angeles, CA 90048-5217
4  (323) 653-6530
   dleal@amglaw.com
5  oflechsig@amglaw.com

6

7  **Attorneys for Plaintiff MARK SNOOKAL**

8
                    UNITED STATES DISTRICT COURT
9
                  FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

11 | MARK SNOOKAL, an individual, | ) CASE NO.: 2:23-cv-6302-HDV-AJR
12 |                              | )
   |                              | )
13 |            Plaintiff,        | ) **PLAINTIFF MARK SNOOKAL'S**
   |                              | ) **NOTICE OF MOTION AND DAUBERT**
14 |                              | ) **MOTION IN LIMINE NO. 4 TO**
   |       vs.                    | ) **EXCLUDE REFERENCE TO**
15 |                              | ) **PLAINTIFF'S CARDIAC MEDICAL**
   |                              | ) **HISTORY AFTER SEPTEMBER 2019**
16 | CHEVRON USA, INC., a California | )
17 | Corporation, and DOES 1 through 10, | ) [*Filed concurrently with the Declaration of*
   | inclusive,                   | ) *Olivia Flechsig in Support of Plaintiff's*
18 |                              | ) *Motion in Limine No. 4 to Exclude Reference*
   |                              | ) *to Plaintiff's Cardiac Medical History after*
19 |                              | ) *September 2019 and [Proposed] Order*
   |            Defendants.       | ) *Granting Plaintiff's Motion in Limine No. 4*]
20 |                              | )
21 |                              | ) District Judge: Hon. Hernan D. Vera
   |                              | ) Magistrate Judge: Hon. A. Joel Richlin
22 |                              | ) Action Filed: August 3, 2023
   |                              | ) Trial Date: August 19, 2025
23 |                              | )
24 |                              | ) Hearing Date: July 24, 2025
   |                              | ) Hearing Time: 10:00 a.m.
25 |                              | ) Courtroom: 5b
   |                              | )
26 |                              | )

27

28

1
PLAINTIFF MARK SNOOKAL'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 4 TO EXCLUDE
REFERENCE TO PLAINTIFF'S CARDIAC MEDICAL HISTORY AFTER SEPTEMBER 2019

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 24, 2025 at 10:00 a.m., or as soon as possible thereafter as the matter may be heard, in Courtroom No. 5b in the above-referenced Court, located at 350 W. First Street, Los Angeles, CA 90012, before the Honorable Hernan D. Vera, Plaintiff Mark Snookal will, and does hereby, move the Court for an Order precluding Defendant Chevron USA, Inc., its counsel and all witnesses, and each of them from referring, directly or indirectly to Plaintiff Mark Snookal's cardiac medical history after September of 2019, at the trial of this matter. This Motion is made pursuant to Local Rule 7, *et seq.* and the Court's Civil Trial Order, Section B1 (Dkt 18), and the Court's inherent power to manage the course of trials (*Luce v. United States*, 469 US 38, 41, 105 S.Ct. 460, 563 fn. 4 (1984)).

This Motion will be made upon the following grounds:

1. It is undisputed that Defendant USA, Inc. made the decision to deem Mr. Snookal "not fit for duty" for a Reliability Engineering Manager position in Escravos, Nigeria and that this decision was made by September 4, 2019. Therefore, Mr. Snookal's subsequent medical history (i.e. after September 2019 to the present) is not relevant to whether Defendant's decision was made in a discriminatory manner. Fed. R. Evid. 401;

2. To the extent the information has any minimal relevance, it is substantially outweighed by the risk of prejudice to Plaintiff and will result in the waste of time by introducing tangential disputes of fact. Fed. R. Evid. 403.

This Motion is based upon this Notice, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Olivia Flechsig and Exhibits thereto, and all pleadings, papers, and documents filed in the above-entitled action, along with oral and/or documentary evidence as may be presented at any hearing on said Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on or about June 17, 2025.

Respectfully Submitted,

DATED: July 1, 2025

ALLRED, MAROKO & GOLDBERG

By: /s/ Olivia Flechsig
DOLORES Y. LEAL
OLIVIA FLECHSIG
Attorneys for Plaintiff,
**MARK SNOOKAL**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL OVERVIEW

Defendant Chevron USA, Inc. (Defendant or "Chevron") is the former employer of Plaintiff Mark Snookal ("Plaintiff" or "Mr. Snookal"). After Chevron offered Mr. Snookal a job position in Escravos, Nigeria, Chevron rescinded the offer after Mr. Snookal disclosed his disability (an asymptomatic heart condition called a dilated aortic root) during a medical suitability screening. Chevron claimed the rescission of the position was proper because Mr. Snookal posed a future, hypothetical risk to himself. Chevron reasoned that due to Mr. Snookal's dilated aortic root, if he suffered a serious cardiac event including rupture or dissection of the dilated aortic root, medical rescue could be delayed. However, Chevron made this decision against the recommendations of Mr. Snookal's treating cardiologist, the physician Chevron assigned to evaluate Mr. Snookal's fitness for duty, and despite the input of five additional doctors who opined about the negligible risks associated with Mr. Snookal's disability. Accordingly, Mr. Snookal has brought a claim for disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA").

There is a key factual dispute concerning whether Defendant can assert a "direct threat" affirmative defense for rescinding the position. This defense depends upon whether Defendant applied "reasonable medical judgment that relies on the most current medical knowledge or on the best available objective evidence" considering the duration of the risk; the nature and severity of the potential risk; the likelihood that the potential harm would have occurred; how imminent the potential harm was; and relevant information regarding Mr. Snookal's employment history. Cal. Code Regs., tit. 2, § 11067 *et seq*. However, it is undisputed that Chevron had completed this decision by September 4, 2019. (Declaration of Olivia Flechsig in Support of Plaintiff's Motion in Limine No. 4 ("Flechsig Decl.") at ¶ 3).

Because Mr. Snookal's heart condition was at the core of Defendant's stated reasons for rescinding the job position from Mr. Snookal, and because Mr. Snookal has received treatment for his emotional distress symptoms, Defendant gained access to many of Mr. Snookal's medical records during discovery, including medical records which post-date Chevron's September 2019

decision to rescind the REM position from Mr. Snookal.

Since Mr. Snookal's cardiac health post-dating September 2019 is irrelevant, or since any minimal relevance is substantially outweighed by the risk of prejudice, Mr. Snookal respectfully seeks to exclude this information from trial in this matter.

II.     ARGUMENT

    A.     **Mr. Snookal's Post-Decision Cardiac Medical History is Irrelevant**

Federal Rule of Evidence 401 provides that "evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Huddleston v. U.S.*, 485 U.S. 681, 682-92 (1988). Chevron's liability depends upon whether it properly applied the "direct threat" defense to Mr. Snookal's dilated aortic root. "FEHA's 'danger to self' defense has a narrow scope; an employer must offer more than mere conclusions or speculation in order to prevail on the defense. . . . As one court said, '[t]he defense requires that the employee face an "imminent and substantial degree of risk" in performing the essential functions of the job.' An employer may not terminate an employee for harm that is merely potential . . ." *Wittkopf v. County of Los Angeles*, 90 Cal.App.4th 1205, 1218-1219 (2001) (internal citations omitted.)

Since Chevron made the relevant decision to rescind Mr. Snookal's job position by or before September 4, 2019, it is irrelevant what medical developments happened to Mr. Snookal thereafter. (Flechsig Decl. at ¶ 4).

Almost four years after Chevron made the decision in question, in July of 2023 and February of 2024, Mr. Snookal had two outpatient surgeries which successfully corrected a separate cardiac issue called premature ventricular complexes ("PVC's"). (Flechsig Decl. at ¶ 3). These were outpatient procedures called a "cardiac ablation." (Id. at ¶ 5, Exhibit 2/4-5; and ¶ 3, Exhibit 1/5-6.) As documented in his treatment records, Mr. Snookal was discharged the same day and could resume regular activities (including driving, walking, etcetera) the following day after the procedures. (Id.) With respect to his dilated aortic root, Mr. Snookal testified that it is still too small to require surgery and that his doctors have never told him that there was any change in the risk of his dilated aortic root rupturing or dissection. (Id. at ¶ 3, Exhibit 1/4-6).

1   Defendant claims, however, that the subsequent surgeries suggest alternative causation
2   for Mr. Snookal's emotional distress symptoms. (Id. at ¶ 7.)  There is no evidence of this,
3   however, and it is a stretch to argue that Mr. Snookal's depression was caused by two out-
4   patient procedures that took place approximately four years after his diagnosis.

5       Second, Defendant argues that these subsequent surgeries could bear upon Mr. Snookal's
6   economic damages because they could have impeded Mr. Snookal's ability to work. (Flechsig
7   Decl. at ¶ 7.) To the contrary, there is no evidence that that is the case, particularly since Mr.
8   Snookal could resume regular activities the following day. (Id. at ¶ 5, Exhibit 2/4-5.) Since the
9   job position was rotational in nature (four weeks working in Nigeria and four weeks off of work
10  in the United States), Mr. Snookal could easily have received the same treatment while off
11  rotation and resumed working without missing a beat. Mr. Snookal also testified that none of his
12  heart conditions have ever impacted his ability to work. (Id. at ¶ 3, Exhibit 1/5-6.)

13      This evidence, therefore, does not tend to prove or disprove any claim or defense and
14  may be excluded on that basis alone

15      **B.**    **The Probative Value, if Any, is Substantially Outweighed by the Risk of**
16          **Unfair Prejudice**

17      Should the Court find that the evidence is relevant, that evidence should nonetheless be
18  excluded pursuant to Rule 403 of the Federal Rules of Evidence. Rule 403 provides in relevant
19  part that "[t]he court may exclude relevant evidence if its probative value is substantially
20  outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,
21  misleading the jury. . ." *"Unfair prejudice"* means "an undue tendency to suggest decision on an
22  improper basis, commonly, though not necessarily, an emotional one." See Fed. R. Evid. 403
23  advisory committee note. See also *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir.
24  1998) (defining evidence that presents a danger of unfair prejudice as "'evidence designed to
25  elicit a response from the jurors that is not justified by the evidence'.")

26      Referencing subsequent heart surgeries or changes to Mr. Snookal's cardiac health
27  indeed may have a strong emotional appeal to the jury or invoke their biases by exaggerating the
28  actual risk this posed to Mr. Snookal's cardiac health. The risk of unfair prejudice to Mr. Sookal,

therefore, is high, and the relevance of the information, as outlined above, is exceedingly low.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and excludes the evidence in question.

DATED:  July 1, 2025                               ALLRED, MAROKO & GOLDBERG

By: _____
DOLORES Y. LEAL
OLIVIA FLECHSIG
Attorneys for Plaintiff,
**MARK SNOOKAL**