SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT E. MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone:     213.620.1780
Facsimile:     213.620.1398
E-mail:        tkennedy@sheppardmullin.com
               rmussig@sheppardmullin.com
               sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>              Plaintiff,<br><br>       vs.<br><br>CHEVRON USA, INC., a California Corporation,<br>and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON U.S.A., INC.'S NOTICE OF ERRATA RE DOCKET NOS. 67 and 68**<br><br>Hearing:  July 24, 2025<br>Time:     10:00 a.m.<br>Place:    Courtroom 5B – 5th Floor<br>Judge:    Hon. Hernán D. Vera<br><br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

SMRH:4934-9720-4051.1                                    DEFENDANT'S NOTICE OF ERRATA

1    TO THE HONORABLE COURT AND ALL PARTIES WHO HAVE

2    APPEARED IN THIS ACTION THROUGH THEIR ATTORNEYS OF RECORD AND

3    TO PLAINTIFF MARK SNOOKAL,

4

5    PLEASE TAKE NOTICE that, on July 1, 2025, Defendant Chevron USA, Inc.

6    inadvertently filed both its Motion in Limine No. 1 and Motion in Limine No. 2

7    [Dkt Nos. 67-68] as a single document titled "Memorandum of Points and Authorities"

8    rather than splitting the motions up into a separate "Notice of Motion and Motion" and

9    "Memorandum of Points and Authorities."  Defendant also inadvertently set a hearing

10   date of July 29, 2025 rather than the correct date of July 24, 2025, as set forth in the

11   Court's Case Management Order.

12   Defendant attaches corrected versions of Motions in Limine Nos. 1 and 2 as

13   Exhibits A-D to this Notice of Errata.  The attached Motions contain no substantive

14   changes.

15

16

17   Dated:  July 8, 2025

18                                           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

19

20                   By    _____
                                    */s/ Tracey A. Kennedy*
21                                  TRACEY A. KENNEDY
                                    ROBERT E. MUSSIG
22                                  H. SARAH FAN

23

24                                  Attorneys for Defendant
                                    CHEVRON U.S.A. INC.,
25                                  a Pennsylvania Corporation

26

27

28

# EXHIBIT A

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT E. MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone:  213.620.1780
Facsimile:  213.620.1398
E-mail:      tkennedy@sheppardmullin.com
              rmussig@sheppardmullin.com
              sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON U.S.A., INC.'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OR TESTIMONY OF ANY SUBJECTIVE OPINION OR BELIEF BY PLAINTIFF REGARDING HIS PAST OR FUTURE ECONOMIC DAMAGES**<br><br>Date:    July 24, 2025<br>Time:    10:00 a.m.<br>Place:  Courtroom 5B – Fifth Floor<br><br>District Judge: Hon. Hernán De. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br><br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

SMRH:4928-1183-2659.1

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Tuesday, July 24, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard in the courtroom of the Honorable Hernán D. Vera, located in the First Street U.S. Courthouse, Courtroom 5B, 350 West 1st Street, Los Angeles, California 90012, Defendant Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron U.S.A.") will move and hereby does move for an order barring Plaintiff Mark Snookal ("Plaintiff") from introducing the subjective opinions and beliefs of Plaintiff and his witnesses regarding Plaintiff's past and future economic damages pursuant to Federal Rules of Evidence 402, 403, 701 and 702.

This motion is made following the conference of counsel pursuant to C.D. Cal. Local Rule 7-3, which took place on June 17, 2025, and in writing on June 19, 2025.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Robert Mussig, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as this Court may consider in connection with the hearing on this matter.

Dated:  July 8, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
            */s/ Tracey A. Kennedy*
TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN
Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation

# EXHIBIT B

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   TRACEY A. KENNEDY, Cal Bar No. 150782
3  ROBERT E. MUSSIG, Cal. Bar No. 240369
   H. SARAH FAN, Cal. Bar No. 328282
4  350 South Grand Avenue, 40th Floor
   Los Angeles, CA 90071-3460
5  Telephone:  213.620.1780
   Facsimile:  213.620.1398
6  E-mail:     tkennedy@sheppardmullin.com
               rmussig@sheppardmullin.com
7              sfan@sheppardmullin.com

8  Attorneys for Defendant.
   CHEVRON U.S.A. INC.,
9  a Pennsylvania corporation

10

11                    UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13  MARK SNOOKAL, an individual,          Case No. 2:23-cv-6302-HDV-AJR

14              Plaintiff,                **DEFENDANT CHEVRON U.S.A.,
                                          INC.'S MEMORANDUM OF POINTS
15        vs.                            AND AUTHORITIES IN SUPPORT OF
                                          MOTION IN LIMINE NO. 1 TO
16  CHEVRON USA, INC., a California       EXCLUDE EVIDENCE OR
    Corporation, and DOES 1 through 10,   TESTIMONY OF ANY SUBJECTIVE
17  inclusive,                            OPINION OR BELIEF BY PLAINTIFF
                                          REGARDING HIS PAST OR FUTURE
18              Defendants.               ECONOMIC DAMAGES**

19
                                          Date:    July 24, 2025
20                                        Time:    10:00 a.m.
                                          Place:   Courtroom 5B – Fifth Floor
21
                                          District Judge: Hon. Hernán De. Vera
22                                        Magistrate Judge: Hon. A. Joel Richlin

23                                        Action Filed: August 3, 2023
                                          Trial Date: August 19, 2025
24

25

26

27

28

SMRH:4936-7291-0419.1        DEFENDANT'S MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE NO. 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Federal Rules of Evidence 402, 403, 701 and 702, the Court should exclude the introduction of subjective opinions and beliefs of Plaintiff Mark Snookal ("Plaintiff") and his witnesses regarding Plaintiff's past and future economic damages— namely, his belief that he would have remained in the Reliability Engineering Manager ("REM") position in Escravos for the entire 3 to 4 year duration of the expatriate assignment and/or that he would have remained in that position or an equivalent position until his retirement.  The reason such evidence should be excluded in this particular case is because such opinions or belief have no basis in fact.  Plaintiff admitted that there is no guarantee that he would have been reselected for the REM position after the assignment ended, and there is no guarantee that he would have found another, equivalent expatriate assignment.  Additionally, there is no guarantee that Plaintiff would have remained in the REM position for the entire duration of the assignment.  The REM position was subject to reselection as part of a wide-scale reorganization in or around the end of 2020, and the employee who assumed the REM position after Plaintiff's offer was rescinded did not remain in the position past January 2021.  As such, any subjective opinions, beliefs, or speculation that Plaintiff would have continued in the REM position past January 2021 should be excluded.

## II.    RELEVANT FACTUAL BACKGROUND

Plaintiff was hired by Chevron U.S.A. on January 12, 2009, as an Analyzer Engineer.  Beginning in or about November 2016, Plaintiff was promoted to the position of Instrumentation, Electrical, and Analyzer Reliability ("IEAR") Team Lead in the Reliability subgroup of the Maintenance department, with Pay Salary Grade 22 (earning approximately $141,100 base salary).  In or around May 2019, Plaintiff applied for and ultimately received an offer for an expatriate assignment as a Reliability Engineering Manager ("REM") position in Escravos, Nigeria, with an assignment duration of 3-4 years.  After Plaintiff failed to clear the Medical Suitability for Expat Assignment

("MSEA") fitness for duty examination, the offer for the REM position was rescinded on or about September 4, 2019.

On or about August 4, 2021, Plaintiff voluntarily resigned from his employment with Chevron U.S.A., effective August 20, 2021, for the stated reason that he was leaving for an opportunity with significantly increased responsibility.  The evidence at trial will show that from September 2019 through the date of his resignation, Plaintiff never experienced a decrease in his compensation or benefits.

The evidence will show that Plaintiff started his employment as a E/I Maintenance Superintendent at Nippon Dynawave Packaging Co. ("Nippon Dynawave") in Longview, Washington on or about September 6, 2021, with a base pay of $150,000 and an annual incentive target of 20% of his base, as well as equivalent health insurance benefits, 401(k) plan, vacation, and relocation benefits.  After resigning from Nippon Dynawave effective August 25, 2023, Plaintiff started employment as an Electrical Superintendent at Georgia-Pacific Wauna LLC ("Georgia-Pacific") on September 1, 2023, earning a base salary of $180,000 with eligibility for performance pay, as well as equivalent health insurance benefits, 401(k) plan, and vacation benefits.

In calculating Plaintiff's alleged economic damages, Plaintiff's economics expert, Dr. Charles L. Baum, assumed, without any factual support or rationale, that Plaintiff would have been promoted to Pay Salary Grade 23 "after no more than 6 months" after the position was expected to begin on August 1, 2019.  Mussig Decl., ¶ 4, Ex. C [Baum Report] at p. 2, no. 7.  This assumption is based on information Dr. Baum received from Plaintiff and his counsel.  Plaintiff testified during deposition that he believed Chevron U.S.A. had a policy against keeping employees at a lower Pay Salary Grade than the position they held was graded for more than 6-12 months, and that he believed he "might" have been moved up to Pay Salary Grade 23 after working six months in Escravos.  Mussig Decl., ¶ 2, Ex. A [Pl. Dep. Tr.] at 265:16-266:5.  However, Plaintiff also admitted that no one had told him he would advance to Pay Salary Grade 23 after he assumed the REM position in Escravos.  *Id.* at 272:20-23.

Case No. 2:23-cv-6302-HDV-AJR

DEFENDANT'S MEMO OF POINTS AND AUTHORITIES ISO MOTION IN LIMINE NO. 1

Additionally, Dr. Baum's economic damages calculations assume, again without any factual basis, or based on any reliable rationale, that if Plaintiff assumed the REM position in Escravos, with an assignment duration of 3-4 years, that Plaintiff would continue in that position or maintained some other position with the same compensation. Mussig Decl., ¶ 3, Ex. B [Baum Dep. Tr.] at 22:10-23:9.  However, Plaintiff admitted that there was no guarantee he would have gotten the assignment again after it ended. Mussig Decl., ¶ 2, Ex. A [Pl. Dep. Tr.] at 271:8-24.  The evidence at trial will show that between March 2020 and June 2020, the individual who assumed the REM position after Plaintiff's offer was rescinded, Amir Zaheer, was kept home from the assignment due to COVID-related travel restrictions in Nigeria.  Subsequently, due to an internal reorganization, the REM position was subject to reselection, and beginning in or around January 2021, another employee, Cesar Malpica, assumed the REM position.

## III.    ARGUMENT

### A.    Statements of Belief Constitute Improper Lay Opinion Testimony Under FRE 702.

Federal Rule of Evidence ("FRE") 701 sets the requirements for lay opinion testimony, which require generally that a witness have personal knowledge of the matter forming the basis of the opinion, a rational connection between the opinion and the facts upon which it is based, and the opinion or inference must be helpful to the trier of fact in either understanding the testimony or in determining a fact in issue.  In order for Plaintiff or any other lay witness to offer an opinion as to the extent of Plaintiffs alleged economic damages, firsthand knowledge and expertise regarding the calculation of such damages is necessary.  Fed. R. Evid. 701.  Plaintiff cannot establish that he or any of his witnesses have such knowledge.

It is well-settled that damages calculations must be reasonable, and no more than reasonable damages can be recovered.  *See* Cal. Civ. Code § 3359.  "Damage to be subject to a proper award must be such as follows the act complained of as a legal certainty."  *Agnew v. Parks*, 172 Cal. App. 2d 756, 768 (1959).  "A damage award must

1  not be speculative, remote, imaginary, contingent, or merely possible." *Atkins v. City of*
2  *Los Angeles*, 8 Cal. App. 5th 696, 738 (2017) (*citing* cases) (internal quotes omitted).
3  Damages for loss of future earnings are only recoverable "where the evidence makes
4  reasonably certain their occurrence and extent." *Id.* (*quoting Toscano v. Greene Music*,
5  124 Cal. App. 4th 685, 694 (2004); *Licudine v. Cedars-Sinai Medical Center* (2016) 3
6  Cal. App. 5th 881, 887 (2016) ("the jury must fix a plaintiff's future earning capacity
7  based on what it is 'reasonably probable' she could have earned")).  Any damages
8  calculations offered by Plaintiff, his counsel, and his experts must also be reliable, and
9  not speculative.

10       Chevron U.S.A. anticipates that Plaintiff will attempt to introduce evidence and
11  argument that he would have been promoted to Pay Salary Grade 23 within 6 months of
12  assuming the REM position in Escravos.  However, Plaintiff's contentions are not based
13  in reality, as evidenced by his own admissions.  While Plaintiff claims that it is Chevron
14  U.S.A.'s policy to promote employees to the Pay Salary Grade of the job position they
15  are working in, which is subject to proof, Plaintiff admitted no one told him he would
16  receive a promotion to Pay Salary Grade 23 after assuming the REM position.  Mussig
17  Decl., ¶ 2, Ex. A [Pl. Dep. Tr.] at 272:20-23.  Even Plaintiff's belief regarding Chevron
18  U.S.A.'s alleged policy, and its application to a hypothetical scenario where Plaintiff
19  assumed the REM position, is speculative—Plaintiff stated that "usually" an employee in
20  such a scenario would be reevaluated, and "generally speaking" may be moved to a
21  higher Pay Salary Grade. *Id.* at 265:16-266:5.  Similarly, the assumption of Plaintiff's
22  economics expert that Plaintiff would have received the promotion as a matter of course
23  after assuming the REM position is based solely on Plaintiff's speculation.

24       Chevron U.S.A. also anticipates that Plaintiff will attempt to introduce evidence
25  and argument that his employment in the REM position in Escravos would have extended
26  beyond the duration of assignment—i.e., 3-4 years.  Again, this is pure speculation not
27  based on the facts.  Plaintiff admitted that there was no guarantee he would have gotten
28  the assignment again after it ended.  Mussig Decl., ¶ 2, Ex. A [Pl. Dep. Tr.] at 271:8-24.

1    Additionally, after the offer for the REM position was rescinded from Plaintiff, the

2    employee who assumed the position after him was unable to work in the position between

3    March 2020 and June 2020 due to COVID-related travel restrictions in Nigeria, and when

4    the position was identified for reselection as part of company reorganization, that

5    employee was not reselected for the role. Another employee assumed the REM position

6    in or around January 2021.

7         Statements of belief that Plaintiff would have continued earning a certain amount

8    of base compensation from Chevron U.S.A., as well as location premiums and/or tax

9    equalization benefits relating to the expatriate assignment, but-for Chevron U.S.A.'s

10   conduct amounts to improper opinion testimony. Such statements depend upon an

11   inference or conclusion made by a witness which does not relate to something that was

12   actually seen or heard, but rather by the witness' perception of how events occurred. As

13   such, they rest on a wholly subjective foundation that is not helpful to the jury who must

14   decide the case.

15        In fact, Plaintiff has no personal knowledge, and relies solely on his own

16   speculative allegations and beliefs, that he would have continued in the REM position for

17   the entire 3-4 years of the assignment even if it had not been rescinded, and/or that he

18   would have continued in the REM position or another equivalently compensated

19   expatriate position until his projected work life expectancy. Plaintiff's intent or

20   subjective belief that he would remain in such positions is irrelevant, as he would have

21   been required to apply and be selected for those positions at each juncture. There is also

22   no guarantee that Plaintiff would have stayed with Chevron U.S.A. until his retirement,

23   or even that Plaintiff would have wanted to continue working in expatriate assignments

24   after he experienced his first one in Escravos. *See Atkins*, 8 Cal. App. 5th at 740-741

25   (finding employees' calculations of future economic damages too speculative in

26   assuming the actualization of various steps in their careers, including consideration that

27   the employees have not worked a day in those jobs); *see also Licudine v. Cedars-Sinai*

28   *Med. Ctr.*, 3 Cal. App. 5th 881, 899 (2016) (finding same, including consideration that

there was no evidence of the plaintiff's likelihood of obtaining the assumed job position).

It is clear that Plaintiff had no expectation of continued employment in the role after the duration of the assignment ended in 3 to 4 years, and it is unlikely Plaintiff would have remained in the role after January 2021, given the company-wide reorganization. Any belief or argument that Plaintiff would have continued in the REM position or some other expatriate position—which would have required an additional application and selection process—is based on pure speculation. As such, this testimony should be excluded under Federal Rules of Evidence 701.

Witnesses can describe facts, but that the Court should not allow them to suggest their own interpretation or opinion as to what they attest absent personal knowledge sufficient to permit such testimony. To allow a witness to usurp this function is to deny the jury their role as the sole finders of fact.

Accordingly, any testimony regarding the extent of Plaintiff's alleged past economic damages relating to an speculative promotion to Pay Salary Grade 23, and alleged future economic damages after January 2021 based on compensation of the REM position, must be excluded from presentation at trial.

**B.    Statements of Belief Are More Prejudicial Than Probative and Should Be Excluded Pursuant to Federal Rules of Evidence Rule 403.**

Even if deemed relevant, "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. Evid. 403. As discussed in more detail, *supra*, Plaintiff's unsupported beliefs regarding his past and future lost earnings following the rescission of the REM position is based on his own speculation, not any objective support or admissible evidence. Allowing such testimony into evidence would confuse the issues and mislead the jury into thinking that Plaintiff had any entitlement to the REM position or other expatriate positions, or even that he was qualified for them, and would cause unfair prejudice to Chevron U.S.A. Additionally, allowing such improper opinion and

1  speculative testimony would unduly waste the Court and the jury's time.

2  **IV.  <u>CONCLUSION</u>**

3          Accordingly, Chevron U.S.A. respectfully requests an order precluding Plaintiff,

4  his counsel, and his witnesses from presenting testimony or evidence of Plaintiff's

5  alleged past economic damages relating to an speculative promotion to Pay Salary Grade

6  23, and alleged future economic damages after January 2021 based on compensation of

7  the REM position, on the grounds that such evidence would be irrelevant and unduly

8  prejudicial, and would also confuse the issues and mislead the jury.

9

10  Dated:  July 7, 2025

11                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13                          By _____
                                          */s/ Tracey Kennedy*
14                                       TRACEY A. KENNEDY
15                                       ROBERT E. MUSSIG
                                         H. SARAH FAN
16                                       Attorneys for Defendant
                                         CHEVRON U.S.A. INC.,
17                                       a Pennsylvania Corporation

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT E. MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone:  213.620.1780
Facsimile:  213.620.1398
E-mail:      tkennedy@sheppardmullin.com
             rmussig@sheppardmullin.com
             sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>          Plaintiff,<br><br>     vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON U.S.A. INC.'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE ANY EXPERT TESTIMONY FROM DR. ALEXANDER MARMUREANEU**<br><br>Date:    July 24, 2025<br>Time:    10:00 a.m.<br>Place:   Courtroom 5B – Fifth Floor<br><br>District Judge: Hon. Hernán De. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br><br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Tuesday, July 24, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard in the courtroom of the Honorable Hernán D. Vera, located in the First Street U.S. Courthouse, Courtroom 5B, 350 West 1st Street, Los Angeles, California 90012, Defendant Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron U.S.A.") will move and hereby does move for an order exclude the opinions of Plaintiff Mark Snookal's ("Plaintiff") retained expert cardiologist Dr. Alexander Marmureanu, pursuant to the Federal Rules of Evidence 403 and 702.

This motion is made following the conference of counsel pursuant to C.D. Cal. Local Rule 7-3, which took place on June 17, 2025, and in writing on June 19, 2025.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Robert Mussig, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as this Court may consider in connection with the hearing on this matter.


Dated:  July 8, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
              */s/ Tracey Kennedy*
            TRACEY A. KENNEDY
            ROBERT E. MUSSIG
            H. SARAH FAN
            Attorneys for Defendant
            CHEVRON U.S.A. INC.,
            a Pennsylvania Corporation

# EXHIBIT D

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   TRACEY A. KENNEDY, Cal Bar No. 150782
3  ROBERT E. MUSSIG, Cal. Bar No. 240369
   H. SARAH FAN, Cal. Bar No. 328282
4  350 South Grand Avenue, 40th Floor
   Los Angeles, CA 90071-3460
5  Telephone:  213.620.1780
   Facsimile:  213.620.1398
6  E-mail:      tkennedy@sheppardmullin.com
                rmussig@sheppardmullin.com
7               sfan@sheppardmullin.com

8  Attorneys for Defendant.
   CHEVRON U.S.A. INC.,
9  a Pennsylvania corporation

10

11              UNITED STATES DISTRICT COURT

12     CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13  MARK SNOOKAL, an individual,          Case No. 2:23-cv-6302-HDV-AJR

14              Plaintiff,                **DEFENDANT CHEVRON U.S.A. INC.'S
                                          MEMORANDUM OF POINTS AND
15        vs.                             AUTHORITIES IN SUPPORT OF
                                          MOTION IN LIMINE NO. 2 TO
16  CHEVRON USA, INC., a California       EXCLUDE ANY EXPERT
    Corporation, and DOES 1 through 10,   TESTIMONY FROM DR.
17  inclusive,                            ALEXANDER MARMUREANEU**

18              Defendants.               Date:    July 24, 2025
                                          Time:    10:00 a.m.
19                                        Place:   Courtroom 5B – Fifth Floor

20                                        District Judge: Hon. Hernán De La Vera
                                          Magistrate Judge: Hon. A. Joel Richlin
21
                                          Action Filed: August 3, 2023
22                                        Trial Date: August 19, 2025

23

24

25

26

27

28

                                 -1-                Case No. 2:23-cv-6302-HDV-AJR

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Pursuant to Federal Rules of Evidence 403 and 702, the Court should exclude the opinions of Plaintiff Mark Snookal's ("Plaintiff") retained expert cardiologist Dr. Alexander Marmureanu.  Dr. Marmureanu's opinions set forth in his Federal Rules of Civil Procedure Rule 26(a)(2) report and deposition are irrelevant and needlessly cumulative, and would also confuse the issues, mislead the jury, and cause unfair prejudice to Defendant Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron"). The reason his testimony should be excluded in this particular case is because Dr. Marmureanu admits his opinion is not based on any research whatsoever as to the location of the Reliability Engineering Manager job in Escravos, Nigeria.  He also testified that he believes that Plaintiff can do the job in Escravos, Nigeria because it is a "desk job" but he has "no idea where he got that information" and does not even know what Reliability Engineering Manager job is. (Marmureanu Dep. Tr. 26:16-27:13; 29:16-19.)   As such, his 2025 opinion is not based on reliable data, not relevant to the issue to be determined by the jury, and his opinion will not aid the jury in deciding whether the "direct threat" affirmative defense asserted in 2019, the relevant time period. Moreover, this defense as asserted by Chevron, relates to the fact that the essential job duty  of the Reliability Engineering Manager job was to work and live in Escravos, Nigeria, and Dr. Marmureanu admits that he has no knowledge and conducted no research as to whether Plaintiff could work with his medical condition under the living and working conditions of Escravos.  Just having a high priced cardiologist, opine in 2025 that Plaintiff could work anywhere in the world with his admitted disability, without conducting any analysis research as to the location of the job or even knowing the type of job, demonstrates a lack of a true expert opinion, much less a valid layperson opinion, and instead is simply an "expert" mouthpiece for Plaintiff and his counsel. As such, his "opinion" should be excluded.

## II.    RELEVANT FACTUAL BACKGROUND

While Plaintiff was employed by Chevron, he applied for and ultimately received an offer for an expatriate assignment as a Reliability Engineering Manager ("REM") position in Escravos, Nigeria. Escravos is not an actual town or city; it is an oil production facility at the mouth of the Escravos River. Dkt. 43-7 [Levy Decl.], ¶ 4. It is an incredibly remote area, with no roads in or out. Dkt. 43-5 [Asekomeh Decl.], ¶ 6. The only access is by air or boat, and at times with a military escort. *Id.*; *see also* Mussig Decl., ¶ 10, Ex. I (Levy Dep. Tr.) at 72:24-73:24. The health case infrastructure in Escravos is not set up to handle complex cases and only minor procedures can be performed, such as for minor sutures for lacerations and handling minor illnesses. *Id.* at ¶ 4. The clinics cannot perform blood transfusions or provide other medical care. *Id.* Individuals with any serious medical condition must be evacuated to Lagos or Warri, which can take up to 10-12 hours depending on the weather. *Id.* at ¶ 5; *see also* Mussig Decl., ¶ 7, Ex. F (Asekomeh Dep. Tr.) at 37:5-25. Plaintiff's offer of the REM position was contingent upon Plaintiff undergoing and passing a Medical Suitability for Expat Assignment ("MSEA") fitness for duty examination.

As part of the MSEA procedure, Plaintiff disclosed that he had an aortic root dilation, which was diagnosed in or about 2014 or 2015, and that he saw his cardiologist, Dr. Steven Khan, annually for his condition. Mussig Decl., ¶ 2, Ex. A (Pl. Dep. Tr.) at 19:5-14, 46:25-48:14; 48:25-49:11; *see also id.* at ¶ 3, Ex. B (MSEA form). Dr. Khan assessed that Plaintiff had a risk of occurrence of a cardiac event that was 2% or less, based on a cited medical study published in 2002. *Id.* at 84:18-85:14; *see also id.* at ¶ 4, Ex. C.

On August 15, 2019, Dr. Eshiofe Asekomeh, who was then the Occupational Health Physician at the Chevron Hospital in Warri, Nigeria, was assigned to determine Plaintiff's fitness for duty to work in Escravos. Dkt. 43-5 [Asekomeh Decl.], ¶¶ 9, 11. In making his assessment of Plaintiff's medical clearance, Dr. Asekomeh consulted with

1  two cardiologists in Nigeria who were familiar with Plaintiff's type of aortic condition

2  and with the conditions and availability of medical care in Escravos – Dr. Victor

3  Adeyeye in Warri and Dr. Ujomoti Akintunde in Lagos – who independently reviewed

4  Plaintiff's medical records based on their education, experience, and knowledge of

5  existing medical literature.  Dkt. 43-5 [Asekomeh Decl.], ¶ 9.

6       Like Plaintiff's cardiologist, Dr. Khan, Dr. Adeyeye assessed that the risk of an

7  adverse cardiovascular event associated with Plaintiff's aortic dilation was low, at 1% to

8  2%.  Mussig Decl., ¶ 5, Ex. D (Adeyeye Dep. Tr.) at 114:18-25.  Dr. Akintunde likewise

9  assessed that Plaintiff's risk of an occurrence was low (Mussig Decl., ¶ 6, Ex. E

10 [Akintunde Dep. Tr.] at 53:10-13), and was familiar with literature which assessed the

11 risk of an adverse aortic event at around 2% (*id.* at 72:16-73:11).  Based on their

12 knowledge of the medical facilities in Escravos, Drs. Adeyeye and Akintinde both opined

13 that if Plaintiff suffered an adverse cardiological event in Escravos, it would lead to his

14 death.  Mussig Decl., ¶ 5, Ex. D (Adeyeye Dep. Tr.) at 128:18-129:3; *id.* at ¶ 6, Ex. E

15 (Akintunde Dep. Tr.) at 66:8-14, 81:25-82:24.

16      Based on the opinions of Drs. Adeyeye and Akintunde, and taking into account the

17 remote location of the assignment (based on his personal knowledge), Dr. Asekomeh

18 concluded that Plaintiff was not fit for duty in Escravos due to the remote location, but

19 stated that Plaintiff could be cleared for assignment in Lagos, Nigeria.  Dkt. 43-5

20 [Asekomeh Decl.], ¶¶ 10-11.  Dr. Asekomeh made his determination on Plaintiff's

21 MSEA based on his own medical knowledge and expertise, as well as that of Drs.

22 Adeyeye and Akintunde, and knowledge of the working conditions in Escravos.  *Id.*

23      Plaintiff's expert, Dr. Marmureanu, prepared his initial his Federal Rules of Civil

24 Procedure Rule 26(a)(2) report in this matter on October 9, 2024.  Mussig Decl., ¶ 9, Ex.

25 H (Marmureanu Rule 26(a)(2) Report).  Dr. Marmureanu practices medicine in Los

26 Angeles, California.  *Id.* Dr. Marmureanu was not involved in Plaintiff's MSEA

27 determination and did not provide consultation during the MSEA process.  Before

28 preparing his report and opinions, Dr. Marmureanu did not conduct independent research

1   about the safety of workers in Escravos, Nigeria, nor did he review the conditions in

2   Escravos, Nigeria.  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at 25:23-26:8; *see*

3   *also id.* at ¶ 9, Ex. H.)  Dr. Marmureanu opined in his report that Plaintiff's risk of an

4   adverse cardiovascular event is "estimated at roughly 1% per year." *Id.*  Dr.

5   Marmureanu's opinion is based entirely on his assessment of the risk of an occurrence,

6   but does not take into account the other factors considered by the doctors in Nigeria—

7   namely, the conditions and medical facilities available in Escravos.  Dr. Marmureanu

8   testified that "I did not do an independent research for the safety of workers in that

9   location[.]"  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at 25:23-26:8; *see also id.*

10  at ¶ 9, Ex. H.    However, Dr. Marmureanu also acknowledged that if an adverse

11  cardiological event had occurred, "medical management and more likely than not surgical

12  management" would be necessary.  *Id.* at 37:15-24. [1]

13          Seven doctors are set to testify at trial.  Out of those seven, Dr. Marmureanu is the

14  only one who did not participate in Plaintiff's MSEA determination or had any

15  involvement in the medical assessment of Plaintiff's condition during the relevant time

16  period, that is Summer 2019.

17  **III.   ARGUMENT**

18          Under California law (the Fair Employment and Housing Act), an employer may

19  assert the "direct threat" defense when "no reasonable accommodation  . . . would allow

20  [the employee] to perform the essential functions of the position in question in a manner

21  that would not endanger" or "impose[] an imminent and substantial degree of risk to" the

22  health and safety of ***the employee or others***.  Cal. Code Regs., tit. 2, § 11067(b), (c).

23  Courts consider five factors in determining whether the "direct threat" defense applies:

24  (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the

25

26  _____

27  [1] Dr. Marmureanu acknowledged that in the absence of medical management, a chronic
    dissection condition could occur.  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at
28  37:25-38:3.)

1 likelihood that potential harm will occur; (4) the imminence of the potential harm; and (5)

2 consideration of relevant information about an employee's past work history.  Cal. Code

3 Regs., tit. 2, § 11067(e)(1)–(5).   Analysis of these factors must be "based on a reasonable

4 medical judgment that relies on the most current medical knowledge and/or on the best

5 available objective evidence."  *Id*.

6       Under the Federal Rules of Evidence, an expert's testimony is only permitted if:

7 "the expert's scientific, technical, or other specialized knowledge will help the trier of

8 fact to understand the evidence or to determine a fact in issue" or if "the testimony is

9 based on sufficient facts or data."  Fed. R. Evid. 702(a), (b).  Rule 403 permits the

10 exclusion of "relevant evidence if its probative value is substantially outweighed by a

11 danger of one or more of the following: unfair prejudice, confusing the issues, misleading

12 the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Dr.

13 Marmureanu's testimony endangers the proceedings in all these respects.

14       The "direct threat" defense at issue here requires an analysis of what current

15 medical knowledge or best objective evidence was available to the decisionmaker **at the**

16 **time** of the MSEA determination.  Cal. Code Regs., tit. 2, § 11067(e).

17       Dr. Marmureanu opines that Plaintiff had a low risk of occurrence of an adverse

18 cardiovascular event, "estimated at roughly 1% per year," that based on Dr. Khan's

19 assessment and Plaintiff's medical evaluations, that Plaintiff's aneurysm posed "minimal

20 to no risk," that the REM position is not physically demanding enough to exacerbate

21 Plaintiff's heart condition; and that clinical management would minimize potential risks

22 associated with Plaintiff's heart condition.  Mussig Decl., ¶ 9, Ex. H (Marmureanu Rule

23 26(a)(2) Report).   Dr. Marmureanu's opinions are made after the fact, on October 9,

24 2024, more than 5 years after Plaintiff's MSEA determination.  *Id*.  Dr. Marmureanu

25 admittedly does not have personal knowledge regarding the medical facilities or

26 conditions in Escravos, nor did he conduct any independent research or review to obtain

27 that knowledge.  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep. Tr.) at 25:23-26:8; *see also*

28 *id*. at ¶ 9, Ex. H.)  Indeed, Dr. Marmureanu's opinion that Plaintiff could safely assume

1  the expatriate assignment in Escravos, Nigeria, despite his heart condition, is based solely

2  on his assessment of the low risk of a cardiovascular event (Mussig Decl., ¶ 9, Ex. H

3  [Marmureanu Rule 26(a)(2) Report]), which is not in dispute by any of the doctors who

4  participated in Plaintiff's MSEA determination (*see, infra*).

5      Dr. Asekomeh made his determination that Plaintiff was not fit for duty in

6  Escravos based also on his knowledge of the facilities and lack of medical support in

7  Escravos.  Dkt. 43-5 [Asekomeh Decl.], ¶¶ 10-11.  Dr. Marmureanu admitted that if an

8  adverse cardiological event had occurred, "medical management and more likely than not

9  surgical management" would be necessary.  Mussig Decl., ¶ 8, Ex. G (Marmureanu Dep.

10  Tr.) at 37:15-24.  Due to the lack of appropriate medical facilities in Escravos, medical

11  and surgical management were not available on-site and had to be sought following a

12  medical evacuation out of Escravos, which could take up to 10-12 hours. Dkt. 43-5

13  [Asekomeh Decl.], ¶¶ 4-6; Mussig Decl., ¶ 7, Ex. F (Asekomeh Dep. Tr.) at 37:5-25.

14  Because Dr. Marmureanu has no information nor did he conduct any research, Dr.

15  Marmureanu's opinion is without factual basis, is not a reliable opinion, and intentionally

16  disregards facts regarding the lack of available medical facilities in Escravos and access

17  to advanced cardiovascular care, which were specifically considered by Dr. Asekomeh in

18  Plaintiff's MSEA determination. His opinion would not aid the jury is assessing the

19  ability of Plaintiff to do the job in Escravos. Permitting Dr. Marmureanu to provide his

20  opinion only regarding one aspect of the MSEA determination will not aid the jury. To be

21  relevant and admissible, his opinion must not only consider whether the determination

22  was made based on current medical knowledge but also on the best objective facts

23  available given the then current circumstances. He did not do either.

24      Additionally, Dr. Marmureanu's opinion and proffered testimony do nothing more

25  than corroborate the opinion of Drs. Asekomeh, Adeyeye, and Akintunde that Plaintiff

26  had a low risk of an adverse cardiovascular event, ranging between 1% to 2% or less.

27  There has never been a dispute that the risk is low.  Dr. Marmureanu's opinion is

28  therefore unnecessarily cumulative, as unlike the other six doctors, he did was not

1  involved in Plaintiff's MSEA determination, and his "opinion" is made more than five

2  years after the determination.  Excluding Dr. Marmureanu's testimony will promote

3  judicial economy, avoid wasting the Court and the jury's time, and will avoid any delay

4  in the proceedings.

5        Accordingly, Chevron respectfully requests an order excluding Dr. Marmureanu as

6  a trial witness on the grounds that his testimony would be irrelevant and needlessly

7  cumulative, and would also confuse the issues, mislead the jury, and cause unfair

8  prejudice to Chevron.

9

10  Dated:  July 7, 2025

11                 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

12

13          By  _____

14                       */s/ Tracey Kennedy*

15                   TRACEY A. KENNEDY

16                   ROBERT E. MUSSIG

17                   H. SARAH FAN

                  Attorneys for Defendant

18                   CHEVRON U.S.A. INC.,

19                   a Pennsylvania Corporation

20

21

22

23

24

25

26

27

28

SMRH:4931-4495-2403.1               DEFENDANT'S MEMO OF POINTS AND
                          AUTHORITIES ISO MOTION IN LIMINE NO. 2