SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT E. MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398
E-mail: tkennedy@sheppardmullin.com
rmussig@sheppardmullin.com
sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON U.S.A., INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OR TESTIMONY OF ANY SUBJECTIVE OPINION OR BELIEF BY PLAINTIFF REGARDING HIS PAST OR FUTURE ECONOMIC DAMAGES**<br><br>Date:   July 24, 2025<br>Time:   10:00 a.m.<br>Place:  Courtroom 5B – Fifth Floor<br><br>District Judge: Hon. Hernán De. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br><br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rules of Evidence 402, 403, 701 and 702, the Court should exclude the introduction of subjective opinions and beliefs of Plaintiff Mark Snookal ("Plaintiff") and his witnesses regarding Plaintiff's past and future economic damages—namely, his belief that he would have remained in the Reliability Engineering Manager ("REM") position in Escravos for the entire 3 to 4 year duration of the expatriate assignment and/or that he would have remained in that position or an equivalent position until his retirement. The reason such evidence should be excluded in this particular case is because such opinions or belief have no basis in fact. Plaintiff admitted that there is no guarantee that he would have been reselected for the REM position after the assignment ended, and there is no guarantee that he would have found another, equivalent expatriate assignment. Additionally, there is no guarantee that Plaintiff would have remained in the REM position for the entire duration of the assignment. The REM position was subject to reselection as part of a wide-scale reorganization in or around the end of 2020, and the employee who assumed the REM position after Plaintiff's offer was rescinded did not remain in the position past January 2021. As such, any subjective opinions, beliefs, or speculation that Plaintiff would have continued in the REM position past January 2021 should be excluded.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was hired by Chevron U.S.A. on January 12, 2009, as an Analyzer Engineer. Beginning in or about November 2016, Plaintiff was promoted to the position of Instrumentation, Electrical, and Analyzer Reliability ("IEAR") Team Lead in the Reliability subgroup of the Maintenance department, with Pay Salary Grade 22 (earning approximately $141,100 base salary). In or around May 2019, Plaintiff applied for and ultimately received an offer for an expatriate assignment as a Reliability Engineering Manager ("REM") position in Escravos, Nigeria, with an assignment duration of 3-4 years. After Plaintiff failed to clear the Medical Suitability for Expat Assignment

("MSEA") fitness for duty examination, the offer for the REM position was rescinded on or about September 4, 2019.

On or about August 4, 2021, Plaintiff voluntarily resigned from his employment with Chevron U.S.A., effective August 20, 2021, for the stated reason that he was leaving for an opportunity with significantly increased responsibility. The evidence at trial will show that from September 2019 through the date of his resignation, Plaintiff never experienced a decrease in his compensation or benefits.

The evidence will show that Plaintiff started his employment as a E/I Maintenance Superintendent at Nippon Dynawave Packaging Co. ("Nippon Dynawave") in Longview, Washington on or about September 6, 2021, with a base pay of $150,000 and an annual incentive target of 20% of his base, as well as equivalent health insurance benefits, 401(k) plan, vacation, and relocation benefits. After resigning from Nippon Dynawave effective August 25, 2023, Plaintiff started employment as an Electrical Superintendent at Georgia-Pacific Wauna LLC ("Georgia-Pacific") on September 1, 2023, earning a base salary of $180,000 with eligibility for performance pay, as well as equivalent health insurance benefits, 401(k) plan, and vacation benefits.

In calculating Plaintiff's alleged economic damages, Plaintiff's economics expert, Dr. Charles L. Baum, assumed, without any factual support or rationale, that Plaintiff would have been promoted to Pay Salary Grade 23 "after no more than 6 months" after the position was expected to begin on August 1, 2019. Mussig Decl., ¶ 4, Ex. C [Baum Report] at p. 2, no. 7. This assumption is based on information Dr. Baum received from Plaintiff and his counsel. Plaintiff testified during deposition that he believed Chevron U.S.A. had a policy against keeping employees at a lower Pay Salary Grade than the position they held was graded for more than 6-12 months, and that he believed he "might" have been moved up to Pay Salary Grade 23 after working six months in Escravos. Mussig Decl., ¶ 2, Ex. A [Pl. Dep. Tr.] at 265:16-266:5. However, Plaintiff also admitted that no one had told him he would advance to Pay Salary Grade 23 after he assumed the REM position in Escravos. *Id.* at 272:20-23.

1  Additionally, Dr. Baum's economic damages calculations assume, again without
2  any factual basis, or based on any reliable rationale, that if Plaintiff assumed the REM
3  position in Escravos, with an assignment duration of 3-4 years, that Plaintiff would
4  continue in that position or maintained some other position with the same compensation.
5  Mussig Decl., ¶ 3, Ex. B [Baum Dep. Tr.] at 22:10-23:9.  However, Plaintiff admitted
6  that there was no guarantee he would have gotten the assignment again after it ended.
7  Mussig Decl., ¶ 2, Ex. A [Pl. Dep. Tr.] at 271:8-24.  The evidence at trial will show that
8  between March 2020 and June 2020, the individual who assumed the REM position after
9  Plaintiff's offer was rescinded, Amir Zaheer, was kept home from the assignment due to
10 COVID-related travel restrictions in Nigeria.  Subsequently, due to an internal
11 reorganization, the REM position was subject to reselection, and beginning in or around
12 January 2021, another employee, Cesar Malpica, assumed the REM position.

## III.  ARGUMENT

### A.  Statements of Belief Constitute Improper Lay Opinion Testimony Under FRE 702.

Federal Rule of Evidence ("FRE") 701 sets the requirements for lay opinion testimony, which require generally that a witness have personal knowledge of the matter forming the basis of the opinion, a rational connection between the opinion and the facts upon which it is based, and the opinion or inference must be helpful to the trier of fact in either understanding the testimony or in determining a fact in issue.  In order for Plaintiff or any other lay witness to offer an opinion as to the extent of Plaintiffs alleged economic damages, firsthand knowledge and expertise regarding the calculation of such damages is necessary.  Fed. R. Evid. 701.  Plaintiff cannot establish that he or any of his witnesses have such knowledge.

It is well-settled that damages calculations must be reasonable, and no more than reasonable damages can be recovered.  *See* Cal. Civ. Code § 3359.  "Damage to be subject to a proper award must be such as follows the act complained of as a legal certainty."  *Agnew v. Parks*, 172 Cal. App. 2d 756, 768 (1959).  "A damage award must

not be speculative, remote, imaginary, contingent, or merely possible." *Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 738 (2017) (*citing* cases) (internal quotes omitted). Damages for loss of future earnings are only recoverable "where the evidence makes reasonably certain their occurrence and extent." *Id.* (*quoting Toscano v. Greene Music*, 124 Cal. App. 4th 685, 694 (2004); *Licudine v. Cedars-Sinai Medical Center* (2016) 3 Cal. App. 5th 881, 887 (2016) ("the jury must fix a plaintiff's future earning capacity based on what it is 'reasonably probable' she could have earned")). Any damages calculations offered by Plaintiff, his counsel, and his experts must also be reliable, and not speculative.

Chevron U.S.A. anticipates that Plaintiff will attempt to introduce evidence and argument that he would have been promoted to Pay Salary Grade 23 within 6 months of assuming the REM position in Escravos. However, Plaintiff's contentions are not based in reality, as evidenced by his own admissions. While Plaintiff claims that it is Chevron U.S.A.'s policy to promote employees to the Pay Salary Grade of the job position they are working in, which is subject to proof, Plaintiff admitted no one told him he would receive a promotion to Pay Salary Grade 23 after assuming the REM position. Mussig Decl., ¶ 2, Ex. A [Pl. Dep. Tr.] at 272:20-23. Even Plaintiff's belief regarding Chevron U.S.A.'s alleged policy, and its application to a hypothetical scenario where Plaintiff assumed the REM position, is speculative—Plaintiff stated that "usually" an employee in such a scenario would be reevaluated, and "generally speaking" may be moved to a higher Pay Salary Grade. *Id.* at 265:16-266:5. Similarly, the assumption of Plaintiff's economics expert that Plaintiff would have received the promotion as a matter of course after assuming the REM position is based solely on Plaintiff's speculation.

Chevron U.S.A. also anticipates that Plaintiff will attempt to introduce evidence and argument that his employment in the REM position in Escravos would have extended beyond the duration of assignment—i.e., 3-4 years. Again, this is pure speculation not based on the facts. Plaintiff admitted that there was no guarantee he would have gotten the assignment again after it ended. Mussig Decl., ¶ 2, Ex. A [Pl. Dep. Tr.] at 271:8-24.

Additionally, after the offer for the REM position was rescinded from Plaintiff, the employee who assumed the position after him was unable to work in the position between March 2020 and June 2020 due to COVID-related travel restrictions in Nigeria, and when the position was identified for reselection as part of company reorganization, that employee was not reselected for the role. Another employee assumed the REM position in or around January 2021.

Statements of belief that Plaintiff would have continued earning a certain amount of base compensation from Chevron U.S.A., as well as location premiums and/or tax equalization benefits relating to the expatriate assignment, but-for Chevron U.S.A.'s conduct amounts to improper opinion testimony. Such statements depend upon an inference or conclusion made by a witness which does not relate to something that was actually seen or heard, but rather by the witness' perception of how events occurred. As such, they rest on a wholly subjective foundation that is not helpful to the jury who must decide the case.

In fact, Plaintiff has no personal knowledge, and relies solely on his own speculative allegations and beliefs, that he would have continued in the REM position for the entire 3-4 years of the assignment even if it had not been rescinded, and/or that he would have continued in the REM position or another equivalently compensated expatriate position until his projected work life expectancy. Plaintiff's intent or subjective belief that he would remain in such positions is irrelevant, as he would have been required to apply and be selected for those positions at each juncture. There is also no guarantee that Plaintiff would have stayed with Chevron U.S.A. until his retirement, or even that Plaintiff would have wanted to continue working in expatriate assignments after he experienced his first one in Escravos. *See Atkins*, 8 Cal. App. 5th at 740-741 (finding employees' calculations of future economic damages too speculative in assuming the actualization of various steps in their careers, including consideration that the employees have not worked a day in those jobs); *see also Licudine v. Cedars-Sinai Med. Ctr.*, 3 Cal. App. 5th 881, 899 (2016) (finding same, including consideration that

there was no evidence of the plaintiff's likelihood of obtaining the assumed job position).

It is clear that Plaintiff had no expectation of continued employment in the role after the duration of the assignment ended in 3 to 4 years, and it is unlikely Plaintiff would have remained in the role after January 2021, given the company-wide reorganization. Any belief or argument that Plaintiff would have continued in the REM position or some other expatriate position—which would have required an additional application and selection process—is based on pure speculation. As such, this testimony should be excluded under Federal Rules of Evidence 701.

Witnesses can describe facts, but that the Court should not allow them to suggest their own interpretation or opinion as to what they attest absent personal knowledge sufficient to permit such testimony. To allow a witness to usurp this function is to deny the jury their role as the sole finders of fact.

Accordingly, any testimony regarding the extent of Plaintiff's alleged past economic damages relating to an speculative promotion to Pay Salary Grade 23, and alleged future economic damages after January 2021 based on compensation of the REM position, must be excluded from presentation at trial.

### B. Statements of Belief Are More Prejudicial Than Probative and Should Be Excluded Pursuant to Federal Rules of Evidence Rule 403.

Even if deemed relevant, "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. Evid. 403. As discussed in more detail, *supra*, Plaintiff's unsupported beliefs regarding his past and future lost earnings following the rescission of the REM position is based on his own speculation, not any objective support or admissible evidence. Allowing such testimony into evidence would confuse the issues and mislead the jury into thinking that Plaintiff had any entitlement to the REM position or other expatriate positions, or even that he was qualified for them, and would cause unfair prejudice to Chevron U.S.A. Additionally, allowing such improper opinion and

speculative testimony would unduly waste the Court and the jury's time.

## IV. CONCLUSION

Accordingly, Chevron U.S.A. respectfully requests an order precluding Plaintiff, his counsel, and his witnesses from presenting testimony or evidence of Plaintiff's alleged past economic damages relating to an speculative promotion to Pay Salary Grade 23, and alleged future economic damages after January 2021 based on compensation of the REM position, on the grounds that such evidence would be irrelevant and unduly prejudicial, and would also confuse the issues and mislead the jury.

Dated: July 7, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Tracey Kennedy*
TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN
Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation