DOLORES Y. LEAL (134176)
OLIVIA FLECHSIG (334880)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048-5217
(323) 653-6530
dleal@amglaw.com
oflechsig@amglaw.com

Attorneys for Plaintiff MARK SNOOKAL


SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT E. MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone:    213.620.1780
Facsimile:    213.620.1398
E-mail:    tkennedy@sheppardmullin.com
              rmussig@sheppardmullin.com
              sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual, | ) CASE NO.: 2:23-cv-6302-HDV-AJR |
| Plaintiff, | ) |
| vs. | ) **JOINT PROPOSED FINAL PRETRIAL** |
| | ) **CONFERENCE ORDER** |
| CHEVRON U.S.A. INC., a California Corporation, and DOES 1 through 10, inclusive, | ) |
| | ) District Judge: Hon. Hernan D. Vera |
| | ) Magistrate Judge: Hon. A. Joel Richlin |
| Defendants. | ) Action Filed: August 3, 2023 |
| | ) Pre-Trial Conf.: July 29, 2025 |
| | ) Trial Date: August 19, 2025 |
| | ) |
| | ) |

Following pre-trial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

## I.    THE PARTIES AND PLEADINGS

Plaintiff's second (failure to accommodate), third (age discrimination) and fourth (wrongful constructive discharge) have been dismissed. The remaining cause of action is for disability discrimination in violation of the California Fair Employment and Housing Act, Gov't Code 12940 *et seq.*

## II.    JURISDICTION

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. § 1332 et seq, and venue is proper in this District and this Division pursuant to 28 U.S.C. §1391(b).

## III.    TRIAL DURATION

The trial is estimated to take 7 days

## IV.    JURY TRIAL

The trial is to be a jury trial.

The parties' jury instructions and verdict form have been filed under separate cover as required by the Court's Scheduling Order.  Attached as Exhibit A are the parties' proposed jury instructions and verdict form.

## V.    ADMITTED FACTS

The following facts are admitted and require no proof:

1.    Plaintiff Mark Snookal was employed by defendant Chevron U.S.A. Inc. from January 12, 2009 to August 4, 2021.

2.    Plaintiff Mark Snookal was hired as an Analyzer Designs Engineer.

3.      In March 2011 Plaintiff Mark Snookal was promoted to Maintenance Supervisor.

4.      In August 2013, Plaintiff Mark Snookal's next position was Analyzer Reliability Improvement.

5.      In November 2016, Plaintiff Mark Snookal's next position was Instrumentation, Electrical and Analyzer Reliability "IEAR" Team Lead.

6.      In May 2019, Plaintiff Mark Snookal applied for the position of Reliability Engineering Manager (REM) in Escravos, Nigeria as an expatriate assignment.

7.      Defendant Chevron U.S.A. Inc. sent an "Assignment Offer" to Plaintiff Mark Snookal for the "EGTL Reliability Engineering Manager."

8.      The Assignment Offer was "contingent upon obtaining work/residence permit clearances" "and Company medical suitability for assignment."

9.      On July 18, 2019, Plaintiff Mark Snookal completed the "Medical Suitability for Expatriate Assignment History & Physical Examination" form (aka "MSEA" form).

10.     On July 24, 2019, Irving Sobel, M.D conducted a physical examination of Plaintiff Mark Snookal.

11.     Dr. Sobel completed the "Medical Suitability for Expatriate Assignment History & Physical Examination" form and wrote: "Fit for Duty with Restrictions": "no heavy lifting >50 lbs. Needs review of recommend letter from cardiologist to clear him."

12.     On July 29, 2019, Mr. Snookal's cardiologist, Dr. Steven Khan wrote a letter, "Mr. Snookal is under my care for his heart condition.  It is safe for him to work in Nigeria with his heart condition.  His condition is under good control and no special treatments are needed…."

13.     On August 15, 2019, Dr. Asekomeh Eshiofe, an Occupational Health Physician at the Chevron Hospital in Warri, Nigeria, completed the "Expatriate Exam Recommendation GO-1769" form stating Mark Snookal was "NOT FIT for Duty", "Remote location. Can be cleared for assignment in Lagos."

14.     Defendant Chevron U.S.A. Inc. rescinded the REM expatriate assignment offer to Plaintiff Mark Snookal.

15.     On or about August 15, 2019, Plaintiff Mark Snookal spoke with Dr. Stephen Frangos, Chevron's Regional Medical Manager for North and South American Operations regarding the decision that he was "not fit for duty."  Dr. Frangos suggested that Plaintiff Mark Snookal contact Dr. Scott Levy, Regional Medical Manager for Europe, Eurasia, Middle East & Africa who was responsible for that geographical area.

16.     Dr. Levy requested permission to discuss Plaintiff Mark Snookal's medical information with his treating cardiologist, Dr. Khan, Plaintiff agreed.

17.     On August 23, 2019, Dr. Khan sent Dr. Levy an email re: "Patient MS" where he concluded, "In summary, Mr. MS's risk of serious complications related to his thoracic aortic aneurysm is low and likely less than 2% per year.  The risk is primarily related to further enlargement of the aneurysm which can be tracked with an annual CT scan."

18.     On August 24, 2019, Dr. Levy sent an email to Dr. Paul Arenyeka regarding his conversation with Dr. Khan.

19.     On August 26, 2019, Dr, Arenyeka sent an email to Dr. Levy advising in part, "we should maintain the restriction based on the issues already outlined."

20.

21.     On September 4, 2019, Plaintiff Mark Snookal sent an email to Chevron's Human Resources Manager, Andrew Powers re: "Rescinded Job Offer in Nigeria" that he believes the "decision was made based on a lack of understanding and stereotypical assumptions about my medical condition and is, therefore, discriminatory in nature. As my condition does not affect my ability to perform the job duties of that position, I require no ongoing care outside of annual monitoring, working in a remote location does not affect my condition, a complication from my condition would cause no harm to others, and I have no work restrictions from my physician this decision seems excessively paternalistic…."

22.     On September 16, 2019, Dr. Levy sent an email to Mr. Snookal explaining the reason for the rescission of the REM position in Escravos, Nigeria.

23.     Plaintiff Mark Snookal resigned his employment on August 4, 2021.

24.     Plaintiff Mark Snookal filed an administrative complaint with the California

1   Department of Fair Employment and Housing ("DFEH") on December 22, 2021.

2       25.    The DFEH issued Plaintiff Mark Snookal a notice of right to sue authorizing the

3   lawsuit and has therefore exhausted his administrative remedies.

4

5   ## VI.    STIPULATED FACTS

6       The following facts, though stipulated, shall be without prejudice to any evidentiary

7   objection:

8       1.  Mark Snookal was hired by Chevron U.S.A. Inc. on January 12, 2009.

9       2.  Mark Snookal has a dilated aortic root.

10      3.  Chevron U.S.A. Inc. offered Mark Snookal a job as Reliability Engineering Manager,

11  located in Escravos Nigeria, in June 2019.

12      4. The job offer of Reliability Engineering Manager, located in Escravos, Nigeria, was

13  contingent on Mr. Snookal obtaining the appropriate work authorization and passing the Medical

14  Suitability of Ex Pat Assignment ("MSEA").

15      5. On August 15, 2019, Dr. Eshiofe Asekomeh completed Chevron's Expatriate Exam

16  Recommendation form and declared that Mr. Snookal was not fit for duty in Escravos, but

17  cleared him to work in Lagos, Nigeria.

18      6. In August, 2019 Mr. Snookal appealed the decision by Dr. Asekomeh.

19      7.  On September 4, 2019, Mr. Snookal was advised that the Reliability Engineering

20  Manager job offer, located in Escravos, Nigeria, was rescinded.

21      8. On August 4, 2021, Mr. Snookal resigned from Chevron U.S.A. Inc.

22

23  ## VII.    PARTIES' CLAIMS AND DEFENSES

24      **Plaintiff's Claims**:

25      a.    Plaintiff plans to pursue the following claim against Defendant:

26      Disability discrimination in violation of the California Fair Employment and Housing

27  Act ("FEHA"), Cal. Gov't Code § 12940(a)(1).

28      b.    The elements required to establish Plaintiff's claim are:

1.    That Chevron U.S.A. Inc. was an employer;

2.    That Mark Snookal was an employee of Defendant Chevron U.S.A. Inc.;

3.    That Mark Snookal's has a disability - dilated aortic root or perceived disability;

4.    That Chevron U.S.A. Inc. knew that Mr. Snookal had a disability or perceived him to have a disability;

5.    That Mark Snookal was able to perform the essential job duties of the position for which he applied, either with or without reasonable accommodation;

6.    That Chevron U.S.A. Inc. rescinded the job offer to Mark Snookal;

7.    That Mark Snookal's dilated aortic root was a substantial motivating reason for Chevron U.S.A. Inc's decision to rescind the job offer;

8.    That Mark Snookal was harmed; and

9.    That Chevron U.S.A. Inc.'s conduct was a substantial factor in causing Mark Snookal's harm.

See CACI 2540 Disability Discrimination – Disparate Treatment – Essential Factual Elements.

c.    Key Evidence Plaintiff Relies on for Said Claim:

1.    Mark Snookal's testimony regarding his 12 ½ year employment with Chevron, USA, Inc. and events surrounding his application for the Reliability Engineering Manager ("REM") position in Escravos, Nigeria.

2.    Documents in Mark Snookal's personnel file, including wage documents reflecting his employment with Chevron USA Inc.

3.    Documents regarding Mr. Snookal's application for the position of Reliability Engineering Manager ("REM") in Escravos, Nigeria.

4.    Chevron USA Inc.'s "Assignment Offer Letter" to Mark Snookal and his acceptance of the REM position in Escravos, Nigeria.

5.    Document - "Medical Suitability for Expatriate Assignment History &

Physical Examination" ("MSEA") used by Chevron for a fitness for duty examination.

6.      Dr. Irving Sobel's, an independent doctor from Cedars Sinai testimony that Chevron U.S.A. Inc. retained him to conduct a "fitness for duty" evaluation of Mark Snookal.

7.      Dr. Sobel's testimony regarding the fitness for duty evaluation and his completion of the MSEA form on 7/24/19 wrote that Mr. Snookal was "Fit for Duty with Restrictions", to wit: "No heavy lifting >50 lbs. Needs review of recommendation letter from cardiologist to clear him."

8.      Voicemail message from Dr. Sobel to Mark Snookal re: lab results "came back fine" and that Mr. Snookal needed to contact his cardiologist and get a letter "stating that it's safe for you to work in Nigeria that everything is under control. No special treatments are needed...."

9.      Conversations and emails between Mark Snookal and his cardiologist Dr. Shahid Khan re: rotational work in Nigeria.

10.      Dr. Khan's July 29, 2019, letter to Defendant advising "Mr. Snookal is under my care for his heart condition. It is safe for him to work in Nigeria with his heart condition. His condition is under good control and no special treatments are needed...."

11.      Dr. Khan's August 23, 2019, email to Dr. Scott Levy, Chevron's then Regional Medical Manager serving the Europe, Eurasia, Middle East & Africa Region, advising that Mr. Snookal's "risk of serious complications related to his thoracic aortic aneurysm is low and likely less than 2% per year. The risk is primarily related to further enlargement of the aneurysm which can be tracked with an annual CT scan."

12.      Mark Snookal's medical records regarding his heart condition up to September 2019.

13.      Documents from Chevron U.S.A. Inc. to Mark Snookal regarding his new

1                                 assignment to Escravos, Nigeria.

2     14.     Job Description and Job Requirements forms for the REM position in

3                                 Escravos, Nigeria.

4     15.     Testimony by Chevron's consulting doctors, Dr. Asekomeh, Dr.

5                                 Akintunde, Dr. Adeyeye, and Dr. Levy regarding the decision to rescind

6                                 the REM Escravos, Nigeria job offer.

7     16.     Documents from Chevron doctors, Dr. Asekomeh, Dr. Akintunde, Dr.

8                                 Pitan, Dr. Frangos, and Dr. Adeyeye reflecting their discussions leading

9                                 up to the decision to "decline a job transfer to Escravos" for Mark

10                                Snookal.

11     17.     Emails between Mark Snookal and Dr. Levy re: rescission of the REM

12                                offer.

13     18.     Emails between Dr. Levy and Dr. Khan regarding Mark Snookal's

14                                medical condition.

15     19.     Emails among Dr. Levy, Dr. Aranyaka, and Dr. Frangos regarding Mark

16                                Snookal.

17     20.     Emails regarding Mr. Snookal's disability discrimination complaint to

18                                Chevron U.S.A. Inc.'s Human Resources Manager, Andrew Powers.

19     21.     Emails between Mr. Snookal, Mr. Powers, and other Chevron USA Inc.

20                                Human Resources personnel re: Mr. Snookal's rescinded job offer.

21     22.     Emails between Dr. Levy and other Chevron personnel regarding

22                                rescinded job offer.

23     23.     Email from Dr. Levy to Mr. Snookal re: the stated explanation for

24                                rescinding the job offer.

25     24.     Emails among Mr. Powers and others re: finding Mr. Snookal a new

26                                position given that when the REM position was rescinded, his former

27                                position had already been filled.

28     25.     Testimony and Expert Report by Dr. Alexander Marmureanu, Plaintiff's

JOINT PROPOSED FINAL PRETRIAL CONFERENCE ORDER

expert cardiothoracic surgeon. Dr. Marmureanu will testify that Plaintiff's ascending aortic aneurysm and aortic root have remained stable at 4.2cm, with no significant progression over several years. At this size, in his opinion, the annual risk of rupture or dissection is less than 1% especially considering the stability of his condition and aortic measurements. Dr. Marmureanu will testify given that Plaintiff's work would be desk-based and not physically demanding, there is no evidence to suggest that his condition would affect his job performance or pose an immediate risk or direct threat.

26.    Ms. Linda Engel, L.C.S.W. employed by Kaiser provided Mr. Snookal with therapy. She will authenticate her records and testify regarding the therapy and her diagnosis of Plaintiff.

27.    Constance Snookal, Mark Snookal's wife will testify regarding her husband's damages.

28.    Dr. Anthony Reading, Plaintiff's expert forensic psychologist who evaluated Mr. Snookal, will testify regarding Mr. Snookal's psychological/emotional distress damages.

29.    Dr. Charles Baum, Plaintiff's economics expert, will offer his expert report and testify regarding Mr. Snookal's economic damages resulting from the rescinded job offer.

**Defendant's Affirmative Defenses:**

a.    Defendant plans to pursue the following affirmative defense:

Direct threat defense  Health or Safety Risk (Cal. Gov't Code 12940(a)(1) and Cal. Code Regs., tit. 2, § 1106(b)-(e)).

**Elements Required to Establish Defendant's Affirmative Defense:**

1. That the location of the job was an essential job duty;

2. That there was no reasonable accommodation that would have allowed Mark Snookal to perform this job duty without endangering his health or safety or  the health or safety of others; and

3. That Mark Snookal's performance of this job duty would present an immediate and substantial degree of risk to him or others.

However, it is not a defense to assert that Mark Snookal has a disability with a future risk, as long as the disability does not presently interfere with his ability to perform the job in a manner that will not endanger him or others.

In determining whether Chevron U.S.A. has proved this defense, factors that you may consider include the following:

a.    The duration of the risk;

b.    The nature and severity of the potential harm;

c.    The likelihood that the potential harm would have occurred;

d.    How imminent the potential harm was;

e.    Relevant information regarding Mark Snookal's past work history; and

f.    Medical opinions from medical professionals.

Your consideration of these factors should be based on a reasonable medical judgment that relies on the most current medical knowledge or on the best available objective evidence. C.A.C.I. 2544 - "Disability discrimination – Affirmative Defense – Health or Safety Risk."

## VIII.   REMAINING TRIABLE ISSUES

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

1.    Whether Chevron U.S.A. Inc. violated the Fair Employment and Housing Act, Gov't Code by rescinding the Reliability Engineering Manager expatriate assignment job offer in Escravos, Nigeria because of his disability (dilated aortic root).

2.    Whether Plaintiff Mark Snookal's disability posed a direct threat to his health and safety or the health and safety of others.

## IX.    DISCOVERY

All discovery is complete.

## X.    DISCLOSURES AND EXHIBIT LIST

All disclosures under FED. R. CIV. P. 26(a)(3) have been made.

The parties' Joint Exhibit List has been previously filed under separate cover as required by L.R. 16-6.1 and the Court's Scheduling Order ("Joint Exhibit List"). In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including the grounds therefor.

## XI.    WITNESS LISTS

The parties' witness lists have been previously filed under separate cover as required by the Court's Scheduling Order. The following table incorporates those witnesses that the parties intend to call at trial:

| Witness's Name, Title, Affiliation (If Relevant) | Summary of Testimony / Why Testimony Is Unique | Direct Exam (Hours) | Cross Exam (Hours) | Dates of Testimony |
|---|---|---|---|---|
| Dr. Victor Adeyeye[1] | At the relevant time, Dr. Adeyeye was a cardiologist for Chevron Nigeria who provided an opinion on Plaintiff's cardiac condition. | 1 hr. | .75 hr. | |
| Dr. Ujomoti Akintunde | At the relevant time, Dr. Akintunde was a Cardiologist in Nigeria who was consulted regarding Plaintiff's medical suitability for expatriate assignment. He assessed Plaintiff's medical condition and made a recommendation for Mr. Snookal's condition. | 1 hr. | .75 hr. | |

[1] It is anticipated that the testimony of the doctors in Nigeria may be presented via their depositions.

| | | | | |
|---|---|---|---|---|
| Dr. Eshiofe Asekomeh | Dr. Asekomeh conducted the Medical Suitability for Expatriate Assignment (MSEA) evaluation for Plaintiff. He determined that Plaintiff was not fit for duty based on his medical condition and available medical support. | 1.5 hrs. | .75 hr. | |
| Scott M. Banks | Mr. Banks is an Assistant Secretary of Chevron U.S.A. Inc. and verified various Interrogatory responses on behalf of Chevron U.S.A. Inc.  Mr. Banks is expected to testify regarding the information contained in said Interrogatories and factual matters related thereto. | .5 hr. | .10 hr. | |
| Dr. Charles Baum | Dr. Baum is a professor of economics and finance at Middle Tennessee State University. He has will testify regarding Plaintiff's lost earnings and lost employment benefits due to the rescission of the Expatriate position in Nigeria. | 3 hrs. | 1.25 hr. | |
| Linda Engel | At the relevant time, Ms. Engel was a Licensed Clinical Social Worker employed by Kaiser Permanente who provided therapy to Plaintiff. She will authenticate her records and testify regarding the therapy and her diagnosis of Plaintiff. | .5 hr. | .5 hr. | |
| Dr. Shahid Hameed Khan | At the relevant time, Dr. Khan was Plaintiff's treating cardiologist who determined that Plaintiff was fit for duty for an expatriate position.<br><br>After Chevron rescinded the offer of Expatriate assignment, Dr. Khan also communicated with Chevron's Dr. Levy regarding Plaintiff's medical condition and risk of cardiac event. Dr. Khan communicated that Plaintiff's risk | 1 hr. | .5 hr. | |

| | | | | |
|---|---|---|---|---|
| | | of a cardiac event was about 2% per year. | | | |
| | Dr. Scott Levy | At the relevant time, Dr. Levy was employed by Chevron as a Regional Medical Manager for the Europe, Eurasia, Middle East and Africa Region. He will testify regarding the fitness-for-duty medical evaluations for expatriate assignments. After Plaintiff complained about discrimination and challenged the decision to deem him unfit for duty, Dr. Levy reviewed Plaintiff's case for a second opinion. | 2 hrs. | 1.0 hr. | |
| | Cesar Malpica | Mr. Malpica replaced Mr. Zaheer in Escravos, Nigeria for 4 years. | .5 hr. | .75 hr. | |
| | Dr. Alexander Marmureanu | Dr. Marmureanu practices Thoracic and Cardiovascular Surgery. He is Board Certified in Cardiothoracic Surgery and General Surgery.<br><br>Dr. Marmureanu will testify that the clinical data consistently indicates that Mr. Snookal's ascending aortic aneurysm and aortic root have remained stable at 4.2 cm, with no significant progression over several years of monitoring. At this size, in his opinion, the annual risk of rupture or dissection is less than 1%, especially considering the stability of his condition and aortic measurements.<br><br>Dr. Marmureanu will testify given that Plaintiff's work would be desk-based and not physically demanding, there is no evidence to suggest that his condition would affect his job performance or pose an immediate risk or "direct threat." | 3 hrs. | 1.5 hr. | |

| | | | | |
|---|---|---|---|---|
| Andrew Powers | At the relevant time, Mr. Powers was a Senior Human Resources Manager at Chevron's El Segundo refinery.<br><br>Plaintiff filed a complaint of disability discrimination with Mr. Powers. Mr. Powers has also had several expatriate assignments to other countries and Chevron USA consistently paid his salary throughout. | 1 hr. | .75 hr. | |
| Dr. Anthony Reading | Dr. Reading is an expert forensic psychologist who evaluated Mr. Snookal. | 3 hrs. | 1.0 hr. | |
| Constance Snookal | Ms. Snookal is Plaintiff's wife. She will testify regarding her husband's damages as a result of Chevron's rescission of the Reliability Engineering Manager position. | 2 hrs. | .75 hr | |
| Mark Snookal | Plaintiff Mark Snookal will testify regarding his employment at Chevron USA; his application to be a Reliability Engineering Manager, an Expatriate assignment in Escravos, Nigeria; the application process; the two doctors (Dr. Khan and Dr. Sobel) who examined him who concurred that he was fit for duty; the offer of employment; Chevron's rescission of the expatriate assignment; Mr. Snookal's appeal of the recission decision to Dr. Frangos and Dr. Levy; his complaint to Human Resources; and economic, emotional/ psychological damages suffered by him. | 8 hrs. | 4.0 hrs. | |
| Dr. Irving Sobel | Dr. Sobel was retained by Chevron as an independent doctor to conduct a fitness for duty examination for the Expatriate assignment in Nigeria. | .75 hr. | .50 hr. | |

14

| Dr. Chen Song | Chevron U.S.A. Inc's economist is a rebuttal witness to Plaintiff's expert's economist. | | 1.0 | |
| Harpreet K. Tiwana | Harpreet Tiwana is an Assistant Secretary of Chevron U.S.A. Inc. and verified various Interrogatory responses on behalf of Chevron U.S.A. Inc. Harpreet Tiwana is expected to testify regarding the information contained in said Interrogatories and factual matters related thereto. | .5 hr. | .10 hr. | |
| Thalia Tse | At the relevant time, Ms. Tse was Chevron's Human Resources Business Partner at the El Segundo refinery. She reported to Andrew Powers. Ms. Tse was tasked with being familiar with Chevron policies prohibiting discrimination and pay for expatriate/rotational assignments. | .5 hr. | .5 hr. | |
| Amir Zaheer | Mr. Zaheer replaced Mr. Snookal in Escravos, Nigeria after Defendant rescinded the job offer. | .5 hr. | .5 hr. | |

Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment).

## XII.    MOTIONS IN LIMINE

The parties' motions in limine have been previously filed under separate cover as required by the Court's Scheduling Order.  The parties have met and conferred on these initial motions. The following motions in limine, and no others, are still pending and at issue:

### PLAINTIFF MARK SNOOKAL'S MOTIONS IN LIMINE

| Plaintiff Mark Snookal's Motion in Limine No. 1 – Daubert Motion to Exclude the Purported Expert Opinion Testimony of Dr. Victor Adeyeye |
| Plaintiff Mark Snookal's Motion in Limine No. 2 – Daubert Motion to Exclude the Purported Testimony of Dr. Ujomoti Akintunde |

15

Plaintiff Mark Snookal's Motion in Limine No. 3 – to Exclude References to Third Party Medical Information

Plaintiff Mark Snookal's Motion in Limine No. 4 to Exclude Reference to Plaintiff's Cardiac Medical History After September 2019

### **DEFENDANT CHEVRON USA, INC.'S MOTION IN LIMINE**

Defendant Chevron USA, Inc.'s Motion in Limine No. 1 to Exclude Evidence or Testimony of any Subjective Opinion or Belief by Plaintiff regarding his past or future economic damages

Defendant Chevron USA, Inc.'s Motion in Limine No. 2 to Exclude any Expert Testimony from Dr. Alexander Marmureaneu

**XIII.  BIFURCATION**

Not applicable.

**XIV.  ADMISSIONS**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pre-Trial Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED**.

DATED:

_____
Hernán D. Vera
United States District Judge

Approved as to form and content:

Dated: July 15, 2025

ALLRED, MAROKO & GOLDBERG

By _____
            */s/ Dolores Y. Leal*
            DOLORES Y. LEAL
            OLIVIA FLECHSIG

            Attorneys for Plaintiff
            MARK SNOOKAL

Dated: July 15, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
            */s/ Tracey A. Kennedy*
            TRACEY A. KENNEDY
            ROBERT E. MUSSIG
            H. SARAH FAN

            Attorneys for Defendant
            CHEVRON U.S.A. INC.,
            a Pennsylvania Corporation