SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone:  213.620.1780
Facsimile:   213.620.1398
E-mail:       tkennedy@sheppardmullin.com
              rmussig@sheppardmullin.com
              sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON USA, INC.'S OPPOSITION TO PLAINTIFF MARK SNOOKAL'S MOTION IN LIMINE NO. 1 – DAUBERT MOTION TO EXCLUDE THE EXPERT OPINION TESTIMONY OF DR. VICTOR ADEYEYE**<br><br>Date: July 24, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 5B – Fifth Floor<br><br>District Judge: Hon. Hernán De. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br><br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

# OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1

## I. INTRODUCTION

Defendant Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron U.S.A." or "Defendant"), opposes Plaintiff Mark Snookal's Motion in Limine No. 1 seeking to exclude the percipient expert opinion of Dr. Victor Adeyeye, a cardiologist in Nigeria whose opinion was consulted to determine whether Plaintiff's heart condition would prevent him from working in one of the most remote places on earth. Plaintiff's motion should be denied because (1) Dr. Adeyeye's opinion is based on his scientific or specialized knowledge in cardiology (there is no dispute that he is medical professional), which would assist the jury in determining an essential fact of the case; and (2) Dr. Adeyeye's opinion is based on sufficient facts and reliable principles and methods as utilized by cardiologists in the industry. Dr. Adeyeye, whose job is the management of acute medical emergencies and outpatient management of medical cases, especially cardiovascular disease,[1] assessed a low risk of an adverse cardiovascular occurrence related to Plaintiff's heart condition. This fact is not in dispute by any of the doctors who are involved in this case, including Plaintiff's proposed cardiology expert. There is no basis for this Court to conclude that there is such an analytical gap between Dr. Adeyeye's opinion and the facts that Dr. Adeyeye's opinion, which was provided to Chevron U.S.A. and Plaintiff, can be excluded.

For these reasons, Plaintiff's Motion in Limine No. 1 should be denied.

## II. ARGUMENT

### A. Dr. Adeyeye is a Qualified Expert Because His Opinion Reflects Specialized Medical Expertise in Cardiology and Will Assist the Trier of Fact In Determining Material Issues.

When acting as a gatekeeper for the admissibility of expert testimony, the Court performs a two-step test: first, the Court determines if a witness has the required

---

[1] See Mussig Decl., ¶ 2, Ex. A [Adeyeye Dep. Tr.] at 15:3-16:24.

expertise; then the Court ensures that "any and all testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). In applying Federal Rule of Evidence 702, the trial court exercises broad discretion regarding the admissibility of expert-technical evidence by performing a "'gatekeeping role . . .to all expert testimony . . . .'" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); *see Daubert*, 509 U.S. at 590-92 (1993). A court properly exercises this gatekeeping role to exclude expert testimony only where the "factual basis, data, principles, methods, or their application [of the expert's testimony] are called sufficiently into question" by the moving party because the expert has not used "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field . . . ." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 152 (1999).

Here, the sole basis for Plaintiff's claim that Dr. Adeyeye's medical opinion is not based on scientific, technical, or other specialized knowledge is the fact that Dr. Adeyeye has never treated an employee with a dilated aortic root condition that has ruptured or dissected (see Mussig Decl., ¶ 2, Ex. A [Adeyeye Dep. Tr.] at 62:20-63:4), only performed an autopsy on a patient who died because they could not be provided treatment after they arrived in his care with an aortic rupture (*id.* at 21:23-22:14). Plaintiff's argument misses the crux of the issue. Plaintiff was not deemed unfit for duty in Escravos *because his heart condition could not be monitored or treated on-site*.[2] Plaintiff could not perform his duties in Escravos because a cardiovascular complication relating to his heart condition, such as a dissection or rupture, would result in certain death in Escravos due to the lack of access to medical facilities and personnel. *Id.* at 128:18-129:3; *id.* at ¶ 3, Ex. B (Akintunde Dep. Tr.) at 81:3-82:5, 82:9-24. In other words, Plaintiff was deemed unfit

---

[2] Indeed, it could not be—the evidence at trial will show that Plaintiff's heart condition required regular monitoring using imaging equipment that was not available in Escravos and Plaintiff was recommended to take medication which could not be prescribed nor obtained in Escravos.

for duty because the occurrence of an adverse cardiovascular event in Escravos would lead to this death. This is not in reasonable dispute.

Furthermore, Plaintiff's argument presents a fatal flaw. It is undisputed that the risk of an adverse cardiovascular event occurring as a result of an aortic root dilation is not assessed based solely on a doctor's subjective or anecdotal experience with treating such conditions in their patients, but rather data aggregated in medical journals which studied the incidence of such events over hundreds or thousands of medical cases. Indeed, Dr. Adeyeye not only assessed Plaintiff's cardiovascular status and imaging reports, but also consulted national and international guidelines set by respected medical institutions (Mussig Decl., ¶ 2, Ex. A [Adeyeye Dep. Tr.] at 109:17-111:1) as well as medical journals published in Nigeria and internationally studying the epidemiology of aortic root dilations and the fatality rates associated with same (*id.* at 72:20-74:1). Dr. Akintunde also assessed Plaintiff's risk of an adverse cardiovascular event based on medical literature and the adverse aortic outcomes of patients reported. Mussig Decl., ¶ 3, Ex. B (Akintunde Dep. Tr.) at 70:6-22. Finally, Plaintiff's proposed cardiology expert, Dr. Marmureanu, also made an opinion of Plaintiff's risk based not only on his own experience, but also on medical publications which show "the incidence of aortic dissection [or] rupture in someone with" Plaintiff's condition. *Id.* at ¶ 4, Ex. C (Marmureanu Dep. Tr.) at 27:14-28:12.)

Dr. Adeyeye's opinion is furthermore directly relevant to the issues being considered by the jury because Dr. Eshiofe Asekomeh, who made the determination that Plaintiff was not fit for duty in Escravos, separately requested Dr. Adeyeye's cardiology opinion as well as that of Dr. Akintunde, and relied upon their independent and corroborating opinions in making his determination. Thus, Dr. Adeyeye's opinion is percipient expert testimony.  In terms of Dr. Adeyeye's factual testimony regarding his consultation in Plaintiff's fitness for duty determination, he will necessarily need to testify about his consultation and opinion as provided to Dr. Asekomeh, as well as the bases for his opinion.

Accordingly, Dr. Adeyeye's opinion, which appropriately considered a review of Plaintiff's medical records and case-specific medical studies relating to Plaintiff's condition, "reflects scientific knowledge and reliable methodology." *Dunivin v. Cnty. of Riverside*, 2024 U.S. Dist. LEXIS 132082, *23 (C.D. Cal. Jun. 14, 2024) (*citing Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1227-28 (9th Cir. 1998)) (finding a cardiologist's opinion formed based on his review of medical textbooks regarding the plaintiff's condition as well as the plaintiff's medical records were scientifically reliable and relevant). Whether Dr. Adeyeye had ever treated a patient with an aortic root dilation who was alive is relevant only, if at all, to the weight, <u>not admissibility</u>, of Dr. Adeyeye's opinion. *See LeBlanc v. City of Los Angeles*, 2006 U.S. Dist. LEXIS 96768, *21-22 (*citing Gaydar v. Sociedad instituto Gineco-Quirurgico y Plaintificacion Familiar*, 345 F.3d 15, 25 (1st Cir. 2003) (finding reversible error where a physician expert's testimony was excluded because he was not trained in the most directly relevant specialty); *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (same)).

As Dr. Adeyeye's opinion is founded upon reliable scientific and specialized knowledge which would assist the jury in determining one of the material facts at issue in this case, Plaintiff's Motion *in Limine* must be denied.

### B. Dr. Adeyeye is a Qualified Expert Because His Opinion Is Based on the Sufficient Facts and Data Through the Application of Reliable Principles and Methods.

"Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *see Daubert*, 509 U.S. at 590. Expert testimony is appropriately admitted if "the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." *See* Fed. R. Evid. 702, Advisory Committee Notes, 2023 Amendments.

1      Rule 702 requires an expert's testimony to be based on "sufficient facts or data," which is a matter of "foundation, not corroboration." *Favell v. Univ. of S. Cal.*, 2024 U.S. Dist. LEXIS 210443, *19-20 (C.D. Cal. Nov. 13, 2024) (*quoting Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025-26 (9th Cir. 2022)). While a court may "conclude that there is simply too great an analytical gap between the data and the opinion proffered, Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Id.* (citations, quotation marks, and brackets omitted). Such a finding cannot be made here regarding Dr. Adeyeye's testimony.

      Here, Plaintiff's objections to the factual bases for Dr. Adeyeye's opinion are all based on his arguments that Dr. Adeyeye did not consider certain or a sufficient number of studies, or that Dr. Adeyeye did not consider as much of Plaintiff's medical data and history as Plaintiff contends he should have. Not only are these contentions without basis in fact, as will be demonstrated at trial, they fail as a matter of law to constitute sufficient grounds to exclude Dr. Adeyeye's testimony because they go to the weight, <u>not admissibility</u>, of Dr. Adeyeye's opinion. *Kennedy*, 161 F.3d 1226, 1230-31 (*quoting McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) (finding "[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony")).

      In addition to medical journal articles Dr. Adeyeye reviewed as part of his practice as a cardiologist, he recalls specifically reviewing medical journal articles in assessing Plaintiff's risk of an adverse cardiovascular event. Mussig Decl., ¶ 2, Ex. A (Adeyeye Dep. Tr.) at 74:4-15. Plaintiff's argument that these articles do not constitute "sufficient facts or data" to form the basis of Dr. Adeyeye's opinion is nothing more than an attempt to contest the validity of competing medical journal articles which do not corroborate Plaintiff's position.

Dr. Adeyeye has testified that he reviewed local and international articles relating to Plaintiff's heart condition to obtain reliable data from reputable medical institutions regarding the risk of an adverse occurrence. *Id.* Dr. Adeyeye has testified that he reviewed a local article which reviewed 2,501 echocardiographs of cardiac patients which involved a small occurrence of congenital heart disease, but not any person diagnosed with an aortic root dilation, from which he concluded that Plaintiff's condition was rare. *Id.* at 74:16-75:6. Dr. Adeyeye has testified that he reviewed another local article which reviewed cases with Plaintiff's condition, "most" of which were found at autopsy. *Id.* at 72:20-73:16. Dr. Adeyeye has testified that he reviewed a United States study reviewing fatal aortic ruptures in the United States, which assessed that the rate of mortality after a patient experienced an adverse cardiovascular event was over 90%, because "patients don't often live to warrant such evaluation for treatment." *Id.* at 76:5-23. Finally, Dr. Adeyeye testified that he reviewed local and international guidelines established by reputable medical institutions, including one published by the University of Calgary, which provided information about the risk of dissection, the risk of rupture, and attendant mortality rates, relative to the size of the aortic dilation. *Id.* at 77:15-25.

Plaintiff contends, without support and based merely on non-medical speculation, that the medical journals Dr. Adeyeye reviewed and their contents do not constitute sufficient facts or data based solely on his own arbitrary assumptions. There is no evidence that the articles reviewed by Dr. Adeyeye solely involved patients who were not taking preventative medications for their heart conditions. Aside from Plaintiff's say-so, there is no evidence that an echocardiographical study of cardiac patients' heart conditions is irrelevant to an understanding of Plaintiff's heart condition or the risk of an adverse occurrence. That Dr. Adeyeye had to review local medical articles which mostly studied post-mortem cardiac conditions makes the exact point Plaintiff is trying to avoid—that Plaintiff's heart condition is susceptible to a sudden and catastrophic occurrence which, in a heightened supermajority of cases, cannot be treated in Nigeria at

1  large, much less in Escravos, one of the most remote corners of the country, resulting in
2  death.
3        Plaintiff makes much of the fact that Dr. Adeyeye did not speak to Plaintiff or to
4  Plaintiff's cardiologist in making his assessment of risk of an adverse cardiovascular
5  occurrence. Notably, Plaintiff's cardiology expert likewise did not speak with Plaintiff or
6  Plaintiff's cardiologist at any time before rendering his opinion, and did not believe it
7  was necessary to do so because he had data from medical journals, Plaintiff's imaging
8  reports, and medical records. *See* Mussig Decl., ¶ 4, Ex. C (Marmureanu Dep. Tr.) at
9  54:14-55:6. Additionally, Dr. Adeyeye and Dr. Akintunde agree that speaking with
10 Plaintiff and his cardiologist was unnecessary when they already had Plaintiff's imaging
11 reports and medical records. *See* Mussig Decl., ¶ 2, Ex. A (Adeyeye Dep. Tr.) at 119:14-
12 121:24; *id.* at ¶ 3, Ex. B (Akintunde Dep. Tr.) at 77:7-18. It is indisputable that Dr.
13 Adeyeye's opinion cannot disqualified for this reason.
14       Furthermore, contrary to Plaintiff's contention, Dr. Adeyeye has never indicated
15 that he did not conduct an independent assessment of Plaintiff's risk of an adverse
16 cardiovascular event based on his review of Plaintiff's imaging reports. *See* Mussig
17 Decl., ¶ 2, Ex. A (Adeyeye Dep. Tr.) at 121:16-24. Dr. Adeyeye testified that he
18 conducted his own independent assessment, and that the opinion of another cardiologist,
19 including Plaintiff's cardiologist, did not impact his assessment because he made his
20 determination based on Plaintiff's cardiology records. Additionally, Drs. Adeyeye and
21 Akintunde, whose independent opinions Dr. Asekomeh relied upon in making the
22 determination on Plaintiff's fitness for duty, did not speak with each other at the time
23 they rendered their opinions in 2019. *See* Mussig Decl., ¶ 3, Ex. B (Akintunde Dep. Tr.)
24 at 22:6-15.
25       Finally, Plaintiff's Opposition cites Dr. Adeyeye's testimony out of context to
26 argue, without support, that Dr. Adeyeye should have considered more information about
27 Plaintiff's health condition, referring to the "MEP" considered by Dr. Aiwuyo. The
28 "MEP" is the "Medical Examination Program" prepared by Chevron as guidelines for

1  medical suitability determinations. *See* Mussig Decl., ¶ 5, Ex. D (MEP). The MEP does
2  *not* contain guidelines as to how Plaintiff's specific heart condition would be assessed for
3  risk from an occupational health perspective. Dr. Adeyeye did testify that in making his
4  assessment of risk, he reviewed local and international guidelines established by
5  reputable medical institutions, including one published by the University of Calgary,
6  which provided information about the risk of dissection, the risk of rupture, and attendant
7  mortality rates, relative to the size of the aortic dilation. *See* Mussig Decl., ¶ 2, Ex. A
8  (Adeyeye Dep. Tr.) at 77:15-24. Dr. Adeyeye and Dr. Akintunde testified that if any
9  additional information were available to them (e.g., about Plaintiff's family, medical, or
10 social history; his metabolic panel, his health habits, disorders, etc.), *it would only have*
11 *maintained or increased the assessed level of risk, not decreased it*. *See* Mussig Decl., ¶
12 2, Ex. A (Adeyeye Dep. Tr.) 123:20-125:15; *id.* at ¶ 3, Ex. B (Akintunde Dep. Tr.) 44:22-
13 45:11.
14      As demonstrated above, Dr. Adeyeye's opinions are soundly based on the medical
15 and factual data available to him. This Court cannot select between competing expert
16 evidence or make a determination as to the veracity of an expert's opinion at this stage.
17 There is simply no basis to conclude that there is such a great analytical gap between the
18 data provided and Dr. Adeyeye's opinion that it would render Dr. Adeyeye's opinion
19 inadmissible. Accordingly, Plaintiff's Motion *in Limine* must be denied.

## III.   CONCLUSION

For all the foregoing reasons, this Court should deny Plaintiff's Motion in Limine to exclude Dr. Adeyeye's expert opinion instead permit Chevron U.S.A. to introduce such evidence as it sees fit.

[*signature appears on following page*]

Dated: July 15, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     */s/ Robert Mussig*
TRACEY A. KENNEDY
ROBERT MUSSIG
H. SARAH FAN
Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation