SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone: 213.620.1780
Facsimile: 213.620.1398
E-mail: tkennedy@sheppardmullin.com
rmussig@sheppardmullin.com
sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON USA, INC.'S OPPOSITION TO PLAINTIFF MARK SNOOKAL'S MOTION IN LIMINE NO. 2 – DAUBERT MOTION TO EXCLUDE THE EXPERT OPINION TESTIMONY OF DR. UJOMOTI AKINTUNDE**<br><br>Date: July 24, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 5B – Fifth Floor<br><br>District Judge: Hon. Hernán De. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br><br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

# OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2

## I. INTRODUCTION

Defendant Chevron U.S.A. Inc., a Pennsylvania corporation ("Chevron U.S.A." or "Defendant"), opposes Plaintiff Mark Snookal's Motion in Limine No. 2 seeking to exclude the percipient expert opinion of Dr. Ujomoti Akintunde, a cardiologist whose opinion was consulted and relied upon to determine whether Plaintiff's heart condition would prevent him from working in one of the most remote places on earth.

Plaintiff's motion to exclude Dr. Akintunde's opinion should be denied because (1) Dr. Akintunde's opinion is based on her scientific or specialized knowledge in cardiology, which would assist the jury in determining an essential issue of the case; and (2) Dr. Akintunde's opinion is based on sufficient facts and reliable principles and methods as utilized by cardiologists in the industry. Dr. Akintunde, like other doctors, assessed a low risk of an adverse cardiovascular occurrence related to Plaintiff's heart condition. This fact is not in dispute by any of the doctors who are involved in this case, including Plaintiff's proposed cardiology expert. There is no basis for this Court to conclude that there is such an analytical gap between Dr. Akintunde's opinion and the facts, such that Dr. Akintunde's opinion can be excluded.

For these reasons, Plaintiff's Motion in Limine No. 2 should be denied.

## II. ARGUMENT

### A. Dr. Akintunde is a Qualified Expert Because Her Opinion Reflects Specialized Medical Expertise in Cardiology and Will Assist the Trier of Fact In Determining Material Issues.

When acting as a gatekeeper for the admissibility of expert testimony, the Court performs a two-step test: first, the Court determines if a witness has the required expertise; then the Court ensures that "any and all testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993). In applying Federal Rule of Evidence 702, the trial court exercises broad discretion regarding the admissibility of expert-technical evidence by performing a

"'gatekeeping role . . .to all expert testimony . . . .'" *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); *see Daubert*, 509 U.S. at 590-92 (1993). A court properly exercises this gatekeeping role to exclude expert testimony only where the "factual basis, data, principles, methods, or their application [of the expert's testimony] are called sufficiently into question" by the moving party because the expert has not used "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field . . . ." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 152 (1999).

Here, the sole basis for Plaintiff's claim that Dr. Akintunde's expert opinion is not based on scientific, technical, or other specialized knowledge is the fact that Dr. Akintunde has never treated an employee with a dilated aortic root condition that has ruptured or dissected. *See* Mussig Decl., ¶ 2, Ex. A (Akintunde Dep. Tr.) at 77:17-78:7. Plaintiff's argument is simply incorrect and cannot form the basis to exclude Dr. Akintunde. The issue for the trier of fact will be determining whether Chevron U.S.A. had the legal right under the FEHA, based on medical information, to determine if Plaintiff was unfit for duty ***in Escravos*** and was a direct threat to himself because his heart condition could not be monitored or treated on-site.[1] Plaintiff could not perform his duties in Escravos because a cardiovascular complication relating to his heart condition, such as a dissection or rupture, would result in certain death in Escravos due of the lack of access to medical facilities and personnel. *Id.* at ¶ 2, Ex. A (Akintunde Dep. Tr.) at 81:3-82:5, 82:9-24; *id.* at ¶ 3, Ex. B (Adeyeye Dep. Tr.) at 128:18-129:3. In other words, Plaintiff was deemed unfit for duty because the occurrence of an adverse cardiovascular event in Escravos would lead to his death. This is not in reasonable dispute.

---

[1] The evidence at trial will show that Plaintiff's heart condition required regular monitoring using imaging equipment that was not available in Escravos and Plaintiff was recommended to take medication which could not be prescribed nor obtained in Escravos.

It is undisputed that Dr. Akintunde has treated patients with a dilated aortic root since she began working for Chevron Nigeria in 2018, including others prior to that, and has clinical experience with managing the risks of Plaintiff's heart condition. *See* Mussig Decl., ¶ 2, Ex. A (Akintunde Dep. Tr.) at 20:9-13. As Dr. Akintunde testified, experience treating ruptures or dissections is not necessary to make an assessment regarding the risk of complication because a good knowledge of the heart condition and real-world statistics is sufficient to make the assessment. *Id.* at 78:9-22.

Furthermore, Plaintiff's argument presents a fatal flaw. It is undisputed that the risk of an adverse cardiovascular event occurring as a result of an aortic root dilation is not assessed based solely on a doctor's subjective or anecdotal experience with treating such conditions in their patients, but rather data aggregated in medical journals which studied the incidence of such events over hundreds or thousands of medical cases. Indeed, Dr. Akintunde not only assessed Plaintiff's cardiological condition based on his imaging reports (*id.* at 63:6-20), but also based on her own knowledge and experience and review of medical literature regarding Plaintiff's condition (*id.* at 70:6-22, 78:19-79:1, 15:5-17). Dr. Adeyeye also assessed Plaintiff's risk of an adverse cardiovascular event based on Plaintiff's cardiovascular status and imaging reports, as well as national and international guidelines set by respected medical institutions (Mussig Decl., ¶ 3, Ex. B [Adeyeye Dep. Tr.] at 109:17-111:1) and medical journals published in Nigeria and internationally studying the epidemiology of aortic root dilations and the fatality rates associated with same (*id.* at 72:20-74:1). Finally, Plaintiff's proposed cardiology expert, Dr. Marmureanu, also opined regarding Plaintiff's risk based not only on his own experience, but also on medical publications which show "the incidence of aortic dissection [or] rupture in someone with" Plaintiff's condition. *Id.* at ¶ 4, Ex. C (Marmureanu Dep. Tr.) at 27:14-28:12.)

Dr. Akintunde's opinion is furthermore directly relevant to the issues being considered by the jury because Dr. Eshiofe Asekomeh, who made the determination that Plaintiff was not fit for duty in Escravos, separately requested Dr. Akintunde's cardiology

opinion as well as that of Dr. Adeyeye, and relied upon their independent and corroborating opinions in making his determination. Thus, Dr. Akintunde's opinion is percipient expert testimony. In terms of Dr. Akinunde's factual testimony regarding her consultation in Plaintiff's fitness for duty determination, she will necessarily need to testify about her consultation and opinion as provided to Dr. Asekomeh, as well as the bases for her opinion.

Accordingly, Dr. Akintunde's opinion, which appropriately considered a review of Plaintiff's medical records and case-specific medical studies relating to Plaintiff's condition, "reflects scientific knowledge and reliable methodology." *Dunivin v. Cnty. of Riverside*, 2024 U.S. Dist. LEXIS 132082, *23 (C.D. Cal. Jun. 14, 2024) (*citing Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1227-28 (9th Cir. 1998)) (finding a cardiologist's opinion formed based on his review of medical textbooks regarding the plaintiff's condition as well as the plaintiff's medical records were scientifically reliable and relevant). Whether Dr. Akintunde had ever treated a patient with an aortic root dilation or how many patients she treated is relevant only, if at all, to the weight, <u>not admissibility</u>, of Dr. Akintunde's opinion. *See LeBlanc v. City of Los Angeles*, 2006 U.S. Dist. LEXIS 96768, *21-22 (*citing Gaydar v. Sociedad instituto Gineco-Quirurgico y Plaintificacion Familiar*, 345 F.3d 15, 25 (1st Cir. 2003) (finding reversible error where a physician expert's testimony was excluded because he was not trained in the most directly relevant specialty); *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (same)).

As Dr. Akintunde's opinion is founded upon reliable scientific and specialized knowledge which would assist the jury in determining one of the material facts at issue in this case, Plaintiff's Motion *in Limine* must be denied.

/ / /

## B. Dr. Akintunde is a Qualified Expert Because Her Opinion Is Based on the Sufficient Facts and Data Through the Application of Reliable Principles and Methods.

"Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *see Daubert*, 509 U.S. at 590. Expert testimony is appropriately admitted if "the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." *See* Fed. R. Evid. 702, Advisory Committee Notes, 2023 Amendments.

Rule 702 requires an expert's testimony to be based on "sufficient facts or data," which is a matter of "foundation, not corroboration." *Favell v. Univ. of S. Cal.*, 2024 U.S. Dist. LEXIS 210443, *19-20 (C.D. Cal. Nov. 13, 2024) (*quoting Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025-26 (9th Cir. 2022)). While a court may "conclude that there is simply too great an analytical gap between the data and the opinion proffered, Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Id.* (citations, quotation marks, and brackets omitted). Such a finding cannot be made here regarding Dr. Akintunde's testimony.

Here, Plaintiff's objections to the factual bases for Dr. Akintunde's opinion are all based on his arguments that Dr. Akintunde did not consider certain or a sufficient number of studies, or that Dr. Akintunde did not consider as much of Plaintiff's medical data and history as Plaintiff contends she should have. Not only are these contentions without basis in fact, as will be demonstrated at trial, they fail as a matter of law to constitute sufficient grounds to exclude Dr. Akintunde's testimony because they go to the weight, not admissibility, of Dr. Akintunde's opinion. *Kennedy*, 161 F.3d 1226, 1230-31 (*quoting McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) (finding

1  "[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular]
2  methodology, or lack of textual authority for his opinion, go to the weight, not the
3  admissibility, of his testimony")).

4  Although Dr. Akintunde testified that she did not recall specifically which medical
5  journals or studies she reviewed when making her assessment of Plaintiff's risk of an
6  adverse cardiological event, she testified that she had "reviewed [medical] literature
7  around aortic tissue for years" and that was "the way [she] practice[d] medicine."
8  Mussig Decl., ¶ 2, Ex. A (Akintunde Dep. Tr.) at 15:2-17.  She did recall that she had
9  reviewed a medical journal article cited by Plaintiff's cardiologist, which listed Plaintiff's
10 risk of an adverse occurrence at 2%, though she did not specifically recall whether she
11 had reviewed the article at the time she provided her assessment of Plaintiff's risk in
12 2019.  *Id.* at 85:13-86:4.  Plaintiff's suggestion that Dr. Akintunde's specialized
13 knowledge of cardiology, which she had developed over her years of practice through the
14 regular review of current and new medical journal articles, does not constitute "sufficient
15 facts or data" to form the basis of her opinion because she does not recall the specific
16 cardiology articles she referenced <u>more than five years ago</u> is insufficient as a matter of
17 law for a finding of inadmissibility because they go to the weight, <u>not admissibility</u>, of
18 Dr. Akintunde's opinion.  *Kennedy*, 161 F.3d 1226, 1230-31 (*quoting McCullock v. H.B.*
19 *Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995).

20 Plaintiff makes much of the fact that Dr. Akintunde did not speak to Plaintiff or to
21 Plaintiff's cardiologist in making her assessment of risk of an adverse cardiovascular
22 occurrence.  Notably, Plaintiff's cardiology expert, Dr. Marmureanu, likewise did not
23 speak with Plaintiff or Plaintiff's cardiologist at any time before rendering his opinion,
24 and he testified that it was ***not*** necessary to do so because he had data from medical
25 journals, Plaintiff's imaging reports, and medical records.  *See* Mussig Decl., ¶ 4, Ex. C
26 (Marmureanu Dep. Tr.) at 54:14-55:6.  Additionally, Dr. Adeyeye and Dr. Akintunde
27 agree that speaking with Plaintiff and his cardiologist was unnecessary when they already
28 had Plaintiff's imaging reports and medical records.  *See* Mussig Decl., ¶ 3, Ex. B

(Adeyeye Dep. Tr.) at 119:14-121:24; *id.* at ¶ 2, Ex. A (Akintunde Dep. Tr.) at 77:7-18. It is indisputable that Dr. Akintunde's opinion cannot be disqualified for this reason.

Finally, Plaintiff claims that Dr. Akintunde's opinion is not reliable because she did not consider whether Plaintiff's heart condition was stable in size over time or whether Plaintiff was taking preventative medication.[2] However, Dr. Akintunde and Dr. Adeyeye have testified that if any additional information were available to them (e.g., about Plaintiff's family, medical, or social history; his metabolic panel, his health habits, disorders, etc.), it would only have maintained or increased the assessed level of risk, not decreased it. *See* Mussig Decl., ¶ 3, Ex. B (Adeyeye Dep. Tr.) 123:20-125:15; *id.* at ¶ 2, Ex. A (Akintunde Dep. Tr.) 44:22-45:11.

As demonstrated above, Dr. Akintunde's opinions are soundly based on the medical and factual data available to her. This Court cannot select between competing expert evidence or make a determination as to the veracity of an expert's opinion at this stage. There is simply no basis to conclude that there is such a great analytical gap between the data provided and Dr. Akintunde's opinion that it would render Dr. Akintunde's opinion inadmissible. Accordingly, Plaintiff's Motion *in Limine* must be denied.

## III. CONCLUSION

For all the foregoing reasons, this Court should deny Plaintiff's Motion in Limine to exclude Dr. Akintunde's expert opinion instead permit Chevron U.S.A. to introduce such evidence as it sees fit.

[*signature appears on following page*]

---

[2] Dr. Akintunde was aware Plaintiff was taking anti-hypertensives (blood pressure medication), but indicated that it would be better if Plaintiff took beta blockers instead of or in addition to his medication. *See* Mussig Decl., ¶ 2, Ex. A (Akintunde Dep. Tr.) at 43:21-44:8.

Dated: July 15, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ Robert Mussig
TRACEY A. KENNEDY
ROBERT MUSSIG
H. SARAH FAN
Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation