DOLORES Y. LEAL (134176)
OLIVIA FLECHSIG (334880)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048-5217
(323) 653-6530
dleal@amglaw.com
oflechsig@amglaw.com


**Attorneys for Plaintiff MARK SNOOKAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO.: 2:23-cv-6302-HDV-AJR<br><br>**PLAINTIFF MARK SNOOKAL'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHEVRON USA, INC.'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OR TESTIMONY BY PLAINTIFF REGARDING HIS PAST OR FUTURE ECONOMIC DAMAGES**<br><br>[*Filed concurrently with the Declaration of Olivia Flechsig in Support of Plaintiff's Opposition to Defendant's Motion in Limine No. 1 and [Proposed] Order Denying Defendant's Motion in Limine No. 1]*<br><br>District Judge: Hon. Hernan D. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025<br><br>Hearing Date: July 24, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 5B |

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2        Defendant Chevron USA, Inc. ("Defendant" or "Chevron") asserts that "Pursuant to

3    Federal Rules of Evidence 402, 403, 701, and 702," the Court should exclude all testimony

4    regarding Plaintiff Mark Snookal's ("Plaintiff" or "Mr. Snookal") past and future economic

5    damages. (Defendant's Memorandum of Points and Authorities in Support of its Motion in

6    Limine No. 1 ("Defendant's Motion") at p. 2:3-4.) However, what Chevron mischaracterizes as

7    speculative and having "no basis in fact" is actually a factual dispute at the core of the trial of

8    Mr. Snookal's disability discrimination claim. (Id. at 2:10.) Mr. Snookal intends to prove via

9    fact witness testimony; the witness testimony of his economics expert, Dr. Charles Baum; and

10   various supporting documents that he intended to stay in a lucrative expatriate role for years to

11   come, but that Chevron's discrimination derailed this plan and cost him significant wages and

12   benefits. Regardless of what a finder of fact determines in terms of the wage losses, Dr. Baum's

13   economic damage report includes detailed tables with multiple scenarios to allow the finder of

14   fact to do its job in deciding the appropriate damages award.

15       It is up to the jury to decide the past and future damages awarded to Plaintiff, and

16   Plaintiff therefore respectfully submits that Defendant's Motion in Limine No. 2 be denied.

17   **I.    FACTUAL OVERVIEW**

18       Chevron is Plaintiff Mark Snookal's ("Plaintiff" or "Mr. Snookal") former employer. In

19   2019, Chevron offered Mr. Snookal a job position as a Reliability Engineering Manager in

20   Escravos, Nigeria. Chevron later rescinded the offer because Mr. Snookal disclosed his

21   disability (a dilated aortic root) during a medical suitability screening. Chevron claimed

22   rescinding the job was proper because Mr. Snookal posed a future risk to himself in the

23   hypothetical event that he suffered a serious cardiac event and required immediate medical

24   rescue from the job site. Chevron made the decision to deem Mr. Snookal "not fit for duty"

25   against the recommendations of Mr. Snookal's treating cardiologist and of the doctor Defendant

26   assigned to evaluate Mr. Snookal's medical clearance. Defendant also doubled down on its

27   decision despite the opinions of several other doctors who noted Mr. Snookal's negligible risk of

28   serious cardiac event. Accordingly, Mr. Snookal has brought a claim for disability

2

discrimination in violation of the California Fair Employment and Housing Act ("FEHA") for the recission of the job position.

Mr. Snookal claims various categories of damages, including compensatory damages for both past and future wage loss. Although Mr. Snookal ultimately continued working at Chevron for some time thereafter, the rescinded position in Escravos, Nigeria came with significantly higher compensation than what he has since earned without the position, in large part because the international assignment included a 55% location premium on top of Mr. Snookal's base pay. In addition, Mr. Snookal was expected to receive a promotion from salary grade 22 to salary grade 23 after approximately six months in the rescinded Escravos, Nigeria role. However, after the role was rescinded, he never received this promotion.

## II.    ARGUMENT

### A.  Mr. Snookal Suffered Past and Future Economic Damages

Chevron conclusively asserts that "[t]he evidence at trial will show that from September 2019 through the date of his resignation, plaintiff never experienced a decrease in his compensation or benefits" and that evidence as to his damages is therefore irrelevant and misleading. (Defendant's Motion at p. 3:5-7).

To the contrary, the extent of Mr. Snookal's past and future damages are a vigorously disputed. For example, during his deposition, Mr. Snookal testified that absent the discrimination he experienced, he intended to stay at Chevron for many years to come and would have planned to renew his assignment to a rotational expatriate assignment to continue to benefit from the location premium associated with those jobs. (Declaration of Olivia Flechsig in Support of Plaintiff's Opposition to Chevron's Motion in Limine No. 1 ("Flechsig Decl.") at ¶ 3, Exhibit A.) The Assignment Offer for the rescinded position was for an expected duration of 3-4 years. (Id. at ¶ 4, Exhibit B). In addition, regardless of whether he was ever promoted, had Chevron not rescinded the job in question, Mr. Snookal would have received a 55% location premium on top of his base salary. (See Dkt. 31 at ¶ 5.)

With respect to receiving a promotion to pay grade 23 after approximately six months in the position, Mr. Snookal has noted that when he interviewed for the position in question, he was

3

told by the hiring manager and by a member of Chevron's Human Resources that he would be eligible for a promotion after six months in the role. (See Dkt. 31 at ¶ 6.) He has also testified based upon his experience as a tenured Chevron employee – he has observed that when people are hired at a lower paygrade than what is listed on the job description, they are typically quickly promoted. (Flechsig Decl. at ¶ 3, Exhibit A and ¶ 7, Exhibit E). We can also refer to Chevron's company-wide payscale structure to reliably calculate what Mr. Snookal would have made if he had not been deprived of this promotion. (Id. at ¶ 8, Exhibit F.) Mr. Snookal's future damages therefore can be calculated with "reasonable certainty."

In any event, this is not a factual issue that can be determined via a motion in limine. (See e.g., the Court's Civil Trial Order at II(B): "Motions *in limine* should address specific issues (e.g., not 'to exclude all hearsay'). Motions *in limine* should not be disguised motions for summary adjudication of issues.")

**B.  Evidence of Mr. Snookal's Past and Future Wage Loss is Highly Probative**

To succeed on a claim for disability discrimination, the Plaintiff must show by a preponderance of the evidence that he was harmed as a result of the Defendant's disability discrimination. California Civil Jury Instructions 2540 (Disability Discrimination). Here, Mr. Snookal has claimed economic/wage loss as one such form of harm he has suffered. (Complaint at p. 15:28.) Once civil liability has been established, California law provides for both past and future compensation for damages. Cal. Civ. Cod. § 3283.

Evidence as to Mr. Snookal's economic damages is not only relevant to his claim, it is extremely probative and should not be excluded pursuant to Federal Rules of Evidence 402 or 403.

**C.  A Finder of Fact Can Easily and Efficiently Weigh the Evidence and Apply Same to Dr. Baum's Economic Report**

As further evidence that Mr. Snookal's claims for past and future damages is not going to confuse or mislead the jury, Dr. Baum created an economic damages reports which contains tables broken down by year. (Flechsig Decl. at ¶ 6, Exhibit D.) In other words, though the length of time is disputed, Dr. Baum's report is nonetheless designed to allow the jury to weigh the

4

evidence regarding how long Mr. Snookal would have continued to receive location premium compensation and can make a selection accordingly. (Id.) Dr. Baum's report also contains two different projections so that the jury can decide whether they believe Mr. Snookal would have received a promotion to pay grade 23 after approximately 6 months in the rescinded job position. (Flechsig Decl. at ¶ 5, Exhibit C and at ¶ 6, Exhibit D.) Lastly, consistent with the standards for expert reports, Dr. Baum referred to numerous documents before formulating his opinions, including Mr. Snookal's actual earnings as compared to his potential earnings absent Chevron's discrimination. (Id.)

**III.    CONCLUSION**

   For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in Limine No 1 to exclude testimony regarding Mr. Snookal's past and future economic damages, or at least reserve the ruling until trial.


DATED:  July 15, 2025      ALLRED, MAROKO & GOLDBERG


By: _____
   DOLORES Y. LEAL
   OLIVIA FLECHSIG
   Attorneys for Plaintiff,
   **MARK SNOOKAL**

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OR TESTIMONY OF ANY OPINION OR BELIEF BY PLAINTIFF REGARDING HIS PAST OR FUTURE ECONOMIC DAMAGES