DOLORES Y. LEAL (134176)
OLIVIA FLECHSIG (334880)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048-5217
(323) 653-6530
dleal@amglaw.com
oflechsig@amglaw.com

**Attorneys for Plaintiff MARK SNOOKAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 2:23-cv-6302-HDV-AJR<br><br>**PLAINTIFF MARK SNOOKAL'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CHEVRON USA, INC.'S MOTION IN LIMINE NO. 2 TO EXCLUDE ANY EXPERT TESTIMONY FROM DR. ALEXANDER MARMUREANU**<br><br>[*Filed concurrently with the Declaration of Olivia Flechsig in Support of Plaintiff's Opposition to Defendant's Motion in Limine No. 2 and [Proposed] Order Denying Defendant's Motion in Limine No. 2]*<br><br>District Judge: Hon. Hernan D. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025<br><br>Hearing Date: July 24, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 5B |

1

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE ANY EXPERT TESTIMONY FROM DR. ALEXANDER MARMUREANU

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Chevron USA, Inc. ("Defendant" or "Chevron") submits as its purported cardiology experts, two doctors who have limited to no experience treating patients with Plaintiff Mark Snookal's specific disability – a heart condition called a dilated aortic root. They admittedly failed to consider a number of factors which would mitigate Mr. Snookal's risk of a serious cardiac event and admitted that they did not consult any directly-applicable studies before rendering their opinions about Mr. Snookal's dilated aortic root. They also admitted that they did not review any job description for the Reliability Engineering Manager position in question before rendering their opinions, nor did they review any of Mr. Snookal's records other than one set of scans from one point in time.

Nonetheless, Chevron challenges the admissibility of expert testimony by Plaintiff's cardiology expert, Dr. Alexander Marmureanu ("Dr. Marmureanu") who has thirty-five years of experience as a cardiothoracic surgeon. (Declaration of Olivia Flechsig in Support of Plaintiffs' Opposition to Defendant's Motion in Limine No. 1 ("Flechsig Decl.") at ¶ 4, Exhibit B.) He has not only reviewed thousands of studies about Mr. Snookal's specific heart condition during his career, he also actively treats numerous patients with the condition. (Id. at ¶ 4, Exhibit B.) With respect to rendering opinions about Mr. Snookal specifically, he reviewed significantly more information than any of Chevron's purported experts before formulating his judgment and conducted additional review of the applicable medical research with respect to Mr. Snookal. (Id. at ¶ 4, Exhibit B.) Despite Chevron's assertions to the contrary, Dr. Marmureanu testified to having reviewed, among other items, a job description for the Reliability Engineering Manager Position in question and deposition testimony describing the remote location of Escravos, Nigeria and the medical capabilities there at the job location. (Id. at ¶ 4, Exhibit B.) He also documented having consulted this documentation in his expert report. (Id. at ¶ 5, Exhibit C.)

Dr. Marmureanu's expected testimony readily meets the standards imposed by Federal Rule of Evidence 702 and Federal Rule of Evidence 403. Plaintiff Mark Snookal ("Plaintiff" or "Mr. Snookal") therefore respectfully submits that it would be improper to exclude Dr. Marmureanu from providing his intended expert testimony, which bears directly upon a central

factual question: can Chevron apply a "direct threat" defense to its decision to rescind a job offer from Mr. Snookal because of his disability?

## I.     FACTUAL OVERVIEW

Chevron is Plaintiff Mark Snookal's ("Plaintiff" or "Mr. Snookal") former employer. After Chevron offered Mr. Snookal a job position as a Reliability Engineering Manager in Escravos, Nigeria, Chevron rescinded the offer because Mr. Snookal disclosed his disability (a dilated aortic root) during a medical suitability screening. Chevron claimed rescinding the job was proper because Mr. Snookal posed a future risk to himself in the hypothetical event that he suffered a serious cardiac event and required immediate medical rescue from the job site. Chevron made the decision to deem Mr. Snookal "not fit for duty" against the recommendations of Mr. Snookal's treating cardiologist and of the doctor Defendant assigned to evaluate Mr. Snookal's medical clearance. Defendant also doubled down on its decision despite the opinions of several other doctors who noted Mr. Snookal's negligible risk of serious cardiac event. Accordingly, Mr. Snookal has brought a claim for disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA") for the recission of the job position.

Whether Defendant can assert a "direct threat" affirmative defense for rescinding the position hinges upon whether Defendant applied "*reasonable medical judgment that relies on the most current medical knowledge or on the best available objective evidence*" considering the duration of the risk; the nature and severity of the potential risk; the likelihood that the potential harm would have occurred; how imminent the potential harm; and relevant information regarding Mr. Snookal's employment history. Cal. Code Regs., tit. 2, § 11067 *et seq*. (italicization added.)

## II.    ARGUMENT

### A. Dr. Marmureanu's Expected Expert Opinions Are Based Upon Sufficient Facts and Data and Reflect Reliable Application of Principles and Methods

Federal Rule of Evidence 702 provides in relevant part that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not

3

that:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Fed. R. Evid. 702.

Contrary to Chevron's assertions, which decontextualize and distort information from Dr. Marmureanu deposition testimony, Dr. Marmureanu's anticipated expert testimony readily meets these standards.

    Though Defendant does not take issue with Dr. Marmureanu's qualifications generally, it argues that Dr. Marmureanu should be excluded as an expert because he did not sufficiently research, or have sufficient facts relating to, Mr. Snookal's fitness for duty in Escravos, Nigeria specifically. First, Defendant misleadingly claims that Dr. Marmureanu "admit[ed] his opinion is not based on any research whatsoever as to the location of the Reliability Engineering Manager job in Escravos, Nigeria" or of the emergency medical facilities available in that remote location. (Defendant's Memorandum of Points and Authorities in Support of its Motion in Limine No. 2 at p. 2:10-11; 2:20-22.) As a preliminary matter, that is not an accurate representation of Dr. Marmureanu's deposition testimony. To the contrary, Dr. Marmureanu testified that he reviewed *numerous* documents from this case before formulating his opinion as to Mr. Snookal's fitness for duty and the potential risks associated with his disability. (Flechsig Decl. at ¶ 4, Exhibit B/2-6.) One such set of documents he reviewed was the deposition transcript of Chevron's purported cardiology expert, Dr. Ujomoti Akintunde. (Id. at ¶ 4, Exhibit B/12-14) Dr. Akintunde testified to having worked onsite in Escravos, Nigeria and testified to the remoteness of Escravos, Nigeria, and described the onsite medical capabilities, and Dr. Marmureanu reviewed this before formulating an opinion. (Id.)

    Moreover, Dr. Marmureanu opined that regardless of the remoteness of the location, and

regardless of what emergency medical care is (or is not) available in Escravos, his opinions stand because those external factors do not influence Mr. Snookal's negligible odds of suffering a cardiac event. They also do not influence Dr. Marmureanu's recommendations for preventative management of Mr. Snookal's condition, nor does it change his opinions regarding Mr. Snookal's ability to have safely completed the job duties of the Reliability Engineering Manager position. (Id. at ¶ 4, Exhibit B/10-13.) Because Mr. Snookal's risk of needing emergency rescue from the remote location was so low, it does not change his recommendation. In short, Dr. Marmureanu expressed that Mr. Snookal was "fit to work in any location in the world, including in that location. So I don't find it necessary to study the condition in that place. I believe he would be fit to work in Alaska, the base of the Himalaya, in Africa, anywhere else, South America, etc." (Id.) Dr. Marmureanu's assessment that Mr. Snookal was fit to work in any location, is based upon both his thirty-five years of experience treating patients with a dilated aortic root, and treating patients whose dilated aortic root has ruptured or dissected. (Id. at ¶ 4, Exhibit B/7-8.) It was also based upon his up to date knowledge of the medical literature, articles he specifically reviewed to formulate an opinion with respect to Mr. Snookal, and the relevant documents he reviewed from this case. (Id. at ¶ 6-8.)

Next, Defendant claims that Dr. Marmureanu testified that "he believes Plaintiff can do the job in Escravos, Nigeria because it is a 'desk job' but he has 'no idea where he got that information' and does not even know what a Reliability Engineering Manager job is.") (Defendant's Memorandum of Points and Authorities in Support of its Motion in Limine No. 2 at p. 2:11-14). Dr. Marmureanu testified about having reviewed case-specific documents, and he listed them in his expert report. However, Dr. Marmureanu could not during his deposition recall which of the specific documents contained the information about the Reliability Engineering Manager position being a "desk job." However, he specifically said he "read the assignment job at the time" he prepared his report. (Flechsig Decl. at ¶ 4, Exhibit B/12-14; see also Id. at Exhibit ¶ 5, Exhibit C in which Dr. Marmureanu lists the documents he consulted in preparing his report). Regardless, Dr. Marmureanu is correct in recalling that the Reliability Engineering Manager position is a desk-based job, and the Physical Working Requirements form Chevron

5

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE ANY EXPERT TESTIMONY FROM DR. ALEXANDER MARMUREANU

prepared with respect to that position reflects that the role was "office based" and had no strenuous components whatsoever. (Id. at ¶ 3, Exhibit 5.) Chevron's claims about Dr. Marmureanu misapplying the facts are simply untrue.

### B. Dr. Marmureanu's Expert Testimony is Highly Probative, and Any Negligible Risk of Prejudice or Cumulativeness Does Not Substantially Outweigh the Value of His Testimony

Next, Defendant argues that Dr. Marmureanu's expert testimony should be excluded pursuant to Federal Rule of Evidence 403. Rule 403 provides in relevant part that, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. That high standard is not met here.

Parties agree that Defendant must have applied "a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence" in order to succeed on its direct threat defense. (Defendant's Motion in Limine No. 1 at p. 6:3-5 quoting Cal. Code Regs. Tit. 2, § 11067(e)).  However, because Dr. Marmureanu was not involved in Chevron's decision at the time it was made in 2019, Chevron asserts that Dr. Marmureanu testimony will risk confusing the jury. If Chevron's logic is correct, this would seemingly preclude all medical experts retained by Plaintiff from testifying in "direct threat" defense cases, despite the central importance of the application of a reasonable medical judgment. Further, Chevron offers no evidence that Dr. Marmureanu's opinions are not an accurate reflection of "the most current medical knowledge and/or on the best available objective evidence." To the contrary, Dr. Marmureanu reviewed Mr. Snookal's medical records through the time Chevron rendered its opinion regarding Mr. Snookal's purported risks. (Flechsig Decl. at ¶ 5, Exhibit C/1-7.)

Next, Defendant argues that Dr. Marmureanu's testimony would be "unnecessarily cumulative" and a potential waste of time because "there has never been a dispute that the risk is low." (Defendant's Motion in Limine No. 1 at p. 7:24-27).  However, Chevron's purported

cardiology experts, Drs. Adeyeye and Akintunde, are not sufficiently qualified to opine about Mr. Snookal's margins of risk for serious cardiac event. (See generally, Plaintiff's Motions in Limine No. 1 – Daubert Motion to Exclude Purported Expert Testimony of Dr. Adeyeye and No. 2 – Daubert Motion to Exclude Purported Expert Testimony of Dr. Akintunde). Further, it is not sufficient that all of the doctors agreed Mr. Snookal is "low risk" generally. Chevron asserts that Mr. Snookal's risk of serious cardiac event was so high enough that it posed a "substantial and imminent risk" of death to Mr. Snookal. Dr. Marmureanu disagrees and explains that Mr. Snookal's risk of serious cardiac event while in Escravos was so low, around 0.5% per annum, that he would clear Mr. Snookal for duty in *any location*. (Flechsig Decl. at ¶ 5, Exhibit C/1-7.) This dispute is at the core of Mr. Snookal's disability discrimination claim, and the central relevance far outweighs any risk of cumulativeness or confusion to the jury. (Flechsig Decl. at ¶ 4, Exhibit B/9-11.)

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in Limine to exclude the expert testimony of Dr. Marmureanu, or in the alternative, at least provide the opportunity for a hearing pursuant to *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993) before ruling on the issue.

DATED: July 15, 2025                ALLRED, MAROKO & GOLDBERG

By: /s/ Olivia Flechsig
   DOLORES Y. LEAL
   OLIVIA FLECHSIG
   Attorneys for Plaintiff,
   **MARK SNOOKAL**