UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | 2:23-cv-06302-HDV-AJR | Date | July 28, 2025 |
|---|---|---|---|
| Title | *Mark Snookal v. Chevron USA, Inc, et al* | | |

| Present: The Honorable | Hernán D. Vera, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **ORDER RE: MOTIONS *IN LIMINE* [DKT. NOS. 73, 76–78, 81–82]**

Plaintiff Mark Snookal ("Plaintiff") brings this action against Defendant Chevron USA, Inc. ("Chevron" or "Defendant") alleging that Chevron discriminated against him on the basis of his disability. Complaint [Dkt. No. 1]. Plaintiff, who has a dilated aortic root, was offered a position as a Reliability Engineering Manager ("REM"), based in Escravos, Nigeria, but was later deemed unfit for the position due to his heart condition.

Before the Court are six motions *in limine* ("MILs"): four MILs filed by Plaintiff [Dkt. Nos. 73, 76, 77, 78], and two motions filed by Defendant [Dkt. Nos. 81, 82]. On July 23, 2025, the Court heard oral argument on the MILs and took them under submission. Having considered the briefing, supporting declarations, and oral argument, the Court rules as follows.

I.   **PLAINTIFF'S MOTIONS *IN LIMINE***

   A.   **Plaintiff's MIL No. 1 and No. 2**

Plaintiff seeks to exclude the expert opinion testimony[1] of Defendant's experts, Dr. Victor Adeyeye and Dr. Ujomoti Akintunde. Plaintiff contends that Dr. Adeyeye and Dr. Akintunde are not qualified experts pursuant to Federal Rule of Evidence 702—specifically asserting that they

---

[1] Plaintiff does not dispute that Dr. Adeyeye and Dr. Akintunde are fact witnesses, as they took part in the decision to deem Plaintiff not fit for duty. Plaintiff's MIL No. 1 at 4; Plaintiff's MIL No. 2 at 4.

lack the specialized knowledge required to assist the trier of fact, fail to base their opinions on sufficient facts or data, and proffer testimony that is not the product of reliable principles and methods.  Plaintiff's MIL No. 1 at 4–8 [Dkt. Nos. 73, 75]; Plaintiff's MIL No. 2 at 4–6 [Dkt. No. 76].

Federal Rule of Evidence 702 permits testimony of "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" if the expert's testimony: (1) will assist the jury; (2) "is based on sufficient facts or data;" (3) "is the product of reliable principles and methods;" and (4) "reflects a reliable application of the principles and methods to the facts of the case."  Expert testimony is relevant "if the knowledge underlying it has a 'valid . . . connection to the pertinent inquiry'" and is reliable "if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'"  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (emphasis in original) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).  Trial courts are entitled to "broad discretion" when exercising their gatekeeping function to exclude irrelevant or unreliable expert testimony.  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

The Court finds that both Dr. Adeyeye and Dr. Akintunde are qualified experts.  Both Dr. Adeyeye and Dr. Akintunde are board-certified cardiologists.  Declaration of Olivia Flechsig in Support of Plaintiff's MIL No. 1 ¶ 3 [Dkt. No. 75-1]; Declaration of Olivia Flechsig in Support of Plaintiff's MIL No. 2 ¶ 3 [Dkt. No. 76-1].  *See also* Declaration of Robert Mussig in Support of Defendant's Opposition to Plaintiff's MIL No. 1 ("Mussig Decl.") ¶ 2 [Dkt. No. 88-1], Ex. A at 15:3–16:24 [Dkt. No. 88-2] (Dr. Adeyeye averring that he consults on "acute emergency management for cardiovascular . . . emergencies").  Despite their lack of particularized experience with Plaintiff's condition, Dr. Adeyeye's and Dr. Akintunde's testimony about Plaintiff's risk of rupture or dissection is well "within the reasonable confines of [their] subject area."  *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969–70 (10th Cir. 2001)).

Further, their testimony is both relevant and reliable.  Both Dr. Adeyeye and Dr. Akintunde formed their opinions as to Plaintiff's risk of rupture or dissection from sufficient facts and data, including their review of Plaintiff's medical records, peer-reviewed studies and recognized clinical guidelines, as well as their own experience treating cardiovascular conditions.  For experts offering scientific testimony, "the relevant reliability concerns may focus upon personal knowledge or experience."  *Sandoval-Mendoza*, 472 F.3d at 655 (citing *Kumho Tire*, 526 U.S. at 150); *see Kumho Tire*, 526 U.S. at 156 (" . . . no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

Plaintiff's objections to Dr. Adeyeye's and Dr. Akintunde's experience with Plaintiff's specific condition do not warrant exclusion.  Plaintiff contends that neither Dr. Adeyeye nor Dr. Akintunde have ever treated adverse effects from dilated aortic root.  Declaration of Olivia Flechsig in Support of Plaintiff's MIL No. 1 ¶ 5 [Dkt. No. 75-1], Ex. 1 at 19:10–22:14 [Dkt. No. 75-2] (Dr. Adeyeye noting that he performed only an autopsy on a patient with a ruptured thoracic aneurysm because they died before they arrived in his care); Declaration of Olivia Flechsig in Support of Plaintiff's MIL No. 2 ¶ 4 [Dkt. No. 76-1], Ex. 1 at 19:16–20:8 [Dkt. No. 76-2] (noting that she had treated "a couple" of patients with a dilated aortic root).  Plaintiff

further objects that Dr. Adeyeye and Dr. Akintunde failed to review all of Plaintiff's medical records or sufficient research on the risk of an adverse cardiac event from a dilated aortic root. Plaintiff's MIL No. 1 at 6; Plaintiff's MIL No. 2 at 6. These objections pertain to weight and credibility, not admissibility, which are issues properly reserved for the trier of fact and may be explored through cross-examination. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) (citing *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.").

Plaintiff's MIL No. 1 and MIL No. 2 are denied.

### B. Plaintiff's MIL No. 3

Plaintiff seeks to exclude Defendant's references to third party medical information, contending that such information is not relevant and that *arguendo*, any probative value is substantially outweighed by the risk of unfair prejudice in contravention of Federal Rule of Evidence 403. Plaintiff's MIL No. 3 [Dkt. No. 77].[2]

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "To be 'relevant,' evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. All that is required is a 'tendency' to establish the fact at issue . . . [which] may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (citation omitted). Admissible evidence may nonetheless be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Rule 403 "sets a high bar for exclusion," such that its application must be "cautious and sparing[.]" *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024).

Where a plaintiff makes a claim of emotional distress, he "opens the door to evidence of other probable causes of [his] distress." *Peck v. Cnty. of Orange*, No. CV-19-4654-DSF-AFMX, 2023 WL 11195794, at *3 (C.D. Cal. May 22, 2023) (quoting *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CV-12-00399-TUC-CKJ, 2015 WL 1111147, at *2 (D. Ariz. June 17, 2015)). However, evidence that is "too remote in time from the date of the incident may be irrelevant." *Id*.

Applying this standard, and balancing the competing interests, the Court reaches the following compromise. Insofar as Plaintiff's medical records discuss third party medical information, including his family history for mental health conditions, the Court will permit their introduction only if Plaintiff has referred to them (either in writing or in oral communications

---

[2] Plaintiff concedes that he does not seek to exclude any evidence relating to his son. Plaintiff's MIL No. 3 at 4, n.1.

with third parties, including therapists) within the past five years. *See* Declaration of Robert Mussig in Support of Defendant's Opposition to Plaintiff's MIL No. 3 ¶ 2 [Dkt. No. 90-1] (noting Plaintiff's family history). The probative value of older third-party medical history is substantially outweighed by the risk of prejudice.

Plaintiff's MIL No. 3 is granted in part and denied in part.

### C. Plaintiff's MIL No. 4

Finally, Plaintiff seeks to exclude Plaintiff's medical history that post-dates Defendant's September 2019 decision to rescind the REM offer. Plaintiff contends that such evidence is not relevant and that even if it were, any probative value is substantially outweighed by the risk of unfair prejudice in contravention of Federal Rule of Evidence 403. Plaintiff's MIL No. 4 at 5–7 [Dkt. No. 78].

Defendant contends that Plaintiff's cardiac medical history after September 2019 is relevant to Plaintiff's claim for emotional distress damages, as alternative causes of his emotional distress. Defendant's Opposition to Plaintiff's MIL No. 4 at 2–3 [Dkt. No. 91]. Applying the Rule 401 and 403 standards outlined above, *see* Section I.B., *supra*, the Court agrees. *Peck*, 2023 WL 11195794, at *3 (quoting *Barten*, 2015 WL 1111147, at *2) (noting that a plaintiff's claim of emotional distress "opens the door to evidence of other probable causes of [his] distress"). Plaintiff's subsequent procedures, along with his ongoing heart condition, are potential alternative causes of his emotional distress.

Plaintiff contends that the jury may confuse evidence of his emotional distress as evidence on the merits of his disability discrimination claim. Plaintiff's MIL No. 4 at 6–7. But this concern can be addressed through a limiting instruction and through closing argument. *See United States Equal Employment Opportunity Commission v. Placer ARC*, 147 F. Supp. 3d 1053, 1061 (E.D. Cal. 2015) (citing *United States v. Hymas*, 605 Fed. App'x. 622, 623 (9th Cir. 2015) ("[A]ny unfair prejudice caused by jury confusion could be mitigated through cross examination and closing argument.")).

Plaintiff's MIL No. 4 is denied.

## II. DEFENDANT'S MOTIONS *IN LIMINE*

### A. Defendant's MIL No. 1

Defendant moves to exclude two forms of evidence as to Plaintiff's past and future economic damages. First, Defendant contends that Plaintiff's "subjective opinions and beliefs" about his earning potential constitute improper lay opinion and are unduly prejudicial. Defendant's MIL No. 1 at 2, 4–8 [Dkt. No. 81-1]; Fed. R. Evid. 401–03, 701–702. Second, Defendant seeks to exclude testimony from other witnesses—namely Plaintiff's economics expert, Charles L. Baum—estimating loss of past and future earnings based on Plaintiff's testimony. Defendant's MIL No. 1 at 7.

Rule 701 permits a lay witness to testify to any matter within the witness's personal knowledge, so long as it is "rationally based on the witness's perception," helpful to understanding the testimony or to determining a fact at issue, and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.  Lay testimony "results from a process of reasoning familiar in everyday life," while expert testimony "results from a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701 advisory committee note (citation omitted).  Admissible evidence may nonetheless be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403.  Rule 403 "sets a high bar for exclusion," such that its application must be "cautious and sparing[.]" *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024).

Plaintiff—who had worked at Chevron for over a decade by the time he applied for the REM position—seeks to testify that he understood that the position was for an expected term of three to four years and would have included a 55 percent location premium in addition to his base salary.  Declaration of Olivia Flechsig in Support of Plaintiff's Opposition to Chevron's Motion in Limine No. 1 ("Flechsig Decl.") ¶ 4 [Dkt. No. 92-1], Ex. B at 1 [Dkt. No. 92-3]; Declaration of Mark Snookal in Opposition to Summary Judgment ¶ 5 [Dkt. No. 31].  He further intends to testify that when he interviewed for the position, he was told by the hiring manager that he would be eligible for a pay increase after six months and that he understood, based on Chevron's policies, that employees in his circumstance are typically moved up to a higher pay grade.  Flechsig Decl. ¶ 3, Ex. A at 265:16–266:5 [Dkt. No. 92-2] (testifying that he "might have been" moved up to the next pay grade).  Finally, Plaintiff intends to testify that, absent the alleged discrimination he faced, he intended to stay at Chevron for many years to come and to remain in his expatriate assignment for eleven years to use the premium to fund his son's education.  *Id.* at 271:8–24 (acknowledging that there was no guarantee that he would have received the Escravos assignment again).  Such testimony is within Plaintiff's knowledge and requires no specialized knowledge.  *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 949 (N.D. Cal. 2016) ("[W]hen a witness testifies to institutional operations and practices based on personal knowledge that the witness has accrued over the course of several years of employment, the witness usually is providing lay testimony not subject to the rule governing admission of expert testimony.").  Such testimony is relevant and not unduly prejudicial to Defendant.

Defendant also seeks to exclude Dr. Baum's calculations of Plaintiff's lost earnings based on Plaintiff's testimony.  Dr. Baum models Plaintiff's lost earnings based on two potential scenarios: (1) if he received the location premium but *not* the pay increase and (2) if he received the location premium *and* the promotion to the next pay grade.[3]  Flechsig Decl. ¶ 6, Ex. D ¶¶ 28, 46, tbls. 1–2 [Dkt. No. 92-5].  Dr. Baum also lists the location premium separately.  *Id.* at tbls. 1–2.  To the extent that the jury is unconvinced that Plaintiff would have received the pay increase or that he would have remained in the Escravos posting, they may simply adjust their damages award accordingly.  *Dykzeul v. Charter Commc'ns, Inc.*, No. CV-18-5826-DSF-GJSX, 2021 WL

---

[3] Defendant does not appear to challenge Dr. Baum's qualifications or the reliability of his methods.  To this extent that it does, the Court finds that Dr. Baum's analysis is relevant and reliable.

4522545, at *6, 8 (C.D. Cal. Feb. 3, 2021) (permitting an expert report which accounted for three scenarios based on Plaintiff's "stated career 'goals and objectives,'" reasoning that "[t]o the extent the jury rejects [the assumption that Plaintiff would have remained at the company for nine years], it can simply deduct the extra years of earnings").

Defendant's MIL No. 1 is denied.

### B.    Defendant's MIL No. 2

Finally, Defendant seeks to exclude the testimony of Plaintiff's expert, Dr. Alexander Marmureanu. Defendant contends that Dr. Marmureanu's testimony that Plaintiff was fit to work in the REM position is not based on reliable data, that it will not aid the jury, and that his opinion is cumulative. Defendant's MIL No. 2 at 5–8 [Dkt. No. 82-1]; Fed. R. of Evid. 403, 702.

Based on the Rule 702 standard outlined above, *see* Section I.A., *supra*, the Court finds that Dr. Marmureanu's testimony about Plaintiff's condition is both relevant and reliable. Dr. Marmureanu's expert testimony is based on his experience as a cardiothoracic surgeon who has treated numerous patients with Plaintiff's condition, as well as his review of thousands of studies about aortic aneurysms and dissections. Declaration of Olivia Flechsig in Support of Plaintiffs' Opposition to Defendant's MIL No. 2 ("Flechsig Decl.") ¶ 4 [Dkt. No. 93-1], Ex. B at 11:6–15:15 [Dkt. No. 93-3]. Dr. Marmureanu also reviewed documents discussing access to medical resources in Escravos, including Dr. Akintunde's deposition testimony detailing the onsite medical capabilities. *Id.* at 8:23–10:25.

Dr. Marmureanu's opinion that Plaintiff was fit to work in Escravos is based on his belief that Plaintiff's condition does not prevent him from working in a desk job, anywhere in the world. Flechsig Decl. ¶ 5, Ex. C at 8 [Dkt. No. 93-4]. To the extent that Dr. Marmureanu lacks expertise as to conditions in Escravos, this limitation pertains to the weight and credibility of his opinion, not its admissibility. *See Hangarter*, 373 F.3d at 1017 n.14 (citing *Children's Broad. Corp.*, 357 F.3d at 865). Nor is Dr. Marmureanu's testimony cumulative of Chevron's experts, as Dr. Marmureanu has greater experience treating patients with Plaintiff's condition. Flechsig Decl. ¶ 4, Ex. B at 30:14–19.

Defendant also objects that Dr. Marmureanu's opinion was made after the fact, more than five years after Defendant's determination that Plaintiff was not fit for duty. Defendant's MIL No. 2 at 6 (citing Cal. Code Regs., tit. 2, § 11067(e)). But Defendant makes no showing that "the body of medical knowledge on which [Dr. Marmureanu's opinion is] based was not available at the time" that Chevron made its assessment. *Echazabal v. Chevron USA, Inc.*, 336 F.3d 1023, 1033 (9th Cir. 2003) (finding that, at the summary judgment stage, plaintiffs' expert opinions produced after the fact were relevant to a direct threat analysis because they were relevant to the "state of medical knowledge" at the time of Chevron's decision). At the very least, Dr. Marmureanu's opinion is relevant to assessing the best available objective evidence in 2019.

At oral argument, Defendant maintained that while Dr. Marmureanu may be qualified to testify as to Plaintiff's risk of aortic dissection or rupture, he is *not* qualified to testify as to

whether Chevron found that level of risk acceptable. But that is not the question before the jury. Dr. Marmureanu's opinion bears on a key question in the case: whether Plaintiff's performance in the REM position would in fact present an "imminent and substantial degree of risk" to himself or others. *See* Cal. Code Regs., tit. 2, § 11067(b); *id.* § 11067(e)(1)–(5) (directing the finder of fact to consider, among other factors, the duration of Plaintiff's risk, the nature and severity of the potential harm, the likelihood that potential harm will occur, and the imminence of the potential harm). Dr. Marmureanu's testimony will aid the jury in making this determination. Insofar as Dr. Marmureanu strays beyond the scope of his expertise, the Court may address that concern through objections and limiting instructions.

Defendant's MIL No. 2 is therefore denied.

**IT IS SO ORDERED.**