| | |
|---|---|
| 1 | DOLORES Y. LEAL (134176) |
| 2 | OLIVIA FLECHSIG (334880) |
|   | ALLRED, MAROKO & GOLDBERG |
| 3 | 6300 Wilshire Blvd. Suite 1500 |
|   | Los Angeles, CA 90048-5217 |
| 4 | (323) 653-6530 |
|   | dleal@amglaw.com |
| 5 | oflechsig@amglaw.com |

Attorneys for **Plaintiff MARK SNOOKAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual, | CASE NO.: 2:23-cv-6302-HDV-AJR |
| Plaintiff, | **PLAINTIFF MARK SNOOKAL'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS** |
| vs. | [*Filed concurrently with Tables 1 and 2 to Plaintiff's Motion for Attorneys' Fees and Costs, Declarations of Dolores Y. Leal, Olivia J. Flechsig, Renee Mochkatel, Karis Stephen, Sabrina Medler, J. Bernard Alexander, Lisa Bloom, Tamara Freeze, and Mark Snookal; and [Proposed] Order Granting Plaintiff's Motion for Attorney's Fees and Costs*] |
| CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive, | |
| Defendants. | District Judge: Hon. Hernan D. Vera |
| | Magistrate Judge: Hon. A. Joel Richlin |
| | Action Filed: August 3, 2023 |
| | Trial Date: August 19, 2025 |
| | Hearing Date: November 13, 2025 |
| | Hearing Time: 10:00 a.m. |
| | Courtroom: 5B |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 13, 2025 at 10:00 a.m., or as soon as possible thereafter as the matter may be heard, in Courtroom 5b in the above-referenced Court, located at 350 W. First Street, Los Angeles, CA 90012, before the Honorable Hernan D. Vera, Plaintiff Mark Snookal will, and does hereby, move the Court for an Order for Attorneys' Fees and Costs pursuant to Cal. Gov't Code 12965, Local Rules 54-7 and 6-1, and the Court's Civil Staning Order Section F. This motion is based upon the following grounds: Plaintiff Mark Snookal, as the prevailing party, is entitled to an award of attorney fees and costs pursuant to the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12965, et seq.

This Motion is based upon this Notice, the Memorandum of Points and Authorities in Support Thereof, the declarations of the attorneys who worked on this case (Dolores Leal, Olivia Flechsig, Renee Mochkatel, Karis Stephen, and Sabrina Medler) and respective Exhibits thereto; the supporting declarations of experienced Southern California employment lawyers (J. Bernard Alexander III, Lisa Bloom, and Tamara Freeze) and respective Exhibits thereto; the declaration of Plaintiff Mark Snookal; as well as all pleadings, papers, and documents filed in the above-entitled action, and oral and/or documentary evidence as may be presented at any hearing on said Motion.

Respectfully Submitted,

DATED: September 17, 2025            ALLRED, MAROKO & GOLDBERG

By: _____
DOLORES Y. LEAL
OLIVIA FLECHSIG
Attorneys for Plaintiff,
**MARK SNOOKAL**


# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

I.  FACTUAL OVERVIEW ................................................................................................... 2

    A. Chevron Failed to Settle the Case Despite Ample Opportunity to Do So .................... 2

    B. Chevron Created Extensive Superfluous Work for Plaintiff's Counsel with Its Dilatory Tactics in Discovery ........................................................................................ 2

II. ARGUMENT ..................................................................................................................... 3

    A. Mr. Snookal is Entitled to Full Attorneys' Fees ............................................................ 3

    B. The Lodestar Method is Applied to Statutory Fee Cases .............................................. 4

        i.   Counsel's Hourly Rates Are Reasonable .............................................................. 4

        ii  The Hours Spent Litigating this case Were Reasonable ........................................ 7

    C. A Multiplier to the Lodestar Should be Awarded to Account for the Case-Specific Circumstances ................................................................................................................ 9

III. PLAINTIFF IS ENTITLED TO FULL RECOVERY OF HIS COSTS ........................... 13

IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Beasley v. Wells Fargo Bank*,
  235 Cal. App. 3d 1407 (1991) ...............................................................................12

*Beaty v. BET Holdings, Inc.*,
  222 F.3d 607 (9th Cir. 2000) ...............................................................................8, 9

*Bernardi v. Yeutter*,
  951 F.2d 971 (9th Cir. 1991) ..................................................................................13

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................................3

*Child.'s Hosp. & Med. Center v. Bontá*,
  97 Cal. App. 4th 740 (2002) ............................................................................5, 6, 7

*Citizens Against Rent Control v. City of Berkeley*,
  181 Cal. App. 3d 213 (1986) ....................................................................................7

*City of Oakland v. Oakland Raiders*,
  203 Cal. App. 3d 78 (1988) ...............................................................................10, 11

*Coal. for L.A. Cnty. Planning Etc. Interest v. Bd. of Supervisors*,
  76 Cal. App. 3d 241 (1977) ....................................................................................10

*Cuff v. Trans States Holdings, Inc.*,
  768 F.3d 605 (7th Cir. 2014) ....................................................................................9

*Davis v. City of S.F.*,
  976 F.2d 1536 (9th Cir. 1992) ..................................................................................7

*Downey Cares v. Downey Cmty. Dev. Com.*,
  196 Cal. App. 3d 983 (1987) ..................................................................................11

*Fadhl v. San Francisco*,
  859 F.2d 649 (9th Cir. 1988) ..................................................................................13

*Feminist Women's Health Center v. Blythe*,
  32 Cal. App. 4th 1641 (1995) ...................................................................................9

*Flannery v. Prentice*,
  26 Cal. 4th 572 (2001) ..............................................................................................3

*Greene v. Dillingham Constr. N.A.*,
  101 Cal. App. 4th 418 (2002) ...................................................................................4

*Hadley v. Krepel*,
  167 Cal. App. 3d 677 (1985) ....................................................................................8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...................................................................................................7

*Horsford v. Bd. of Trs. of Cal. State Univ.*,
  132 Cal. App. 4th 359 (2005) .............................................................3, 4, 7, 8, 10, 12

*In re Vitamin Cases*,
  2004 WL 5137597 (Cal. Super. Ct. Apr. 12, 2004) ...............................................10

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ......................................................................3, 4, 10, 11, 13

*Linsley v. Twentieth Century Fox Film Corp.*,
  75 Cal. App. 4th 762 (1999) .....................................................................................3

*Moore v. Jas. H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ....................................................................................8

*N.Y. Gaslight Club v. Carey*,
  447 U.S. 54 (1980) ...................................................................................................7

*Press v. Lucky Stores, Inc.*,
  34 Cal. 3d 311 (1983) ........................................................................................10, 11

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) .........................................................................4, 7, 10, 11, 12

*Serrano v. Unruh*,
  32 Cal. 3d 640 (1982) ...........................................................................................4, 7

*Steele v. Jensen Instrument Co.*,
  59 Cal. App. 4th 326 (1997) .....................................................................................3

*Stokus v. Marsh*,
  217 Cal. App. 3d 647 (1990) ....................................................................................7

*Sundance v. Mun. Court*,
  192 Cal. App. 3d 268 (1987) ....................................................................................4

*Syers Props. III, Inc. v. Rankin*,
  226 Cal. App. 4th 691 (2014) ...................................................................................5

*Wallace v. Consumers Coop. of Berkeley, Inc.*,
  170 Cal. App. 3d 836 (1985) ..................................................................................12

*Wershba v. Apple Comput., Inc.*,
  91 Cal. App. 4th 224 (2001) ...................................................................................10

**Statutes**

Cal. Gov't Code § 12965 .................................................................................1, 2, 3, 13

**Rules**

Fed. R. Civ. P. 68 ................................................................................................2, 12

**Other**

Cal. Code Regs., tit. 2, § 11067 ...............................................................................1

# MEMORANDUM OF POINTS AND AUTHORITIES

On September 3, 2025, the Court entered judgment in Plaintiff Mark Snookal's favor against Defendant Chevron USA, Inc. for $4 million in Mr. Snookal's California Fair Employment and Housing Act ("FEHA") disability discrimination case. This is an excellent result for Mr. Snookal, and this case may be the first time a Plaintiff has *ever* prevailed in a case in which, as here, the Defendant asserted a direct threat defense to disability discrimination pursuant to Cal. Code Regs., tit. 2, § 11067.

Prior to trial, Defendant Chevron USA, Inc. ("Defendant" or "Chevron") failed to settle this case during two prior mediations and only made an Offer of Judgment after the deadline to do so. The verdict exceeded this offer by over five times, not including any award of attorneys' fees and costs. In addition, Defendant's dilatory tactics during discovery resulted in significant additional work for Mr. Snookal's counsel, including opposing two of Chevron's Motions for Summary Judgment, two *Ex Parte* Applications concerning Chevron's unreasonable discovery delays, and four Informal Discovery Conferences to obtain necessary discovery.

A prevailing Plaintiff in a FEHA case is entitled to attorneys fees and reimbursement of reasonable costs. Here, Mr. Snookal prevailed on his FEHA cause of action for disability discrimination, the FEHA requires recovery of reasonable attorneys fees and costs for the vindication of his civil employment rights. Cal. Gov. Code § 12965(c)(6). The California legislature specifically recognizes the importance of encouraging committed, skilled Plaintiff-side attorneys to take cases that result in enforcement of the state's civil rights statutes, including those protected by the FEHA.

Plaintiff's counsel was required to expend over thirteen-hundred (1300) hours of attorney time, to say nothing of the additional investment of time made by legal support staff. Plaintiff's counsel also advanced $155,277.39 in actual costs in order to seek justice for Mr. Snookal, which efforts resulted in a landmark verdict of $4 million. Plaintiff's counsel took this case on a contingency fee basis, and while litigating this case for well over two years, Plaintiff's counsel has not received payment.

The lodestar in this matter is $1,124,050.50. Plaintiff seeks a multiplier of 2.0 because of

the novelty and complexity of the litigation; the skill displayed in presenting the case; the successful result obtained against an exceptionally well-resourced Defendant; the contingent nature of the attorneys fees; and preclusion from other work due to the litigation. The total attorneys' fees sought therefore total $2,248,101.00 after the requested 2.0 multiplier. Plaintiff also seeks litigation costs in the amount of $155,277.39.

I.     **FACTUAL OVERVIEW**

        **A.   Chevron Failed to Settle the Case Despite Ample Opportunity to Do So**

Mr. Snookal repeatedly engaged in good-faith efforts to settle this case prior to trial. First, Mr. Snookal participated in an early mediation process with the California Department of Fair Employment and Housing ("DFEH") in or about 2022 prior to filing the instant lawsuit against Chevron. (Snookal Decl. at ¶8.) In June of 2024, Parties participated in a private mediation with Angela Reddock-Wright, a highly respected mediator, to whom both parties agreed. (Flechsig Decl. at ¶32.) Chevron still did not settle the case, even after Ms. Reddock-Wright continued efforts to settle the case up until the eve of trial. (Id.) Most recently, on August 6, 2025, Chevron made an Offer of Judgment pursuant to FRCP 68 in the Amount of $750,000 (inclusive of attorneys' fees and costs). (Id. at ¶33, Exh. A.) In addition to not being a sufficient offer, Chevron's Offer or Judgment was made only thirteen days before the August 19, 2025 trial start date and was therefore, a day too late under Rule 68's fourteen-day deadline. (Id.)

        **B.   Chevron Created Extensive Superfluous Work for Plaintiff's Counsel with Its Dilatory Tactics in Discovery**

In addition to squandering the opportunities to settle, Defendant engaged in egregious discovery delay tactics, resulting in avoidable extra work for Plaintiff's counsel and often forcing Plaintiff's counsel to work under crisis conditions, precluding other work during these intervals. (Flechsig Decl. at ¶33-35.)

This case involves a sophisticated Defendant which made repeated choices to aggressively litigate in hopes of overwhelming a comparatively financially weak Plaintiff. (See Id. at ¶31-35; Snookal Decl. at ¶8.) Not only is Plaintiff entitled to recover the full attorneys' fees and costs incurred, but the incursion of these fees were necessitated by Defendant's

aggressive tactics in placing impediments in the path of Plaintiff's success during discovery. Even so, Plaintiff obtained a $4 million judgment against Defendant via an unanimous, eight-person jury verdict.

This motion is made following the meet and confer efforts of counsel pursuant to L.R. 7-3 which took place via videoconference or about September 10, 2025 and via email correspondence thereafter. (Flechsig Decl. at ¶ 19, Exh. A.)

## II. ARGUMENT

### A. Mr. Snookal is Entitled to Full Attorneys' Fees

The prevailing Plaintiff in a FEHA action is entitled to attorneys' fees and costs pursuant to Government Code § 12965(c)(6). See also, *Steele v. Jensen Instrument Co.*, 59 CalApp.4th 326, 331 (1997).

California's FEHA fee statutes are intended to assure that attorneys are available to take on and pursue private actions to enforce the important public policies embodied in the FEHA. *Flannery v. Prentice*, 26 Cal.4th 572, 582-3 (2001). The statutes are intended to ensure that an attorney who takes such a case will receive full compensation for all time reasonably spent. *Ketchum v. Moses* 24 Cal. 4th 1122, 1132 (2001); *Horsford v. Board of Trustees,* 132 Cal.App.4th 359, 394 (2005).

In a FEHA case, "'a prevailing plaintiff ... "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust' [citation omitted]." *Linsley v. Twentieth Century Fox Films Corp.*, 75 Cal.App.4th 762, 765-6 (1999). No such special circumstances exist here.

The attorney fee award "should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum*, 24 Cal.4th at 1133; *see also Horsford*, 132 Cal.App.4th at 395 (goal of lodestar method is to "fully compensate counsel for the prevailing party for services reasonably provided..."). The goal is to attract skilled lawyers to enforce the fundamental public policies behind these statutes. *Flannery,* 26 Cal.4th at 582-583. To accomplish this goal, fee awards must make civil rights cases as financially attractive as "other types of equally complex... litigation." *Blum v. Stenson* (1984) 465 U.S. 886,

3
PLAINTIFF MARK SNOOKAL'S NOTICE OF MOTION AND
MOTION FOR ATTORNEYS' FEES AND COSTS

893. The expectation of full compensation promotes the underlying policy for the fee recovery: "It must be remembered that an award of attorney fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." *Sundance v. Municipal Court*, 192 Cal.App.3d 268, 273 (1987). Here, Plaintiff's counsel has successfully vindicated a public interest under the FEHA and should receive full compensation for same.

### B. The Lodestar Method is Applied to Statutory Fee Cases

The "lodestar method" applies to attorneys' fees awarded to prevailing parties in statutory fee cases. *Serrano v. Priest* 20 Cal.3d 25 (1977) ("*Serrano III*"); *Ketchum*, 24 Cal.4th at 1132, 1134; *Horsford*, 132 Cal.App.4th at 394. Under this approach, the Court determines a reasonable hourly rate for each prevailing attorney, law clerk, or paralegal, and the number of hours reasonably spent by each person. The total sum of each person's rate multiplied by their hours spent is the "lodestar," which the trial court may increase by a multiplier according to multiple factors. *See Greene v. Dillingham Construction*, 101 Cal.App.4th 418, 428 (2002) (remanding for determination of a multiplier upon lodestar based upon contingent risk).

The Court's exercise of discretion over a fee is not unlimited – it must be reasonably based upon the lodestar adjustment method. *See, e.g.*, *Ketchum*, 24 Cal.4th at 1134 (quoting *Press v. Lucky Stores, Inc.,* 34 Cal.3d 311, 322 (1983)). The lodestar method "is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts." *Ketchum*, 24 Cal.4th at 1132.

#### i. Counsel's Hourly Rates Are Reasonable

Step one in determining the lodestar amount is to determine the reasonable hourly rates for each person. *Ketchum*, 24 Cal.4th at 1132-34; *Serrano v. Unruh* (1982) 32 Cal.3d 621, 640 (*Serrano IV*). In determining a reasonable hourly rate, the Court should consider the applicants' customary billing rates and the prevailing rate charged by attorneys of similar skill and experience for comparable legal services in the community. *Serrano IV*, 32 Cal.3d. at 640-43; *Ketchum*, 24 Cal.4th at 1132.

"The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. This standard applies regardless of whether the attorneys claiming fees charge

nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel." *Syers Properties III, Inc. v. Rankin*, 226 Cal.App.4th 691, 701 (2014). "There is no requirement that the reasonable market rate mirror the actual rate billed." (*Id.*) Requested rates are reasonable if they are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hospital & Medical Center v. Bonta (CHMC)*, 97 Cal.App.4th 740, 783 (2002).

Importantly, courts must look to the rates at the time of the prevailing party's fee application and not the rates charged at the time the litigation began. *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992).) As such, of Plaintiff's attorneys' hours, even those from the beginning of her representation, are to be calculated at the *present* Lodestar rate, without discount.

Based on the experience of counsel and appropriate market rates, the hourly rates requested are:

| Attorney | Date Admitted to CA Bar | Hourly Rate |
|---|---|---|
| Dolores Y. Leal | June 1988 | $1200 |
| Olivia J. Flechsig | January 2021 | $650 |
| Renee Mochkatel | December 1982 | $1200 |
| Karis Stephen | December 2023 | $450 |
| Sabrina Medler | December 2024 | $450 |

One indicator of current market rates are the rates previously approved for the applicant attorney(s). For example, some of the previously rates for Plaintiff's counsel include $550 an hour for Olivia J. Flechsig in May of 2024 (Flechsig Decl. at ¶15.). Karis Stephen's hourly rate while an employment litigation Associate at a defense-side firm was higher than her requested rate of $450 an hour despite having more skills, training, qualifications and experience today (Stephen Decl. at ¶7.) The rates sought in the instant motion reflect a modest increase from previous rate awarded given inflation and increases in the market rates over time. Each of the

applying attorneys have submitted declarations in support of this motion outlining their qualifications and experience. (See generally, Declarations of Dolores Y. Leal, Olivia J. Flechsig, Renee Mochkatel, Karis Stephen, and Sabrina Medler.)

Another indicator of current market rates are the rates charged by, and approved for, comparable employment attorneys in the Southern California community. Plaintiff has provided three declarations from other respected plaintiffs' employment attorneys in the region to demonstrate the reasonableness of the requested rates.

J. Bernard Alexander: Mr. Alexander was admitted to the California Bar in 1987 (as compared to Ms. Mochkatel's admission in 1982, and Ms. Leal's in 1988). (Alexander Decl. at ¶5.) His qualifications are further detailed in his declaration. Multiple courts have awarded him hourly rates of $1,100 for fee motions made approximately two years ago, and Mr. Alexander has multiple fee motions pending at higher requested hourly rates up to $1,300. (Id. at ¶15.)

Lisa Bloom: Ms. Bloom was admitted to the California Bar in 1986. (Bloom Decl. at ¶3.) Her qualifications are further detailed in her declaration. She was awarded an hourly rate of $975 nearly 6 years ago. (Bloom Decl. at ¶5.) She currently charges her hourly clients a rate of $1250. (Id. at ¶11.)

Tamara Freeze: Ms. Freeze was admitted to the California Bar in 2005. (Freeze Decl. at ¶5.) Her qualifications are further detailed in her declaration. In 2024, two courts awarded Ms. Freeze an hourly rate of $900 (for obtaining a verdict of $800,000) and $950 (for obtaining a verdict of $2,248,290.07), respectively (Id. at ¶14-15.) Here, the verdict attained is higher, and Ms. Leal and Ms. Mochkatel have decades more experience practicing employment law than Ms. Freeze.

Mr. Alexander, Ms. Bloom, and Ms. Freeze, all of whom specialize in Plaintiff-side employment law in the Southern California area, also all attest that the rates requested by Plaintiff are reasonable and comparable given his counsel's skills, qualifications, and experience.

A third indicator that the requested rates are reasonable is the rates sought by employment defense attorneys. In addition to the information attested to by Ms. Stephen in her

recent experience as a defense-side Associate (Stephen Decl. at ¶7), Exhibit 1B to Mr. Alexander's declaration notes the recent rates billed by defense-side firm Munger, Tolles and Olsen, a firm comparable to Sheppard, Mullin & Richter. (Alexander Decl. at ¶17; Leal Decl. at ¶19.) These rates are *significantly* higher than those requested by Plaintiff's counsel. For example, 1st and 2nd year associates' hourly rates are billed at $745 and $820, respectively. (Id.) The hourly rate listed by Munger Tolles and Olson which aligns most costly with Ms. Leal's and Ms. Mochkatel's hourly rate of $1200 is a 7th year associate at $1,180, despite their decades of additional experience. (Leal Decl. at ¶22.)

Voluminous evidence in the form of (1) previously approved rates for the attorneys in this matter, (2) declarations and approved rates for comparable plaintiff-side attorneys in the employment law community, and (3) declared rates of defense-side employment attorneys demonstrates that the rates sought by Plaintiff's counsel here are well within the market rates for employment attorneys in Los Angeles, California.

### ii. The Hours Spent Litigating this Case Were Reasonable

The second step of the lodestar calculation is to determine the hours reasonably expended in preparing and litigating the case. Reasonable hours include a very broad spectrum of work, such as: (1) time spent before the lawsuit was filed, e.g., client interviews, investigation, preparing the initial pleadings, and exhausting administrative remedies; (2) time spent litigating the matter, from discovery through trial, including reasonable travel time; (3) work during the course of litigation, such as consulting with jury experts, performing research, drafting and revising pleadings, and conferring with clients and other counsel; and (4) time spent preparing and litigating the attorney fee motion itself. See, e.g., *Serrano III*, 20 Cal.3d at 48-49; *Serrano IV*, 32 Cal.3d at 639; *Citizens Against Rent Control v. City of Berkeley*, 181 Cal.App.3d 213, 233 (1986); see also *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983); *New York Gaslight Club v. Carey*, 447 U.S. 54, 62 (1980); *Stokus v. March* 217 Cal.App.3d 647, 655-6 (1990). Reasonable hours even include time spent by more than one attorney on a particular task, provided there is no duplication of effort. *Horsford*, 132 Cal.App.4th at 396; *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992). Hours are reasonable if they

were reasonably directed to furthering the client's interests: compensation is appropriate for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest…" *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). Once the moving party documents its claim with time records, the burden shifts to the defendant to show that specific time is unreasonable. *Hadley v. Krepel*, 167 Cal.App.3d 677, 682 (1985); *Horsford*, 132 Cal.App.4th at 397 (counsels' time records are "the starting point for [the trial court's] Lodestar determination").) "[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." *Horsford*, 132 Cal.App.4th at 396. In sum, the goal is to ensure that "[t]he attorney who takes a FEHA case can anticipate receiving full compensation for every hour spent litigating a claim..." *Beaty v. BET Holdings, Inc.*, 222 F.3d, 612 (9th Cir. 2000).

Detailed, contemporaneous time records are attached to and discussed in the accompanying declarations. (Leal Decl. at ¶24, Exh. A.)

Counsel was conscious not to duplicate efforts in litigation and spent time judiciously. And, this case was staffed reasonably, with Ms. Leal and Ms. Flechsig handling almost all of the case's elements from its inception through trial. Plaintiff's counsel refrained from billing or requesting the time spent in consulation with its named Partners, and for time incurred by non-attorney staff. (Leal Decl. at ¶25; Flechsig Decl. at ¶ 18.) Still, this case was extremely time-consuming and labor intensive and Plaintiff's counsel had to oppose two of Chevron's Motion for Summary Judgment; file two *Ex Parte* Applications concerning Chevron's discovery delay; spend numerous hours spent meeting and conferring about discovery; attend four Informal Discovery Conferences to obtain necessary discovery from Chevron; and reviewed thousands of documents produced, culminating in four days of trial. (Flechsig Decl. at ¶34-36.) Chevron's unreasonable discovery delays were directly responsible for generating significant extra work in an apparent attempt to overpower Mr. Snookal's resources. (Id.) Still, he prevailed.

As discussed above, Chevron also had multiple opportunities to settle this matter when the attorneys' fees were a fraction of what they are today (and even before litigation was

initiated), but they chose not to do so. (Id. at ¶32-33; Snookal Decl. at ¶8.)

As the Seventh Circuit Court of Appeals observed in *Cuff v. Trans States Holdings, Inc.* 768 F.3d 605, 611 (7th Cir. 2014), **employers must not be permitted to force plaintiffs to incur exorbitant fees and costs, then avoid responsibility for the result**:

> *Fee-shifting statutes [] are designed to prevent the potentially high costs of litigation from stifling justified claims. … A business that can establish a reputation for intransigence may end up not paying damages and not having to defend all that often either, because if a prevailing party who litigates to victory gets only a small award of fees the next would-be victim will see that litigation is futile and the employer won't have to repeat the costly defense. That's why … hyperaggressive defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect.*

The hours spent by Plaintiff on this matter were necessitated by the circumstances of the case. Defendant cannot now claim that Plaintiff's hours were unreasonable when their own unreasonable settlement posture and dilatory tactics caused Plaintiff to incur these hours. The lodestar, calculated by multiplying each person's reasonable hours by their hourly rate, totals $1,135,750.5. (See Leal Decl. at ¶24, Exh. A; 27.)

| ATTORNEY | HOURLY RATE | HOURS | TOTAL FEES |
|---|---|---|---|
| Dolores Y. Leal | $1200 | 519.90 | $623,880 |
| Olivia J. Flechsig | $650 | 604.17 | $392,710.50 |
| Renee Mochkatel | $1200 | 33.6 | $40,320 |
| Karis Stephen | $450 | 111.8 | $50,310 |
| Sabrina Medler | $450 | 37.4 | $16,830 |

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee … encompass[ing] all hours reasonably expended on the litigation….'" *Feminist Women's Health Ctr. v. Blythe*, 32 Cal.App.4th 1641, 1674 at fn. 8 (1995). Here, the $4 million result further justifies the award of the full lodestar.

**C. A Multiplier to the Lodestar Should be Awarded to Account for the Case-Specific Circumstances**

Once the Court establishes the lodestar amount, it should enhance that amount by the

application of a "multiplier" in order to make an appropriate fee award. *Ketchum*, 24 Cal.4th at 1132-34; *Serrano III*, 20 Cal.3d at 48; *Press*, 34 Cal.3d 311, 321-22; *Horsford*, 132 Cal.App.4th at 394-95.

"A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." (*Horsford*, *supra*, 132 Cal.App.4th at 395.) "It has long been recognized[,] that the contingent and deferred nature of the fee award in a civil rights or other case with statutory attorney fees requires that the fee be adjusted in some manner to reflect the fact that the fair market value of legal services provided on that basis is greater than the equivalent noncontingent hourly rate." (Id.) After the Lodestar rate has been ascertained, it may be enhanced to take into account other factors that go into the determination of reasonable attorneys' fees, including: the skill displayed in presenting the issues; and the contingent nature of the fee award. (*Ketchum*, 24 Cal.4th at 1132.) Moreover, the Court of Appeal in *Horsford* held that the failure to apply a multiplier to account for the risk involved was an abuse of discretion, absent some extraordinary reason for not doing so. *Horsford*, *supra*, 132 Cal.App.4th at 395. "[T]he unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider ..." *Ketchum*, 24 Cal.4th at 1138.

Enhancements may range anywhere from "2 to 4 or even higher." *Wershba v. Apple Computer*, 91 Cal.App.4th 224, 255 (2001). See also, e.g., *City of Oakland v. Oakland Raiders*, 203 Cal.App.3d 78, 82 (1988) (awarding a multiplier of 2.34); *Coalition for L.A. City v. Board of Supervisors*, 76 Cal.App.3d 241(1977) (awarding a multiplier of 2.04); *see also In re Vitamin Cases* (Cal. Super. Ct. Apr. 12, 2004) 2004 WL 5137597, at **11, 14 ("[A]fter a full review of the record, this Court concluded that a multiplier of two on Plaintiffs' Counsel's lodestar was appropriate in part due to the contingent nature of the case-that is, the risks faced by Plaintiffs….[T]he court reaffirms its conclusion….The Court finds that the requested multiplier of 1.99 is low compared to many multipliers awarded in similar litigation.").

Several factors may be considered in determining whether to augment the fee award with a multiplier, including but not limited to: (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the result obtained by the litigation; (5) the quality of the representation; and (6) any delay in receipt of payment. *Ketchum*, 24 Cal.4th at 1132-34; *Serrano III*, 20 Cal.3d at 48; *Press*, 34 Cal.3d at 321-22; *City of Oakland*, 203 Cal.App.3d at 83; *Downey Cares v. Downey Comm. Dev. Com* (1987) 196 Cal.App.3d 983, 995, n.11.1

1. *Difficulty of the Issues and the Skill Displayed in Presenting Them*

The Court acknowledged Plaintiff's counsel skill in presenting the case on the record. Such skill was required to overcome Chevron's staunch opposition through their own attorneys. This case was especially difficult and novel, given Chevron's assertion of a direct threat defense in addition to the factual issues presented, necessitating expert testimony regarding Mr. Snookal's heart condition, the purported risks of complication, medical treatment of said condition, and questions concerning the infrastructure available in a remote area of Nigeria.

In mounting its direct threat affirmative defense, Chevron made repeated references at trial to purported potential threats such as sea pirate attacks, kidnappings by Boko Haram, fire, explosions, a "ticking time bomb" in Mr. Snookal's chest, and even the threat of mass casualties and environmental disaster. Nonetheless, the jury unanimously concluded that Mr. Snookal's disability did not pose an imminent and substantial threat to himself or to others, and awarded him a multi-million dollar verdict.

Plaintiff is not aware of *any* other case in which a Plaintiff prevailed despite this affirmative defense, and Defendant's counsel highlighted as much during oral argument regarding Chevron's Motion for Summary Judgment, which Plaintiff nonetheless overcame. (Flechsig Decl. at ¶31.) The issues were thus both extremely novel and particularly difficult.

2. *Results Obtained*

The results obtained may be considered in determining an appropriate multiplier. *See,*

11
PLAINTIFF MARK SNOOKAL'S NOTICE OF MOTION AND
MOTION FOR ATTORNEYS' FEES AND COSTS

*e.g.*, *City of Oakland,* 203 Cal.App.3d 78, 80, 83; *Wallace v. Consumers Cooperative of Berkeley, Inc.*, 170 Cal. App.3d 836, 850 (1985). Despite the disparity in resources, and the challenges and novelty of the case, Plaintiff's counsel persevered in obtaining a $4 million verdict. Such an award is extraordinary, especially for a case in which punitive damages were not available. According to the Daily Journal, which tracks verdicts and settlements, Mr. Snookal's verdict is the 15th highest disability discrimination verdict in their records of 281 verdicts (which includes multi-plaintiff and class actions verdicts and settlements). (Flechsig Decl. at ¶30.) That the verdict attained is over five times more than what Defendant offered in its tardy Rule 68 offer before trial is further evidence of a spectacular result, warranting a multiplier. (Id. at ¶32, Exh. B.)

### 3. *Contingent Risk and Delay in Payment*

Plaintiff's counsel accepted and tried this matter on a contingency basis. (Flechsig Decl. ¶28; Leal Decl. ¶28-29). Most employment litigation plaintiffs, including Mr. Snookal, would be unable to pay attorneys on an hourly basis and can obtain representation only from counsel who are willing to accept their case on a contingent basis, and to advance either all or substantially all of the costs. Most plaintiffs' attorneys are neither able nor willing to accept such contingent cases, unless counsel can anticipate that, if they ultimately prevail after a time-consuming and expensive trial, they will recover a fee greater than they would have recovered if paid on an hourly basis. The reason is simple: many contingent cases are lost, resulting in no fee to the plaintiff's attorney. Other cases settle for figures that result in a contingency fee far below the actual fees expended by plaintiff's counsel. If, even when a case goes all the way to trial after years of litigation and the plaintiff prevails, the plaintiff's counsel can only hope to recover the actual time spent, the risks in taking such cases would so greatly outweigh any potential "upside" that small firms like Plaintiff's counsel simply could not afford to accept such cases.

For this reason, courts have long-recognized "contingent risk" as a factor supporting an upward enhancement of the lodestar. *See, e.g.*, *Serrano III*, 20 Cal.3d at 49; *Horsford*, 132 Cal.App.4th at 395. The purpose of the contingent risk enhancement is "to compensate for the risk of loss generally in contingency cases…." *Beasley v. Wells Fargo Bank*, 235 Cal.App.3d

1407, 1419 (1991) (disapproved on other grounds) (emphasis deleted). Indeed, as evidenced by Mr. Snookal's search for counsel, this particular case was one that several other Plaintiff-side employment attorneys were unwilling or unable to take on. (Snookal Decl. at ¶4-6).[1]

Plaintiff's counsel has been working on this matter for over two years without payment. (Flechsig Decl. at ¶28.) The contingent risk is heightened by the financial resources Chevron could, and did bring to bear in decreasing Plaintiff's likelihood of prevailing at trial. A 2.0 multiplier serves to compensate Plaintiff's counsel for the delay in payment for services rendered, in addition to the risk of non-recovery.

4. *Preclusion of Other Work*

In determining the lodestar multiplier, Courts may also consider the extent to which the prevailing party's attorneys were precluded from completing other paying work while tied up in litigating the matters. *Ketchum*, 24 Cal.4th at 1132-34.

Here, the hours incurred in this case by Ms. Flechsig and Ms. Leal alone total over 604 hours and 519 hours, respectively. (Flechsig Decl. at ¶17; Leal Decl. at ¶27, Exh. A). Given that there are 52 weeks in a year, and assuming 40 billable hours per week (to say nothing of vacation time, holidays, and non-billable work demands), there are 2,080 billable working hours in a year. These hours therefore constituted approximately 30% of Ms. Flechsig's total working capacity over the course of a year, and 25% of Ms. Leal's total working capacity over the same period. The amount of time invested substantially precluded other work, and further justifies a 2.0 multiplier of the lodestar amount. (See also Leal Decl. at ¶30, 35.)

### III. PLAINTIFF IS ENTITLED TO FULL RECOVERY OF HIS COSTS

Plaintiff is also entitled to recover costs, including expert witness fees, pursuant to Government Code §12965(c)(6). Plaintiff has attached a detailed list of itemized costs, filed herewith as Exhibit A to the Declaration of Dolores Y. Leal, at pages 33-35. These costs, totaling $155,277.39, were all reasonably and necessarily incurred on behalf of Mr. Snookal's

---

[1] The Ninth Circuit also recognizes the difficulty of finding local consol as a factor to justify increasing the lodestar multiplier. *Fadhl v. City and County of San Francisco*, 859 F.2d 649, 650 (9th Cir. 1988); *Bernardi v. Yeutter*, 951 F.2d 971, 975 (9th Cir. 1991).

litigation. He therefore requests that the Court order Defendant to pay a total of $155,277.39 in costs.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests $2,248,101.00 in fees after the 2.0 multiplier, and $155,277.39 in costs.

DATED:  September 17, 2025                    ALLRED, MAROKO & GOLDBERG

By: _____
DOLORES Y. LEAL
OLIVIA FLECHSIG
Attorneys for Plaintiff,
**MARK SNOOKAL**