DOLORES Y. LEAL (134176)
OLIVIA FLECHSIG (334880)
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048-5217
(323) 653-6530
dleal@amglaw.com
oflechsig@amglaw.com

**Attorneys for Plaintiff MARK SNOOKAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 2:23-cv-6302-HDV-AJR<br><br>**DECLARATION OF DOLORES Y. LEAL IN SUPPORT OF PLAINTIFF MARK SNOOKAL'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[*Filed concurrently with Plaintiff Mark Snookal's Notice of Motion and Motion for Attorneys' Fees and Costs; Tables 1 and 2 to Plaintiff's Motion for Attorneys' Fees and Costs, Declarations of Olivia J. Flechsig, Renee Mochkatel, Karis Stephen, Sabrina Medler, J. Bernard Alexander, III, Lisa Bloom, Tamara Freeze, and Mark Snookal; and [Proposed] Order Granting Plaintiff's Motion for Attorney's Fees and Costs*]<br><br>Action Filed: August 3, 2023<br>Trial Dates: August 19-25, 2025<br>Judgment Entered: September 3, 2025<br><br>Date: November 13, 2025<br>Time: 10:00 a.m.<br>Crtrm: 5B |

1
DECLARATION OF DOLORES Y. LEAL IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

## DECLARATION OF DOLORES Y. LEAL

I, DOLORES Y. LEAL, declare as follows:

1. I am an attorney duly licensed to practice before all of the Courts of the State of California, and have been an active member of the California State Bar since June 1988. If called as a witness, I could and would competently testify to the following facts based upon my own personal knowledge.

2. This declaration is being filed in support of Plaintiff Mark Snookal's Motion for Attorneys' Fees and Costs pursuant to Government Code Sec.12965(b).

### Personal Qualifications

3. I am a partner in the law firm of Allred, Maroko & Goldberg in Los Angeles, California. A substantial part of our practice is plaintiff employment litigation which focuses on litigating and trying complex civil rights and employment matters. Our firm litigates individual matters and multi plaintiff cases in these areas.

4. I have been with the Allred, Maroko & Goldberg firm since 1991. I became a partner with the firm in 1993. Prior to joining the law firm, I was a trial attorney with the U.S. Equal Employment Opportunity Commission (EEOC) in Los Angeles from 1988 until 1991, where I tried several discrimination (age, pregnancy; national origin/English-only, and race) cases. I was one of two attorneys at the EEOC who successfully tried an age discrimination case over a 4 month period in 1988-1989. The jury awarded $45 million in damages to 37 former employees (Brooks et al v Hilton Casinos, Inc., et al, CV S-84-436 RDF). Prior to being an attorney, I was an investigator and a paralegal with the EEOC from 1979 until 1987.

5. My emphasis has always been employment law. I represent plaintiffs in employment litigation in matters involving discrimination, sexual harassment and wrongful termination.  I wrote a book for employment law attorneys, *Litigating Sexual Harassment and Sex Discrimination Cases*, published by James Publishing. Members of the Editorial Advisory Board included both Plaintiff and Defense employment attorneys. I was advised by James Publishing that it became one of the highest rated books sold.

6. A highlight of my career is Tylo v Superior Court (1997) 55 Cal.App.3d 1379

because of the impact it has had in the employment law community. I represented actress Hunter Tylo at her deposition and defense counsel asked many questions to which I objected based, in part based on her constitutional right of privacy. Defense counsel filed a motion to compel and sought sanctions. The trial court granted the motion, and I filed a writ to the Court of Appeal. The Court of Appeal ultimately held *inter alia*, that a party (usually a defendant employer) who is seeking constitutionally protected information in discovery from the plaintiff (typically a current/former employee) has the burden of establishing that the information sought is *directly* relevant to the claims. The Court also made clear that it would not allow employers to engage in "*fishing expeditions*" during the discovery phase of litigation. This decision has been widely used by plaintiff employment attorneys in fighting overbroad discovery and I am repeatedly thanked by other Plaintiff employment attorneys for this decision.

7.  For 14 years, from 1995 through 2009, I was on the board of the California Employment Lawyers Association ("CELA"). I was the Board Chair from 2000-2002. CELA is a statewide organization and the largest bar association in California for lawyers representing employees, with a current membership of over 1,300 attorneys. During my 14 years on the board, and thereafter as a member, I was an active on the education committee and the diversity committee.

8.  I am also an active member of the plaintiff's employment law association, Legal Eagles for Truth and Justice in the American Way ("LEFTJAW"). I am also a member of the Los Angeles County Bar Association (Labor & Employment), the National Employment Lawyers Association, the Mexican American Bar Association and the Latina Lawyers Bar Association.

9.  In 2008 I was nominated and selected to be inducted as a Fellow into the exclusive, College of Labor and Employment Lawyers by its Governors, which honor leading lawyers (plaintiff, defense and professors) nationwide in the practice of Labor and Employment Law. The nomination and selection process are extremely discerning.

10. I have been a board member of the ACLU of Southern California Foundation since March 2018. I was also a board member of Legal Aid at Work ("LAAW") from July 2019

until December 2022. LAAW is a statewide nonprofit legal services organization which assists low income, working families with employment disputes.

11. For the past 21 years, since 2004, I have been named one of Southern California's "Super Lawyers" by Los Angeles Magazine. I was further honored as one of the Top 50 Women Lawyers in Southern California in 2004, 2005, 2006, 2023, and 2024. I have been recognized as one of the "Best Lawyers" from 2006 to the present. I have always received an "AV" rating, the highest rating from Martindale Hubbell. I have also always received the highest client rating (10) on AVVO.

12. I have received several notable awards:

- In 1989, I was honored with the EEOC "Regional Attorney's Award" because of my work on the *Brooks et al v Hilton Casinos, Inc*., case (referenced above).

- In September 1999, I was honored by the California Employment Lawyers Association as its "*Employment Law Attorney of the Year*."

- In February 2007, I was honored by the Mexican American Bar Association with the *Frank Muñoz, Lifetime Achievement Award*.

- In August 2009, I was honored by the Latina Lawyers Association with the *Abriendo Caminos* Award.

- In September 2015, I was honored by CELA as the recipient of the highly coveted "Joe Posner Award" which was created to honor Joe Posner's legacy who was a pioneer in our field of employment law and a CELA founder.

- In October 2017, I was honored by CELA as the recipient of the *Education Committee Service* award.

13. I have been a mentor to many new plaintiff employment attorneys both at our firm and in the plaintiff employment law community. I share my knowledge, experience and expertise as a speaker at several bar associations, including California Lawyers Association (Labor and Employment Law section), California Employment Lawyers Association ("CELA"), National Employment Lawyers Association ("NELA"), Legal Eagles for Truth and Justice in the American Way ("LEFTJAW"), Los Angeles County Bar Association ("LACBA" Labor/

1. Employment), Orange County Bar Association ("OCBA" Labor/ Employment), Consumer Attorneys Association of Los Angeles ("CAALA"), Women Lawyers of Los Angeles ("WLALA"), Beverly Hills Bar Association, Association of Workplace Investigators, ABA (EEO Committee), and Latina Lawyers Bar Association ("LLBA"). On average, I speak before various groups at least three times per year.

14. I have also been a speaker before other groups and organizations: law schools (Southwestern and Loyola Law Schools), the Structural Engineers Association of So. California (SEASC), California Rural Legal Assistance (CRLA), the U.S. Equal Employment Opportunity Commission (EEOC TAPS program), and taught torts, employment discrimination and critical studies at Peoples College of Law.

15. I was chosen to participate as a settlement officer in each of the Los Angeles County Superior Court's employment case CRASH programs, until the program ceased.

16. My practice consists almost exclusively of representing plaintiffs in employment litigation. Over 90% of our firm's work is done on a contingency basis. Because of my association with the California Employment Lawyers Association, I know this is also the case with the substantial majority of attorneys who practice plaintiff employment litigation.

**My Firm's Hourly Rates**

17. With the exception of a few limited matters, my firm has a contingency-based practice. However, we are retained on an hourly basis in certain matters. We set our rates in all matters (contingent and retained) to be comparable with those of other plaintiff employment attorneys in the Los Angeles area.

18. Based on my 37 years of experience in the field, employment cases are by nature risky and expensive to litigate. Recovery is never assured. Cases often take years to resolve. Our clients are invariably unable to pay our legal fees and costs. In order to maintain a viable private practice, I must place a premium on assessing a case from the perspective of trial costs versus the legal merits and the expected recovery.  In cases where damages may be lower, or difficult to obtain, I examine the possibilities of fee shifting statutes, should I prevail.

19. My hourly rate is $1200. The rate of my partner Renee Mochkatel is also $1200

per hour. The rate of Olivia Flechsig is $650 per hour and the rate of associates Karis Stephen and Sabrina Medler is $450 per hour. These are the rates we charge and paid by hourly clients who hire our firm. These rates are well within the range of practitioners at our level of experience, within members of the Los Angeles employment law community. This is confirmed by the concurrently filed declarations of other highly respected plaintiff employment attorneys in the Los Angeles area (J. Bernard Alexander III, Lisa Bloom and Tamara Freeze) as well as the exhibits in Mr. Alexander's declaration which has defense attorneys at Munger Tolles and Olsen's 1st and 2nd year associates' hourly rates at $745 and $820, respectively.

## Hourly Rates of Defense Attorneys

20.   Inasmuch as I do not know the hourly rates of defense counsel (partners Tracey Kennedy and Robert Mussig and associate Sarah Fan), I reiterate what is set forth in Bernard Alexander's declaration which has "Exhibit B" listing the hourly rates of attorneys at Munger Tolles and Olsen, a firm comparable to Sheppard Mullin Richter and Hampton.

21.   The hourly rate of attorney Henry Weissmann with Munger Tolles and Olson, who has been practicing six months longer than I (December 1987 vs. June 1988) is $1,950. The hourly rate for Dan Levin with Munger Tolles and Olson, who has been practicing since July 2003 (or 15 years less) is $1,800.

22.   The hourly rate listed by Munger Tolles and Olson which is closest to my hourly rate of $1200 is a 7th year associate at $1,180.

## Hours Worked on this Case

23.   I am familiar with our firm's billing rates and billing practices. The firm has a practice whereby I, other attorneys record the time spent on client matters describing the work performed in a computer billing system. On a monthly basis, these records are submitted to the firm's office manager who prepares client billing statements setting forth the services rendered and time spent performing each task as well as the costs expended on the case.

24.   A true and correct copy of the firm's consolidated billing statements are attached as **Exhibit A** and reflect the work performed by all counsel at our firm in this matter. In addition, the billing statements itemize all of the costs paid by our firm in litigating this matter.

6
DECLARATION OF DOLORES Y. LEAL IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

1   All the billing reflected therein was reasonably necessary to the successful prosecution of this
2   litigation. These itemized billing statements were used to formulate Tables 1 and 2 reflecting the
3   use of attorney time to represent Mr. Snookal in this matter.

4       25.    As a preliminary matter, in an exercise of billing judgment, I have not included
5   the time that I spent throughout the litigation conferring with named partners, Gloria Allred,
6   Nathan Goldberg and Michael Maroko regarding the case. I did not record and bill for that time.
7   The total number of hours represent only those hours for which we are requesting compensation,
8   after the exercise of reasonable billing judgment.

9       26.    The total costs expended by our firm through September 17, 2025 which are
10  reflected in the billing statement are $155,277.39.

11      27.    This is a summary of the time and aggregate value of time based on the standard
12  hourly rates which I have obtained from the billing statements. I have calculated the total
13  attorney fees requested:

| ATTORNEY | HOURLY RATE | HOURS | TOTAL FEES |
|---|---|---|---|
| Dolores Y. Leal | $1200 | 519.90 | $623,880 |
| Olivia J. Flechsig | $650 | 604.17 | $392,710.50 |
| Renee Mochkatel | $1200 | 33.6 | $40,320 |
| Karis Stephen | $450 | 111.8 | $50,310 |
| Sabrina Medler | $450 | 37.4 | $16,830 |
| **TOTALS:** | | 1,306.87 | $1,124,050.50 |

**Multipliers in Contingent Risk Matters**

28.  Most individuals cannot afford to pay on an hourly basis for skilled representation in civil rights litigation. Therefore, plaintiff's civil rights attorneys represent virtually all discrimination claims on a contingency fee basis. Under this arrangement, such attorneys are not compensated for their time unless and until they prevail, whether it be by trial, arbitration or successful settlement of the case. Civil rights attorneys are taking the risk that they will not be reimbursed for time spent or the costs unless their client settles or wins at trial or

arbitration. As such, plaintiff's civil rights attorneys cannot afford to represent an individual employee on a contingency basis if, at the end of the representation, the attorney is destined to receive only the regular hourly rate for the services performed, if they win, but nothing if they lose.

29. When plaintiff's civil rights attorneys prevail on the merits, it is essential that they recover a multiplier--an amount which is more than their regular hourly rate, if they are to remain in practice and to continue representing individuals in civil rights employment disputes. With this in mind, courts and judges routinely apply a multiplier to the attorney fees awarded in Plaintiff employment discrimination lawsuits, in order to encourage competent attorneys to represent individuals in such cases, and further the public policy of this state.

30. Beginning in July 2025 and continuing through August 25, 2025, I was unable to consider taking any "new" prospective clients. I also had to delay progress on some of my existing cases.

31. Based on my work and contact with plaintiffs' lawyers in Los Angeles, I am very familiar with the standard billing analysis applied by attorneys in determining whether to take civil rights and employment cases. In those instances, the primary expectation of payment is contingent on winning and recovery of fees under a fee shifting statute. This analysis adopts a formula utilizing hourly billing rates significantly higher than that for retained work, in order to account for delay in payment, risk of loss, risk of partial recovery, or other contingent factors. The manner in which the higher hourly rate is recovered is by application of a multiplier to the actual lodestar figure in a case.

32. The market expectation for multipliers on contingent risk cases, as a class, is at least two to three times the fees that would have been earned in retained litigation where there is no contingent risk of non-payment. Fees of this measure are necessary because of the investment in costs, the long delays, and the total or partial lack of success in many cases. Such an expectation has been expressly acknowledged by the California Supreme Court in *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132, to be determined based on the market in a particular locality. Unless compensation paid for civil rights and employment representation is

1 commensurate with for profit, non-contingent litigation (by application of a multiplier to account for the risks discussed above), firms such as mine, which have special expertise in the handling of civil rights cases, will be unable to handle such matters on an extensive basis.

33. Our firm took this case on a purely contingent basis and has thus far invested $1,279,327.90 in actual litigation costs (attorney fees and costs) in order to prosecute this matter through trial. The contingent risk in a case like this is very high and, in my opinion, justifies a multiplier or enhancement to the lodestar calculations.

34. Contingent cases present the very real risk of working hundreds or thousands of hours that may never be fully compensated or may go uncompensated altogether. Unfortunately, the prospect of loss is very real. Thus, the risk inherent in contingent representation is, indeed, a reality even in an expected victory case. The contingent risk in this case, in my view, was huge because of the affirmative defense in this case and because I knew that Chevron had litigated a similar case (but under the ADA as opposed to FEHA -- *Chevron U.S.A. Inc v Echazabal*, 536 U.S. 73 (2002)) all the way to the U.S. Supreme court. Hence, I knew it would be a heavily litigated case.

35. Based on my discussions with other plaintiff's side lawyers who represent plaintiffs in contingent FEHA litigation, including within and outside of my own firm; and, given the real risk of contingent fee representation (including the risks of an outright loss, a less than fully compensatory result, or the delay in payment), it is the prevailing expectation within the community that a multiplier or enhancement will be awarded when a FEHA plaintiff prevails. Other factors which contribute to my conclusion that a 2.0 multiplier is warranted are:

(a) preclusion of other employment cases by me and Olivia Flechsig prior to and during trial;

(b) at Allred, Maroko & Goldberg, we receive telephone calls/emails from many individuals each week seeking legal representation in employment matters. Because of the contingent nature of employment cases, we are able to take only a very few of these cases. Although we attempt to refer these individuals to other attorneys handling employment cases, there are very few attorneys able to take such cases because of the sophisticated subject matter

and because they are hard fought, extremely expensive and inevitably result in protracted litigation and appeals.

(c) Due to the tremendous number of requests for assistance in employment litigation and the dearth of counsel willing and able to accept such cases, it is imperative that those attorneys willing to provide such representation on a contingency basis be encouraged to do so, through awards of attorneys' fees, which include the multiplier that is necessary to attract and retain competent counsel to accept these types of cases.

36. An award of the lodestar amount without an enhancement does not compensate the attorney for the contingent risk undertaken. In addition to the risk of taking this case on contingency, we have been working on this matter now for almost three years without payment and advancing all costs required to vindicate Plaintiff Snookal's rights and successfully litigate the case.

37. Given the contingent nature of the representation, the preclusion of other work that necessarily results from a lengthy litigation and trial such as this trial, and the exceptional result obtained, I believe that a multiplier of 2.0 of the lodestar is reasonable in this case. As Plaintiff's counsel we are seeking a 2.0 multiplier because of the exceptional risks involved in prosecuting this case, in which significant costs and fees are at risk during the pendency of this case. The skill, expertise, and experience exhibited by my co-counsel Olivia Flechsig, and myself warrants the application of at least this 2.0 multiplier.

38. Not only is a multiplier warranted because of the risk involved and skill presented, but Defendant Chevron U.S.A. Inc. gave Plaintiff Snookal little choice but to take the case to trial.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 17th day of September 2025, in Los Angeles, State of California.

_____
DOLORES Y. LEAL