1  DOLORES Y. LEAL (134176)
   OLIVIA FLECHSIG (334880)
2  ALLRED, MAROKO & GOLDBERG
3  6300 Wilshire Blvd. Suite 1500
   Los Angeles, CA 90048-5217
4  (323) 653-6530
   dleal@amglaw.com
5  oflechsig@amglaw.com

6

7  **Attorneys for <u>Plaintiff MARK SNOOKAL</u>**

8

9             UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12 | MARK SNOOKAL, an individual,            | ) CASE NO.: 2:23-cv-6302-HDV-AJR
13 |                                         | )
   |          Plaintiff,                     | ) **DECLARATION OF LISA BLOOM IN**
14 |                                         | ) **SUPPORT OF PLAINTIFF'S MOTION**
   |                                         | ) **FOR ATTORNEYS' FEES**
15 |    vs.                                  | )
16 |                                         | ) [*Filed concurrently herewith Plaintiff Mark
   |                                         | ) Snookal's Notice of Motion and Motion for
17 | CHEVRON USA, INC., a California         | ) Attorneys' Fees and Costs; Tables 1 and 2 to
   | Corporation, and DOES 1 through 10,     | ) Plaintiff's Motion for Attorneys' Fees and
18 | inclusive,                              | ) Costs; Declarations of Dolores Y. Leal, Olivia
   |                                         | ) Flechsig, Renee Mochkatel, Karis Stephen,
19 |                                         | ) Sabria Medler, J. Bernard Alexander, III,
20 |          Defendants.                    | ) Tamara Freeze, and Mark Snookal; and
   |                                         | ) [Proposed] Order Granting Plaintiff's Motion
21 |                                         | ) for Attorneys' Fees and Costs*]
22 |                                         | ) Action Filed: August 3, 2023
   |                                         | ) Trial Dates: August 19-25, 2025
23 |                                         | ) Judgment Entered: September 3, 2025
24 |                                         | ) Date:   November 13, 2025
25 |                                         | ) Time:   10:00 a.m.
   |                                         | ) Crtrm:  5B
26
27
28

DECLARATION OF LISA BLOOM IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

# DECLARATION OF LISA BLOOM

I, LISA BLOOM, declare:

1. I am an attorney duly licensed to practice before all of the Courts of the State of California. If called as a witness, I could and would competently testify to the following facts based upon my own personal knowledge.

2. This declaration is being submitted at the request of Dolores Y. Leal, attorney for Plaintiff Mark Snookal, in support of Mr. Snookal's Motion for Attorneys' Fees.

## Personal Qualifications

3. I am the founder, owner, and a partner of The Bloom Firm, a civil rights firm based out of Los Angeles. I graduated from Yale Law School, the top law school in the nation, in 1986. I have around 40 years of experience in all areas of civil litigation and family law, primarily representing victims of race or sex discrimination, domestic violence, sexual harassment, sexual assault, and police excessive force. I pride myself on being a champion for victims' rights and I have been chosen by my peers as a SuperLawyer every year for the past 11 voting cycles, since 2015. *The Hollywood Reporter* named me a top Hollywood "power lawyer" and I have appeared on many ten best lists. Further, I am the *New York Times* bestselling author of three books. In 2025, I settled multiple employment discrimination cases for over $1 million each, and won a California Equal Pay Act arbitration. In 2024, I secured over $7 million from Jeffrey Epstein's victim compensation fund on behalf of victims of abuse. I have also won multiple multi-million dollar trials and settled many other $1M+ employment cases in prior years.

4. On October 23, 2017, the Los Angeles Superior Court ruled on attorneys' fees awarded to The Bloom Firm after succeeding on a successful anti-SLAPP motion in the in the *Elizabeth Taylor, et al. v. Alkiviades David, et al* (BC649025) matter. Specifically, the court awarded my then hourly rate of $895 and my paralegal's hourly rate of $195. These rates were confirmed and granted about 8 years ago.

5. On October 7, 2019, the Los Angeles Superior Court approved of my rate at $975 per hour, and my firm's request for a multiplier of 2.0. in the *Elizabeth Taylor, et al. v.*

1

DECLARATION OF LISA BLOOM IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  *Alkiviades Davis, et al es Davis, et al* (BC649025) matter. These rates were set nearly 6 years
2  ago.
3        6.     On October 9, 2024, the Los Angeles Superior Court's October 9, 2024, awarded
4  my firm a 2.0 multiplier, for a total fees award of $2,007,495.00 in the *Elizabeth Taylor, et al. v.*
5  *Alkiviades Davis, et al* (BC649025) matter.
6        7.     Ms. Leal's law practice representing employment discrimination plaintiffs is
7  substantially similar to mine. Her firm and mine have sometimes represented different plaintiffs
8  against the same defendant. The vast majority of our work is done on a contingency basis.  I
9  know this to be the case with the substantial majority of attorneys who practice plaintiff
10 employment litigation, including Ms. Leal and her law firm.
11       8.     In the employment law community, Ms. Leal and her team are known to take
12 tough employment cases, particularly those involving high profile defendants.
13       9.     I understand that Ms. Leal is seeking attorneys' fees in this case at an hourly rate
14 of $1200. I likewise understand that attorneys Renee Mochkatel, Olivia Flechsig, Karis Stephen,
15 and Sabrina Medler are seeking hourly rates of $1200, $650, $450, and $450, respectively.
16 Through my practice, I have become familiar with the rates charged by law firms in Los Angeles
17 County for litigation of employment-related matters such as this case.  Based on that knowledge,
18 and my knowledge of the experience level and/or abilities of Plaintiff's counsel, it is my
19 professional opinion that the rates sought are well within the range charged by comparably
20 qualified attorneys for similar litigation. I am aware that these hourly rates are reasonable and
21 consistent with fees being charged by trial attorneys in employment cases with commensurate
22 skill level, expertise and experience.
23       10.    I worked alongside Dolores Leal at the Allred firm for nine years in the 1990s,
24 and I observed her work since by sometimes reading depositions she took in cases where we
25 represented different plaintiffs against the same defendant, and reading motions she drafted. Not
26 only has Ms. Leal written the leading guidebook for sex discrimination and sexual harassment,
27 she has a well-earned stellar reputation for knowing employment law deeply and arguing
28

effectively on behalf of her clients. I have the highest respect for Ms. Leal's knowledge and skills. She is truly one of the leaders in our field of employment discrimination nationwide.

11. The Bloom Firm is primarily a contingency-based practice. I also take on hourly clients from time to time at my current rate of $1250/hour. The Bloom Firm specializes in employment discrimination cases, and also takes on other civil rights matters. The Bloom Firm is often up against private, international defense firms.

### Multipliers in Contingent Risk Matters

12. Most individuals cannot afford to pay on an hourly basis for skilled representation in civil rights litigation. Therefore, plaintiff's civil rights attorneys represent virtually all discrimination claims on a contingency fee basis.  Under this arrangement, such attorneys are not compensated for their time unless and until they prevail, whether it be by trial, arbitration or successful settlement of the case. Civil rights attorneys are taking the risk that they will not be reimbursed for time spent unless their client settles or wins at trial or arbitration.  As such, plaintiff's civil rights attorneys cannot afford to represent an individual employee on a contingency basis if, at the end of the representation, the attorney is destined to receive only the regular hourly rate for the services performed, assuming that they win, but nothing if they lose.

13. When plaintiff's civil rights attorneys prevail on the merits, it is essential that they recover a multiplier – an amount which is more than their regular hourly rate, if they are to remain in practice and to continue representing individuals in civil rights employment disputes. With this in mind, courts and judges routinely apply a multiplier to the attorney fees awarded in Plaintiff employment discrimination lawsuits, in order to encourage competent attorneys to represent individuals in such cases, and further the public policy of this state. State and federal courts have approved fee multipliers in FEHA, Title VII and/or ADA employment cases handled by our firm of 1.5 to 2.0 times our normal hourly rates.

14. Based on my work and contact with plaintiffs' lawyers in Los Angeles, I am very familiar with the standard billing analysis applied by attorneys in determining whether to take civil rights and employment cases.  In those instances, the primary expectation of payment is contingent on winning and recovery of fees under a fee-shifting statute.  This analysis adopts a

3
DECLARATION OF LISA BLOOM IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

1  formula utilizing hourly billing rates significantly higher than that for retained work, in order to
2  account for delay in payment, risk of loss, risk of partial recovery, or other contingent factors.
3  The manner in which the higher hourly rate is recovered is by application of a multiplier to the
4  actual lodestar figure in a case.

5      15.    The market expectation for multipliers on contingent risk cases, as a class, is at
6  least two to three times the fees that would have been earned in retained litigation where there is
7  no contingent risk of non-payment.  Fees of this measure are necessary because of the investment
8  in costs, the long delays, and the total or partial lack of success in many cases.  Such an
9  expectation has been expressly acknowledged by the California Supreme Court in *Ketchum v.*
10 *Moses* (2001) 24 Cal.4th 1122, 1132, to be determined based on the market in a particular
11 locality.  Unless compensation paid for civil rights and employment representation is
12 commensurate with for-profit, non-contingent litigation (by application of a multiplier to account
13 for the risks discussed above), firms such as mine, which have special expertise in the handling
14 of civil rights cases, will be unable to handle such matters on an extensive basis.

15     16.    I understand that Allred, Maroko & Goldberg took this case on a purely
16 contingent basis and invested over $150,000 in actual costs in order to prosecute this matter
17 through trial, which is not inclusive of seven figures worth of attorney time.  I also understand
18 that the Plaintiff received a significant award of $4 million on his employment discrimination
19 claim. The contingent risk in a case like this is very high and, in my opinion, justifies a multiplier
20 or enhancement to the lodestar calculations.

21     17.    Contingent cases present the very real risk of working hundreds or thousands of
22 hours that may never be fully compensated, or may go uncompensated altogether.
23 Unfortunately, the prospect of loss is very real.  Thus, the risk inherent in contingent
24 representation is, indeed, a reality even in an expected-victory case.  The contingent risk in this
25 case, in my view, was huge because of the amount of time and costs expended while facing a real
26 risk of loss.

27     18.    Based on my discussions with other plaintiff's-side lawyers who represent
28 plaintiffs in contingent employment litigation, including within and outside of my own firm; and,

4
DECLARATION OF LISA BLOOM IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

given the real risk of contingent fee representation (including the risks of an outright loss, a less than fully compensatory result, or the delay in payment), it is the prevailing expectation within the community that a multiplier or enhancement will be awarded when a FEHA plaintiff prevails.  Other factors which contribute to my conclusion that a multiplier is warranted are:

    (A)    preclusion of other employment by Allred, Maroko & Goldberg during the time-frame that they were preparing for and conducting the trial;

    (B)    At The Bloom Firm, I receive telephone calls from many individuals each week seeking legal representation in employment matters. Because of the contingent nature of employment cases, I am able to take only a very few of these cases.  Although I attempt to refer these individuals to other attorneys handling employment cases, there are very few attorneys able to take such cases because of the sophisticated subject-matter and because they are hard-fought, extremely expensive and inevitably result in protracted litigation and appeals.

    (C)    Due to the tremendous number of requests for assistance in employment litigation and the dearth of counsel willing and able to accept such cases, it is imperative that those attorneys willing to provide such representation on a contingency basis be encouraged to do so, through awards of attorneys' fees, which include the multiplier that is necessary to attract and retain competent counsel to accept these types of cases.

19.    An award of the lodestar amount without an enhancement does not compensate the attorney for the contingent risk undertaken.  Given the contingent nature of the representation, the preclusion of other work that necessarily results from a lengthy litigation and trial such as this trial, and the exceptional result obtained, I believe that a multiplier of the lodestar is reasonable in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 16 day of September 2025, in Los Angeles, CA.


Lisa Bloom (Sep 16, 2025 12:46:44 PDT)

LISA BLOOM

5
DECLARATION OF LISA BLOOM IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES