1  DOLORES Y. LEAL (134176)
   OLIVIA FLECHSIG (334880)
2  ALLRED, MAROKO & GOLDBERG
   6300 Wilshire Blvd. Suite 1500
3  Los Angeles, CA 90048-5217
4  (323) 653-6530
   dleal@amglaw.com
5  oflechsig@amglaw.com

6

7  **Attorneys for Plaintiff MARK SNOOKAL**

8

9                   UNITED STATES DISTRICT COURT

10                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12 | MARK SNOOKAL, an individual,              ) CASE NO.: 2:23-cv-6302-HDV-AJR
                                               )
13 |                                           ) **DECLARATION OF TAMARA FREEZE**
                                               ) **IN SUPPORT OF PLAINTIFF MARK**
14 |         Plaintiff,                        ) **SNOOKAL'S MOTION FOR**
                                               ) **ATTORNEYS' FEES**
15 |                                           )
   |   vs.                                     )
16 |                                           ) [Filed concurrently herewith Plaintiff Mark
                                               ) Snookal's Notice of Motion and Motion for
17 | CHEVRON USA, INC., a California           ) Attorneys' Fees and Costs; Tables 1 and 2 to
   | Corporation, and DOES 1 through 10,      ) Plaintiff's Motion for Attorneys' Fees and
18 | inclusive,                                ) Costs; Declarations of Dolores Y. Leal, Olivia
                                               ) Flechsig, Renee Mochkatel, Karis Stephen,
19 |                                           ) Sabria Medler, J. Bernard Alexander, III, Lisa
   |         Defendants.                       ) Bloom, and Mark Snookal; and [Proposed]
20 |                                           ) Order Granting Plaintiff's Motion for
                                               ) Attorneys' Fees and Costs]
21 |                                           )
                                               )
22 |                                           ) Action Filed: August 3, 2023
                                               ) Trial Dates: August 19-25, 2025
23 |                                           ) Judgment Entered: September 3, 2025
                                               )
24 |                                           ) Date:  November 13, 2025
                                               ) Time:  10:00 a.m.
25 |                                           ) Crtrm: 5B
                                               )
26

27

28

DECLARATION OF TAMARA FREEZE IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

## DECLARATION OF TAMARA FREEZE

I, TAMARA FREEZE, declare:

1. I am an attorney at law fully licensed to practice before all of the Courts of the State of California and am the founding Partner of Workplace Justice Advocates.

2. I have personal knowledge of the material facts set forth herein, except those where I have indicated my statement is based on information and belief. If called upon as a witness, I could competently testify thereto.

3. I make this Declaration in support of Plaintiff Mark Snookal's Motion for Attorneys' Fees.

4. I am a managing partner at Workplace Justice Advocates, PLC, a plaintiff's employment law firm. I graduated from the University of California, Los Angeles, in 2000 with a Bachelor of Arts degree in Political Science. In 2005, I received my Juris Doctor from University of California, Berkeley School of Law in Berkeley, California. I was admitted to the California State Bar in 2005 and started practicing in a law firm Littler Mendelson P.C. (now Littler) as a first-year associate. I have dedicated almost 20 years of my career exclusively to employment law.

5. For 19 years, I have had extensive experience representing employers and employees in employment discrimination cases. Upon my graduation from law school, I joined a leading employment defense law firm in the country, Littler Mendelson P.C. in San Francisco, CA, as an Associate. At Littler, I handled exclusively employment law cases, working on drafting motions, discovery, some witness interviews, and pre-trial practice. I worked at Littler from 2005 until 2007.

6. In 2007, I joined Bryan Cave, LLP in Irvine, CA, another national law firm, as a junior employment law associate. At Bryan Cave, LLP, I worked on numerous litigation matters, including summary judgment motions, discovery, evidence gathering, witness and client interviews, extensive employment law research and writing. I worked long hours to perfect my skills and developed a habit of achieving nothing less than high quality legal work. I worked at the firm until February 2009.

7. My focus on plaintiff employment law began in 2009, when I started my own law firm: Law Offices of Tamara Freeze ("LOTF"), focusing exclusively on plaintiff's employment law. At LOTF, I worked on heavily litigated cases, many of which were litigated for over two-three years, resulting in massive amount of discovery, motion practice, pre-trial and trial work.

8. In 2013, I renamed my firm to Workplace Justice Advocates, PLC. As a plaintiff's employment lawyer, I litigate both federal and state employment discrimination cases, from intake through the end of trial, post-trial and appeals. My experience includes successfully opposing voluminous motions for summary judgment in employment discrimination cases, as well as trying cases to verdict. I usually take only a handful of cases, as I focus on quality of legal work rather than volume. I always conduct thorough discovery, engage in extensive meet and confer process with counsel, take multiple depositions, do thorough legal research, and file motions, if necessary. My focus is on quality, not quantity.

9. I successfully tried multiple cases to verdict, obtaining six, seven and eight-figure verdicts in employment cases. On November 6, 2014, I won a $1,377,000 verdict on behalf of a terminated employee in disability discrimination/retaliation case. On February 24, 2015, Los Angeles Superior Court Judge Steven J. Kleifield (Ret.) approved my rate of $450 per hour for my work on that trial, performed during October-November 2014 for a FEHA disability discrimination/failure to accommodate case on behalf of a resident manager against the County of Los Angeles, *Mayo v. Community Development Commission*, BC486184.

10. On June 6, 2015, I won another $550,000 verdict in a FEHA disability discrimination case. On January 8, 2016, San Bernardino Superior Court Judge Keith Davis approved my rate of $485 per hour for trial performed during a June 2015 FEHA disability discrimination/failure to accommodate case on behalf of a custodian against the Chino Valley Unified School District, *Snead v. Chino Valley Unified School District*, CIVRS 1101184. The judge awarded us a multiplier of 1.5.

11. On November 10, 2016, Orange County Superior Court Judge Geoffrey Glass approved my rate of $500 per hour for my successful work on an anti-SLAPP Motion, defeating Defendant's cross-complaint. Judge Glass also awarded me a 0.5 multiplier.

12. On April 17, 2017, a colleague and I won a historic $25,142,120 verdict in a whistleblower retaliation case in Los Angeles County Superior Court (*Babyak v. Cardiovascular Systems, Inc.* (LASC Case No. BC601259). That verdict is believed to be one of the largest single-plaintiff Whistleblower Retaliation verdicts in American history. In 2017, I was nominated as a finalist for the Consumer Attorneys Association of Los Angeles (CAALA) Trial Lawyer of the Year Award for my trial work in that case – a highly selective honor.

13. On November 23, 2023, I won a $112,000 Equal Pay Act in Los Angeles Superior Court. On June 18, 2024, Los Angeles Superior Court judge, Daniel M. Crowley approved my rate rage of $750-$950 per hour ($750 for 2020, $800 for 2021, $850 for 2022, $900 in 2023-2024) and awarded my co-counsel and I over $1 million in attorney's fees, despite a very small recovery on only one cause of action.

14. On March 27, 2024, Mr. Hannemann and I tried a whistleblower retaliation case together on behalf of a terminated school safety officer against Redlands Unified School District and obtained a $800,000 verdict. In that case, Judge Jay Robinson approved my rate at $900 per hour (for 2023-2024), $850 per hour (for 2022), $800 per hour (for 2021), and $750 per hour (for 2020). He also approved hourly rates for my associates: Xinyue Liu (at $325 per hour) and Sharon Perez (at $350 per hour). The court also awarded 1.5 multiplier for our work on the case. A copy of the order is attached hereto as **Exhibit A.**

15. In November 2024, Mr. Hannemann and I tried a whistleblower retaliation case together on behalf of a terminated CFO against Global Win Capital Corporation and obtained a $2,248,290.07 verdict. In that case, Judge Joseph Lipner approved my rate at $950 per hour (for 2025), $900 per hour (for 2023-2024), $850 per hour (for 2022), $800 per hour (for 2021), and $750 per hour (for 2020). The court also awarded 1.3 multiplier for our work on the case. A copy of the order is attached hereto as **Exhibit B.**

16. In May 2025, I tried a defamation case in Los Angele Superior Court (*Heffernan v. Bilzerian et al.*, 20STCV25549) and obtained a $6.5 million verdict.

17. Recognizing my trial and litigation experience, in 2017, 2020, and 2024, the Daily Journal named me to its list of the top 75 Labor and Employment Attorneys, a rare honor

reserved for only most exceptional employment lawyers in California. I have also been recognized as a Rising Star and thereafter, a Super Lawyer by California Super Lawyers Magazine (published by Thomson Reuters) every year since 2012, an honor reserved for no more than 2.5 percent of the lawyers in the state. I have been featured in the Los Angeles *Daily Journal*, on radio stations and various media. In addition, I was recently named as one of the Top 50 Up-and-Coming Women Lawyers in Southern California and Top 100 Up-and-Coming Southern California Lawyers by Super Lawyers Magazine. My AVVO rating is 10 out of 10.

18. Because of my trial experience, I have been a presenter and trainer at the California Employment Lawyers Association (CELA) Trial College since 2017. I am deeply involved with the Consumer Attorneys Association of Los Angeles (CAALA) and a member of the Diversity and Inclusion, Plaintiff Trial Academy, and Wellness Committee. I frequently speak on various webinars on employment law issues.

19. In 2021-2022, I published five articles in the CAALA Advocate magazine, on various litigation and trial topics. I also served as an Associate Co-Editor for the Advocate magazine in March 2021.

20. My appellate experience resulted in several favorable decisions, as well as one published opinion. While at LOTF, I was the lead counsel who briefed and argued *Harris v. Bingham McCutchen LLP*, 214 Cal. App. 4th 1399 (2013), 134 S. Ct. 903 (cert. denied), before the California Court of Appeal, Second District – a disability discrimination/CFRA case against a national law firm, Bingham McCutchen LLP, which resulted in a published opinion. In 2014, I obtained a favorable Court of Appeal decision from the Second District in another disability discrimination case, *Wile v. Johnson Window Films,* 2014 Cal. App. Unpub. LEXIS 2655 (Cal. Ct. App. Apr. 15, 2014), reversing the summary judgment entered in favor of the employer. Similarly, I overturned another summary judgment on appeal in *Clark v. Hoag Mem'l Hosp. Presbyterian*, No. G051949, 2017 WL 1180423 (Cal. Ct. App. Mar. 30, 2017), a disability discrimination case. In 2022, I obtained a favorable Court of Appeal decision in *Heffernan v. Bilzerian et al*. case, B311531, affirming denial of anti-SLAPP motion.

**Summary of the Snookal Litigation**

21. I understand that, on August 25, 2025, attorneys Dolores Y. Leal and Olivia Flechsig prevailed at trial in <u>Snookal v. Chevron U.S.A. Inc.</u>, a disability employment discrimination case.

22. I am further informed that this was a particularly challenging case, where Plaintiff's counsel overcame many substantial impediments, including obstreperous tactics by defense counsel during discovery which resulted in Plaintiff's counsel having to oppose two Motions for Summary Judgment rather than one; filing two *ex parte* applications; and participating in four Informal Discovery Conferences, all owing to Defendant withholding discovery.

23. I am not aware of any cases other than this in which a Plaintiff prevailed despite a Defendant's assertion of a direct threat defense to disability discrimination.

24. The daunting circumstances of this case and the likely prospect of investing in a losing case would discourage most plaintiff firms from accepting the case, based on the degree of difficulty in litigating the case, let alone preparing for trial in hopes of prevailing.

25. Despite the substantial obstacles faced, Plaintiff's counsel successfully overcame defenses asserted by Defendant Chevron U.S.A. Inc. and persuaded the jury that Defendant violated the Fair Employment and Housing Act awarding a total of $4,000,000 in damages.

26. I have personal knowledge of how difficult it is to try these employment discrimination cases.

27. Civil rights trials are very easy to lose and extremely difficult to win. The cases are legally complex and time consuming, and necessarily preclude other employment. Employment discrimination cases cannot be handled like a personal injury mill. They are time-intensive cases that require specialized expertise in order to address the myriad of defenses available including the direct threat defense under the Fair Employment and Housing Act, Gov't Code Sec. 12940 (a) (1) and Cal. Code Regs., tit.2, sec. 1106(b)-(e). The result of this trial is a testament to perseverance and a tribute to the trial skills of Dolores Leal and Olivia Flechsig who successfully shepherded this case to verdict.

28. In agreeing to accept a case on contingency, plaintiff's counsel must contemplate the prospect of carrying substantial expenses through final resolution, with no guarantee that expenses advanced will be recouped. Many contingent cases are lost, resulting in no fee to the plaintiff's attorney. Other cases settle at a loss, for figures that result in a contingency fee far below the actual fees expended by plaintiff's counsel. If, even when a case goes all the way to trial after years of litigation and the plaintiff prevails, the plaintiff's counsel can only hope to recover the actual time spent, the risks in taking such cases would so greatly outweigh any potential "upside" that Plaintiff firms, which a typically small firms of ten or less like mine, simply could not afford to accept such cases.

29. When Plaintiff's counsel takes the substantial risk involved in representing a plaintiff in a civil rights case, Plaintiff's counsel should be rewarded not only for the legal acumen, but also for the substantial effort and persistence necessary in order to stay the course in seeking justice. That principle is demonstrated by the adversity Plaintiff's counsel overcame in prevailing over the efforts of Chevron, U.S.A., Inc.

### **Qualifications of Dolores Y. Leal**

30. I am personally familiar with the professional abilities and accomplishments of Dolores Y. Leal, whom I have known for about 30 years.

31. During this time, Ms. Leal has consistently been recognized as a stalwart, especially as it relates to litigation of plaintiff employment discrimination cases.

32. Ms. Leal has been a mentor to many new plaintiff employment attorneys and has shared her knowledge, experience and expertise as a speaker at several bar associations, including California Lawyers Association (Labor and Employment Law section), California Employment Lawyers Association ("CELA"), National Employment Lawyers Association ("NELA"), Legal Eagles for Truth and Justice in the American Way ("LEFTJAW"), Los Angeles County Bar Association ("LACBA" Labor/ Employment), Orange County Bar Association ("OCBA" Labor/ Employment), Consumer Attorneys Association of Los Angeles ("CAALA"), Women Lawyers of Los Angeles ("WLALA"), Beverly Hills Bar Association, Association of Workplace Investigators ABA (EEO Committee), and Latina Lawyers Bar

1  Association ("LLBA").

2  33.   For the past 21 years, since 2004, Ms. Leal has been one of Southern California's
3  "SuperLawyers" by Los Angeles Magazine. She was also one of the Top Women Lawyers in
4  Southern California in 2005, 2006, 2012, and 2018. Ms. Leal was also selected as one of the
5  "Top 50 Women Lawyers in Los Angeles" by the Los Angeles Business Journal. Ms. Leal has
6  been recognized as one of the "Best Lawyers" from 2006 to the present. Ms. Leal has always
7  received an "AV" rating, the highest rating from Martindale Hubbell and has always received
8  the highest client rating (10) on AVVO.

9  34.   Ms. Leal wrote a book for employment law attorneys, *Litigating Sexual*
10 *Harassment and Sex Discrimination Cases,* published by James Publishing, which I and many in
11 the employment bar utilized when litigating such cases.

12 35.   Ms. Leal's qualifications and honors are set forth more fully in her Declaration
13 filed concurrently herewith. As such, I will not repeat here. Suffice it to say that Ms. Leal has
14 been a talented and committed plaintiff employment lawyer as long as I have had the pleasure of
15 knowing her

16 36.   I understand that Ms. Leal is seeking an hourly attorney rate of $1,200 per hour.

17 37.   I am readily familiar with the rates charged by attorneys performing both plaintiff
18 and defense employment and traditional civil rights work in California. Based on my
19 experience, Ms. Leal's requested rate of $1,200 is reasonable and well within the range of
20 market value for a lawyer of her caliber, experience and well-deserved reputation.

21 38.   Comparatively speaking, and despite Ms. Leal's years of experience and
22 professional recognition, her rate is at the very low end of what is charged by partners at large
23 defense-side firms.

### Qualifications of Olivia Flechsig

25 39.   I am informed of Ms. Flechsig's qualifications as set forth in her declaration filed
26 concurrently herewith, and I understand Ms. Flechsig is seeking an hourly attorney rate of $650
27 per hour.

28 40.   I am informed that Ms. Flechsig graduated from Stanford Law School in 2020,

and has been working full time for Allred, Maroko & Goldberg since October of 2020.

41. I am further informed that Ms. Flechsig delivered both opening statements and closing arguments in this case, as well as questioning approximately half of the witnesses. In my experience, it is unusual for an associate to play such a central role at trial, and this level of participation, and the verdict, speak to Ms. Flechsig's level of skills and training exceeding her years of experience.

42. Based on my experience and familiarity with the rates charges by both Plaintiff and Defense side firms in this region, Ms. Flechsig's requested rate of $650 per hour is reasonable and well within the range of market value for a lawyer of her qualifications and experience. Comparatively speaking, her hourly rate is less than what is charged by associates at large defense-side firms such as DLA Piper LLP, where judge Joseph Lipner awarded $973.25 for Andrea Ortega, who only had 6 years of experience and $1,032.75 for Akhil Sheth, who only had 9 years of experience. Attached hereto is a true and correct copy of the court order as **Exhibit C**.

### Qualifications of Renee Mochkatel

43. I am informed of Renee Mochkatel's qualifications and abilities as set forth in her Declaration filed concurrently herewith.

44. I understand that Ms. Mochkatel is seeking an hourly rate of $1200, and that she has been paid this rate by hourly clients. Based on my experience and familiarity with the rates charged by both Plaintiff and Defense side firms in this region, his rate is reasonable and well within the range other members of the plaintiffs' civil rights and employment bar with similar qualifications and experience. Comparatively speaking, her hourly rate is less than what is charged by associates at large defense-side firms such as DLA Piper LLP, where judge Joseph Lipner awarded $973.25 for Andrea Ortega, who only had 6 years of experience and $1,032.75 for Akhil Sheth, who only had 9 years of experience. Attached hereto is a true and correct copy of the court order as **Exhibit C**.

/ / /

/ / /

1  I declare under penalty of perjury under the laws of the State of California that the
2  foregoing is true and correct. Executed this 16th day of September 2025 in the County of Los
3  Angeles in the state of California.

_____
Tamara Freeze, Esq.