1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   TRACEY A. KENNEDY, Cal Bar No. 150782
3  ROBERT E. MUSSIG, Cal. Bar No. 240369
   H. SARAH FAN, Cal. Bar No. 328282
4  350 South Grand Avenue, 40th Floor
   Los Angeles, CA 90071-3460
5  Telephone:  213.620.1780
   Facsimile:  213.620.1398
6  E-mail:     tkennedy@sheppardmullin.com
               rmussig@sheppardmullin.com
7              sfan@sheppardmullin.com

8  Attorneys for Defendant.
   CHEVRON U.S.A. INC.,
9  a Pennsylvania corporation

10

11                 UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

13  MARK SNOOKAL, an individual,          Case No. 2:23-cv-6302-HDV-AJR

14              Plaintiff,                **DEFENDANT CHEVRON U.S.A. INC.'S
                                          OPPOSITION TO PLAINTIFF MARK
15         vs.                            SNOOKAL'S MOTION FOR
                                          ATTORNEYS' FEES AND COSTS**
16  CHEVRON USA, INC., a California
    Corporation, and DOES 1 through 10,   [*Filed concurrently with Declaration of
17  inclusive,                            Tracey Kennedy and Appendix of Evidence;
                                          and [Proposed] Order*]
18              Defendants.
                                          Date: November 13, 2025
19                                        Time: 10:00 a.m.
                                          Place: Courtroom 5B – Fifth Floor
20
                                          District Judge: Hon. Hernán De. Vera
21                                        Magistrate Judge: Hon. A. Joel Richlin

22                                        Action Filed: August 3, 2023
                                          Trial Date: August 19, 2025
23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................... 1

II.   THE COURT SHOULD AWARD ONLY REASONABLE FEES ....................... 2

III.  THE FEES REQUESTED BY PLAINTIFF ARE NOT REASONABLE .............. 3

    A.    Plaintiff Seeks Unreasonable Attorneys' Fees for Unreasonable Hours ........ 3

        1.    Plaintiff's Fees Should Be Reduced Due – This Was Neither a Complex Nor Novel Case ...................................................... 3

        2.    Plaintiff's Misrepresentations Regarding the Work Performed in the History of this Case Fails to Justify His Fees. ........................... 4

        3.    Plaintiff's Fees Should Be Reduced Because His Counsel's High Rates Were Not Reasonable in the Context of This Dispute. .......................................................................... 6

        4.    Inadequate Documentation and Descriptions Preclude the Fees Requested and Fees Should be Significantly Reduced ....................... 8

        5.    Erroneous and Inconsistent Entries Are Not Recoverable ............... 10

        6.    Clerical and Administrative Tasks Are Not Recoverable ................. 11

    B.    Plaintiff's Total Fees Award Must Be Further Reduced by Time Allocated to His Unsuccessful Age Discrimination, Failure to Accommodate, and Wrongful Constructive Discharge Claims ................... 12

    C.    A Fee Enhancement Is Clearly Unwarranted. ............................................. 14

    D.    Plaintiff Cannot Recover His Requested Costs, as He Failed to Provide Sufficient Documentation to Support the Amount and Taxability of Each Item Sought ................................................................ 18

IV.   CONCLUSION ............................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

<u>Chalmers v. Los Angeles</u>
796 F.2d 1205 (9th Cir. 1986) ...................................................................2

<u>Chavez v. Cty of Los Angeles</u>
47 Cal. 4th 970 (Cal. 2010)....................................................................14

<u>Corder v. Gates</u>
947 F.2d 374 (9th Cir. 1991) .................................................................14

<u>Cotton v. City of Eureka,</u>
889 F. Supp. 2d 1154 (N.D. Cal. 2012)................................................10

<u>Ctr. for Food Safety v. Vilsack</u>
2011 U.S. Dist. LEXIS 144428 (N.D. Cal. Oct. 12, 2011) ...................9

<u>Davis v. City & Cnty. of San Francisco</u>
976 F.2d 1536 (9th Cir. 1992) ...............................................................11

<u>Em v. Astrue</u>
2012 U.S. Dist. LEXIS 28011 (E.D. Cal. Mar. 2, 2012).....................10

<u>Gamaty v. BMW of N.A., LLC</u>
2022 U.S. Dist. LEXIS 213062 (C.D. Cal. June 29, 2022)...................3

<u>Godwin v. World Healing Ctr. Church, Inc.</u>
2021 U.S. Dist. LEXIS 251767 (C.D. Cal. Oct. 20, 2021) ...................9

<u>Guerrero v. Camp Pendelton & Quantico Housing, LLC</u>
2024 U.S. Dist. LEXIS 18296 (C.D. Cal. Feb. 1, 2024) .......................7

<u>Harman v. City & Cnty. of San Francisco</u>
158 Cal. App. 4th 407 (Cal. Ct. App. 2007).........................................12

<u>Hensley v. Eckerhart</u>
461 U.S. 424 (1983)......................................................................2, 9, 12

<u>Intel Corp. v. Terabyte Int'l</u>
6 F.3d 614 (9th Cir. 1983) .......................................................................2

Kerr v. Screen Extras Guild, Inc.
526 F.2d 67 (9th Cir. 1975) ..................................................................2, 3

Ketchum v. Moses
24 Cal. 4th 1122 (Cal. 2001) ...............................................................14

Kochenderfer v. Reliance Std. Life Ins. Co.
2010 U.S. Dist. LEXIS 41330 (S.D. Cal. Apr. 21, 2010) ...................8

Lahiri v. Universal Music & Video Distrib. Corp.
606 F.3d 1216 (9th Cir. 2010) ..............................................................9

Mangold v. Cal. Pub. Utils. Comm'n
67 F.3d 1470 (9th Cir. 1995) .................................................................2

Missouri v. Jenkins
491 U.S. 274 (1989)..............................................................................11

Muniz v. UPS
738 F.3d 214 (9th Cir. 2013) .....................................................12, 13, 14

Nat.-Immunogenics Corp. v. Newport Tr. Group
2020 U.S. Dist. LEXIS 267231 (C.D. Cal. June 1, 2020)....................8

Navarro v. DHL Global Forwarding
2018 U.S. Dist. LEXIS 85964 (C.D. Cal. May 21, 2018)............15, 18

Odima v. Westin Tucson Hotel
53 F.3d 1484 (9th Cir. 1995) ...............................................................12

Perdue v. Kenny A.
559 U.S. 542 (2010)..............................................................................14

Ridgeway v. Wal-Mart Stores Inc.
269 F. Supp. 3d 975 (N.D. Cal. 2017)..................................................11

Santiago v. Equable Ascent Fin.
2013 U.S. Dist. LEXIS 97762 (N.D. Cal. July 12, 2013) ....................9

Schwarz v. Sec'y of Health & Human Servs.
73 F.3d 895 (9th Cir. 1995) ...........................................................12, 13

Science Applications Internat. Corp. v. Super. Ct.
39 Cal. App. 4th 1095 (Cal. Ct. App. 1995)........................................18

<u>Shevtsov v. Venture Capital W. L.P., et al.</u>
  2023 U.S. Dist. LEXIS 59629 (C.D. Cal. Jan. 9, 2023) ........................................7

<u>Taleff v. Southwest Airlines Co.</u>
  2013 U.S. App. LEXIS 7296 (9th Cir. March 21, 2013) ...................................11

<u>In re Washington Public Power Supply System Securities Litigation</u>
  19 F.3d 1291 (9th Cir. 1994) ...................................................................2

<u>Weeks v. Baker & McKenzie</u>
  63 Cal. App. 4th 1128 (Cal. Ct. App. 1998)........................................16

<u>Welch v. Metro. Life Ins. Co.</u>
  480 F.3d 942 (9th Cir. 2007) .....................................................8, 9, 12

<u>Winterrowd v. Am. Gen. Annuity Ins. Co.</u>
  556 F.3d 815 (9th Cir. 2009) ............................................................2

<u>Zeigler v. Cnty. of San Luis Obispo</u>
  2023 U.S. Dist. LEXIS 85729 (C.D. Cal. Mar. 1, 2023)....................................7


**<u>Statutes</u>**

28 U.S.C. § 1821 ...............................................................................20

Cal. Civ. Proc. Code § 1033.5 ..........................................................19

Cal. Gov. Code § 12965...................................................................16


**<u>Other Authorities</u>**

California Code of Regulations, Title 2, § 7293.8........................................14

California Code of Regulations, Title 2, § 11067 .........................................14

L.R. 54-2.1 .......................................................................................18

L.R. 54-3.5 .......................................................................................19

L.R. 54-3.10 .....................................................................................19

# I.    __INTRODUCTION__

Plaintiff seeks an unreasonable fee award of $2,248,101.00, after a 2.0 multiplier, as well as $155,277.39 in costs. Plaintiff's requested fees are exorbitant for a single plaintiff case, litigated by experienced labor and employment counsel on a case that went to trial on one cause of action.

This was a garden variety employment discrimination case arising from the California Fair Employment and Housing Act ("FEHA"). This was simple—out of the four causes of action arising under FEHA, only one claim proceeded to trial. Indeed, Plaintiff voluntarily dismissed his FEHA age discrimination claim with prejudice after acknowledging it was without merit. Despite this, Plaintiff's counsel has requested more than $1.1 million in fees and then, a 2.0 multiplier. However, the vague time entries reported by counsel in support of this Motion not only hinder a meaningful assessment of the reasonableness of the fees requested, many are erroneous or duplicative, which reflect substandard billing practices, and seek recovery for time spent on unrecoverable administrative tasks.

Moreover, the involvement of multiple attorneys and support staff, along with the request for attorney travel to court (all of the attorneys are in Los Angeles) and duplicative efforts, further inflates the fees sought. The hourly rates requested by Plaintiff's counsel are not justified by the complexity of the matter or the work performed. Plaintiff's counsel also seeks to recover fees associated with litigation work exclusively relating to Plaintiff's claims against Defendant which were dismissed by this Court in connection with Defendant's Motion for Summary Judgment, or which was voluntarily dismissed by Plaintiff with prejudice.

For these and the additional reasons set forth below, the Court should significantly reduce the fees claimed by Plaintiff to a reasonable amount, which should be no more than $276,249.64 and reduce the recoverable costs to $146,998.09.

## II.    THE COURT SHOULD AWARD ONLY REASONABLE FEES

Plaintiff seeks $2,403,378.39 in attorneys' fees and costs for a single plaintiff case, for a trial that lasted four days. As the party petitioning for attorneys' fees, Plaintiff bears the burden of providing evidence supporting the reasonableness of the hours worked and the rates claimed. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (superseded by statute on other grounds); Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 623 (9th Cir. 1983). A court sitting in diversity adjudicating state claims applies California state law to disputes regarding recovery of attorneys' fees and costs. Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1478-79 (9th Cir. 1995); Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815, 827 (9th Cir. 2009) (finding "[s]tate law establishes the required showing for attorneys' fees in an action in diversity).

An award of reasonable attorneys' fees is determined by the lodestar method, whereby the court determines the "lodestar" amount by multiplying the number of reasonable hours expended on the litigation by a reasonable hourly rate. Id. In its evaluation of "reasonable," the court may exclude hours that are excessive, redundant, or otherwise unnecessary and may determine a reasonable hourly rate "considering the experience, skill, and reputation of the attorney requesting fees." Chalmers v. Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986). Furthermore, "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433. The court is "neither obligated to explain what type of records should be submitted nor to request additional information. The burden of presenting the appropriate fee documentation rests squarely on the shoulders of the attorneys seeking the award." In re Washington Public Power Supply System Securities Litigation, 19 F.3d 1291, 1306 (9th Cir. 1994).

"[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975)." Intel Corp., 6 F.3d at 622. These factors include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill

requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Kerr</u>, 526 F.2d at 70. As discussed further below, the fees requested are not reasonable (they are exorbitant). Plaintiff's request for fees and costs should be reduced accordingly.

## III.    THE FEES REQUESTED BY PLAINTIFF ARE NOT REASONABLE

### A.    Plaintiff Seeks Unreasonable Attorneys' Fees for Unreasonable Hours

#### 1.    *Plaintiff's Fees Should Be Reduced Due – This Was Neither a Complex Nor Novel Case*

"[I]t is appropriate for the trial court to reduce a fee award based on its reasonable determination that a routine, noncomplex case was overstaffed to a degree that significant inefficiencies and inflated fees resulted." <u>Gamaty v. BMW of N.A., LLC</u>, No. 21-CV-01063-RGK-AFM, 2022 U.S. Dist. LEXIS 213062, at *7 (C.D. Cal. June 29, 2022) (internal citation omitted). That is the case here.

This is a relatively straightforward case that ultimately encompassed a single cause of action at trial and a sole issue for determination: disability discrimination under FEHA with respect to one job offer. Plaintiff's claim was based on a single decision —the rescission of a job offer in Escravos, Nigeria, one of the most remote locations on earth, after multiple medical professionals determined that Plaintiff could not be medically cleared for duty. In other words, this was not a complex case from a factual perspective because the "facts" were not in dispute.

Despite this being a simple factual case, five attorneys (including two partners billing at $1,200 per hour), billed collectively with numerous entries for internal communications and meetings, as well as duplicative work performed on the same litigation, including countless administrative, tasks. For example, out of 295 billing

entries for Dolores Leal, a partner billing $1,200/hour, approximately 100 (or 66%) are simply for email correspondence. See Appendix of Evidence (spreadsheet of fees to be reduced). Additionally, Renee Mochkatel, another partner who had no billing entries in this matter (and her name is not on any of the pleadings) before September 16, 2024, spent 21.9 hours on work purportedly related to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("MSJ"), including 13.6 hours drafting an unspecified, possibly internal memorandum regarding the MSJ and 7.7 hours on a response to Defendant's MSJ "separate statement." However, Ms. Leal and Ms. Flechsig, who were the only billing attorneys on this case up to that point, both billed significant amounts of time specifically relating to the drafting of Plaintiff's opposition to Defendant's Statement of Uncontroverted Facts—13.8 hours by Ms. Leal, and 15.45 hours by Ms. Flechsig. Ms. Mochkatel also billed for tasks ostensibly relating to trial preparation, including preparation for an unspecified witness cross examination, although she did not attend or otherwise participate in trial. All of Ms. Mochkatel's time should be reduced ($26,280 for work on the MSJ and $14,040 for the unspecified trial preparation (total amount of $40,320)). See Kennedy Decl., Appendix.

The involvement of five attorneys, including two partners, was unnecessary for litigating a straightforward FEHA case. Ms. Leal, along with her associate Ms. Flechsig, could have effectively managed the case. The inclusion of an additional firm partner at a rate of $1,200/hour, whose time was primarily spent drafting an unspecified memorandum, as well as two associate attorneys, one of whom primarily billed for administrative and/or training tasks, was not required. Plaintiff's request for attorneys' fees should be reduced accordingly. See Appendix, Ex. A.

### 2. Plaintiff's Misrepresentations Regarding the Work Performed in the History of this Case Fails to Justify His Fees.

Plaintiff purposely paints a misleading picture by claiming that Defendant engaged in discovery delays or intended to over-litigate this case, claiming that "Chevron failed to

1  settle this case during two prior mediations".[1] Plaintiff's accusations are patently false

2  and such a contention is not a basis for an exorbitant award of fees, nor justifies a 2.0

3  multiplier. Defendant engaged in a good faith effort to reach an informal resolution of

4  this matter at an early mediation with a jointly agreed upon mediator. Kennedy Decl., ¶ 2.

5  After the parties were unable to resolve this matter during a full day mediation with a

6  mutually agreed-upon mediator, Defendant continued to engage in good faith discussions

7  with Plaintiff (and the mediator) to resolve this case on multiple occasions prior to trial.

8  Id.; See also Ex. A/25 and A/26 (Counsel's time records) That the parties were unable to

9  reach a settlement is hardly evidence of misconduct or over-litigation *by Defendant*, as

10 Plaintiff suggests. The inability to settle a case cannot be blamed on one party, nor be the

11 basis for excessive attorney's fees, especially when all of the claims asserted by Plaintiff,

12 including the claim for punitive damages were dismissed before trial. Clearly, because

13 most of Plaintiff's claims failed to survive summary judgment, his attorney is not entitled

14 of all of his fees, and clearly not entitled to a multiplier because "Chevron failed to

15 settle." The failure to settle cannot form the basis of an award of attorney's fees,

16 especially given the dismissal of a majority of Plaintiff's claims before trial.

17      Additionally, Plaintiff makes much of a purported "discovery delay" and

18 "aggressive" litigation tactics in support of his assertion that that the hours spent on this

19 case were reasonable. However, Plaintiff failed to acknowledge that any purported delay

20 in discovery was the result of his own lack of diligence. This case was filed in August

21 2023. Dkt. 1. Plaintiff did not propound his first set of written discovery until May 7,

22 2024, more than seven months after this action was filed. Kennedy Decl., ¶ 3. Plaintiff

23 did not seek to depose any of the Nigerian based doctors until July 11, 2024, despite

---

[1] Plaintiff's representations that Chevron failed to settle are misleading. Motion at 2. The first mediation was the action filed with the administrative agency, where Plaintiff represented himself, and counsel for Chevron was not involved. Kennedy Decl. ¶ 2. The second mediation was with an agreed upon mediator, Angela Reddock-Wright, who continued to work *with the parties* on resolution up until the time of trial. Id. See also Plaintiff's time entries regarding "Angela", ARW or "mediator". Plaintiff's Motion, Exs. A/3, A/7. A/8, A/25, A/26.

knowing about their involvement since before September 19, 2023. Id. Plaintiff filed two wholly unnecessary ex parte applications for discovery sanctions after the close of discovery and on the eve of the hearings on Defendant's MSJ, without making any efforts to meet and confer in good faith. Kennedy Decl., ¶ 4. Dr. Stephen Frangos, the doctor who was the focus of Plaintiff's belated attempts to reopen discovery, was not an unknown witness, and Plaintiff had made no efforts at all to take discovery regarding Dr. Frangos until after discovery closed . Id. Indeed, as Plaintiff's counsel is well aware, and disingenuously failed to acknowledge in the moving papers, due to a medical condition, Dr. Frangos was medically incapable of testifying at deposition and could not provide any new or material information regarding this case. Id. Nevertheless, the reopening of discovery necessitated the re-filing of Defendant's MSJ and, rather than engage in good faith meet and confer efforts, Plaintiff again rushed into court to request discovery sanctions via a second ex parte application (which was denied). Id. During Defendant's subsequent efforts to meet and confer, the focus of Plaintiff's second ex parte request was monetary sanctions associated with matters already addressed by the Court with respect to Plaintiff's first ex parte application, rather than need for discovery. Dkt. 49-02, ¶¶ 8-9.

Had Plaintiff engaged in good faith meet and confer efforts, instead of trying to obtain a tactical advantage through the filing of unnecessary motions and the continuous threat of unwarranted discovery sanctions, much of the work cited by Plaintiff in support of his fees request would have been obviated. As such, the hours claimed to have been worked by counsel are not reasonable, and Plaintiff's fees should be reduced accordingly. The total number of those hours is 50.88 and the fees should be reduced by $33,102.00. See Appendix, Ex. A.

### 3. *Plaintiff's Fees Should Be Reduced Because His Counsel's High Rates Were Not Reasonable in the Context of This Dispute.*

Plaintiff's fee request must be reduced because the hourly rates are not. As explained *supra* in section III(A), this was not a complex case (one claim and one plaintiff), and accordingly, the hourly rate for counsel should reflect this simplicity.

Ms. Leal and Ms. Mochkatel request $1,200 as a reasonable hourly rate for their services. As experienced employment litigators, notably their declarations do not attest that any court has ever approved $1,200 as their hourly rate. Indeed, their declarations fail to cite any approval of a $1,200 rate, as such a rate is not reasonable. See Guerrero v. Camp Pendelton & Quantico Housing, LLC, 2024 U.S. Dist. LEXIS 18296, *13-14 (C.D. Cal. Feb. 1, 2024) (finding an hourly rate of $890 to be inappropriately high and reducing the hourly rate to $750) (citing Shevtsov v. Venture Capital W. L.P., et al., 2023 U.S. Dist. LEXIS 59629, at *5 (C.D. Cal. Jan. 9, 2023) (finding a $350 hourly rate was reasonable for a fair housing act practitioner with twenty years of litigation experience); Zeigler v. Cnty. of San Luis Obispo, 2023 U.S. Dist. LEXIS 85729, at *5 (C.D. Cal. Mar. 1, 2023) (finding a $750 hourly fee to be reasonable for an "equity, named partner of" a law firm in a civil rights litigation) (citing the 2022 Real Rate Report, published by Wolters Kluwer)). Given that this case is a non-complex, simple claim, single issue employment discrimination matter, their hourly rates should be reduced by at least 25% to $895. See Appendix, Ex. B (2024 Wolters Kluwer Real Rate Report).

Ms. Flechsig, who was trial counsel and billed by far the most amount of hours at her firm to this action, attested that she has only four years of experience (two years when this case was filed). Ms. Flechsig's declaration fails to attest that any court has ever approved her hourly rate of $650, as such a rate is not reasonable. See Zeigler v. Cnty. of San Luis Obispo, 2023 U.S. Dist. LEXIS 85729, *15-16 (C.D. Cal. Mar. 1, 2023) (noting hourly rates for litigation associates between $400 to $855 per hour, and approving an hourly rate of $550 for an attorney with 11 years of litigation experience). Defendant suggests that Ms. Flechsig's hourly rate be reduced to $477. See Appendix, Ex. B (2024 Wolters Kluwer Real Rate Report).

Junior attorneys with less than two years of experience each, Ms. Stephen and Ms. Medler, request $450/hour as a reasonable hourly rate for their services. Ms. Stephen was admitted to the bar in December 2023, and Ms. Medler was admitted in December 2024.

No courts have ever approved their hourly rates, and given their level of experience and the comparable rates in Los Angeles County, their hourly rate be reduced to $400.

The declarations of other FEHA practitioners submitted by Plaintiff in support of their hourly rates should be disregarded in their entirety. These declarations are not objective evidence of prevailing rates. Each of the attorneys who submitted declarations on Plaintiff's behalf practice in Los Angeles County and in the Central District Court of California, and have a vested interest in the Court's determination that higher hourly rates for their work is reasonable. See Kochenderfer v. Reliance Std. Life Ins. Co., 2010 U.S. Dist. LEXIS 41330, at *4 (S.D. Cal. Apr. 21, 2010) ("[T]he value of these declarations is questionable because they are both self-serving and self-perpetuating. Each of these attorneys works [in this area of the law] and claiming that the rates charged by Plaintiff's counsel, no matter how high, is in their own interest. A high award in this case would support the declarants' own high hourly rate requests in the future."). Indeed, Ms. Leal has submitted at least one substantively identical declaration in support of the attorneys' fees motions of the other plaintiffs' attorneys who made attestations in connection with the instant motion. See, e.g., Appendix, Ex. C *(Leal's declaration in support of Lisa Bloom's (daughter of Gloria Allred (Ms. Leal's law partner and the name partner of her firm) motion for attorneys' fees and costs))*. These are quid pro quo declarations and should be ignored.

### 4. *Inadequate Documentation and Descriptions Preclude the Fees Requested and Fees Should be Significantly Reduced*

"[B]lock billing is not a particularly good practice for law firms that expect to seek approval of reasonable attorney fees even if all items listed in a block are compensable." Nat.-Immunogenics Corp. v. Newport Tr. Group, No. 219MC00011JVSMAA, 2020 U.S. Dist. LEXIS 267231, at *31 (C.D. Cal. June 1, 2020) (*citing* Welch v. Metro. Life Ins. Co., 480 F.3d 942, 947 (9th Cir. 2007)). Plaintiff's block billing hinders meaningful scrutiny of his time entries. For instance, it is unclear how much time Plaintiff seeks compensation for regarding the tasks "Review file, client docs," etc. See Appendix, Ex.

A-3. This is not an entry that conveys what legal work was actually done, and there is no way to discern that this work is actually compensable. All entries that are block billed should be reduced accordingly, as these entries lack detail about how much time was spent on each task. The Court has discretion to apply a 10%-30% fee reduction to account for time inflations caused by block billing. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007); see also Lahiri v. Universal Music & Video Distrib. Corp., 606 F.3d 1216, 1222-23 (9th Cir. 2010) (affirming 30% reduction to 80% of billable hours to account for 80% block billing rate). Reviewing Plaintiff's submitted time entries, there is a more than 16% block billing rate (more than 167 entries out of 1002 entries were block billed). See Appendix, Ex. A-3. This Court should apply a 30% reduction to these entries, and therefore reduce fees in the amount of $146,521.65. See id. Block billing also suggests that these entries are not contemporaneous, which also calls into question the veracity of the entries.[2]

It is Plaintiff counsel's burden to submit "evidence supporting the hours worked and rates claimed." Hensley, 416 U.S. at 433. That requires bills and time entries that clear and understandable, and demonstrate in no uncertain terms as to the work that was performed and for how long. "Billing entries must provide the Court sufficient detail to evaluate what work was performed. In particular, courts have rejected fee awards for entries that fail to identify the subject matter of the documents reviewed or the topic of conversation in a telephone conference." Godwin v. World Healing Ctr. Church, Inc., No. 821CV00555JLSDFM, 2021 U.S. Dist. LEXIS 251767, at *10-11 (C.D. Cal. Oct. 20, 2021) (internal quotations and citations omitted); see also Ctr. for Food Safety v. Vilsack, 2011 U.S. Dist. LEXIS 144428, at *24-25 (N.D. Cal. Oct. 12, 2011) (entries are too vague when the court cannot discern how they are attributable to the case at hand); Santiago v. Equable Ascent Fin., 2013 U.S. Dist. LEXIS 97762, at *17 (N.D. Cal. July

---

[2] As a contingency law firm, there is no client who receives and reviews the time entries related to work performed, which means there is no oversight or accountability for time.

12, 2013). (descriptions that consist only of "conferences," "telephone calls," or "review of documents" are too vague to review). For example, entries that simply state "[p]repare and mail documents to client" without specifying the documents, or "[p]repare documents and serve three government defendants" without additional context, lack the specificity required to assess their reasonableness or compensability. <u>Em v. Astrue</u>, No. 1:10-CV-01414-LJO, 2012 U.S. Dist. LEXIS 28011, at *17-18 (E.D. Cal. Mar. 2, 2012), *report and recommendation adopted*, No. 1:10-CV-01414-LJO, 2012 U.S. Dist. LEXIS 41159 (E.D. Cal. Mar. 26, 2012).

Here, Plaintiff's counsel's narratives are consistently filled with vague descriptions that do not provide any meaningful insight into what legal work was actually done, and whether it is compensable legal work. For example, numerous entries merely state "Legal Research" (e.g., April 13, 2023, June 30, 2023). Others merely state "Review file" or "Review client docs" (e.g., June 29, 2023, March 27, 2024, April 2, 2024, April 5, 2024, November 11, 2024). Appendix, Ex. A-4. Such entries fail to adequately describe the legal work being performed. By way of example, numerous entries relating to written email correspondence merely state "Draft email(s)" without further detail or elaboration on the content or purpose of those communications (e.g., July 24, 2023, October 18, 2023). <u>Id.</u> Counsel's entries showcase a pattern of repetitive narratives that lack specific detail, including numerous identical entries for the drafting of a single document by multiple attorneys (e.g., "Review & Revise complaint" and variations, from June 30, 2023, through July 31, 2023). <u>Id.</u>

Counsel's vague entries frustrate efforts to confirm that Plaintiff's fees were reasonable. Therefore, Plaintiff's fees must be reduced in the amount of $103,243.00. See Appendix, Ex. A-4.

### 5.     *Erroneous and Inconsistent Entries Are Not Recoverable*

Billing inconsistencies warrant reduction. <u>See</u> Cotton v. City of Eureka, 889 F. Supp. 2d 1154, 1179 (N.D. Cal. 2012). There are multiple time entries for internal meetings and conferences which purportedly occurred, but which are not consistently

1  billed by the participating attorneys (e.g., April 15, 2023, April 2, 2024). Appendix, Ex.

2  A-5. Although these entries state that an attorney internally conferred or communicated

3  with another attorney, the billing records of the other attorneys, which Plaintiff's counsel

4  asserts are contemporaneously prepared, do not consistently reflect that these meetings

5  occurred. Id. Each of these entries likewise lack sufficient narrative to explain the subject

6  matter of the conferences and make it impossible to determine the reasonableness of the

7  duration or frequency of these internal conferences. Therefore, Plaintiff's fees must be

8  reduced in the amount of $70,398.00. Id.

9        **6.    *Clerical and Administrative Tasks Are Not Recoverable***

10        It is well settled that "purely clerical or secretarial tasks should not be billed at a

11  paralegal rate," much less at an attorney rate, even if an attorney performs such work.

12  Missouri v. Jenkins, 491 U.S. 274, 288, fn. 10 (1989). Tasks that are clerical or

13  administrative in nature, such as calendaring, scheduling, scanning, downloading

14  documents are not compensable as attorneys' fees, even where they are performed by

15  attorneys. See Ridgeway v. Wal-Mart Stores Inc., 269 F. Supp. 3d 975, 991-92 (N.D. Cal.

16  2017) (rejecting such billing as clerical). Additionally, "[f]iling is clerical work that may

17  not be billed at attorneys' hourly rates." Taleff v. Southwest Airlines Co., 2013 U.S. App.

18  LEXIS 7296, *8 (9th Cir. March 21, 2013) (blocked billed fees disallowed as well as fees

19  intra-office conferencing as unnecessary and duplicative) (citing Missouri, 491 U.S. at fn.

20  10; Davis v. City & Cnty. of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992))

21  (reducing attorneys' fees associated with filing work and reducing block-billed time

22  entries including filing work). Not only did Plaintiff bill for time spent for filing and

23  other office tasks, Plaintiff's time entries also reflect time billed for downloading

24  software, attending training regarding that software, testing out the software, and for

25  setting up a printer. See Appendix, Ex. A-6. All of counsel's time billed for such clerical

26  and administrative work should be reduced by $35,416.50.

27        Further, counsel's time entries contain numerous entries for internal written and

28  oral communications, which involve more than one attorney—many of these entries for

purported meetings or communications are billed for only one attorney and do not have a corresponding time entry from the other participating attorney, which calls into question whether such communications occurred at all, when Plaintiff's counsel all attested they entered their time contemporaneously with the work performed. See Appendix, Ex. A-4. Duplicative internal meetings, telephone calls, discussions, and emails by attorneys within the firm are likewise unnecessary and not recoverable given the garden variety nature of the claims at issue and the experience of the attorneys involved in this matter. See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 949 (9th Cir. 2007) (affirming reduction of fees for intra-office conferences); see Appendix, Ex. A-7. The fees should be reduced by $15,982.00. Id.

### B. Plaintiff's Total Fees Award Must Be Further Reduced by Time Allocated to His Unsuccessful Age Discrimination, Failure to Accommodate, and Wrongful Constructive Discharge Claims

Plaintiff's fee award must be further reduced to reflect the time his counsel dedicated to the unsuccessful prosecution of his claims for age discrimination, failure to accommodate, and wrongful constructive termination as well as punitive damages. Time spent on unsuccessful or unrelated claims is not compensable. "The limited success determination has two components: first, the court must deduct from the lodestar hours spent exclusively on unrelated unsuccessful claims; and second, the court must evaluate the remaining hours to determine if they were reasonably necessary to achieve the result obtained." Hensley, 461 U.S. at 434; Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1499-1500 (9th Cir. 1995). A court may simply "reduce the award to account for limited success." Hensley, 461 U.S. at 440; Harman v. City & Cnty. of San Francisco, 158 Cal. App. 4th 407, 418 (Cal. Ct. App. 2007); see also Muniz v. UPS, 738 F.3d 214, 224 (9th Cir. 2013).

Claims are unrelated if they are based on "distinctly different claims for relief that are based on different facts and legal theories" or do not "involve a common core of facts or based on related legal theories." Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 901 (9th Cir. 1995) (quoting Hensley, 461 U.S. at 434-35). Fees for time expended

on unrelated, unsuccessful claims may not be included in the final fee award. <u>Schwarz</u>, 73 F.3d at 901. If the unsuccessful and successful claims are related, the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." <u>Id</u>. at 901-02. A claim is considered unsuccessful once it has been dismissed by the plaintiff or by the court. <u>Id.</u> at 902.

After litigating for several months (i.e., thousands of dollars in fees), Plaintiff voluntarily dismissed his age discrimination claim with prejudice on September 27, 2024. Dkt. 28. Plaintiff's claims for failure to accommodate and for wrongful constructive termination were dismissed by the Court on June 11, 2025, per Defendant's MSJ. Dkt. 63. The factual and legal bases for Plaintiff's claims for age discrimination, failure to accommodate, and wrongful constructive discharge are factually and legally unrelated to Plaintiff's remaining disability discrimination claim, and time and fees expended by Plaintiff in connection with these claims are not recoverable.

Plaintiff's age discrimination claim and his disability discrimination claims are distinctly different claims for relief—the only act Plaintiff alleged as the basis for his disability discrimination claim was the rescission of the job offer in Nigeria, whereas Plaintiff's age discrimination claim focused on job positions that he did not receive following the rescission of the job offer. <u>See</u> Dkt. 1, ¶¶ 29-31; <u>see also</u> <u>Schwarz</u>, 73 F.3d at 903 (affirming sex discrimination claim unrelated to race discrimination claim); <u>Muniz</u>, 738 F.3d at 224 (affirming age discrimination claim unrelated to retaliation claim). Additionally, all or substantially all of Plaintiff's failure to accommodate claim relates to his contention that Defendant failed to accommodate him with an equivalent position <u>after</u> the rescission of the job position in Nigeria. <u>See</u> Dkt. 43-1, at pp. 33-34. Plaintiff's wrongful constructive discharge claim was without merit at the time of filing, because he quit 3 years after the rescission of his job offer. <u>See</u> Dkt. 63, pp. 13-14.

Given the vague nature of Plaintiff's time entries as a whole, there is no clear allocation in counsel's billing records separating work performed on the three unsuccessful claims from the disability discrimination claim. Without clear segregation,

the risk of awarding fees for unsuccessful work is significant. As such, to reflect the proportionality of this claim to the work performed, Defendant requests Plaintiff's fees be further reduced by 50% to account for allocation of work to the unsuccessful claims. See Muniz, 738 F.3d at 225 (citing Chavez v. Cty of Los Angeles, 47 Cal. 4th 970, 985, fn. 6 (Cal. 2010) (finding that a downward adjustment from the lodestar is permissible under California law); Corder v. Gates, 947 F.2d 374, 378 (9th Cir. 1991) (finding that while lodestar adjustment is disfavored in the 9th Circuit, it does not nullify a court's fee award where the court makes only one reduction for lack of success)). Accordingly, after accounting for reductions for the billing issues described above, Plaintiff's fees should be reduced by 50% - that is by $339,533.68. See Appendix, Ex. A.

## C.     A Fee Enhancement Is Clearly Unwarranted.

There is no legal justification for any multiplier, much less a 2.0 multiplier. An upward enhancement to the lodestar is permissible only in "extraordinary circumstances" as there is a "strong presumption" that the lodestar figure is reasonable. Perdue v. Kenny A., 559 U.S. 542, 554 (2010). While a court may have discretion to include a fee enhancement "in the appropriate case," it is not required to do so, and the party seeking the enhancement has the burden of proof. Ketchum v. Moses, 24 Cal. 4th 1122, 1138 (Cal. 2001). In Ketchum, the Court held the following factors should be considered when deciding whether to include a multiplier: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award. Ketchum, 24 Cal.4th at 1132. Based on these criteria, there are no extraordinary circumstances here that would justify a lodestar multiplier.

First, Plaintiff argues for a 2.0 fee enhancement claiming that this was a difficult and novel case. This is clearly untrue. Plaintiff filed a garden variety employment FEHA discrimination lawsuit. The "direct threat" or "health or safety" defense, which is premised on California Code of Regulations, title 2, section 11067, a defense which has been substantively codified in its current form since 2013, and which has been in effect

1  well before that with continuous regulatory effect in its prior form at Section 7293.8. Cal.

2  Code Regs., tit. 2, § 11067. There is nothing novel or difficult about the issues in this

3  case—Plaintiff claimed that Defendant unlawfully rescinded his job offer due to his

4  disability, and Defendant contends that it lawfully rescinded the job offer due to an

5  established statutory exception under FEHA. The evidence presented is hardly out of the

6  ordinary for a disability discrimination matter, including testimony regarding the nature

7  and extent of Plaintiff's disability and the reasonableness of Defendant's decision to

8  rescind Plaintiff's job offer.

9       Plaintiff's Motion suggests that because the jury disregarded substantial evidence

10  regarding the health and safety risk posed by Plaintiff's heart condition in a medical

11  resource sparse location of Escravos, that this is attributable to particular skill by

12  Plaintiff's counsel rather than the jury's passion, prejudice or ascertainment of the

13  evidence. As Plaintiff appears to acknowledge, there has never been a ruling by any court

14  that a jury can disregard the reasonable medical judgment of medical professionals (here,

15  multiple medical professionals) who determined that an employee could not safely

16  perform the essential duties of a job in Escravos. Regardless of counsel's argument, the

17  difficulty of overcoming the affirmative defense is "largely accounted for in the lodestar"

18  and should not be doubly compensated via a fee enhancement. See Navarro, 2018 U.S.

19  Dist. LEXIS 85964 at *15 (declining to award a multiplier).

20       Second, Plaintiff contends that the jury's verdict was a "spectacular result," which

21  warrants a 2.0 fee enhancement. However, Plaintiff failed to acknowledge that he sought

22  more than $8 million in damages at trial, meaning that the $4 million award ultimately

23  received is less than half of what Plaintiff sought to recover. Even where a jury awards

24  damages in excess of a plaintiff's request, which it did not do here, it does not require a

25  finding that the results or that counsel's skills in presenting the claims were

26  "exceptional." See Navarro v. DHL Global Forwarding, 2018 U.S. Dist. LEXIS 85964,

27  *15 (C.D. Cal. May 21, 2018) (declining to award a multiplier in a case where the jury

28

1    awarded damages in excess of the plaintiff's request because the issues were neither

2    novel nor complex).

3        Third, Plaintiff argues for a 2.0 fee enhancement based on the fact that his counsel

4    took the case on a contingency basis over the course of approximately two years.

5    Plaintiff's opposition cites to inapposite authorities in support of his argument for a fee

6    enhancement, which have been expressly distinguished by California courts for FEHA

7    cases. The mere fact that counsel agreed to a contingency arrangement does not create a

8    cognizable "risk" when counsel has a reasonable expectation of recovering *statutorily*

9    *mandated* attorneys' fees if he prevails, as is the case under the FEHA. See Weeks v.

10   Baker & McKenzie, 63 Cal. App. 4th 1128, 1170-71 (Cal. Ct. App. 1998) (noting that

11   Cal. Gov. Code § 12965 "created a reasonable expectation that attorney fees would not be

12   limited by the extent of [the employee's] recovery" for a prevailing employee). It cannot

13   be forgotten, and Plaintiff clearly knows, that in a FEHA case the risk of no fees is

14   virtually impossible if there is verdict in favor of the Plaintiff. Given the mandatory

15   nature of a fee award, the risk is low for a contingency attorney on a FEHA case. What

16   Plaintiff is really suggesting is not that there is "risk" associated with a contingency case,

17   but there is risk in not getting an exorbitant fee award.

18       Counsel's decision is not a basis for an award of fees—it is their chosen business

19   model. Where there is a fee-shifting statute, as there is here under FEHA, the "contingent

20   risk" at issue is nothing more than a risk that an employee may not prevail (which is

21   present in every case). "Such a risk is inherent in any contingency fee case and is

22   managed by the decision of the attorney to take the case and the steps taken in pursuing

23   it." Weeks, 63 Cal. App. 4th at 1175 (reversing and remanding the trial courts' use of a

24   1.7 multiplier). In fact with a statutory mandate for fees for the employee as in FEHA

25   cases, the contingency nature poses less of a "risk." As such, there was no cognizable risk

26   in taking on this FEHA matter (with a mandatory fee award provision), as the only real

27   risk for Plaintiff was bringing an unmeritorious case—an inherent risk, which in any case

28   cannot justify the use of a multiplier. Id. at 1174.

1       Finally, Plaintiff's counsel asserts that approximately 25%-30% of their average

2  annual billable working hours was spent on this case. As a matter of simple arithmetic,

3  Plaintiff's counsel overinflates their annual investment in this matter. The total hours

4  billed by Plaintiff's counsel on this matter spanned more than two years, from January

5  12, 2023, through September 16, 2025—approximately 32 months. This means that Ms.

6  Leal and Ms. Flechsig billed approximately an annualized 194.6 hours and 226.5 hours

7  respectively over the course of this matter.[3] Taking into account Plaintiff's proffered

8  figure of 2,080 billable hours in a working year, Ms. Leal and Ms. Flechsig invested

9  approximately 9.18% and 9.36% of their annual billable hours respectively on this matter

10  – or said another way – an average of 13. 2 hours per month (that is less than two

11  business days)! Clearly this case was not taking up 30% of their time; if that was the case,

12  then they were each working on other matters for less than one week per month!

13       Plaintiff's Motion argues in conclusory fashion, based on counsel's calculation of

14  their 25%-30% time investment, that other work was precluded. By Plaintiff's reasoning,

15  a multiplier would be appropriate in every case, because naturally time spent on one case

16  prevents counsel from spending time on another case. Notably, Plaintiff's counsel failed

17  to attest that they were *actually precluded* from taking on other work due to their

18  involvement on this matter—either that they were required to turn away potential clients

19  due to lack of capacity or that they were unable to perform work for existing clients as a

20  result of their work on this matter. For an approximate two-month period in July and

21  August 2025, through the conclusion of trial, Plaintiff's counsel only attest that they

22  could not "consider" taking on prospective new clients and that they had to "delay

23  progress" on existing cases, not that they actually declined a potential new client.[4] That is

---

24

25  [3] Annualized hours calculated by taking the total hours billed throughout this matter by each attorney, divided by 32 months, multiplied by 12 months in a year.

26  [4] Ms. Leal's time records indicate that on June 27, 2025, shortly prior to this time period,

27  she billed time for "prospective calls," which appears to refer to calls with prospective

28  clients. See Appendix, Ex. A-5.

true for any attorney in trial or preparing for trial for that time period. In other words, their time investment in this matter only deferred other work during the short period of time they were preparing for trial, which is a natural consequence of litigating any matter through trial and was a potential consequence assumed by Plaintiff's counsel at the outset of their representation of Plaintiff. Indeed, Ms. Leal continued to file complaints on behalf of clients from 2023 through 2025. See Kennedy Decl. ¶ 8.

Even where counsel did attest that they declined to take on additional cases, a multiplier is still inappropriate where counsel's billing records "do not indicate that the litigation significantly precluded other employment." See Navarro, 2018 U.S. Dist. LEXIS 85964 at *15. Ms. Leal and Ms. Flechsig billed an average of 137.5 hours and 89.5 hours per month respectively during this two-month period, which included 4-5 days of attending trial and awaiting jury deliberations. There is simply no evidence supporting counsel's contention that this matter significantly prevented them from other employment, either during or outside this two-month trial preparation period when, factoring in their trial preparation period, counsel had an approximate 9% annualized time investment in this matter. A multiplier is not supported by the evidence, and should be denied. As such the fee request should be reduced by the full amount of the requested multiplier, which is $1,124,050.50.

**D.    Plaintiff Cannot Recover His Requested Costs, as He Failed to Provide Sufficient Documentation to Support the Amount and Taxability of Each Item Sought**

Plaintiff is not entitled to recovery of the taxable and discretionary costs sought in his Motion. Plaintiff not only failed to timely file an Application to the Clerk to Tax Costs pursuant to Local Rule 54-2.1, but Plaintiff also failed to timely provide "[s]ufficient documentation to support the amount and taxability of each item." Id. Indeed, Plaintiff failed to provide any supporting documentation at all until October 9, 2025, following a written request by Defendant's counsel. Such failure made it impossible for Defendant to determine whether the costs are reasonable and actually taxable. Plaintiff's request for costs is appropriately denied on these grounds alone.

An expense that is neither expressly allowable nor expressly prohibited may be recovered at the court's discretion only if it is "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." <u>Science Applications Internat. Corp. v. Super. Ct.</u>, 39 Cal. App. 4th 1095, 1103 (Cal. Ct. App. 1995) (<u>citing</u> authorities).

Plaintiff seeks three categories of discretionary costs, which should not be awarded in this matter:

**<u>January 31, 2024 - $7,950 – Mediator's Fee</u>**

There was no court order to attend mediation in this matter—the choice by the parties to attend mediation and to split the costs was entirely voluntary. Although mediation may be beneficial in the course of a litigation to explore the possibility of early settlement, private mediation is not mandatory nor necessary to the litigation, which would proceed whether the parties elected to engage in mediation or not. The Court should decline to award Plaintiff the mediator's fees on these grounds, and because there is not statutory authority, or local rule that allows the recovery of mediation fees. This court should tax the costs in the amount of $7,950.00

**<u>October 18, 2024 - $19.30 – "Exhibits – Thalia Tse"</u>**

Copying charges relating to deposition transcript exhibits are only taxable if they are used at deposition and made a part of the deposition transcript. L.R. 54-3.5(c). Copying charges are only otherwise taxable where they relate to copies of filed and served documents, such as mandatory chambers copies, copies admitted into evidence where the original is not available, or where used for production in the case pursuant to agreement or court order. L.R. 54-3.10. Under California law, photocopying charges, except for exhibits, are not recoverable as costs. Cal. Civ. Proc. Code § 1033.5(b)(3)

Here, the costs submitted by Plaintiff fail to provide sufficient information such that Defendant can evaluate whether the nature of the requested cost is recoverable. The deposition of Thalia Tse was taken via videoconference on September 13, 2024. Even assuming that this charge was related to exhibits for that deposition, the deposition was

1  taken virtually, and no physical copies were shown to the witness nor made a part of the

2  deposition transcript. The Court should deny Plaintiff's request for recovery as Plaintiff

3  failed to provide any information or substantiation regarding this cost item, and failed to

4  provide any basis showing that this cost was reasonably necessary to the litigation. The

5  unspecified costs relating to Thalia Tse's deposition should be taxed and reduced by

6  $19.30.

7  **<u>Various Dates - $310 – Parking Costs (Plaintiff's Ex. A)</u>**

8      Plaintiff seeks recovery of unspecified parking costs on various dates, but provided

9  no information or justification as to why these costs were necessary to the conduct of this

10  litigation. The costs submitted by Plaintiff for requested recovery are devoid of

11  meaningful detail, but appear solely associated with the parking incurred by Plaintiff's

12  counsel and/or their staff, not for witnesses in this action. While the law expressly

13  permits the recovery of mileage costs, travel expenses, per diem allowance, etc. for

14  witnesses (<u>see</u>, <u>e.g.</u>, 28 U.S.C. § 1821), there are no such equivalent provisions for

15  counsel and their staff. Parking is a regular business and commuting expense, analogous

16  to meals, local transportation, and other items which are considered part of a law firm's

17  non-reimbursable overhead. Indeed, parking costs are indisputably a part of the regular

18  cost of doing business in Los Angeles County. Plaintiff's request for parking costs should

19  be taxed and reduced by $310.00.

20  **IV.    <u>CONCLUSION</u>**

21      For the foregoing reasons, Defendant Chevron respectfully requests that Plaintiff's

22  request for a fee enhancement be denied in its entirety, and should apply substantially

23  lower hourly rates for Plaintiff's counsel, which are $895 and $477, consistent with the

24  rates in the Los Angeles market, disallow or reduce all hours not properly supported or

25  which are duplicative, vague, or excessive, and apply an across-the-board 50% reduction

26  to account for vagueness and block billing in Plaintiff's time entries and in allocation of

27  fees based on Plaintiff's unsuccessful claims. As such Plaintiff's request for attorneys'

28  fees should be reduced by $1,971,851.36 as to fees, including Plaintiff's requested

multiplier, and that no more than $276,249.64 in fees be awarded and $146,998.09 of costs be taxed.


Dated: October 23, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By              */s/ Tracey A. Kennedy*
                 TRACEY A. KENNEDY
                 ROBERT E. MUSSIG
                 H. SARAH FAN
                 Attorneys for Defendant
                 CHEVRON U.S.A. INC.,
                 a Pennsylvania Corporation

SMRH:4903-7792-7282.9