SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal Bar No. 150782
ROBERT MUSSIG, Cal. Bar No. 240369
H. SARAH FAN, Cal. Bar No. 328282
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071-3460
Telephone:   213.620.1780
Facsimile:   213.620.1398
E-mail:   tkennedy@sheppardmullin.com
        rmussig@sheppardmullin.com
        sfan@sheppardmullin.com

Attorneys for Defendant.
CHEVRON U.S.A. INC.,
a Pennsylvania corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK SNOOKAL, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CHEVRON USA, INC., a California Corporation, and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No. 2:23-cv-6302-HDV-AJR<br><br>**DEFENDANT CHEVRON U.S.A. INC.'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b), OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND/OR REMITTITUR**<br><br>[*Filed concurrently with Supplemental Declaration of Tracey Kennedy*]<br><br>Date: November 13, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 5B – Fifth Floor<br><br>District Judge: Hon. Hernán De. Vera<br>Magistrate Judge: Hon. A. Joel Richlin<br><br>Action Filed: August 3, 2023<br>Trial Date: August 19, 2025 |

Case No. 2:23-cv-6302-HDV-AJR

SMRH:4918-4366-9877.3   DEFENDANT'S REPLY ISO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND/OR REMITTITUR

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................. 1

II. RELEVANT LEGAL STANDARDS ................................................................ 2

III. PLAINTIFF FAILED TO PROVE DISABILITY DISCRIMINATION. .......... 2

    A. Plaintiff All But Ignores Defendant's Essential Function Argument. ..... 2

    B. Substantial Evidence Supports the Health and Safety Defense. ............. 5

IV. THE RECORD DOES NOT SUPPORT THE ECONOMIC DAMAGES AWARD ......... 6

    A. Plaintiff Failed to Mitigate His Damages. ............................................... 6

    B. The Jury's Economic Damages Award Was Purely Speculative ............ 7

    C. The Jury's Emotional Distress Award Is Unsupported and Excessive. ... 8

V. CONCLUSION .................................................................................................. 9

-i-    Case No. 2:23-cv-6302-HDV-AJR

SMRH:4918-4366-9877.3    DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND/OR REMITTITUR

# TABLE OF AUTHORITIES
**Page(s)**

Cases

Adams v. City of Chicago
   708. F.3d 539, 545 (7th Cir. 2015) ............................................................................. 8

Bates v. United Parcel Serv., Inc.
   511 F.3d 974 (9th Cir. 2007) ...................................................................................... 3

Bell v. Williams
   108 F.4th 809, 832 (9th Cir. 2024) ............................................................................. 8

Chevron U.S.A. Inc. v. Echazabal
   536 U.S. 73 (2002) ...................................................................................................... 3

Class v. Towson University
   806 F.3d 236 (4th Cir. 2015) .................................................................................. 2, 5

Coleman v. Midlands Carrier Transicold
   No. 1:14-CV-01472 JLT, 2015 WL 5159440 (E.D. Cal. Sept. 2, 2015) ..................... 3

Damian Raffele v. VCA, Inc.
   2020 WL 5875029 (C.D. Cal. July, 15, 2020) ........................................................... 3

Dees v. Cnty. of San Diego
   960 F.3d 1145 (9th Cir. 2020) .................................................................................... 2

Diaz v. Tesla, Inc.
   598 F. Supp. 3d at 835 (N.D. Cal. 2022) .................................................................... 9

EEOC v. Farmer Bros. Co.
   31 F.3d 891 (9th Cir. 1994) ........................................................................................ 6

Green v. State of California
   42 Cal. 4th 254 (2007) ................................................................................................ 3

Jefferson v. Federal Express Corp.
   No. C 09–04235 JSW, 2010 WL 3630984 (N.D. Cal. Sept. 14, 2010) ...................... 2

Knapp v. Nw. Univ.
   101 F.3d 473 (7th Cir. 1996) ...................................................................................... 5

Malone v. Potter
   2010 U.S. Dist. LEXIS 4405 (C.D. Cal. 2010) ...................................................... 6, 7

McInteer v. Ashley Distribution Servs., Ltd.
    40 F. Supp. 3d 1269 (C.D. Cal. 2014) .................................................................. 5

Milan v. Union Pac. R.R. Co.
    No. 3:17-CV-01246-YY, 2019 WL 2030553 (D. Or. Apr. 19, 2019) ..................... 6

Nealy v. City of Santa Monica
    234 Cal. App. 4th 359 (2d Dist. 2015) ................................................................... 3

Optional Cap., Inc. v. Kim
    414 F. App'x 12 (9th Cir. 2011) ............................................................................. 2

Wheeler v. SPS Techs., LLC
    No. 817CV01788JLSKES, 2018 WL 7501581 (C.D. Cal. Oct. 24, 2018) ............ 3

Wills v. Superior Ct.
    195 Cal. App. 4th 143 (4th Dist. 2011) .................................................................. 3

Young v. Bank of America
    141 Cal. App. 3d 108 (1983) .................................................................................. 8

Statutes

29 C.F.R. § 1630.2(r) ..................................................................................................... 5

Cal. Code Regs., Title 2, § 11067(e) ......................................................................... 5, 6

Rule 50 ............................................................................................................................ 2

Rule 50(b) and Rule 59 .................................................................................................. 2

Other Authorities

Wright & Miller, 9B Fed. Prac. & Proc. Civ. §2531 (3d ed.) ..................................... 2

SMRH:4918-4366-9877.3

-iii-

Case No. 2:23-cv-6302-HDV-AJR
DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL AND/OR REMITTITUR

# REPLY MEMORANDUM

## I. INTRODUCTION

There are two separate grounds for judgment or a new trial on liability—the "direct threat" or "health and safety risk" defense, and Plaintiff's failure to satisfy the medical fitness requirement on which his offer was conditioned, the latter of which goes to Plaintiff's prima facie case.  See Mem. 11:15-20:11; Trial Transcript (Aug. 22, 2025), at 171:8-172:9 (directed verdict argument) see Supplemental Declaration of Tracey A. Kennedy, Ex. E (Supp. Kennedy Decl.").  About the medical clearance argument and Defendant's obligation to seek such a clearance, Plaintiff says very little.  He concedes that a medical clearance was required for working in Escravos.  He does not dispute that the requirement was bona fide, reasonable and necessary; and all agree that living in Escravos was an essential function.  Plaintiff's primary argument is that he was medically cleared to work in Escravos.  But his cited support is either legally irrelevant, insufficient or simply contrary to the evidence.  Likewise Plaintiff's challenges to the medical opinions underlying the denial of his clearance ignore that those opinions analyzed whether Escravos was too unsafe for Plaintiff—that is, whether the Escravos doctors and facilities could handle Plaintiff's undisputed medical condition.  That was well within the Defendant's physicians' competence.  Plaintiff's suggestion that a dangerous, remote location can never be too unsafe so long as a plaintiff can currently work undercuts all location-based safety requirements, in direct conflict with Defendant's legal duty to provide a safe work environment, regardless of the location.

As the evidence at trial proved, the medical opinion documents presented by the doctors showed that Plaintiff had a current risk of an aortic rupture or dissection—a low one, Defendant was told around 2%, but a current risk, nonetheless.  That risk carried the impact of Plaintiff's death and injury to others in Escravos.  Defendant reasonably relied on this objective medical evidence when concluding that if Plaintiff were in Escravos, he would be a danger to himself and/or others.

Finally, Plaintiff damages arguments are likewise unpersuasive.  Indeed, Plaintiff cannot overcome the high legal standards governing his damages and the trial record, both of which

prove that the jury's damage awards are excessive.  Accordingly, Defendant is entitled to judgment as a matter of law or, at least, a new trial and a new trial contingent on remittitur of Plaintiff's damages.

## II.     RELEVANT LEGAL STANDARDS

At the outset, Plaintiff wrongly claims (Opp. 10:6-12) that Defendant misstated the standard for a new trial.  Defendant correctly argues that "[e]ven if substantial evidence exists to deny a Rule 50 motion, that does not, however, prevent the court from granting a motion for a new trial ... if the verdict is against the clear weight of the evidence." Optional Cap., Inc. v. Kim, 414 F. App'x 12, 16 (9th Cir. 2011) (internal citation and quotation marks omitted); Dees v. Cnty. of San Diego, 960 F.3d 1145, 1151 (9th Cir. 2020) (same).  This follows from the fact that Rule 50(b) and Rule 59 motions "have wholly distinct functions and entirely different standards," because the former ends the case while the latter does not.  Wright & Miller, 9B Fed. Prac. & Proc. Civ. §2531 (3d ed.).

## III.    PLAINTIFF FAILED TO PROVE DISABILITY DISCRIMINATION.

### A.     Plaintiff All But Ignores Defendant's Essential Function Argument.

Plaintiff does not challenge the REM's MSEA requirement—its reasonability or necessity—testifying instead that he appreciated why it exists.  See Mem. 13:7-21.  His few relevant arguments cannot overcome the law or evidence for its application here.  First, Plaintiff claims that Defendant's refusal to clear him for Escravos cannot absolve it.  Opp. 13:8-10.  But numerous courts (see Mem. 12:6-13:6, 15:8-16:8 & cases cited therein), including the Ninth Circuit, recognize that:  "in some cases, a job requirement that screens out qualified handicapped individuals on the basis of possible future injury is necessary." Jefferson v. Federal Express Corp., No. C 09–04235 JSW, 2010 WL 3630984, at *3 (N.D. Cal. Sept. 14, 2010) (plaintiff "cannot make out a prima facie case for employment discrimination on the basis of disability" where disability rendered him unqualified); Class v. Towson University, 806 F.3d 236, 241-246 (4th Cir. 2015) (that athlete obtain "[t]eam [p]hysician's clearance before returning from injury is legitimately an essential eligibility requirement" and deferring to the medical judgment of the doctors).

As the U.S. Supreme Court put it in the disability discrimination and workplace safety context, there must be a "difference between rejecting workplace paternalism and ignoring specific and documented risks to the employee himself, even if the employee would take his chances for the sake of getting a job"; otherwise, the ADA and FEHA would be "at loggerheads with the competing policy of OSHA, to ensure the safety of 'each' and 'every' worker." Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 86 (2002).  California likewise recognizes that "[i]f employers are not permitted to make this distinction, they are caught on the horns of a dilemma.  They may not discriminate against an employee based on a disability but, at the same time, must provide all employees with a safe work environment free from threats and violence." See. e.g., Wills v. Superior Ct., 195 Cal. App. 4th 143, 165-66 (4th Dist. 2011), as modified on denial of reh'g (May 12, 2011).

Plaintiff indiscriminately rejects all of Defendant's authority as concerning supposedly-outdated direct-threat defense cases, the ADA, or symptomatic plaintiffs.  Opp. 12:17-24.  But the above-cited cases concern qualifications for an essential function—part of Plaintiff's prima face case—not the defense, rendering it and Plaintiff's symptoms irrelevant.  Coleman v. Midlands Carrier Transicold, No. 1:14-CV-01472 JLT, 2015 WL 5159440, at *7 (E.D. Cal. Sept. 2, 2015) (qualifications part of prima facie case under the FEHA).

As for the ADA cases, while there are differences between the FEHA and ADA, Plaintiff points to nothing in the ADA, the FEHA or its implementing regulations that would create a difference between them on an employee's qualifications for an essential function.  To the contrary, the two acts track with respect to qualifications and essential functions.  See Green v. State of California, 42 Cal. 4th 254, 264 (2007) ("We see no statutory basis for construing the FEHA any differently from the ADA with regard to a plaintiff employee's burden of proof."); Bates v. United Parcel Serv., Inc., 511 F.3d 974, 999 (9th Cir. 2007) (holding FEHA mirrors ADA on qualifications and essential function); Wheeler v. SPS Techs., LLC, No. 817CV01788JLSKES, 2018 WL 7501581, at *5 n.1 (C.D. Cal. Oct. 24, 2018) (same); Damian Raffele v. VCA, Inc., 2020 WL 5875029, at *5 n.3 (C.D. Cal. July, 15, 2020) (same); Nealy v. City of Santa Monica, 234 Cal. App. 4th 359, 375 (2d Dist. 2015) (same).

1    <u>Second</u>, Plaintiff wrongly asserts that he <u>was</u> cleared to work in Escravos, accusing
2    Defendant of "significant misrepresentations" and citing Dr. Marmureanu's testimony. Opp.
3    13:11-17. Defendant highlighted that testimony and explained why it is legally irrelevant—
4    Defendant did not have Dr. Marmureanu's opinion at the time of its decision (it was a 2025
5    expert paid for opinion), just as it could not know that Plaintiff's aorta would not rupture or
6    dissect in subsequent years, rendering both legally irrelevant. Mem. 13:25-28 & cited cases.
7    Plaintiff has no response. Plaintiff also admits (Opp. 13:18-14:4) that Dr. Khan <u>never</u> cleared
8    Plaintiff to work in Escravos; he did not have knowledge of Escravos. <u>See</u> Kennedy Decl., Ex.
9    A, Trial Transcript, Khan at 116:25-117:9, 125:22-126:4, 128:9-22; Exhibit 33. The fact that
10   Dr. Khan did not recommend <u>against</u> Escravos (Opp. 4:6-7) is of no moment because Plaintiff
11   had to be affirmatively cleared for Escravos and had the burden to prove he was cleared. <u>See</u>
12   Mem. 2:22-3:4, 12:1-5.

13   Plaintiff also badly mischaracterizes Dr. Levy's email. Opp. 5:12-18; 14:17-21. Dr.
14   Levy <u>nowhere</u> approved Plaintiff for Escravos nor challenged Dr. Asekomeh's conclusion that
15   Escravos could not handle an aortic rupture or dissection; he notes only that Plaintiff's current
16   risk of dissection was not high and, in furtherance of the effort to see if Plaintiff could work in
17   Escravos, asks whether that risk could be managed through frequent screening in the United
18   States—a suggestion that Plaintiff acknowledges (Opp. 5:18-20) the Escravos doctors rejected.
19   <u>See</u> Tr. Ex. 69.

20   <u>Finally</u>, Plaintiff challenges Defendant's doctors' medical analysis. Op. 14:27-15:5. But
21   Defendant's and Plaintiff's doctors' <u>agreed</u> on Plaintiff's diagnosis, the dilation measurements,
22   and that the risk of dissection or rupture was low but not zero. The question was whether
23   Plaintiff was fit <u>for</u> <u>Escravos</u>—a determination that turned on the conditions and facilities <u>in</u>
24   <u>Escravos</u> in light of Plaintiff's undisputed condition. <u>See</u> Flechsig Decl. Exh. A, Tr. Exh. 55/2,
25   63/1 (not fit "because of the location"). The undisputed evidence at the time was that Escravos
26   could not handle even a low risk of dissection. Mem. 4:5-5:20.

27   Thus, Plaintiff concedes that he would have required advanced medical care if "he had a
28   future complication while in Escravos" (Opp. 4:10-12, 4:15-19, 15:20); he concedes that the

-4-    Case No. 2:23-cv-6302-HDV-AJR

Escravos doctor was "not a cardiologist," had "no experience with [his] condition" or its "potential complications," and "did not know what is needed to treat a patient who has suffered a complication of this condition." Opp. 3:5-10; see also id. at 3:24-4:2. And Plaintiff admits that the evidence shows that Plaintiff "could not be evacuated from Escravos quickly enough if he had a serious complication," (Opp. 15:2-5)—all proof that Escravos was too hazardous for Plaintiff. See Levy, 155:14:18.

Defendant had the affirmative duty to ensure Plaintiff's workplace safety and, to that end, enforced the medical clearance requirement for one of its most remote and dangerous facilities. Denying this motion on these undisputed facts would effectively prevent employers from implementing fitness requirements, particularly location-based ones, and force them to place employees in unsafe workplaces.

### B. Substantial Evidence Supports the Health & Safety Defense.

On the affirmative defense, Plaintiff does not dispute that Defendant could rely on objectively reasonable medical evidence. Mem. 17:16-18:4; see also Class, 806 F.3d at 247 (evaluating "whether the [defendant's] Physician's opinion was reasonable"). The FEHA's regulations expressly require "reasonable medical judgment." See Cal. Code Regs., tit. 2, § 11067(e). A medical judgment that relies on objective evidence is given "a measure of deference." Class, 806 F.3d at 247; see also Knapp v. Nw. Univ., 101 F.3d 473, 484 (7th Cir. 1996) (court's job "is to make sure that the decisionmaker has reasonably considered and relied upon sufficient evidence specific to the individual and the potential injury," not to determine "which evidence it believes is more persuasive").

Contrary to Plaintiff's claim (Opp. 12:9-17), the parties agree on the standard governing the direct threat defense. In its opening brief, Defendant recited the relevant regulatory factors and showed that substantial evidence supported them. See Mem. 17:10-15, 18:9-20:9; Opp. 12:15 In addition, the FEHA's and ADA's regulations on the affirmative defense are identical but for one factor (employee work history). Compare Cal. Code Regs., tit. 2, § 11067(e) with 29 C.F.R. § 1630.2(r). Accordingly, this Court can and should look to ADA cases. See McInteer v. Ashley Distribution Servs., Ltd., 40 F. Supp. 3d 1269, 1287 (C.D. Cal. 2014). About those

cases (Mem. 18:11-19:26), Plaintiff says nothing (Opp. 12:19). Finally, Plaintiff has a <u>current</u> risk of dissection that, in Escravos, would have meant his potential death and severe harm to others. <u>See</u> Mem. 3:8-18 & n.2, 19:10-20:9 (transcript cites therein); Opp. 15:8-25 (failing to contest evidence of severe harm). Contrary to Plaintiff's suggestion, the FEHA does not require an immediate <u>injury</u>. The regulations contemplate a current risk and a "likelihood that <u>potential</u> harm will occur" and requires an analysis of the harm's imminence and significance. <u>See</u> Cal. Code Regs., tit. 2, § 11067(e). Thus, a current 5% risk of unconsciousness satisfies the defense when unconsciousness would result in death. <u>See</u> <u>Milan v. Union Pac. R.R. Co.</u>, No. 3:17-CV-01246-YY, 2019 WL 2030553, at *6 (D. Or. Apr. 19, 2019), report and recommendation adopted, No. 3:17-CV-01246-YY, 2019 WL 2030723 (D. Or. May 8, 2019). And, a cardiovascular abnormality with risks ranging from 1 in 34, to 1 in 100, to unquantifiable are sufficient where the impact is death, even if the plaintiff is willing to accept that risk. <u>Id.</u> at 486. Here all of the medical professional agreed there was at least a 1% to 2% risk. Kennedy Decl., Ex. B, Trial Transcript, Asekomeh 23:12-15, 31:1-5; Kennedy Decl., Ex. A, Trial Transcript, Levy 153:11-154:17 (testifying that a 2% risk rate was not low due to the potential impacts); Kennedy Decl., Ex. B, Trial Transcript, Asekomeh at 26:22-28:4; Trial Ex. 39-006. Kennedy Decl., Ex. C, Trial Transcript, Adeyeye, 77:13-16, 54:2-10, 55:15-24; Trial Ex. 39-006. Kennedy Decl., Ex. B, Trial Transcript, Asekomeh, 30:22-31:5; Trial Ex. 39-005; Kennedy Decl., Ex. D, Trial Transcript, Akintunde, 29:17-30:9.

## IV. THE RECORD DOES NOT SUPPORT THE ECONOMIC DAMAGES AWARD

### A. Plaintiff Failed to Mitigate His Damages.

With respect to mitigation, Plaintiff (Opp. 16:4-20) misconstrues the facts and controlling law. An employer satisfies its burden when "based on undisputed facts in the record, during the time in question there were substantially equivalent jobs available, which [the plaintiff] could have obtained, and that [the plaintiff] failed to use reasonable diligence in seeking one." <u>Malone v. Potter</u>, 2010 U.S. Dist. LEXIS 4405, *27-28 (C.D. Cal. 2010) (quoting <u>EEOC v. Farmer Bros. Co.</u>, 31 F.3d 891, 906 (9th Cir. 1994)). The issue is not, as Plaintiff wrongly suggests (Opp. 16:11-20), whether Defendant offered him comparable employment. Rather, the key fact is that

many other expatriate assignments were available to Plaintiff, but he declined to pursue them. Kennedy Decl., Ex. B, Trial Transcript, Levy at 107:23-109:9; Trial Ex. 88). Specifically, approximately 50 expatriate assignments were open and available when Defendant rescinded Plaintiff's REM offer. Kennedy Decl., Ex. D, Trial Transcript, Snookal, 86:8-10, 96:2-97:4; Kennedy Decl., Ex. B, Trial Transcript, Levy at 107:23-109:9; Trial Ex. 88. While Plaintiff cites testimony regarding his application for non-expatriate assignments, those are irrelevant because Plaintiff's damages are based on him having an expatriate assignment—the 50 open assignments to which he refused to apply. See id. Trial Ex. 88; Kennedy Decl., Ex. D, Trial Transcript, Snookal, 86:8-10, 96:2-97:4; Trial Ex. 88. On this record, Defendant has proved failure to mitigate. See Malone, 2010 U.S. Dist. LEXIS 4405 at *27-28.

### B. The Jury's Economic Damages Award Was Purely Speculative

As Defendant has shown (Mem. 7:14-9:29), no evidence supports the jury's economic damages award. The Opposition noticeably lacks record cites, asserting only that the individual in the REM position during trial (Cesar Malpica) had held it for five years. Opp. 17:8-16. But the undisputed record is that Plaintiff's position was subject to reselection in October 2021, approximately two years after Plaintiff would have assumed it and before the end of its expected 3-4 year term. See Kennedy Decl., Ex. B, Trial Transcript, Malpica at 148:22-149:15, 161:20-162:24. Malpica was hired after this reselection process—a process to which Plaintiff would have been subjected—rendering Malpica and Plaintiff dissimilarly positioned. Mem. 8:7-12.

The trial record also proves (Mem. 8:13-9:9 and cites therein) that the REM position lasted generally only 3-4 years, and could not have lasted much longer due to Nigerian visa restrictions—restrictions about which Plaintiff says nothing. Malpica was allowed to remain for five years due only to a then-ongoing reorganization that temporarily precluded his departure, which was expected to occur in October 2025. Kennedy Decl., Ex. B, Trial Transcript, Malpica 161:6-22. On these undisputed facts, Plaintiff would have remained in the REM position for two years, until August 2023. Mem. 22:16-26.

Plaintiff presented no contrary evidence at trial. He offered only vague, speculative, self-serving and hearsay testimony that he had heard from others that he might have remained in the

position for many years (Opp. 17:8-16), but that is not competent evidence nor a sufficient basis for the jury's award as it was not tied to any specific REM position or that position's location premium.  In all events, as the preceding paragraphs show, Plaintiff made no effort to apply for other expatriate positions, disproving his theory that he would have jumped from one to another.  See Kennedy Decl., Ex. D, Trial Transcript, Snookal, 86:8-10, 96:2-97:4; Trial Ex. 88.  Thus, there is no basis for plaintiff's expert's assumption that Plaintiff would have continuously worked in a high-premium role until his retirement at 70 years old.

### C. The Jury's Emotional Distress Award Is Unsupported and Excessive.

Finally, Defendant has shown (Mem. 23:17-19, 25:8-17) that emotional distress damages require an injury that is "severe, i.e., substantial or enduring as distinguished from trivial or transitory."  Young v. Bank of America, 141 Cal. App. 3d 108, 114 (1983).  Plaintiff's comparison case (Opp. 20:8-16) proves the point:  In Bell v. Williams, the Ninth Circuit found distress damages of $504,000 "grossly excessive," even though the plaintiff was physically injured.  108 F.4th 809, 832 (9th Cir. 2024).[1]  Plaintiff's emotional distress, even assumed true, fall far short of this standard.  See Mem. 23:17-25:17.

Plaintiff's asserted emotional distress (Opp. 18:22-19:25) arises from his losing a job, the ability to pay for private school, and family breadwinner status.  These harms are primarily economic, not emotional.  None is anything like the severe harm from discrimination in Defendant's cited cases. Mem. 24:15-25:17.  In addition, Plaintiff's harms were at most fleeting.  Plaintiff admits that he voluntarily resigned and now works for a different company with higher pay and "significantly increased responsibility."  Supp. Kennedy Decl., Ex. E, Trial Transcript, Snookal at 104:18-21 (Aug. 22, 2025), Ex. 109 to Supp. Kennedy Decl.  While he testified that he *had* to sell his family home to take the position, doing so was his choice.  No trial evidence suggests that Plaintiff had heightened emotional distress due to the move.  To the contrary, Plaintiff's expert, Dr. Anthony Reading opined that Plaintiff's alleged emotional

---

[1] Plaintiff's other cited case, Adams v. City of Chicago, 708. F.3d 539, 545 (7th Cir. 2015), is of no moment.  The district court erred by remitting damages without offering  a new trial.  Here, Defendant requests judgment in its favor, or a remittitur *with the option of a retrial*.

distress had improved, was in partial remission, and had many, other causes. Kennedy Decl., Ex. D, Trial Transcript, Reading at 128:4-129:2, 130:25-131:2; 142:23-144:1 see also id. Snookal at 110:18-22; Supp. Kennedy Decl. Ex. E (Aug. 22, 2025).

With respect to comparable cases, Plaintiff completely ignores Diaz v. Tesla, Inc., a case Defendant argued (Mem. 24:19-27) shows the excessiveness of the jury's emotional damages award. In that case, the plaintiff suffered extreme and repeated harassment, but the court reduced an "excessive" award of $6.9 million to a "relatively high award" of $1.5 million, showing just how far from reasonable the verdict was here. 598 F. Supp. 3d at 835. Contrary to Plaintiff's claim (Opp. 20:17-21:6), Defendant's reliance on Kelly-Zurian and Horsford is well placed. They show the verdicts the California courts will accept—amounts well below the damages here.

There is no evidence in the record to support the jury's large emotional distress damages. Thus, if the Court declines to enter judgment as a matter of law in Defendant's favor, it should order a new trial or a new trial contingent on a remittitur.

## V.     CONCLUSION

For all of the foregoing reasons, the Court should grant this motion for judgment or a new trial, or alternatively, order a new trial contingent on a remitter.

Dated: October 28, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     /s/Tracey A. Kennedy
TRACEY A. KENNEDY
ROBERT E. MUSSIG
H. SARAH FAN

Attorneys for Defendant
CHEVRON U.S.A. INC.,
a Pennsylvania Corporation