1   DOLORES Y. LEAL (134176)
2   OLIVIA FLECHSIG (334880)
    ALLRED, MAROKO & GOLDBERG
3   6300 Wilshire Blvd. Suite 1500
    Los Angeles, CA 90048-5217
4   (323) 653-6530
    dleal@amglaw.com
5   oflechsig@amglaw.com

6   **Attorneys for <u>Plaintiff MARK SNOOKAL</u>**

7

8                    UNITED STATES DISTRICT COURT
9             FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  MARK SNOOKAL, an individual,          )  CASE NO.: 2:23-cv-6302-HDV-AJR
11                                         )
                                           )
12              Plaintiff,                 )  **PLAINTIFF MARK SNOOKAL'S REPLY**
                                           )  **TO DEFENDANT CHEVRON USA, INC'S**
13                                         )  **OPPOSITION TO PLAINTIFF'S**
        vs.                                )  **MOTION FOR ATTORNEYS' FEES AND**
14                                         )  **COSTS**
15                                         )
    CHEVRON USA, INC., a California        )
16  Corporation, and DOES 1 through 10,    )
    inclusive,                             )  District Judge: Hon. Hernan D. Vera
17                                         )  Magistrate Judge: Hon. A. Joel Richlin
                                           )  Action Filed: August 3, 2023
18                                         )  Trial Date: August 19, 2025
19              Defendants.                )
                                           )  Hearing Date: November 13, 2025
20                                         )  Hearing Time: 10:00 a.m.
                                           )  Courtroom: 5B
21                                         )
22                                         )
                                           )
23                                         )
                                           )
24                                         )
                                           )
25                                         )
                                           )
26  _____)
27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ......................................................................................................... 1

II.  PLAINTIFF'S HOURLY RATES ARE REASONABLE AND DEFENDANT'S
REQUEST TO DECREASE THEM SHOULD BE DENIED .......................................... 2

   A.  Hourly Rates ......................................................................................................... 3

III.  THE NUMBER OF HOURS EXPENDED WAS REASONABLE AND NECESSARY 4

IV.  A 2.0 MULTIPLIER IS WARRANTED .................................................................... 7

V.  APPORTIONMENT IS IMPROPER BECAUSE PLAINTIFF'S CLAIMS WERE
INEXTRICABLY INTERTWINED ............................................................................. 11

VI.  PLAINTIFF HAS WAIVED HER REQUEST FOR COSTS FOR TWO ITEMS
CHALLENGED BY DEFENDANT EXCEPT THE MEDIATION COST ................... 12

   A.  Mediation Fee ..................................................................................................... 13

VII.  ATTORNEY FEES INCURRED SINCE FILING THE MOTION FOR ATTORNEY
FEES  ......................................................................................................................... 13

VIII.  CONCLUSION .......................................................................................................... 13

PLAINTIFF MARK SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S  MOTION FOR ATTORNEYS' FEES AND COSTS

1

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

2

3

*BCS Servs. v. BG Invs., Inc.*,
  728 F.3d 633 (7th Cir. 2013) ................................................................................1

4

5

*Beasley v. Wells Fargo Bank*,
  235 Cal. App. 3d 1407 (1991) ...........................................................................7

6

7

*Bernardi v. Cnty. of Monterey*,
  167 Cal. App. 4th 1379 (2008) ..........................................................................7

8

9

*Bronshteyn v. Dep't of Consumer Affairs*,
  114 Cal. App. 5th 537 (2025) .......................................................................1, 4

10

11

*Caldera v. Dep't of Corr. & Rehab.* ,
  48 Cal. App. 5th 601 (2020) ..............................................................................7

12

13

*Campbell v. AMTRAK*,
  718 F. Supp. 2d 1093 (N.D. Cal. 2010) ............................................................5

14

15

*Cuff v. Trans States Holdings, Inc.*,
  768 F.3d 605 (7th Cir. 2014) .........................................................................1, 7

16

17

*Flannery v. Cal. Highway Patrol*,
  61 Cal. App. 4th 629 (1998) ..........................................................................8, 9

18

19

*Greene v. Dillingham Constr. N.A.*,
  101 Cal. App. 4th 418 (2002) .......................................................................8, 11

20

21

*Greene v. Lull Eng'g Co.*,
  101 Cal. App. 4th 418 (2002) ............................................................................8

22

23

*Horsford v. Bd. of Trs. of Cal. State Univ.*,
  132 Cal. App. 4th 359 (2005) .........................................................................7, 9

24

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) .................................................................................7, 9

25

26

*Nightingale v. Hyundai Motor Am.*,
  31 Cal. App. 4th 99 (1994) ................................................................................5

27

28

*People v. Mun. Court for Pasadena Judicial Dist.*,
  114 Cal. App. 4th 523 (1978) ............................................................................8

PLAINTIFF MARK SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

*People v. Mun. Court for Pasadena Judicial Dist.*,
  114 Cal. App. 5th 523 (1978) ...................................................................................4

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ..............................................................................................9

*Sundance v. Mun. Court*,
  192 Cal. App. 3d 268 (1987) ..................................................................................9

*Taylor v. Nabors Drilling USA, LP*,
  222 Cal. App. 4th 1228 (2014) .....................................................................12, 13

*Weeks v. Baker & McKenzie* ,
  63 Cal. App. 4th 1128 (1998) .................................................................................8

*Welch v. Metro. Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ..................................................................................5

**Other**

*Gov't Code* §12965 ....................................................................................................1

Cal. Code Regs., tit. 2, § 11067 ...............................................................................10

PLAINTIFF MARK SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S  MOTION FOR ATTORNEYS' FEES AND COSTS

# I.    **INTRODUCTION**

Defendant Chevron U.S.A. Inc., does not dispute that under the Fair Employment and Housing Act, Gov't Code §12965, Plaintiff is entitled to attorney fees and costs. Defendant complains about the amount of attorney fees requested by Plaintiff, yet Defendant conveniently omits several important facts, including that this case was tenaciously litigated because of Defendant's obstructive discovery tactics, which necessitated the intervention of Magistrate Judge Richlin on two occasions and resulted in the filing of two Ex Parte Applications. It was Defendant's litigation conduct that necessitated many hours for which fees are sought. As the Court in a very recent decision, *Bronshteyn v. Dept. of Consumer Affairs*, (9/17/25) 114 Cal.App.5th 537, stated:

"When the plaintiff files a case with the prospect of recovering attorney fees, the defense is fully entitled to fight hard. But the defense does so knowing it might end up paying for all the work for both sides. Filing a flood of unselective and fruitless motions can be counterproductive if the plaintiff ultimately prevails, for the bill for that flood will wash up on the defense doorstep. Then the court may look with a wary eye at defense complaints about a whopping plaintiff's bill."

Similarly, as the Court in *Cuff v. Trans States Holdings, Inc.* (7th Cir. 2014), 768 F.3d 605, 611 stated:

"A business that can establish a reputation for intransigence may end up not paying damages and not having to defend all that often either, because if a prevailing party who litigates to victory gets only a small award of fees the next would-be victim will see that litigation is futile and the employer won't have to repeat the costly defense. That's why we held in *BCS Services, Inc. v. BG Investments, Inc.*, 728 F.3d 633 (7th Cir. 2013), that hyperaggressive defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect. That principle controls here-or, more properly, the district judge did not abuse his discretion in thinking that it controls and deeming Cuff's legal expenses reasonable in light of the defendants' conduct."

///

---

1

Defendant suggests to the Court that it should (1) reduce the hourly rates requested; (2) reduce the number of hours of recoverable work by applying across-the-board percentage reductions based on alleged block billing, vague entries, and other billing practices; (3) decline to award a multiplier; and (4) apportion the fees by 50% to account for Plaintiff's unsuccessful claims. Defendant unabashedly proposes that this Court award a mere 11.5% of what Plaintiff seeks, or a total of only $276,249.64 in fees—despite Plaintiff's $4 million jury verdict.

For the reasons set forth below and in the accompanying declarations of attorneys Dolores Y. Leal and Olivia Flechsig, Plaintiff respectfully requests the Court dismiss Defendant's arguments and grant Plaintiff's motion for attorneys fees with a 2.0 multiplier and costs.

## II.    PLAINTIFF'S HOURLY RATES ARE REASONABLE AND DEFENDANT'S REQUEST TO DECREASE THEM SHOULD BE DENIED

Defendant's counsel created Exhibits A through A-7 which are purportedly excerpts from Plaintiff's counsel's time entries. (Kennedy Decl. ¶¶5-12). The font is so small that it is illegible. Courts have the discretion to reject or refuse to consider exhibits or documents that are illegible or difficult to read as the font size is too small, as legibility is essential for fair judicial proceedings and compliance with procedural rules.

Central District California, *L.R. 11-3.1 "Legibility"* provides: "All pleadings, motions, affidavits, declarations, briefs, points and authorities, and other documents, including all exhibits thereto (hereinafter collectively referred to as "documents"), presented for filing or lodging with the Clerk shall be typewritten or printed, or prepared by a photocopying or other duplicating process **that will produce clear** and permanent copies **equally legible** to printing, in black or dark blue ink…."

Plaintiff respectfully requests the Court reject these Exhibits. Defendant could have very easily printed the information vertically with larger font so the Court and Plaintiff could have read and considered the information with ease. Nonetheless, relying on the description of the Exhibits in the declaration by defense counsel Ms. Kennedy of Exhibits A to A-7, Plaintiff addresses their arguments.

A.    **Hourly Rates**

Exhibit A purports to show "Plaintiff's requested hourly fee rates, as well as with Defendant's proposed hourly fee rate given reasonable rates in the Los Angeles market, notations as to reasons for fee reductions and total amount of fees given the hourly rates set forth."

As is required by the local rules, prior to filing the motion for attorneys fees/costs, Plaintiff's counsel met and conferred with defense counsel. They discussed Plaintiff's counsel's hourly rates and whether defense counsel would stipulate to the amounts. Ms. Leal was told that they would not stipulate. When Ms. Leal inquired if Sheppard Mullin would provide *their* hourly rates to compare, Ms. Leal was told no. (Leal Decl. ¶ 5) Their refusal should raise concerns.

Defendant's proposal to drastically reduce Plaintiff's counsels' hourly rates overlooks the fact that Sheppard Mullin's employment law attorneys charge rates that are substantially higher than those of Plaintiff's counsel. The declaration by Olivia Flechsig filed concurrently herewith shows hourly rates of **Sheppard Mullin labor and employment attorneys with significantly less experience, yet have higher hourly rates**. (Flechsig Decl. ¶3)[1] Sheppard Mullin partner Mr. Yousafzadeh's hourly rate 2 years ago was $1,065. Mr. Yousafzadeh was licensed in 2005 (or 17 years after Ms. Leal). Sheppard Mullin Associate John Jung's hourly rate in 2022 was $715. Note, however the State bar website shows he was licensed in 2023. (Flechsig Decl. ¶6) Hence, Ms. Flechsig who was licensed in 2021 has more experience and is requesting less than Mr. Jung's hourly rate 3 years ago.

If lead defense counsel Ms. Kennedy's hourly rates are indeed at or higher than Ms. Leal's hourly rate ($1200), it would clearly demonstarate that Ms. Leal's rate is reasonable inasmuch as Ms. Kennedy has been practicing employment law since December 1990 (per the State Bar website) or 2 ½ years less than Ms. Leal (June 1988). The same is true with respecd to

---

[1] The declaration filed by an attorney with Sheppard Mullin, stated: "Babak Yousafzadeh, a **partner** has been practicing law in California for over **eighteen years**, and is a labor and employment specialist. . . **Mr. Yousafzadeh's regularly hourly rate during the pendency of this litigation are as follows: $860/hr in 2020; $925/hr in 2021; $985/hr in 2022; and $1,065/hr in 2023."**

The declaration further attests regarding an **associate**: "John Jung has been practicing law in California for over **five years**, and is also an employment specialist in the labor and employment group of Sheppard Mullin.  **Mr. Jung's regular hourly rate in 2022, at the tiem he performed the relevant work on this natter was $715 per hour."**

defense counsel Robert Mussig (December 2005) and Sarah Fan (December 2019), their hourly rates would be relevant in determininig whether Plaintiff's counsels' rates are reasonable. (Leal Decl. ¶6) Ms. Flechsig, who has been practicing since January 2021, did an outstanding job during pre-trial discovery, at trial, examining adverse witnesses, making the opening and closing statements. As other Plaintiff employment attorneys have attested in the declarations filed in Support of Plaintiff's Motion for Attoarneys Fees, Plaintiff Snookal's counsels' hourly rates are well within the industry standard.

That the hourly fees are well within the industry standard is reflected in *Bronshteyn v Department of Consumer Affairs*, *supra,* decided on September 17, 2025, the same day Plaintiff filed his motion for attorneys fees. *Bronshteyn* is, extremely similar to this matter. Plaintiff Bronshteyn alleged disability discrimination, failure to accommodate, and failure to engage in an interactive process. The jury returned a verdict of $3.3 million. The Court of Appeal affirmed the trial court's attorneys' fee award of $4,889,786.03 and a 1.75 multiplier for fees incurred up to and including the jury verdict, and a 1.25 enhancement for hours worked after the verdict. *Bronshteyn* had a total of 7 attorneys representing her.[2] Lead counsel, Jean Hyams, and Sharon Vinick have been practicing approximately the same time as Ms. Leal.  (Leal Decl. ¶8) The Court awarded an hourly rate $1,100 for Jean Hyams who has 1 ½ years less experience than Plaintiff's counsel, Ms. Leal. S*upra* 114 Cal.App.5th at p.545.

III.    <u>THE NUMBER OF HOURS EXPENDED WAS REASONABLE AND NECESSARY</u>

As the Court in *Bronshteyn* very recently noted, "The trial court was entitled to approach the Deparrment's attack on the number of hours with skepticism, for the Department did not disclose the number of hours its lawyers worked. *Supra*, 114 Cal.App.5th at 547. While Chevron

---

[2]  Defendant Chevron argues that "the involvement of five attorneys was unnecessary for litigating a straightforward FEHA case."  In *Bronshteyn v. Depaetment of Consumer Affairs, supra*, in response to a similar argument, the court stated: "[t]he fact that [the Department] did not settle the case early might or might not be good litigation strategy or bad litigation strategy. . . But the biggest thing it does is it makes it hard for the Department] to claim that [Bronshteyn] shouldn't have spent money litigating to try the case, which is reflected in the number of hours that [counsel] billed." at p. 540.

challenges the amount of time spent by Plaintiff's counsel, Defendant Chevron, like Defendant Department of Consumer Affairs similarly did not disclose the number of hours *they* expended on the case. Perhaps if Chevron disclosed their number of hours, the Court would be able to determine whether the number of hours expended by Plaintiff's counsel were reasonable.

As expressed in the declaration concurrently filed by Ms. Flechsig, the amount of work was necessitated in part because of Defendant counsels' obstreperous discovery tactics which are detailed in Ms. Flechsig's declaration filed concurrently herewith. (Flechsig Decl. ¶¶ 9, 16, 22)

Defendant argues that Plaintiff's billing records contain improper "block-billing" that should warrant a 30% reduction. (Def. Opp. at pp. 8-10.) In fact, "[t]he trial court is in a position to determine whether the tasks described in each month's statement reasonably required the total amount of time billed each month." *Nightingale v. Hyundai Motor America* (1994) 31 Cal.App. 4th 99, 103. A reduction for block-billed hours may not be appropriate if "individual tasks are specified" and the entries are "detailed enough for the Court to assess the reasonableness of the hours billed." *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F.Supp.2d 1093, 1103 (N.D. Cal. 2010); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007).

The time entries submitted by Plaintiff's counsel list all compensable tasks performed. Moreover, where multiple tasks are listed, each task is identified so the Court can assess the reasonableness of the hours billed for the tasks identified. While some tasks could have been separated into more discrete entries, they are detailed enough for the Court to determine that the hours billed are reasonable. Accordingly, a reduction for block-billed entries is not warranted.

Second, Defendant asserts that entries such as "office conference" are too vague and should be reduced. (Def. Opp. at p. 10.) There is no legal authority for the proposition that the specific topic of discussion at a meeting or conference is required. To have such a requirement would invade the attorney-client relationship and/or attorney work-product privilege. The entries provided are sufficiently detailed to allow the Court to evaluate reasonableness.

Third, Defendant claims that certain tasks were "clerical" or "administrative" in nature and should not be recoverable. (Def. Opp. at pp. 11-12.) However, Plaintiff's counsel exercised billing judgment throughout this litigation. The Court is reminded that in an exercise of billing

PLAINTIFF MARK SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

judgment, Plaintiff's counsel did not record and bill for time spent throughout the litigation conferring with named partners regarding the case. Moreover, the billing statements reflect that the named partners did not bill for any time they spent on this matter discussing strategy with Ms. Leal. (Leal Decl. ¶9) Plaintiff's counsel also did not have their administrative assisitant/paralegals bill their time in this matter. (Leal Decl. ¶10).

Plaintiff's counsel has voluntarily excluded 1.6 hours spent by attorney Ms. Stephen on administrative duties ($720.00) and 1.0 hour for Ms. Leal because of an erroneously included "prospective calls" entry ($1,200). (Leal Decl. ¶¶12).

Fourth, Defendant argues that hours should be reduced for alleged duplicative meetings and inconsistent entries. (Def. Opp. at pp. 10-11). This argument ignores the complexity and demands of this litigation. With multiple attorneys working on different aspects of the case, coordination meetings were necessary and appropriate. The staffing of this case was reasonable, with Ms. Leal and Ms. Flechsig handling almost all of the case's elements from its inception through trial. Plaintiff's counsel refrained from billing or requesting time spent in consultation with its named partners, and for time incurred by non-attorney staff. (Leal Decl. ¶¶9-10).

Most importantly, Defendant's discovery obstruction directly caused many of the extensive hours for which fees are sought. Defendant conveniently omits the fact that this case was tenaciously litigated because of Defendant's obstructive discovery tactics, which necessitated the intervention of Magistrate Judge Richlin on two occasions. (Flechsig Decl. ¶¶ 16, 18-22). The Court ruled on Plaintiff's First Ex Parte Application on November 27, 2024, noting Defendant "failed to identify a key witness in Interrogatory responses," "delayed in producing relevant documents until the eve of crucial depositions," and that Defendant's "dilatory tactics negatively affected Plaintiff's ability to take discovery on issues central to Chevron's pending motion for summary judgment." (Dkt. 37.) The Court stated it "[wa]s not persuaded that Defendants' (sic) delays were necessary or reasonable." (Id.) The Court reopened discovery for 90 days and continued the trial. (Dkt. 38.)

Defendant cannot now claim that Plaintiff's hours were unreasonable when their own unreasonable settlement posture and dilatory tactics caused Plaintiff to incur these hours. As the

1  Seventh Circuit Court of Appeals observed in *Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605,

2  611 (7th Cir. 2014), "hyperaggressive defendants who drive up the expense of litigation must

3  pay the full costs, even if legal fees seem excessive in retrospect."

4  Plaintiff Snookal respectfully urges that Defendant's requests for reductions be rejected

5  and that the Court find the number of hours expended were reasonable and necessary.

6  **IV.    A 2.0 MULTIPLIER IS WARRANTED**

7  "It is not unusual for counsel to ask for a multiplier in contingent fee cases." *Bernardi v.*

8  *County of Monterey* (2008) 167 Cal.App.4th 1379, 1399. "The purpose of a multiplier is to

9  reward the prevailing attorney with an increased fee in light of the extrinsic *Ketchum* factors: the

10  importance and difficulty of the litigation; the novelty of the issues involved; the risk of

11  nonpayment for the attorney's services (the contingency factor); the skill of the attorney in

12  presenting the case; and the magnitude of the results obtained." *Ketchum, supra*, 24 Cal.4th at

13  1132-1134; *Caldera v. Department of Corrections and Rehabilitation* (2020) 48 Cal.App.5th

14  601, 607. These factors were addressed in Plaintiff's Motion for Attorney Fees.

15  A "multiplier," also referred to as a "contingent risk enhancement"  is "to compensate for

16  the risk of loss generally in contingency cases as a class." *Beasley v. Wells Fargo Bank* (1991)

17  235 Cal.App.3d 1407, 1419 (disapproved on other grounds). Defendant's argument that a

18  contingent risk does not warrant a multiplier is negated by case law cited in Plaintiff Snookal's

19  Motion for Attorney Fees and Costs at pp. 9-13.

20  Moreover, in *Horsford v. Board of Trustees of California State University* (2005) 132

21  Cal.App.4th 359, 399-400, the Court stated, "the trial court abused its discretion in failing to

22  consider the relevant factors for awarding an enhancement multiplier. In particular, as reiterated

23  by the Supreme Court in *Ketchum v. Moses, supra*, 24 Cal.4th at pages 1132–1134, "the market

24  value of the services provided by plaintiffs' counsel in a case of this magnitude must take into

25  consideration that any compensation has been deferred for up to four years from the time an

26  hourly fee attorney would begin collecting fees from his or her client; that the demands of the

27  present case substantially precluded other work during that extended period, which makes the

28  ultimate risk of not obtaining fees all the greater (since the attorneys must use savings or incur

1    debt to keep their offices afloat and their families fed during the years-long litigation); and that a

2    failure to fully compensate for the enormous risk in bringing even a wholly meritorious case

3    would effectively immunize large or politically powerful defendants from being held to answer

4    for constitutional deprivations, resulting in harm to the public. (We refer to these factors below

5    as 'contingency and delay' factors.)"

6         Indeed, as of September 17, 2025 when Plaintiff Snookal filed the Motion, Plaintiff's

7    counsel had invested over 1,300 hours and advanced $155,277.39 for litigation costs. Had

8    Plaintiff lost, it would have been a significant economic loss. Moreover, the delay in receiving

9    any compensation has been extraordinary, as Plaintiff's counsel has been working on this matter

10   for over two years without payment. As the court in *Bronshteyn* stated (and quoting the trial

11   court), "The justifications were that counsel took the case on a contingency basis and that work

12   on it precluded other employment. '[P]laintiff's counsel rolled the dice and the dice could well

13   have come up against them. Had that occurred, counsel would have been left with years of work

14   and nothing (financially) to show for it.' Based on these factors, the court aswarded a 1.75

15   multipler for fees incurred up to and including the jury verdict, and a 1.25 enhancement for hours

16   worked after the verdict." *Supra* 114 Cal.App.4th at p.545.

17        In *Greene v. Dillingham Construction, N.A., Inc.* (2002) 101 Cal.App.4th 418, the Court

18   dispensed with the arguments made by Defendants here, that *Weeks v. Baker & McKenzie*

19   (1998) 63 Cal.App.4th 1128 and *Flannery v. California Highway Patrol, supra*, 61 Cal.App.4th

20   629 had "eliminated contingent risk as one of the factors to consider in imposing a multiplier."

21   The *Greene* court stated: "Apparently the trial court concluded that, at least as to FEHA cases,

22   this was the holding of *Weeks.* Having the benefit of the more definitive statement on the subject

23   contained in *Ketchum*, we must disagree." *Greene* at p. 427.

24        Defendant argues that a multiplier would constitute a "windfall" or "double-dipping."

25   (Def. Opp. at pp. 14-18.) Nothing could be further from the truth, and Defendant has absolutely

26   no basis for this baseless assertion. Defendant does not know the scope of the retainer agreement

27   with Plaintiff Snookal. Contrary to Defendant's characterization of a multiplier as a "windfall,"

28   "[i]t must be remembered that an award of attorney fees is not a gift. It is just compensation for

expenses actually incurred in vindicating a public right." *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 273, and for the contingent risk and delay factors. *Horsford*, *supra*. Moreover, as the Court in *Greene v. Dillingham Construction, N.A., Inc.* (2002) *supra* at pp. 426-427 stated:

> "In FEHA cases, the trial court has the discretion to apply a multiplier or fee enhancement to the lodestar figure to take into account a variety of factors, including the quality of the representation, the novelty and difficulty of the issues presented, the results obtained and the contingent risk involved. (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629...; *Serrano III*, supra, 20 Cal.3d at pp. 48–49...) In *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132..., our Supreme Court explained that the purpose of a multiplier 'is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services....[¶]...[The multiplier] for contingent risk [brings] the financial incentives for attorneys enforcing important constitutional rights...into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.' **The Court further noted that applying a fee enhancement does not inevitably result in a windfall to attorneys**: 'Under our precedents, the unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under *Serrano III*. The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. **Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees.**" (*Ketchum*, at p. 1138) (emphasis added).

Here, the contingent risk was substantial. Plaintiff Snookal contacted numerous plaintiff

9

1    attorneys to represent him, and a handful "never let [him] past their initial screening process."

2    (Snookal Decl. ¶ 6). Moreover, 7 or 8 attorneys specifically declined to represent him because

3    "the case would take too long, the case would be too complex, and/or they were concerned that

4    Chevron USA, Inc. would refuse to ever settle because of their size and resources." (*Id.*) The

5    market's perception of the risk involved—evidenced by multiple attorneys declining the case—

6    underscores that this was a high-risk undertaking. Plaintiff's counsel undertook this complex

7    case on a full contingency basis, receiving no payment for over two years, and invested over

8    1,300 hours (representing approximately 25-30% of the lead attorneys' annual capacity) and

9    advanced $155,277.39 in costs.

10       The novelty and difficulty of the issues presented further support a 2.0 multiplier. This

11    case involved a novel and difficult legal issue—prevailing against a "direct threat" affirmative

12    defense asserted by a major corporation like Chevron under Cal. Code Regs., tit. 2, § 11067. At

13    trial, Defendant made repeated references to purported threats such as sea pirate attacks,

14    kidnappings by Boko Haram, fire, explosions, a "ticking time bomb" in Mr. Snookal's chest, and

15    even the threat of mass casualties and environmental disaster. Nonetheless, the jury unanimously

16    concluded that Mr. Snookal's disability did not pose an imminent and substantial threat to

17    himself or to others, and awarded him a multi-million dollar verdict.

18       The exceptional results obtained showcase the quality of representation and justify a 2.0

19    multiplier. The $4,000,000 unanimous 8 person jury verdict is more than five times Defendant's

20    Rule 68 offer and ranks as the 15th highest disability discrimination verdict by the Daily Journal

21    out of 281 recorded verdicts (which includes multi-plaintiff and class actions verdicts and

22    settlements). (Flechsig Decl. ¶30; Docket #126). This victory also enforces a fundamental public

23    policy against disability discrimination.

24       Finally, the extent to which the litigation precluded other work supports a 2.0 multiplier.

25    The hours incurred in this case through the filing of the motion, by Ms. Flechsig and Ms. Leal

26    alone total over 1100 hours representing approximately 25-30% of counsel's total working

27    capacity over the course of a year. (Motion for Attorney fees: Flechsig Decl. ¶17; Leal Decl.

28    ¶27). The amount of time invested substantially precluded other work, and further justifies a 2.0

1    multiplier of the lodestar amount. (Leal Decl. ¶¶30, 35, Docket #126) .

2           Defendant's argument that the time investment did not preclude other work is specious.

3    (Def. Opp. at pp. 17-18.) Defendant's calculation ignores the reality that trial preparation

4    requires intensive, focused work that necessarily precludes taking on new matters. Ms. Leal and

5    Ms. Flechsig attest that for approximately two months in July and August 2025, through the

6    conclusion of trial, they could not "consider" taking on prospective new clients and had to "delay

7    progress" on existing cases. (Leal Decl. ¶ 30; Flechsig Decl. ¶ 35 Docket #126). This is not

8    merely a "natural consequence of litigating any matter through trial" as Defendant suggests—it

9    is a significant economic sacrifice that warrants compensation through a multiplier.

10   Plaintiff respectfully requests the Court grant a 2.0 multiplier to the lodestar amount.

11   **V.    APPORTIONMENT IS IMPROPER BECAUSE PLAINTIFF'S CLAIMS WERE INEXTRICABLY INTERTWINED**

12

13          Defendant argues that Plaintiff's fee award must be further reduced by 50% to account

14   for time allocated to his unsuccessful age discrimination, failure to accommodate, and wrongful

15   constructive discharge claims. (Def. Opp. at pp. 12-14.) This argument is without merit.

16   Plaintiff's claims—both successful and unsuccessful—arose from a common core of facts related

17   to his employment, his qualifications, and Chevron's decision to rescind his job offer. The

18   discovery, witness preparation, and legal research for the successful disability discrimination

19   claim were the same as or substantially overlapped with the work done for the other claims.

20          The age discrimination claim, failure to accommodate claim, and wrongful constructive

21   discharge claim are so intertwined with the disability discrimination claim that they cannot be

22   segregated. All of these claims arose from the same set of facts and course of conduct: Chevron's

23   rescission of Mr. Snookal's job offer in Escravos, Nigeria, and the subsequent treatment of Mr.

24   Snookal (his applications for several other positions which were given to other/younger persons)

25   and his ultimate resignation because he no longer saw a future with Chevron. The discovery

26   conducted, the witnesses deposed, and the documents reviewed were necessary for all claims and

27   served to support the successful disability discrimination claim.

28          Indeed, in *Greene v. Dillingham Construction N.A.*, 101 Cal.App.4th 418, 423 (2002),

     where the Plaintiff prevailed on his racial harassment claim, but not on his claims for

---

11

PLAINTIFF MARK SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

discrimination and retaliation, the Court stated:

> "The court also agreed with Greene's contention that the harassment and discrimination claims were so intertwined that a further allocation of fees between successful and unsuccessful claims was not possible because the claims were based on the same set of facts and course of conduct. The trial court was in the best position to understand the relationship between the claims and to determine whether time spent on a related claim contributed to Greene's objectives at trial."

The *Greene* Court granted fees of $1,095,794.55 and reversed the case insofar as the trial court denied Greene's request for a multiplier.

Similarly, in *Taylor v. Nabors Drilling USA, LP*, 222 Cal.App.4th 1228 (2014), the Court held that apportionment is not required where claims are factually intertwined, even if some claims are unsuccessful. The trial court is in the best position to assess the relationship between the claims and to determine whether time spent on a related claim contributed to the plaintiff's objectives.

Here, the trial court is in the best position to understand the relationship between the claims and to determine whether minimal ime spent on the age discrimination, failure to accommodate, and wrongful constructive discharge claims contributed to Mr. Snookal's objectives at trial. The evidence and legal work supporting these claims was necessary for and directly contributed to the successful prosecution of the disability discrimination claim. As such, apportionment is improper, and Defendant's request for a 50% reduction should be denied.

## VI.    PLAINTIFF HAS WAIVED HER REQUEST FOR COSTS FOR TWO ITEMS CHALLENGED BY DEFENDANT EXCEPT THE MEDIATION COST

Defendant argues that Plaintiff cannot recover certain requested costs totaling $8,279.30, specifically: (1) the mediator's fee of $7,950; (2) "Exhibits - Thalia Tse" of $19.30; and (3) parking charges of $310. (Def. Opp. at pp. 18-20.) Defendant also argues that Plaintiff's request for costs should be denied entirely because Plaintiff failed to timely file an Application to the Clerk to Tax Costs (form CV-59) pursuant to Local Rule 54-2.1. (Id. at p. 18.)

First, Defendant's procedural argument fails. While Plaintiff acknowledges that the

administrative error in not timely filing form CV-59 was unintentional, Defendant has not been prejudiced. (Leal Decl. ¶16). Plaintiff and Defense counsel met and conferred regarding the costs being sought, and Ms. Fan advised Plaintiff's counsel that they were challenging three items: the mediation fee ($7,950), parking costs ($310), and duplication costs ($19.30) for witness Thalia Tse. (*Id.*) Plaintiff is concurrently filing the Application to the Clerk to Tax Costs (form CV-59) to cure any procedural defect. Plaintiff waives the parking and duplication costs. In addition, a cost not contested by defense was $55.12 for messenger fees. Plaintiff also waives this amount. As such, the costs with these three items waived total $154,892.97. (Leal Decl. ¶18).

### A.   Mediation Fee

Defendant challenges the request for the cost of mediation ($7,950) arguing that "private mediation is not mandatory nor necessary to the litigation." (Def. Opp. at p. 19) This is incorrect. On August 8, 2023, the Court issued its "Notice to Parties of Court-Directed ADR Program." (Docket #6; Leal Decl. ¶19). As a result, both counsel agreed to engage in private mediation and selected Angela Reddock-Wright as the mediator. The mediation occurred on June 25, 2024. (Leal Decl. ¶19)

Plaintiff respectfully requests that the Court award the full amount of costs in the amount of $154,892.97.

## VII.   ATTORNEY FEES INCURRED SINCE FILING THE MOTION FOR ATTORNEY FEES

Since filing the motion for attorney fees, Plaintiff Snookal's counsel has expended further time on this matter - 31.6 hours for Ms. Leal and 32.70 for Ms. Flechsig. (Leal Decl. ¶21, Exh. 3). Plaintiff Snookal respectfully requests an additional lodestar of $59,175.00 and a 2.0 multiplier for the reasons set forth in Plaintiff's Motion for Attorneys fees and this Reply.

## VIII.   CONCLUSION

The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion. *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249.

1    Plaintiff Mark Snookal obtained a $4,000,000 in an 8 person unanimous jury verdict on

2 his disability discrimination claim after a hard-fought four-day trial. The lodestar amount of

3 $1,124,050.50[3] requested in the motion for attorneys fee reflects reasonable hourly rates charged

4 by experienced employment law practitioners in the Los Angeles legal community and

5 reasonable hours necessitated by Defendant's obstructive discovery tactics and aggressive

6 litigation strategy. The requested 2.0 multiplier is warranted by the contingent risk undertaken by

7 counsel, the novelty and difficulty of prevailing against Defendant's direct threat defense, the

8 exceptional result obtained, the preclusion of other employment during the intensive litigation,

9 and the over two-year delay in payment. Plaintiff's claims were inextricably intertwined, making

10 apportionment improper. The requested costs set forth in the CostApplication to the clerk to Tax

11 Costs were reasonably and necessarily incurred in prosecuting this case to a successful

12 conclusion.

13    For the foregoing reasons, Plaintiff Snookal respectfully requests his motion for

14 attorneys' fees be granted in the lodestar amount of $1,122,130.50 with a 2.0 multiplier for a

15 total of $2,244,261.00 in attorneys' fees, and $154,892.97 in costs.

16

17 DATED:  October 30, 2025                    ALLRED, MAROKO & GOLDBERG

18

19                                             By: _____

20                                                 DOLORES Y. LEAL
                                                  OLIVIA FLECHSIG
21                                                Attorneys for Plaintiff,
                                                  **MARK SNOOKAL**
22

23

24

25

26

27 _____

28 [3] After deducting the 1.6 hours for attorney Karis Stephen and 1 hour for Dolores Leal (total of $1920.00), the total lodestar is **$1,122,130.50.**

PLAINTIFF MARK SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S  MOTION FOR ATTORNEYS' FEES AND COSTS