1  DOLORES Y. LEAL (134176)
   OLIVIA FLECHSIG (334880)
2  ALLRED, MAROKO & GOLDBERG
3  6300 Wilshire Blvd. Suite 1500
   Los Angeles, CA 90048-5217
4  (323) 653-6530
   dleal@amglaw.com
5  oflechsig@amglaw.com

6

7  **Attorneys for <u>Plaintiff MARK SNOOKAL</u>**

8

9                    UNITED STATES DISTRICT COURT

10              FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  MARK SNOOKAL, an individual,    ) CASE NO.: 2:23-cv-6302-HDV-AJR
13                                  )
                                    )
14           Plaintiff,             ) **SUPPLEMENTAL DECLARATION OF**
                                    ) **OLIVIA FLECHSIG IN SUPPORT OF**
15                                  ) **PLAINTIFF MARK SNOOKAL'S REPLY**
       vs.                          ) **TO DEFENDANT CHEVRON USA,**
16                                  ) **INC'S OPPOSITION TO PLAINTIFF'S**
                                    ) **MOTION FOR ATTORNEYS' FEES AND**
17  CHEVRON USA, INC., a California ) **COSTS**
18  Corporation, and DOES 1 through 10, )
    inclusive,                      )
19                                  )
                                    ) District Judge: Hon. Hernan D. Vera
20                                  ) Magistrate Judge: Hon. A. Joel Richlin
            Defendants.             ) Action Filed: August 3, 2023
21                                  ) Trial Date: August 19, 2025
22                                  )
                                    ) Hearing Date: November 13, 2025
23                                  ) Hearing Time: 10:00 a.m.
                                    ) Courtroom: 5B
24                                  )
                                    )
25                                  )
                                    )
26                                  )
                                    )
27                                  )

28

                                    1
SUPPLEMENTAL DECLARATION OF OLIVIA FLECHSIG IN SUPPORT OF PLAINTIFF MARK
       SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
    TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

**SUPPLEMENTAL DECLARATION OF OLIVIA FLECHSIG**

I, OLIVIA J. FLECHSIG, declare as follows:

1. I am an attorney duly licensed to practice in the State of California and in the Central District of California. If called as a witness, I could and would competently testify to the following facts based upon my own personal knowledge.

2. This declaration is being filed in support of Plaintiff Mark Snookal's Reply in Support of Plaintiff's Motion for Attorneys' Fees and Costs.

**Sheppard Mullin's Attorneys' and Paralegals' Billing Rates**

3. Given that Defendant has challenged my colleagues' and my hourly rates in its Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, I searched for and found filings concerning Sheppard Mullin's recent hourly rates in the case *Maria Torres v. Southern California Permanente Medical Group et al.* ("the SCPMG matter") (LASC Case No. 19STCV42476). These rates exceed those requested by my colleagues and me relative to our years of experience, especially when adjusted for time since these were their rates from over two years ago.

4. Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of Gal Gressel in Support of Defendant Southern California Permanente Medical Group's Motion for Terminating Sanctions or Issue and Evidence Sanctions; And Monetary Sanctions against Plaintiff and Her Counsel in the Amount of $154,577 in the SCPMG matter.

5. In reviewing the filings in this case, it appears that the SPCMG matter involved, as here, a single-plaintiff, employment disability discrimination case. In Gressel's Declaration from April 2023, Gressel attests to being an attorney with Sheppard Mullin Richter & Hampton LLP. (Exhibit 1 at ¶ 1). Gressel further attests that "Babak Yousafzadeh, a partner at [Sheppard Mullin], has been practicing law in California for over eighteen years, and is a labor and employment specialist. . . Mr. Yousafzadeh's regularly hourly rate during the pendency of this litigation are as follows: $860/hr in 2020; $925/hr in 2021; $985/hr in 2022; and $1,065/hr in 2023." (Exhibit 1 at ¶ 27).

6. Gessel further attests that Sheppard Mullin's associate, "John Jung has been practicing law in California for over five years, and is also an employment specialist in the labor

2

and employment group of Sheppard Mullin. Mr. Jung's regular hourly rate in 2022, at the time he performed the relevant work on this matter, was $715 per hour." (Exhibit 1 at ¶ 29). Notably, although the Gessel Declaration states that Jung was "practicing law in California for over five years, according to the California State Bar attorney search, the only licensed attorney in California with this name did not actually join the California Bar until September of 2023.

7. Moreover, the declaration notes that the Sheppard Mullin paralegals which assisted on this matter had "rates from $205 per hour to $385 per hour from 2020 to 2023." (Exhibit 1 at ¶ 30).

**Plaintiff's First *Ex Parte* Application**

8. Defendant further asserts in its Opposition to Plaintiff's Motion for Attorneys' Fees and Costs that Plaintiff's First *Ex Parte* Application was unnecessary and that "Dr. Stephen Frangos, the doctor who was the focus of Plaintiff's belated attempts to reopen discovery, was not an unknown witness, and Plaintiff had made no efforts at all to take discovery regarding Dr. Frangos until after discovery close. [citation] Indeed, as Plaintiff's counsel is well aware, and disingenuously failed to acknowledge in the moving papers, due to a medical condition, Dr. Frangos was medically incapable of testifying at deposition and could not provide any new or material information regarding this case." (Defendant's Opposition at p. 5:4-10.) This is false.

9. For one thing, the Court already ruled in Plaintiff's favor on his Plaintiff's *Ex Parte* Application to Take Further Discovery on November 27, 2024, noting agreement that Defendant "failed to identify a key witness in Interrogatory responses," "delayed in producing relevant documents until the eve of crucial depositions;" and that Defendant's "dilatory tactics negatively affected Plaintiff's ability to take discovery on issues central to Chevron's pending motion for summary judgment." The Court "[wa]s not persuaded that Defendants' (sic) delays were necessary or reasonable." (Dkt 37). In partially granting Plaintiff's *Ex Parte*, the Court reopened discovery for 90 days and continued the trial. (Dkt 38).

10. Again, as was partially the basis for Plaintiff's first *Ex Parte* Application, Dr. Frangos was never revealed as a witness involved in the decision regarding Plaintiff's fitness for duty in Escravos, Nigeria.

3
SUPPLEMENTAL DECLARATION OF OLIVIA FLECHSIG IN SUPPORT OF PLAINTIFF MARK
SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

11. After the Court re-opened discovery, I met and conferred with Defense counsel numerous times to ask whether they would accept service of a deposition notice of Dr. Frangos.

12. Months later, on February 10, 2025, Ms. Kennedy emailed a doctor's note stating that Dr. Frangos would be unable to testify due to an ongoing health issue. Though we decline to include the original doctor's note here out of respect for Dr. Frangos' privacy, attached hereto as **Exhibit 2** is a true and correct copy of the February 10, 2025 email in which Ms. Kennedy sent said doctor's note as an attachment.

13. After finally receiving this (novel) information from Defense counsel, we made no further efforts to elicit Dr. Frangos' testimony.

14. Moreover, the result of Plaintiff's first *Ex Parte* Application yielded extensive additional key discovery that was not just about Dr. Frangos. Following Plaintiff's First *Ex Parte* Application (and before Defendant's further discovery gamesmanship necessitated a second *Ex Parte*), Defendant produced *over 600 pages of additional documents*, many of which were used as critical Exhibits at trial including Exhibits 19, 24, 39, 46, 48, 70, 74-75, 78-79, 84, 92-94, 97, 132, 155-156. These Exhibits include critical information such as email discussions of Mr. Snookal's fitness for duty by employees of Chevron Nigeria, policies governing Chevron's rotational expatriate assignments and compensation for same, and so on.

15. Further still, because Defendant had withheld extensive discovery until after we had already finished briefing Plaintiff's opposition to Defendant's (first) Motion for Summary judgment, we had to expend numerous additional hours of attorney and staff time to prepare and file novel briefing to oppose Defendant's (second) Motion for Summary Judgment using this new information.

### Plaintiff's Second *Ex Parte* Application

16. Even after the Court noted its disapproval of Defendant's "dilatory tactics" in its ruling on Plaintiff's first *Ex Parte*, Defendant's dilatory tactics continued and escalated and created extensive additional work for Plaintiff's counsel. Nonetheless, Defendant asserts in its opposition that the *Ex Parte* was a waste of attorney time and resources.

16. On January 16 2025; February 11, 2025; February 24, 2025; February 27, 2025;

and March 5, 2025, I requested in writing that Defendant's counsel provide their upcoming availability for an Informal Discovery Conference so that I could provide the Honorable A. Joel Richlin with "proposed times mutually agreed upon by the parties for the conference via Zoom" pursuant to his pre-motion procedures. Defense counsel entirely ignored or refused my five written requests (along with the additional times I raised this request orally during our meet and confer calls).

17. Defense counsel also agreed to supplement Interrogatory and Request for Production responses in writing prior to the close of discovery, then for failed to do so over a course of months until fact discovery had closed for the second time.

### The Results of Plaintiff's Second *Ex Parte* Application

18. After Plaintiff's Second *Ex Parte* Application, Magistrate Judge Joel Richlin ordered an Informal Discovery Conference (IDC) to be held on April 9, 2025. Following this IDC, Judge Richlin ordered Defendant to produce supplemental responses to sixteen (16) of Plaintiff's Requests for Production (many of which Plaintiff served nearly a year prior), as well as a privilege log to same. Judge Richlin also ordered Defendant to provide a supplemental response to Interrogatory No. 32 and to produce Dr. Adeyeye to complete his deposition (something that Defense counsel had already stipulated to, and which Plaintiff's counsel followed up about to no avail for months). (Dkt 51).

19. Judge Richlin held a further IDC on April 28, 2025 and as a result, ordered Defendant to produce further discovery, including, *inter alia*, information regarding Chevron USA's relationship with Chevron Nigeria and to verify the completeness of its supplemental production. And, given Defendant's repeated delays, Judge Richlin noted that "failure to meet [the Court's] deadline will subject Defendant to sanctions." (Dkt. 55).

20. In total, following Plaintiff's second *Ex Parte* Application, Defendant subsequently produced *over 1,500 pages of additional documents*, many of which were used as critical Exhibits at trial including Exhibits 14, 35-37, 46, 81, 89, 137, 139, 142, 143. We also were able to finish Dr. Victor Adeyeye's deposition thanks to Judge Richlin's order that Defendants to make him available in short order. Dr. Adeyeye was a witness called at trial and as one of

Chevron's cardiologists who opined on Mr. Snookal's heart condition.

21. Ultimately, Judge Richlin denied the *Ex Parte* "as moot," and not on the merits. Indeed, given Defendant delayed in producing discovery (despite its promises to the contrary, and after *hours* spent meeting and conferring to no avail), an *Ex Parte* application was last resort to obtain this discovery.

### Plaintiff's Extensive Efforts to Schedule Depositions

22. Defendant also claims in its Opposition that Plaintiff somehow delayed in taking depositions. To the contrary, Plaintiff first timely noticed depositions of Defense witnesses Andrew Powers, Dr. Eshiofe Asekomeh, Dr. Scott Levy, Thalia Tse on July 11, 2024. Plaintiff further first noticed the depositions of Drs. Ujimoti Akintunde and Victor Adeyeye on September 16, 2024. To the extent that depositions were taken much later than originally noticed, it was because of Defendant's dilatory tactics in making essential document discovery available and making witness available, not due to Plaintiff's delays.

22. For example, Ms. Leal and I followed-up with defense counsel *extensively* to obtain Dr. Adeyeye's availability to conclude his deposition. We sent no fewer than *nine emails* to this effect to Defendant's counsel on November 14, 2024; December 3, 2024; December 10, 2024; December 12, 2024; January 6, 2025; January 10, 2025, January 14, 2025; January 28, 2025; and February 18, 2025. Many of these times, Defense counsel did not respond at all, and Judge Richlin ultimately had to order that Defendant make Dr. Adeyeye available for his deposition.

I declare under penalty of perjury under the State of California and federal law that the foregoing is true and correct.

Executed this 30th day of October in Long Beach, California.

_____
OLIVIA FLECHSIG

6
SUPPLEMENTAL DECLARATION OF OLIVIA FLECHSIG IN SUPPORT OF PLAINTIFF MARK SNOOKAL'S REPLY TO DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS