UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SNOOKAL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CHEVRON USA, INC.,<br><br>　　　　　　Defendants. | Case No. 2:23-cv-06302-HDV-AJR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS [126]** |

1

I.  **INTRODUCTION**

On August 3, 2023, Plaintiff Mark Snookal brought suit against Defendant Chevron USA, Inc. for disability and age discrimination in violation of Cal. Gov't Code § 12940 *et seq,* as well as failure to accommodate and wrongful constructive discharge. [Dkt. 1]. On August 25, 2025, over two years later, a jury unanimously rendered a $4 million verdict in favor of Plaintiff for disability discrimination. *See* [Dkts. 112, 120, 125.]

Before the Court is Plaintiff's Motion for Attorney's Fees and Costs filed on September 17, 2025 (the "Motion"). [Dkt. 126]. Plaintiff seeks $2,248,101.00 in fees based on a 2x multiplier on a lodestar of $1,124,050.50. Plaintiff also seeks costs in the amount of $155,277.39.

For the reasons discussed below, Plaintiff's Motion is granted in part. FEHA provides for reasonable attorney's fees to a prevailing party, *see* Cal. Government Code § 12965(c)(6), and Plaintiff certainly meets that standard. After a careful review of the Plaintiff's billing records and considering the extent of the significant litigation that was required, the Court hereby awards $155,277.39 in costs and reasonable attorney's fees in the amount of $1,517,468.18.

II. **BACKGROUND**

A fulsome discussion of the background facts in this action is included in the Court's Order Denying Defendant's Renewed Motion for Judgment as a Matter of Law and will not be repeated here. Essentially, Plaintiff Mark Snookal's job offer at an oil refinery in Escravos, Nigeria was rescinded by Chevron after a medical assessment revealed he had a heart condition. Plaintiff brought this suit alleging that Chevron violated California's Fair Employment and Housing Act ("FEHA") by discriminating against him when they rescinded his offer.

In the course of pursuing his rights, Plaintiff was forced to engage in significant litigation, including two *ex parte* applications pertaining to defense discovery delay, four informal discovery conferences, depositions, a mediation, two motions for summary judgment, and a four-day jury trial. Motion at 8; *see also* Tables 1 and 2 (attorney hour summaries) [Dkt. 126-1].

On September 27, 2024, pursuant to the parties' stipulation, the Court dismissed the

1  Plaintiff's age discrimination claim. [Dkt. 28]. On June 11, 2025, the Court granted in part and
2  denied in part Defendant's Motion for Summary Judgment, dismissing Plaintiff's reasonable
3  accommodation and constructive discharge claims. [Dkt. 63].)
4      Between August 19, 2025 and August 25, 2025, the Court presided over a jury trial in
5  Plaintiff's Fair Employment and Housing Act (FEHA) disability discrimination case against
6  Defendant Chevron. [Dkts. 106-108, 111-112]. On September 3, 2025, the Court entered
7  judgment after a jury returned a $4 million verdict in Plaintiff's favor. [Dkt. 125].
8      On September 17, 2025, Plaintiff filed his Motion for Attorney's Fees and Costs (the
9  "Motion"). [Dkt. 126]. Chevron filed its Opposition on October 23, 2025 [Dkt. 133]; Plaintiff
10 replied on October 30, 2025. [Dkt. 135]. The Court heard oral argument on November 17, 2025,
11 and took the matter under submission. [Dkt. 137].

12 **III.    LEGAL STANDARD**

13     In general, the legal system "requires each party to bear his own litigation expenses,
14 including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832
15 (2011). However, in certain types of cases, "Congress has authorized courts to deviate . . . by
16 shifting fees from one party to another." *Id.* In a FEHA case, the prevailing party is entitled to
17 attorneys' fees and costs pursuant to California Government Code § 12965(c)(6). *See also Steele*
18 *v. Jensen Instrument Co.,* 59 Cal. App. 4th 326, 331 (1997).
19     To determine a reasonable award of attorney's fees, courts normally begin by calculating the
20 "lodestar." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000); *see also*
21 *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133–34 (2001). This requires multiplying the number of
22 hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community
23 for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). District
24 courts may rely "on their own knowledge of customary rates and their experience concerning
25 reasonable and proper fees." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). The trial
26 court first determines a "lodestar" figure based on "a careful compilation of the actual time spent and
27 reasonable hourly compensation for each attorney." *Robertson v. Fleetwood Travel Trailers of*
28 *California, Inc.*, 144 Cal. App. 4th 785, 819 (2006). The "lodestar" figure is based on a reasonable

rate for noncontingent litigation of the same type. *Id.* "A prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Steele*, 59 Cal. App. 4th at 331 (internal quotation marks omitted) (citing *Stephens v. Coldwater Banker Commercial Group, Inc.,* 199 Cal. App. 3d 1394, 1405 (1988)).

## IV. DISCUSSION

The initial fee-related question in a FEHA case is whether the plaintiff is the prevailing party. Here, there can be no question that Plaintiff prevailed at trial. While Defendant argues that Plaintiff only prevailed on one of several claims—an issue discussed more fully below—Defendant does not seriously contest that, for eligibility purposes, Plaintiff prevailed as a result of the jury verdict. Nor does Defendant point to any "special circumstances" that would render an attorney's fees award unjust on this record. The only remaining question then is the amount of the award.

### A. Calculating the Lodestar

#### 1. Billing Rates

An hourly rate is deemed reasonable by the market rates in the relevant community—"the forum in which the district court sits"— for "similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *Pasternack v. McCullough*, 65 Cal. App. 5th 1050, 1055 (2021) (hourly rates are reasonable when they reflect "the rate prevailing in the community for similar work.); *Hoglund v. Sierra Nevada Mem'l-Miners Hosp.*, 102 Cal. App. 5th 56, 82 (2024) (permitting courts to consider "the attorney's skill and experience, the nature of the work performed, the relevant area of expertise, and the attorney's customary billing rates").

Plaintiff's attorneys, from the firm Allred, Maroko & Goldberg, request the following hourly rates based on the experience of the attorneys and the market rates:

1. Dolores Y. Leal: $1200 – CA Bar Admission June 1988
2. Olivia J. Flechsig: $650 – CA Bar Admission January 2021
3. Renee Mochkatel: $1200 – CA Bar Admission December 1982
4. Karis Stephen: $450 – CA Bar Admission December 2023
5. Sabrina Medler: $450 – CA Bar Admission December 2024. Motion at 5.

4

1	The Court finds, based on the declarations presented, that these rates are fully consistent
2	with those of attorneys in Los Angeles with similar experience. Dolores Y. Leal, Olivia J.
3	Flechsig, Renee Mochkatel, Karis Stephen, and Sabrina Medler have each demonstrated that
4	their requested hourly rates reflect their customary billing rates and the prevailing rate in the
5	community for similar work. Declaration of Dolores Y. Leal ("Leal Decl.") ¶¶ 20–22 (citing
6	hourly rates for comparable defense attorneys; *see also* Declarations of J. Bernard Alexander III
7	("Alexander Decl."), Lisa Bloom ("Bloom Decl."), and Tamara Freeze ("Freeze Decl."), Exs. A–
8	C (citing the rates of other plaintiff-side employment attorneys in Los Angeles)); Declaration of
9	Olivia J. Flechsig ¶¶ 14–15 (citing case approving Ms. Flechsig's then-hourly rate of $550;
10	Alexander, Bloom, and Freeze Decls., Exs. A-C); Declaration of Renee Mochkatel ¶¶ 4, 8 (citing
11	extensive litigation experience); Declaration of Karis Stephen ¶ 14 (stating that prior hourly rate
12	at Latham & Watkins was significantly more than $450); Declaration of Sabrina Medler ¶ 7. *See*
13	*also Perez v. DIRECTV Grp. Holdings*, No. 8:16-CV-01440-JLS-DFM, 2023 WL 1931376, at *9
14	(C.D. Cal. Jan. 23, 2023) (approving $550 per hour rate for attorney with eight years of
15	experience).

16	The Court therefore concludes that counsel's requested rates are reasonable under the
17	applicable standard, and approves the rates for purposes of calculating the lodestar.

18	    **2.**    **Hours Billed**

19	As the movant, Plaintiff "bear[] the burden of submitting detailed time records justifying the
20	hours claimed." *In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir.
21	1994) (quoting *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986)).

22	Plaintiff's attorneys billed a total of 1,306.87 hours (519.90 by Dolores Y. Leal, 604.17 by
23	Olivia J. Flechsig, 33.6 by Renee Mochkatel, 111.8 by Karis Stephen, and 37.4 by Sabrina Medler).
24	*See* Motion at 9; *see also* Leal Decl. ¶ 24, Ex. A. Although Plaintiff's billing tasks are generally
25	reasonable considering the extent of the litigation, a reduction in fees is warranted for excessive
26	billing and block billing. The Court must scrutinize billing records to eliminate "'padding' in the
27	form of inefficient or duplicative efforts." *Ketchum*, 24 Cal. 4th at 1132. To trim such "fat," the
28	Court may make "across-the-board percentage cuts." *Gates v. Deukmejian,* 987 F.2d 1392, 1399

(9th Cir. 1992) (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983)).  In its review of Plaintiff's billing records, the Court has identified some (but not extensive) block billing.  Accordingly, the Court applies an across-the-board "haircut" of 10 percent.

This results in a lodestar of $1,011,645.45.

### 3. Applying a Multiplier

Plaintiff's counsel seeks that a 2x multiplier be applied to the lodestar.  Motion at 1-2, 13.  Multipliers are appropriate where counsel has demonstrated a high degree of skill and/or where "the litigation involved a contingent risk . . . in order to approximate the fair market rate for such services"  *Ketchum*, 24 Cal. 4th at 1132.  A lodestar figure may be enhanced by a multiplier to account for: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award."  *Ketchum*, 24 Cal. 4th at 1132 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)).

The Court finds that a multiplier is appropriate here.  Plaintiff prevailed despite Defendant's assertion of a "direct threat" affirmative defense—a difficult, somewhat uncommon, and fact-intensive issue involving extensive medical evidence presented by competing experts—as well as a detailed analysis of the infrastructure available in Escravos, a remote area of Nigeria.  Included in this defense were numerous factual assertions by Chevron involving the threat of kidnappings, attacks by sea pirates, fire explosions, and other hazards, further contributing to the complexity of the case.  Yet, despite these numerous contentions, the jury found that Plaintiff's disability did not pose an imminent and substantial threat to himself or others, a result the Court attributes in large part to the excellent skill displayed by Plaintiff's counsel throughout the trial as well as the pretrial proceedings.[1]  Indeed, Plaintiffs' counsel successfully defended the Defendant's Motion for Summary Judgment and prevailed in numerous pivotal discovery disputes.

In addition, Plaintiff's counsel has made a sufficient showing that, given the extensive nature of the discovery and pretrial proceedings, the firm was precluded from taking on other work during

---

[1] The Court notes there was a high quality of lawyering on both sides.

6

the pendency of Plaintiff's case. Moreover, Plaintiff's counsel also faced a real risk that their efforts would go uncompensated, as Chevron vigorously pursued litigation over two years. Given these factors, the Court concludes that a multiplier of 1.5 is appropriate and necessary.

### 4. Apportionment

Defendant seeks a reduction of attorneys' fees based on the time dedicated to the unsuccessful litigation of Plaintiff's claims for age discrimination, failure to accommodate, and wrongful constructive termination, including punitive damages. Opposition at 12-14. Defendant contends that the time and fees expended on these claims cannot be recovered because they are factually and legally unrelated to the disability discrimination claim. *Id.* at 13. On this basis, Defendant seeks a reduction in fees by 50%. *Id.* at 14.

In determining whether fees should be reduced on an apportionment theory, courts apply a two-pronged analysis. "First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434–35 (1983)). "Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories." *Taylor v. Nabors Drilling USA, LP,* 222 Cal. App. 4th 1228, 1251 (quoting *Graciano v. Robinson Ford Sales, Inc.,* 144 Cal. App. 4th 140, 158–159 (2006) (court found apportionment not required "when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units")).

Next, if the district court determines that the unsuccessful and successful claims are related, it must evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Thorne*, 802 F.2d at 1141) (quoting *Hensley,* 461 U.S. at 435). If the court finds that "excellent results" were obtained by the plaintiff, then the court, within its discretion, may award full compensation. *Id.* When making this equitable determination, broad discretion is afforded to the trial court. *Hensley*, at 437.

The evaluation of the relatedness of claims focuses on whether the plaintiff's claims "involve a common core of facts" or are "based on related legal theories," as opposed to unrelated claims

7

which are "distinctly different" and "based on different facts and legal theories." *Id.* at 434-35. The Ninth Circuit has explained that courts should consider "whether the claims seek relief for essentially the same course of conduct." *Thorne,* 802 F.2d at 1141. The appropriate test is therefore "whether relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Id.* (quoting *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1279 (7th Cir. 1983).

The Defendant attempts to parse the successful and unsuccessful claims by contending that they are based on "distinctively different claims for relief" because the basis for the disability discrimination claim was "the rescission of the job offer in Nigeria" while the claim for age discrimination "focused on job positions that he did not receive following rescission of the job offer." Opposition at 13. The Court is unpersuaded and finds that the different claims are inextricably intertwined and derive from a common core set of facts pertaining to the same, overlapping course of conduct. *See Hensley*, 461 U.S. at 435. Specifically, all of the claims, successful or otherwise, involve Chevron's rescission of Plaintiff's job offer in Escravos, the nature and requirements of the offered job, Plaintiff's qualifications for the position, his employment background, prior position and job duties at Chevron, the decision by Chevron to rescind the offer including surrounding circumstances, as well as the treatment of Plaintiff after the offer was rescinded, *viz.*, his applications for other positions that were rejected and his subsequent resignation from Chevron and the reasons for this decision.

Moreover, the Court disagrees with Defendant's contention that the time spent in pretrial discovery on Plaintiff's general employment experience and lack of job offers after rescission are related only to the age discrimination claim. To the contrary, the time spent by the parties on evaluating this course of conduct contributed to Plaintiff's overall objectives and success at trial. Further, there was ***substantial overlap*** between the claims, such that the work involved on the unsuccessful claims—including discovery conducted, documents reviewed, witnesses deposed, and motion practice—all contributed to the result obtained on the disability discrimination claim.

Lastly, "[w]here a lawsuit consists of related claims, and the plaintiff has won substantial

relief, a trial court has discretion to award all or substantially all of the plaintiff's fees even if the court did not adopt each contention raised." *Greene v. Dillingham Construction, N.A., Inc.,* 101 Cal. App. 4th 418, 423 (2002). Here, it cannot be seriously questioned that Plaintiff achieved substantial relief. The jury awarded Plaintiff $4 million dollars in the context of a highly complicated "direct threat" affirmative defense under FEHA. There is absolutely no legal or factual basis to reduce Plaintiff's attorneys' fees award on an apportionment theory.

### B. Costs

Prevailing parties under FEHA are also entitled to the costs incurred in bringing the action. Cal. Government Code § 12965(c)(6). Plaintiff's requested costs are reasonable and not outside the scope of costs permitted under California Government Code, section 12965(c)(6). *See* Leal Decl., Ex. A/33-35. The Court awards costs to Plaintiff in the amount of $155,277.39.

## V. CONCLUSION

The Court concludes that Plaintiff is the prevailing party. Plaintiff's Motion is granted in part. The Court awards Plaintiff's counsel a fee and cost award as follows:

- A lodestar (after applying a 10% reduction for block billing) of: $1,011,645.45.
- A multiplier of 1.5, resulting in a total *adjusted* lodestar of $1,517,468.18.
- Costs in the amount of $155,277.39.

The Court therefore awards Plaintiff attorney's fees and costs in the amount of $1,672,745.57.

Dated: December 15, 2025

_____
Hernán D. Vera
United States District Judge